```
1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
2
                                         )
3     UNITED STATES OF AMERICA,          )
                                         )
4            Plaintiff,                   )
                                         )
5     v.                                  )
                                         )
6     DAVID SIDOO, GREGORY COLBURN,       )
      AMY COLBURN, GAMAL ABDELAZIZ,       )
7     DIANE BLAKE, TODD BLAKE,            )
      I-HSIN CHEN, MOSSIMO GIANNULI,      ) Criminal Action
8     ELIZABETH HENRIQUEZ, MANUEL         ) No. 1:19-cr-10080-NMG
      HENRIQUEZ, DOUGLAS HODGE,           )
9     MICHELLE JANAVS, ELISABETH          )
      KIMMEL, LORI LOUGHLIN, WILLIAM      )
10    McGLASHAN, JR., MARCI PALATELLA,   )
      JOHN WILSON, HOMAYOUN ZADEH,        )
11    ROBERT ZANGRILLO,                   )
                                         )
12           Defendants.                  )
                                         )
13


14              BEFORE THE HONORABLE M. PAGE KELLEY
                  UNITED STATES MAGISTRATE JUDGE
15

16                  INITIAL STATUS CONFERENCE

17

18                      June 3, 2019

19           John J. Moakley United States Courthouse
                      Courtroom No. 24
20                    One Courthouse Way
                  Boston, Massachusetts 02210
21

22                 Linda Walsh, RPR, CRR
23                  Official Court Reporter
           John J. Moakley United States Courthouse
24               One Courthouse Way, Room 5205
                 Boston, Massachusetts 02210
25                  lwalshsteno@gmail.com
```

```
 1    APPEARANCES:

 2    On Behalf of the Government:

 3         UNITED STATES ATTORNEY'S OFFICE
           By: AUSA Eric S. Rosen
 4             AUSA Justin D. O'Connell
               AUSA Leslie Wright
 5         One Courthouse Way
           Boston, Massachusetts 02210
 6         617-748-3412
           eric.rosen@usdoj.gov
 7
      On Behalf of the Defendant Robert Zangrillo and David Sidoo:
 8
           MARTIN G. WEINBERG, PC
 9         By: Martin G. Weinberg, Esq.
           20 Park Plaza, Suite 1000
10         Boston, Massachusetts 02116
           617-227-3700
11         owlmcb@att.net

12    On Behalf of the Defendants Gregory Colburn and Amy Colburn:

13         HOOPER, LUNDY & BOOKMAN, P.C.
           By: David S. Schumacher, Esq.
14         470 Atlantic Avenue, Suite 1201
           Boston, Massachusetts 02210
15         617-532-2704
           dschumacher@health-law.com
16
      On Behalf of the Defendant Gamal Abdelaziz:
17
           NIXON PEABODY LLP
18         By: Joshua C.H. Sharp, Esq.
               Brian T. Kelly, Esq.
19         Exchange Place
           53 State Street
20         Boston, Massachusetts 02109-2835
           617-345-1135
21         jsharp@nixonpeabody.com

22

23

24

25
```

```
 1    APPEARANCES (Continued):

 2   On Behalf of the Defendants Diane Blake and Todd Blake:

 3        DUANE MORRIS LLP
          By: Stephen H. Sutro, Esq.
 4        Spear Tower
          One Market Plaza, Suite 2200
 5        San Francisco, California 94105-1127
          415-957-3000
 6        shsutro@duanemorris.com

 7        TODD & WELD
          By David E. Meier, Esq.
 8        One Federal Street, 27th Floor
          Boston, Massachusetts 02110
 9        617-720-2626
          dmeier@toddweld.com
10
     On Behalf of the Defendant I-Hsin Chen:
11
          KELLER/ANDERLE LLP
12        By: Reuben Camper Cahn, Esq.
              Jennifer L. Keller, Esq.
13        18300 Von Karman Avenue, Suite 930
          Irvine, California 92612
14        949-476-8700
          rcahn@kelleranderle.com
15
     On Behalf of the Defendant Mossimo Giannulli:
16
          DONNELLY, CONROY & GELHAAR, LLP
17        By: Joshua N. Ruby, Esq.
              George W. Vien, Esq.
18        260 Franklin Street
          Boston, Massachusetts 02110
19        617-720-2880
          jnr@dcglaw.com
20
     On Behalf of the Defendant Elizabeth Henriquez:
21
          ROPES & GRAY LLP
22        By: Aaron M. Katz, Esq.
          Prudential Tower
23        800 Boylston Street
          Boston, Massachusetts 02199-3600
24        617-951-7117
          aaron.katz@ropesgray.com
25
```

1   APPEARANCES (Continued):

2   On Behalf of the Defendant Manuel Henriquez:

3       ORRICK, HERRINGTON & SUTCLIFFE LLP
        By: Walter Brown, Esq.
4       405 Howard Street
        San Francisco, California 94105
5       415-773-5995
        wbrown@orrick.com
6
    On Behalf of the Defendant Douglas Hodge:
7
        ROPES & GRAY
8       By: Brien T. O'Connor, Esq.
        Prudential Tower
9       800 Boylston Street
        Boston, Massachusetts 02199-3600
10      617-951-7385
        boconnor@ropesgray.com
11
        PEPPER HAMILTON LLP
12      By: Miranda Hooker, Esq.
        125 High Street, 19th Floor
13      High Street Tower
        Boston, Massachusetts 02110
14      617-204-5160
        hookerm@pepperlaw.com
15
    On Behalf of the Defendant Michelle Janavs:
16
        NUTTER, MCCLENNEN & FISH, LLP
17      By: Jonathan L. Kotlier, Esq.
        Seaport West
18      155 Seaport Boulevard
        Boston, Massachusetts 02210-2604
19      617-439-2000
        jkotlier@nutter.com
20
        BIENERT KATZMAN PLC
21      By: John L. Littrell, Esq.
        903 Calle Amanecer, Suite 350
22      San Clemente, California 92673
        949-369-3700
23      jlittrell@bienertkatzman.com

24

25

```
 1    APPEARANCES (Continued):

 2   On Behalf of the Defendant Elisabeth Kimmel:

 3       MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, PC
         By: Eoin P. Beirne, Esq.
 4           Cory Flashner, Esq.
         One Financial Center, 42nd Floor
 5       Boston, Massachusetts 02111
         617-348-1707
 6       ebeirne@mintz.com

 7   On Behalf of the Defendant Lori Loughlin:

 8       LATHAM & WATKINS LLP
         By: William J. Trach, Esq.
 9       John Hancock Tower, 27th Floor
         200 Clarendon Street
10       Boston, Massachusetts 02116
         617-880-4514
11       william.trach@lw.com

12   On Behalf of the Defendant William McGlashan, Jr.:

13       SIDLEY AUSTIN LLP
         By: Jack W. Pirozzolo, Esq.
14       60 State Street, 34th Floor
         Boston, Massachusetts 02109
15       617-223-0304
         jpirozzolo@sidley.com
16
     On Behalf of the Defendant Marci Palatella:
17
         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
18       By: Michael K. Loucks, Esq.
         500 Boylston Street
19       Boston, Massachusetts 02116
         617-573-4840
20       michael.loucks@skadden.com

21   On Behalf of the Defendant John Wilson:

22       WHITE & CASE, LLP
         By: Michael Kendall, Esq.
23       75 State Street
         Boston, Massachusetts 02109
24       617-939-9310
         michael.kendall@whitecase.com
25
```

1    APPEARANCES (Continued):

2    On Behalf of the Defendant Homayoun Zadeh:

3         MINER ORKAND SIDDALL LLP
          By: Megan A. Siddall, Esq.
4         470 Atlantic Avenue, 4th Floor
          Boston, Massachusetts 02210
5         617-273-8406
          msiddall@mosllp.com
6
     On Behalf of the Defendant Robert Zangrillo:
7
          FOLEY HOAG LLP
8         By: Nicholas C. Theodorou, Esq.
          155 Seaport Boulevard
9         Seaport World Trade Center West
          Boston, Massachusetts 02210
10        617-832-1163
          ntheodorou@foleyhoag.com
11
          BOIES SCHILLER FLEXNER
12        By: Matthew L. Schwartz, Esq.
          55 Hudson Yards, 20th Floor
13        New York, New York 10001
          212-303-3646
14        mlschwartz@bsfllp.com

15

16

17              Proceedings recorded by sound recording and
                  produced by computer-aided stenography
18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2           THE CLERK:  Criminal Case Number 19-10080, United

 3  States versus David Sidoo, et al., the Honorable M. Page Kelley

 4  presiding.

 5           Would counsel please identify themselves for the

 6  record.

 7           MR. ROSEN:  Good morning, Your Honor.  Eric Rosen,

 8  Leslie Wright, and Justin O'Connell for the Government.

 9           THE COURT:  Good morning.

10           MR. WEINBERG:  Good morning, Your Honor.  Martin

11  Weinberg on behalf of Robert Zangrillo and David Sidoo.

12           MR. KATZ:  Good morning, Your Honor.  Aaron Katz for

13  Elizabeth Henriquez.

14           MR. BEIRNE:  Good morning, Your Honor.  Eoin Beirne

15  for Elisabeth Kimmel.

16           MR. RUBY:  Good morning, Your Honor.  Josh Ruby and

17  George Vien for Mossimo Giannulli.

18           MR. SCHUMACHER:  Good morning, Your Honor.  David

19  Schumacher for Amy and Gregory Colburn.

20           MR. FLASHNER:  Good morning, Your Honor.  Cory

21  Flashner on behalf of Elisabeth Kimmel.

22           MR. PIROZZOLO:  Good morning, Your Honor.  Jack

23  Pirozzolo on behalf of William McGlashan.

24           MR. LOUCKS:  Good morning, Your Honor.  Michael Loucks

25  on behalf of Marci Palatella.
```

 1           MR. KOTLIER:  Good morning, Your Honor.  Jonathan
 2    Kotlier and John Littrell for Michelle Janavs.
 3           THE COURT:  Good morning.
 4           MR. TRACH:  Good morning, Your Honor.  William Trach
 5    for Lori Loughlin.
 6           MR. O'CONNOR:  Your Honor, Brien O'Connor and Miranda
 7    Hooker for Doug Dodge.
 8           THE COURT:  Good morning.
 9           MR. SUTRO:  Good morning, Your Honor.  Steve Sutro and
10    David Meier for the Blakes.
11           MR. MEIER:  Good morning, Your Honor.
12           THE COURT:  Good morning.
13           MR. SHARP:  Josh Sharp of Nixon Peabody for Gamal
14    Abdelaziz.
15           MR. KELLY:  Brian Kelly as well.
16           MR. THEODOROU:  Nicholas Theodorou and Matthew
17    Schwartz for Robert Zangrillo, Your Honor.
18           THE COURT:  Good morning.
19           MR. BROWN:  Good morning, Your Honor.  Walter Brown
20    for Manuel Henriquez.
21           MS. SIDDALL:  Good morning, Your Honor.  I'm Megan
22    Siddall on behalf of Homayoun Zadeh.
23           MR. CAHN:  Good morning, Your Honor.  Reuben Cahn and
24    Jennifer Kelleher on behalf of I-Hsin Chen.
25           MS. KELLEHER:  Good morning, Your Honor.

1          THE COURT:  Good morning.  Okay.  That's everyone.

2          All right.  So I have the parties' joint initial

3   status report, which is 388 on the docket, and I've read it.

4   And what I think I'll do is just go through the matters that

5   are here, and if anyone wants to be heard on any particular

6   issue, just try to stand up and start talking.

7          So with regard to the pending discovery requests, I

8   understand the parties are conferring on more comprehensive

9   indices, and I think I'll just leave it up to the parties to

10   keep talking about that.

11          Anyone want to say anything about that?

12          (No response.)

13          THE COURT:  Okay.  So with regard to number two,

14   additional discovery, I know the Government has its Brady

15   obligations, and I think they understand those.  If someone

16   would like to be heard on why they think a certification is

17   necessary, I'm happy to hear you.

18          Yes?

19          MR. KATZ:  Good morning, Your Honor.

20          THE COURT:  If we could just have everyone identify

21   themselves just for the record.

22          MR. KATZ:  Sure.  Aaron Katz for Elizabeth Henriquez.

23   I think I probably speak for many of the defendants, if not all

24   of them here.

25          I think the issue is that the Government may have a

1   different conception of what constitutes Brady in this case as

2   the Defendants.  Normally, you know, you get 302s.  You see the

3   interview reports.  We can make the call on our own about

4   whether certain information is exculpatory both as to guilt or

5   punishment and sentencing, which also comes within the

6   definition of Brady.

7          Here during the meet and confer, and, Mr. Rosen, I

8   apologize if I am misstating anything, but part of our

9   conversation was about interviews the Government may have had

10  with other parents that were clients of Rick Singer that have

11  not been charged in this case, and particularly whether any of

12  those parents told investigators, told the prosecutors that

13  Rick Singer essentially told them that their money was going to

14  be going to athletic programs or to schools and not in them --

15  in the pocket of a coach who had been bribed and corrupted.

16         If Rick Singer was telling other parents that the

17  money that they were giving to Key Worldwide was going to go to

18  the athletic programs, we think that's exculpatory.  I think

19  that goes to the heart of one of the critical elements of the

20  honest services fraud charge, which is whether someone has

21  actually been bribed in exchange for breaching his or her

22  fiduciary duty.

23         We have seen already some e-mails from Rick Singer

24  that did make such representations to certain parents who have

25  not been charged in this case, but we think that there's going

1    to be more of that in 302s.  And the new policy at the office

2    apparently is that we are not going to get 302s unless the

3    Government determines if there is Brady in them.  Again, I

4    don't question that the prosecutors understand their Brady

5    obligations.  If there's something that's exculpatory, they

6    have to produce it.  Mr. Rosen represented that they are not

7    going to be sitting on Brady until we get 30 days out from

8    trial; they are going to produce it on a rolling basis.  And we

9    appreciate that very much.  But I do think that there is going

10    to be a difference of opinion, a significant one, about what is

11    Brady and what is not.  And a good faith disagreement but one

12    that's critically important.

13          THE COURT:  I'm still not sure -- I guess this is the

14    reference including the Government's policy regarding FBI

15    reports on the first page?

16          MR. KATZ:  Correct.

17          THE COURT:  Okay.  I'm still not sure why, if the

18    Government doesn't think certain materials are Brady, why

19    having them certify that they have given you all the Brady

20    would really cured that.  I mean, I think I'll address your

21    point, but I still don't know that the certification is

22    necessary, but --

23          MR. KATZ:  You know, it may not be.  It certainly

24    won't be sufficient to resolve this disagreement.  I mean, this

25    may be something where the future discovery requests that go to

1    Your Honor are going to actually tease out what's Brady.  What

2    also makes this case a little bit unique, as I read the

3    indictment, it's a three or a four object conspiracy count, and

4    so I think the prosecutors may feel like, well, we have got

5    powerful evidence on one of the objects, and this exculpatory

6    evidence only goes to another object that doesn't really affect

7    guilt on the charge.  But it does go to certainly sentencing,

8    you know, if there were a conviction.  But also there are

9    certain legal and sort of legal infirmities arguably of certain

10   of the objects, and those are different, right?  And so all of

11   the exculpatory evidence on any of the objects is critically

12   important to have.  But if Your Honor would like to deal with

13   that with the discovery requests after we set deadlines, that

14   may make more sense.  That may be what we have to do.

15           THE COURT:  Okay.  Does anyone else want to be heard

16   on this point that Mr. Katz was just raising?

17           Okay.  Mr. Rosen?

18           MR. ROSEN:  Just briefly, Your Honor.  The Government

19   is aware of its obligations and will continue to review and

20   disclose our discovery as a trigger for a massive amount of

21   discovery, I think approximately 3 million pages of discovery,

22   along with the wiretap calls, consensual calls, you know,

23   millions of e-mails, lots of documents, applications and

24   everything like that.

25           First of all, a certification is completely unworkable

1   in terms of, you know, the nature of discovery can change as

2   the case progresses as more is discovered.  We are aware of our

3   obligations.  We are working through them.  It's good enough in

4   every other case.  There's no, I don't think, any rule that

5   requires some type of Government certification.  Even there,

6   defense counsel, although there's different opinions on what

7   constitutes a bribe or not, has not identified any exculpatory

8   evidence.  It doesn't -- it simply doesn't matter whether the

9   money went to a coach's program or whether it went to a -- the

10  coach's pocket directly.  A bribe is simply a quid pro quo with

11  the intent to defraud, and all the Defendants have been charged

12  with that.

13          I think the best practice is for Defendants first to

14  review the discovery and then we can meet, confer.  We are very

15  good about getting back to Defendants.  And if they have, you

16  know, an issue later on, we can address that, but we're not

17  going to hand over all of our 302s willy-nilly because the

18  Defendants feel like they have some theory about why certain

19  things could be exculpatory to them or not.

20          MR. WEINBERG:  I think Mr. Rosen has just put his

21  finger on one of the chasms between the Government's

22  understanding of Brady and the defense.  If money went to a

23  school, whatever the discussions, it's not a bribe, at least

24  not a bribe within the ambit of the Government's allegations in

25  this case that there were bribes paid to specific people for

1   specific performance or a breach of services.  So we would want

2   to reserve for a time that Your Honor felt it was appropriate

3   to tee up and crystallize this issue where we claim that is

4   exculpatory evidence and the Government has just said it's not.

5          THE COURT:  Okay.  That was Mr. Weinberg speaking.

6          Since we don't have a stenographer here, we have just

7   got to identify yourself.

8          MR. WEINBERG:  Sorry, Judge.

9          THE COURT:  Okay.  I hear you all, and I think it's a

10  good idea what everyone is saying, that we wait and let this

11  issue kind of develop, and then I'm happy to take it up.  And

12  it may be we want to take it up before the next status hearing,

13  but I think -- you know, I would just urge the Government if

14  the Defendants can show you any arguable reason why they think

15  something is exculpatory, you might as well turn it over if you

16  can bring yourself to do that, but otherwise, I'm happy to hear

17  it.

18         So -- okay.  So let's just get into the discovery and

19  if you want to try to further persuade the Government, if that

20  doesn't work, then come back.  Okay?

21         MR. WEINBERG:  Thank you.

22         THE COURT:  Okay.  I'm not going to require the

23  Government to certify at this time.

24         With regard to the timing issues, I know the rules set

25  pretty firm deadlines on discovery motions, but I'm just not

 1   going to do that because there's so much discovery, and I know

 2   the Government is producing it on a rolling basis here.  And I

 3   think as issues arise and you want to be heard on them, I'm

 4   happy for you to request it from the Government and then file a

 5   motion as the rules require.  I do really think I'm going to

 6   strictly enforce the rule that says you have to confer before

 7   filing motions, so please do that.

 8            And I agree with the proposal at the bottom of Page 2

 9   that Defendants can confer and exchange letter requests, and

10   there are no deadlines on that at this time.  I think at the

11   next status hearing, if discovery is substantially complete, I

12   will set some deadlines for making additional discovery

13   requests, but I'm not going to do that now.  So I will not set

14   a pretrial motion schedule at this time and perhaps, depending

15   on people's progress in making their way through the discovery

16   and the Government's giving over all the discovery, perhaps it

17   will be appropriate for everyone to provide a proposed briefing

18   schedule when you file your next status conference report prior

19   to the interim status conference.

20            With Mr. Schumacher's agreement, I will request the

21   resolution of the motion to dismiss be stayed as requested, and

22   I'm going to suspend the Government's deadline for responding.

23            MR. SCHUMACHER:  Thank you, Your Honor.

24            THE COURT:  Okay.  That was Mr. Schumacher

25   saying -- okay.

1        Is the Government going to have experts in this case?

2        MR. ROSEN:  It's a little early to tell.  I think

3   really the only experts that we would have are maybe historical

4   cell-site experts, if they are still considered experts in this

5   day and age.  We've turned over the historical cell sites we

6   have so far.  So I don't really anticipate one, but obviously

7   as we narrow down the issues for trial, we'll make a final

8   determination there.

9        THE COURT:  Okay.  So I think I'm just going to put

10  over this issue of expert disclosure dates to the next status

11  conference, and we'll see how it's shaking up, whether there

12  even are any experts to be arguing over with regard to the

13  dates.  I'll adopt the parties' request for the next status

14  conference to be on October 2nd, and I'll have that at 2:15,

15  and I'm going to exclude the time between today and October 2nd

16  unless I hear an objection.  I will ask the Government to

17  provide a list of potential witnesses to defense counsel by

18  June 30th as requested -- as set out here on Page 4.  Is that

19  workable?

20       MR. ROSEN:  Yes, with the understanding it will be

21  supplemented as sort of we, you know, obviously prepare for

22  trial and things like that.

23       THE COURT:  Okay.  And -- okay.  So anything about any

24  of these things that -- I don't want to prohibit any of the

25  defense counsel from saying anything.  Anything else?

1           (No response.)

2           THE COURT:  Okay.  So the Government has filed a

3      motion for a hearing concerning conflicts of interest under

4      seal, Number 383 on the docket.  I'm going to allow that

5      motion, and I'm also going to allow the motion for that motion

6      to be filed under seal.  And -- so I will be scheduling the

7      so-called *Foster* hearings in the case.  And I know,

8      Mr. Weinberg, you have filed something --

9           MR. WEINBERG:  We have, Your Honor.

10          THE COURT:  -- in response?

11          MR. WEINBERG:  For both Mr. Sidoo and Mr. Zangrillo,

12     Your Honor.

13          THE COURT:  Okay.  So I think what we'll do is

14     schedule hearings where the clients will need to be here so

15     that I can have a colloquy with them and also sign a waiver

16     since the Rules of Professional Conduct require that the waiver

17     be in writing, and I would just ask counsel to file something

18     prior to the hearing -- Mr. Weinberg, I think you already

19     have -- setting out why the conflict is not a problem, or if

20     you decided that it is to get out of the case.  And then I'll

21     have a better understanding of the kind of background and your

22     response to what the Government is saying.

23          So any comments about that from anyone?  Yes,

24     Mr. Rosen?

25          MR. ROSEN:  Just briefly.  Does that include the --

1   your granting of those other motions to seal, also the motion

2   for the brief length, the extended page pagination?

3        THE COURT:  Yes.  I think that was allowed earlier

4   today.  Sorry.  Yes, that's allowed.

5        MR. ROSEN:  And do you want us to file a redacted copy

6   on the docket as we have sort of in our exhibit?

7        THE COURT:  Mr. Weinberg?

8        MR. WEINBERG:  I would object to that.  I think that

9   all of the parties should be able to file their responses

10  before the Government's motion gets unsealed, and then, Your

11  Honor, at the time of your taking of the waivers through the

12  *Foster* inquiry can decide whether or not to unseal all or part

13  of the exchange of positions.

14       THE COURT:  Okay.  So I think -- I do think, though,

15  if it's possible to put a redacted version of the Government's

16  sealed motion on the docket, I should do that.

17       MR. WEINBERG:  I don't think it's necessary at this

18  time.  I think it only has the potential in a case, at least

19  some Defendants are going to be seeking a jury trial some day,

20  to add a burden to the potential future jury inquiries, and

21  again, I would ask that if the Government's redacted version be

22  filed so should the Defendants' responses.  And since many of

23  the responses from my co-counsel have not been filed yet and

24  will be filed pursuant to whatever schedule the court orders,

25  that all of it be deferred until they have the exchange of

1    briefs so you're not getting an asymmetrical picture in the

2    public media.

3            THE COURT:  Okay.  So here's what I'll do:  Those of

4    you who will have the *Foster* hearings, file your responses

5    under seal.  You don't need to file a motion for that.  And

6    I'll wait to have the Government file a redacted version of its

7    original motion, which is 283, until the Defendants have filed

8    their pleadings.

9            Then I would -- once the exchange is complete, I would

10   like the parties to confer with each other, the Government with

11   each Defendant and vice versa, about what redacted version

12   should appear on the docket and agree to that.  And please

13   redact as little as possible.  Just redact what is necessary

14   because it does need to be public as far as it can be.  Okay.

15           MR. O'CONNOR:  Your Honor, may I ask a clarification?

16           THE COURT:  Can you just identify yourself.

17           MR. O'CONNOR:  Brien O'Connor, sorry, Your Honor, for

18   Douglas Hodge.

19           Does that cover the U.S.C. situation, too?  We don't

20   see that as a *Foster* hearing but on the, you know, the filings,

21   the process you just set forth, does that cover the other issue

22   that's also covered by the Government's brief, too?

23           THE COURT:  Yes, and -- but I would like an

24   explanation as to why that is not a problem in your filings.

25           MR. O'CONNOR:  Yes.  Yes, Your Honor, of course.

1          THE COURT:  Okay.  And then we'll see do we need to

2     have a hearing or not.

3          MR. O'CONNOR:  Yes.  Thank you.

4          THE COURT:  Yes, Mr. Schumacher?

5          MR. SCHUMACHER:  Thank you, Your Honor.  Just

6     clarification, is it required that the Defendants be here in

7     person for that hearing?  As you know, the Defendants are

8     primarily out of state.  I think the rule is silent on whether

9     it has to be in person or telephonically, and Your Honor has

10    great discretion regarding the timing and the forum of this

11    hearing.

12         THE COURT:  So I think it does need to be in person.

13    If you can find some authority that it doesn't, but I think

14    it's important enough constitutionally that it needs to be in

15    person, and I just think it does.  And we will set up the

16    hearings at your -- I mean, we have quite a bit of time here

17    until the next status hearing, so we can set up the hearings at

18    your convenience.  You know, you can work with Ms. Belmont to

19    get an agreeable date.

20         MR. SCHUMACHER:  Fair enough.

21         MR. O'CONNOR:  Your Honor -- Brien O'Connor again for

22    Douglas Hodge.  I would just say I think the U.S.C. issue maybe

23    sets up differently as it's not a *Foster* hearing, but might we

24    explain to you why that is in our filing and then we can decide

25    whether the clients need to be there?

1          THE COURT:  Yes.  That's great.

2          MR. O'CONNOR:  Thank you.

3          MR. KATZ:  Your Honor, Aaron Katz for Elizabeth

4     Henriquez.  Just a point of clarification on scheduling.  Are

5     you imagining a *Foster* hearing with all of the impacted

6     Defendants or could there be seriatim?  I know there's so many

7     people.

8          THE COURT:  I'm happy to do them separately.

9          MR. KATZ:  Thank you.

10          THE COURT:  And I don't think they will take a long

11     time, and I'm happy for Ms. Belmont, also, to forward counsel

12     the colloquy that I'll be going through so you can go over it

13     with your clients and make sure that they're prepared.  But I

14     do -- I think it is really critical that the client -- this be

15     explained to the clients in a coaching way by their lawyers so

16     that -- I really do want to make sure they understand what

17     they're doing.  Okay.

18          DEFENSE ATTORNEY:  Your Honor, we discussed with the

19     Government filing those responses by June 27th.  Is that a date

20     that works for the Court?

21          THE COURT:  That's absolutely fine, and if it turns

22     out you need some additional time, just agree with the

23     Government and you don't need to file anything on the record,

24     but just get -- I mean, end of June would be great.

25          DEFENSE ATTORNEY:  Great.  Thank you, Your Honor.

 1          THE COURT:  Then we'll try to have these hearings in

 2     July and get it taken care of.

 3          DEFENSE ATTORNEY:  Okay.

 4          THE COURT:  And perhaps if the Government is not going

 5     to file a reply to anything that the Defendants file, you could

 6     let Ms. Belmont know so we'll know we are ready to schedule the

 7     hearing.

 8          Okay.  Anything else?

 9          MR. KENDALL:  One small thing, Your Honor.  I think I

10     missed roll call.  Mike Kendall for John Wilson.

11          THE COURT:  Okay.  Mr. Kendall, good morning still.

12          MR. CAHN:  Judge, one question, Reuben Cahn.  For the

13     October status conference, are clients required to be present?

14          THE COURT:  No.  The clients don't have to be present

15     at any of the status conferences.

16          MR. CAHN:  Thank you, Your Honor.

17          THE COURT:  Okay.  All right.  So thank you very much.

18     That's all today.

19          (Recording ends at 11:25:06)

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Linda Walsh, Registered Professional Reporter

4   and Certified Realtime Reporter, in and for the United States

5   District Court for the District of Massachusetts, do hereby

6   certify that the foregoing transcript is a true and correct

7   transcript of the stenographically reported proceedings held in

8   the above-entitled matter to the best of my skill and ability.

9              Dated this 5th day of June, 2019.

10

11

12          /s/ Linda Walsh_____

13          Linda Walsh, RPR, CRR

14          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25