**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>DAVID SIDOO, *et al*,<br><br>Defendants. | No. 19-10080-NMG<br><br>FILED UNDER SEAL[1] |

## DEFENDANT ROBERT ZANGRILLO'S RESPONSE TO THE GOVERNMENT'S MOTION FOR HEARING REGARDING POTENTIAL CONFLICTS OF INTEREST

On May 23, 2019, the government filed a motion requesting a hearing pursuant to *Untied States v. Foster*, 469 F.2d 1, 5 (1st Cir. 1972), and Federal Rule of Criminal Procedure 44(c). With respect to defendant Robert Zangrillo, the government identified two potential conflicts of interest: (1) Martin Weinberg's joint representation of Mr. Zangrillo and co-defendant David Sidoo, and (2) Boies Schiller Flexner LLP's representation of Mr. Zangrillo and Davina Isackson, the latter of whom has pleaded guilty pursuant to a cooperation agreement and whom the government represents "may" be called to testify at a trial of Mr. Zangrillo. The government's motion requests a *Foster* hearing at which Mr. Zangrillo may be advised by the Court of the dangers arising from these potential conflicts.

Mr. Zangrillo agrees that a *Foster* hearing is appropriate, and he is prepared to waive any potential conflict on the record at such a hearing. This response is being submitted in advance of that hearing to bring to the Court's attention certain other facts, including measures taken by the relevant law firms (Martin Weinberg, P.C. and Boies Schiller Flexner LLP) to address any

---

[1]     Because the government's Motion was filed under seal, Mr. Zangrillo similarly requests that this Response be sealed.

potential conflict.  In addition, as the Court is aware, Mr. Zangrillo also is represented in this case by attorneys from Foley Hoag LLP, who have and will continue to be attuned to the relevant issues and advise Mr. Zangrillo as appropriate.

## A.  MARTIN WEINBERG, P.C.

As set forth above, Mr. Zangrillo is prepared to waive at a *Foster* hearing any potential conflict created by Mr. Weinberg's joint representation of him and David Sidoo.  The Court should also be aware, however, that Mr. Weinberg has no intention of concurrently representing Mr. Zangrillo and Mr. Sidoo at a joint trial.  In the event that both defendants ultimately decide to exercise their right to trial, and a joint trial is scheduled for both defendants, Mr. Weinberg intends to withdraw from his representation of Mr. Zangrillo.  Mr. Zangrillo has been aware of this possibility from the moment that Mr. Weinberg was retained.  If, by contrast, this Court severs the trials under Fed. R. Crim. P. 8 and/or 14, Mr. Weinberg intends to separately represent each defendant at trial.

Additionally, both Mr. Zangrillo and Mr. Sidoo have other counsel in addition to Mr. Weinberg, and both have been and/or will further be advised by those independent counsel (David Z. Chesnoff and Richard A. Schonfeld for Mr. Sidoo, Matthew L. Schwartz and Nicholas C. Theodorou for Mr. Zangrillo) on any potential issues arising from Mr. Weinberg's joint pre-trial representation.

Moreover, the facts giving rise to the cases against Mr. Zangrillo and Mr. Sidoo are different and do not overlap.   Mr. Zangrillo and Mr. Sidoo do not know each other, their alleged offenses occurred at different times, and neither could provide meaningful cooperation against the other, even if one of them were to elect to negotiate a cooperation agreement with the government – an option (to be clear) neither has sought.

**B.  <u>BOIES SCHILLER FLEXNER LLP</u>**

For the reasons explained below, the government's motion is premature as any potential conflict arising from Boies Schiller Flexner LLP's ("BSF's") representation of Mr. Zangrillo and its representation of Davina Isackson is speculative, at best.  Even if the issue was ripe at this time, however, Mr. Zangrillo already has been advised of BSF's representation of Ms. Isackson, informed of the potential conflict of interest, and provided his informed consent.  He is, therefore, prepared to waive any such conflict of interest before this Court.  As set forth in more detail below, Mr. Zangrillo is represented by an entirely different team of BSF lawyers than is Ms. Isackson, and BSF has taken various measures to keep the representations of Mr. Zangrillo and Ms. Isackson completely separate and to prevent any confidential information from being exchanged between Mr. Zangrillo's attorneys and Ms. Isackson's attorneys.  As the government acknowledges, measures such as those instituted by BSF have been accepted by courts as sufficient to address any potential or actual conflict.  At the government's invitation, we describe those measures below, so that the Court may review them with Mr. Zangrillo at a hearing.

**1.  Any Conflict Is Speculative And Premature**

As an initial matter, the government's motion is premature because Ms. Isackson is not a competent witness against Mr. Zangrillo, and likely could not testify at a trial involving him. While the Court certainly need not decide the admissibility of Ms. Isackson's testimony now, the substantial questions about its admissibility against Mr. Zangrillo render any potential conflict speculative and the government's motion premature.

Notwithstanding the way that the government has framed the charges here, Mr. Zangrillo and Ms. Isackson are not part of the same alleged conspiracy.  The government incorrectly posits that Ms. Isackson and every other indicted parent are part of a single alleged conspiracy because

"all of them are alleged to have agreed with William 'Rick' Singer, as well as with other parents of college applicants."  Gov't Br. at 4.  The government, however, has proffered no evidence that Ms. Isackson knew Mr. Zangrillo or ever met him.  Therefore, Ms. Isackson could not possibly have entered into an agreement with Mr. Zangrillo directly.

Nor is the government correct that Ms. Isackson and Mr. Zangrillo are members of a single "rimless" conspiracy with Mr. Singer at the center.  "A single conspiracy exists where the totality of the evidence demonstrates that all of the alleged co-conspirators directed their efforts towards the accomplishment of a common goal or overall plan." *United States v. Brandon*, 17 F.3d 409, 450 (1st Cir. 1994).  Here, the government does not allege that Ms. Isackson and Mr. Zangrillo had a common goal or plan.  The only connection between Ms. Isackson and Mr. Zangrillo is that they both allegedly entered into separate agreements with Mr. Singer to benefit their respective children.  The government may not "string together" separate conspiracies to form a single conspiracy where "related in kind though they might be, [] the only nexus among them lies in the fact that one man participated in all." *See Kotteakos v. United States*, 328 U.S. 750, 773 (1946).  In this case, Rick Singer is the only nexus between Ms. Isackson and Mr. Zangrillo.  Thus, any conspiracy that Ms. Isackson entered into with Mr. Singer is entirely separate from the alleged conspiracy that the government claims Mr. Zangrillo entered into with Mr. Singer.

It follows that Ms. Isackson's testimony about "the nature and scope of the conspiracy as [she] understood it," Gov't Br. at 4, is inadmissible in the government's case against Mr. Zangrillo.  Ms. Isackson has no knowledge of Mr. Zangrillo's alleged dealings with Mr. Singer. She presumably can only testify as to her own experience with Mr. Singer.  But, Ms. Isackson's testimony about the nature and scope of *her* conspiracy with Mr. Singer is inadmissible Rule

404(b) evidence in a trial about an allegedly separate conspiracy between Mr. Singer and Mr. Zangrillo.  *See e.g. Tri-R Sys., Ltd. v. Friedman & Son, Inc.*, 94 F.R.D. 726, 728 (D. Colo. 1982) ("If A is alleged to have conspired with B, evidence of a similar conspiracy between A and C may be admissible under Rule 404(b) against A. However, evidence of a separate conspiracy between B and C, would be inadmissible against A.").

Allowing this "evidentiary spillover" from testimony about Ms. Isackson's unrelated conspiracy would unfairly prejudice Mr. Zangrillo and is therefore inadmissible.  *See United States v. Paz-Alvar*ez, 799 F.3d 12, 30 (1st Cir. 2015) ("Prejudice may result from evidentiary spillover: 'the transference of guilt to a defendant involved in one conspiracy from evidence incriminating defendants in another conspiracy in which the particular defendant was not involved.'" (quoting *United States v. Wihbey*, 75 F.3d 761, 774 (1st Cir. 1996)); *Brandon*, 17 F.3d at 450 ("In the context of alleged multiple conspiracies, the defendant's main concern is that jurors will be misled into attributing guilt to a particular defendant based on evidence presented against others who were involved in a different and separate conspiratorial scheme.").

Even if the Court were to conclude that the government has correctly framed the charges as a single conspiracy, Ms. Isackson's testimony would still be irrelevant and inadmissible against Mr. Zangrillo.  As the government admits in its motion, its purpose in admitting Ms. Isackson's testimony is for her to describe "the nature and scope of the conspiracy as [she] understood it."  Gov't Br. at 4.  That is, the government wishes Ms. Isackson to testify that *she* understood that Rick Singer was up to no good – presumably even though Mr. Singer did not say so directly.  From this, the government intends to argue that the jury may infer that Mr. Zangrillo must have understood the same thing.  But this is a totally improper argument – just as the government surely would object to the defense calling a series of uncharged clients of Mr. Singer

who understood Mr. Singer to be engaged in entirely legitimate consulting services, to argue that the defendant must have understood the same thing.

Because Ms. Isackson has no relevant and admissible testimony against Mr. Zangrillo, BSF's representation of both Mr. Zangrillo and Ms. Isackson does not create a conflict of interest.  At the very least, any such conflict is so speculative as to make the government's motion premature.

### 2.  The Measures Undertaken By BSF Address Any Potential Conflict

Even if the Court believes that BSF's representation of Mr. Zangrillo and Ms. Isackson creates an issue that should be addressed now, any potential conflict has been adequately addressed by BSF's prompt implementation of robust separation and screening procedures, which ensure that no confidential information passes between the BSF personnel representing Mr. Zangrillo and those representing Ms. Isackson.

On March 11, 2019, the United States Attorney's Office charged more than 50 defendants in connection with an alleged scheme to illegally gain admission into various colleges.  Matthew L. Schwartz, a partner at BSF, represents Mr. Zangrillo.  Mr. Schwartz works out of BSF's New York office, as does the entire BSF team representing Mr. Zangrillo (the "Zangrillo Team").[2]  Attorneys from Foley Hoag LLP, and Mr. Weinberg, also represent Mr. Zangrillo in this matter.

---

[2]      The government's motion states that Mr. Schwartz works in one of BSF's Florida offices. That is not correct.  However, one of the BSF attorneys who may work on this matter splits time between BSF's Florida and New York offices.  In addition, Mr. Zangrillo was a pre-existing client of BSF, with some of that other work having been done by lawyers in BSF's Florida offices.  The important thing, as the government observes, is that the BSF lawyers representing Mr. Zangrillo are all based on the East Coast, and the lawyers representing Ms. Isackson are all California-based.

David Willingham and Michael Schafler, attorneys in BSF's Los Angeles office, represent Ms. Isackson, another defendant named in the March 11, 2019 criminal complaint (along with any other non-lawyer personnel working on the matter, the "Isackson Team"). According to the docket sheet and the government's brief, Ms. Isackson also is represented by attorneys at Donnelly, Conroy & Gelhaar LLP.

On May 1, 2019, Ms. Isackson pleaded guilty to an Information charging her with conspiracy to commit mail fraud and honest services fraud. According to the government, Ms. Isackson is cooperating with its investigation and "may well testify at any trial in this case as a witness for the government." Gov't Br. at 3.

Despite the absence of any connection between Mr. Zangrillo and Ms. Isackson, BSF immediately put into place separation and screening procedures to keep the representations completely separate and to ensure that no confidential information was shared between the Zangrillo Team and Isackson Team.[3]  Under those procedures, BSF has restricted access to the electronic files for both matters: only the Zangrillo Team had access to the Zangrillo files and only the Isackson Team had access to the Isackson files. This restricted access has been enforced by ensuring that the only way to access BSF's electronic files in those two matters is for a BSF lawyer or non-lawyer staff member to log onto BSF's system using his or her unique username and password, with only the members of the Zangrillo Team able to access the Zangrillo files and only the members of the Isackson Team able to access the Isackson files. In addition, BSF's General Counsel issued a memorandum, which was distributed to the entire law

---

[3]    In addition to the implementation of these separation and screening procedures, Mr. Zangrillo, who had and has additional counsel besides BSF to consult on the matter, signed a conflict waiver acknowledging and waiving any potential conflicts that could arise from BSF's representation of a different defendant in the same case, and Mr. Zangrillo reaffirmed that waiver following Ms. Isackson's plea.

firm via e-mail, confirming the separation of the Zangrillo Team from the Isackson Team and instructing the various members of each of those teams that they were prohibited from working on, participating in, discussing, or otherwise communicating non-public information about the matters with each other, including discussing matters related to the case in front of people who are on the other side of the "wall."

As a result, no one from the Zangrillo Team has discussed or shared any confidential information about the Zangrillo Matter with anyone on the Isackson Team.  Nor has anyone on the Zangrillo Team had access to any confidential information concerning the Isackson Matter. The same is true for the Isackson Team with respect to the Zangrillo material.

BSF's screening procedures are more than sufficient to protect against any conflict that could arise from its representation of Mr. Zangrillo and Ms. Isackson.  While an attorney's conflicts may be imputed to his or her law firm based on the presumption that associated attorneys share client confidences, several courts have recognized that conflicts should not be imputed in certain instances, including "by demonstrating that specific institutional mechanisms (*e.g.*, 'Chinese Walls') had been implemented to effectively insulate against any flow of confidential information from the 'infected' attorney to any other member of his present firm." *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir. 1983).  As the government notes in its brief, there is a "strong trend" in courts allowing parties to rebut the presumption of confidence-sharing within a firm.  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); Gov't Br. at 13.

Courts have outlined the types of institutional mechanisms that have been determined to protect against the exchange of confidential information and therefore rebut the suggestion of a conflict.  Such mechanisms include: (1) instructions given to all members of a firm of the ban on

the exchange of information; (2) prohibited access to the files and other information on the case; (3) locked case files with keys distributed to a select few; and (4) secret codes necessary to access pertinent information on electronic hardware. *See Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1065 (7th Cir. 1994). Courts also consider "the size of the law firm, its structural divisions, the 'screened' attorney's position in the firm, the likelihood of contact between the 'screened' attorney and one representing another party, and the fact that a law firm's and lawyer's most valuable asset is 'their reputations for honesty and integrity, along with competence.'" *Id*. at 1065; *Southwire Co. v. Ramallo Bros. Printing*, No. 03-cv-1100, 2009 WL 4937726, at *11 (D.P.R. Dec. 15, 2009).

In this case, all relevant factors weigh in favor of the conclusion that BSF's robust screening procedures rebut any suggestion that a conflict of interest exists. As the government noted in its brief and as described above, BSF – a firm of over 300 lawyers located in offices throughout the United States and in London – immediately implemented comprehensive measures to prevent the exchange of confidential information between the Zangrillo Team and the Isackson Team. *See* Gov't Br. at 13. Those measures include password-protecting access to electronic files so only the Zangrillo Team could access the Zangrillo files and only the Isackson Team could access the Isackson files. BSF also banned any communication about the case between the two teams and publicized the ban to the entire law firm via a screening memorandum.

As the government also noted, the Zangrillo Team and the Isackson Team work in different offices "located on opposite sides of the country." *Id*. at 14. The fact that the two teams work in offices located thousands of miles apart significantly decreases both the likelihood and perception that confidential information could be shared. Thus, the specific institutional

mechanisms that BSF has put into place are more than sufficient to prevent the flow of

confidential information, as has been borne out over the last several months.[4]

---

[4]     As an additional measure to mitigate any potential or perceived conflict, if the Court deems it necessary and to the extent that the Court concludes that Ms. Isackson is a competent witness against Mr. Zangrillo, her cross-examination can be conducted by one of BSF's co-counsel, either attorneys from Foley Hoag LLP or Mr. Weinberg, both of whom are prepared to take responsibility for Ms. Isackson's cross-examination.  As courts have previously held, where a potential conflict arises from an attorney cross-examining a government witness, the conflict can be cured by having a "second, independent counsel represent defendant for the purpose of cross-examination of the witness."  *See United States v. Lorenzana-Cordon*, 125 F.Supp.3d 129, 136 (D.C.C. 2015) (finding that the "proposal to have a second, independent counsel represent defendant for the purpose of cross-examination of the witness . . . will ensure that defendant receives the competent and diligent representation of his choice with [the lawyer] maintains his ethical obligations to each of his clients.").

Respectfully Submitted,

ROBERT ZANGRILLO,

By His Attorneys,

/s/ Martin G. Weinberg
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

/s/ Nicholas Theodorou
Nicholas Theodorou
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1163
ntheodorou@foleyhoag.com

/s/ Matthew L. Schwartz
Matthew L. Schwartz
Boies Schiller Flexner LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 303-3646
mlschwartz@bsfllp.com

Dated: June 6, 2019

<u>**CERTIFICATE OF SERVICE**</u>

I, Martin G. Weinberg, hereby certify that on this date, June 6, 2019, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

/s/ Martin G. Weinberg
Martin G. Weinberg, Esq.