UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,

                    Plaintiff,          Criminal Action
                                        No. 19-10800-NMG
V.
                                        June 11, 2019
ROBERT ZANGRILLO,                       2:07 p.m.

                    Defendant.
_____




                 TRANSCRIPT OF RULE 44(c) HEARING

            BEFORE MAGISTRATE JUDGE M. PAGE KELLEY

                 UNITED STATES DISTRICT COURT

             JOHN J. MOAKLEY U.S. COURTHOUSE

                    1 COURTHOUSE WAY

                   BOSTON, MA  02210




            DEBRA M. JOYCE, RMR, CRR, FCRR
                 Official Court Reporter
              John J. Moakley U.S. Courthouse
               1 Courthouse Way, Room 5204
                   Boston, MA  02210
                 joycedebra@gmail.com

```
 1    APPEARANCES:

 2    FOR THE GOVERNMENT:

 3    ERIC S. ROSEN, ESQ.
      JUSTIN D. O'CONNELL, ESQ.
 4    LESLIE WRIGHT, ESQ.
      US Attorney's Office - MA
 5    J. Joseph Moakley U.S. Courthouse
      1 Courthouse Way
 6    Suite 9200
      Boston, MA 02210
 7    617-748-3367

 8    FOR THE DEFENDANT:

 9    MARTIN G. WEINBERG, ESQ.
      Martin G. Weinberg, PC
10    20 Park Plaza
      Suite 1000
11    Boston, MA 02116
      617-227-3700
12
      MATTHEW L. SCHWARTZ, ESQ.
13    Boies Schiller Flexner
      55 Hudson Yards
14    20th Floor
      New York, NY 1001
15    212-303-3646

16    NICHOLAS C. THEODOROU, ESQ.
      Foley Hoag LLP
17    155 Seaport Boulevard
      Seaport World Trade Center West
18    Boston, MA 02210
      617-832-1163
19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2              (The following proceedings were held in open

 3   court before the Honorable M. Page Kelley, United States

 4   Magistrate Judge, United States District Court, District of

 5   Massachusetts, at the John J. Moakley United States Courthouse,

 6   1 Courthouse Way, Boston, Massachusetts, on June 11, 2019.

 7              The defendant, Robert Zangrillo, is present with

 8   counsel.  The Assistant U.S. Attorney is present.)

 9              THE CLERK:  All rise.

10              Thank you, you may be seated.

11              Today is Tuesday, June 11, 2019, and we are on the

12   record in criminal case number criminal action 19-10080, the

13   United States v. Robert Zangrillo, the Honorable M. Page Kelley

14   presiding.

15              Would counsel please state your name for the record.

16              MR. ROSEN:  Good afternoon, your Honor.  Eric Rosen,

17   Justin O'Connell, and Leslie Wright for the government.

18              THE COURT:  Good afternoon.

19              MR. WEINBERG:  Good afternoon, your Honor.  Martin

20   Weinberg.  Mr. Zangrillo is to my right, Matthew Schwartz next

21   to him, and Nicholas Theodorou on the far right.

22              THE COURT:  Okay, good afternoon.

23              So, can I just ask Mr. Zangrillo to move a little bit

24   so I can see you?

25              Thank you.  Because I'm not going to have you take the
```

Lines 10 and 20 timestamp: 02:07

1    witness stand, but I will need to ask you some questions.

2              THE DEFENDANT:  Okay, no problem, your Honor.

3              THE COURT:  So, we're here for what we call a <u>Foster</u>

4    hearing, to see if you want to waive any conflicts of interest

5    that may arise in your case or are already there.  And I've

6    received some filings from the parties, and thank you for the

7    late -- responses to my late request for questions.  I have

8    both the government's and Mr. Zangrillo's proposed questions.

9              And I think I would just like to take up first this

02:07 10   issue about the sealing.

11             So the government originally filed under seal number

12   383, which was its motion for a hearing regarding conflicts of

13   interest and attached a proposed redacted version of that.  And

14   then at the conference, status conference, I simply -- maybe

15   not as clearly as I should have -- wanted to make sure that the

16   defendants who are involved here did not object to the

17   government's redacted form, not because they abhor publicity or

18   any other reason, but because there was something that wasn't

19   redacted that would have somehow affected their case in some

02:07 20   substantial way.

21             And so I was just looking for any objections, not just

22   from this legal team but any of the affected defendants, before

23   making the redacted version public.

24             Then the government made a redacted version public,

25   and I still was not clear whether anyone objected to that,

1    because no one responded, and I think it's probably my fault

2    for not being clear enough.

3         So then we put it under seal just to see was anyone

4    going to object to it, and I think that's probably pointless

5    because it was on the docket and people were looking at it and

6    able to copy it.

7         So now the government has filed a motion to unseal

8    that document and has said that some defense counsel object.

9         And so I think what we're going to do this afternoon,

02:07 10   I'm just going to put something on the docket saying if

11   defendants object to the redacted version, they should file

12   something, and we'll see who do we hear from.

13        And perhaps if the government has information about

14   who is objecting and who said it's fine, you could let

15   Ms. Belmont know just so we can make sure we have everyone

16   tallied up.

17        MR. ROSEN:  The only ones who really objected were

18   the -- was Latham & Watkins representing the Giannullis.  It

19   seems the objection was just the -- as Mr. O'Connell flagged at

02:07 20   the hearing was just the USC issue, that was the main thing

21   that they objected to, just being made public.  I didn't see

22   any reason to seal it.  I mean, it doesn't contain

23   attorney-client or personal information, it's not even really

24   about the defendant, it's about the law firms.

25        THE COURT:  I think now the cat's out of the bag, as

1    it is, I think it may not matter at all.  But I'll have

2    Ms. Belmont reach out to them and copy you and see do they want

3    to file something.

4           And otherwise you're fine with the redacted version?

5           MR. WEINBERG:  We're certainly fine with the redacted

6    version as to the parts that relate to Mr. Zangrillo and

7    today's Foster hearing.  I don't want to speak to the

8    objections of -- whether it's Latham & Watkins or Ropes & Gray.

9    As I told Mr. Rose, we have no objection to their filing a

02:08 10   version that's both redacted and relevant to today's conflict

11   inquiry.  Mr. Rose elected to want to file the document that

12   relates to other lawyers at other law firms, and as to them, we

13   simply take no position.

14          THE COURT:  Sure.  I'd rather just figure out if the

15   whole thing can just be posted again, and we'll try to get that

16   done quickly.

17          MR. ROSEN:  Judge, I just want to say, I apologize if

18   I misunderstood the order.  We were kicking it around, going

19   back and forth, and I probably should have reached out to your

02:08 20   clerk to properly understand.

21          My main thing was there's only one redacted brief thus

22   far, and I really didn't think you'd want sort of eight

23   different copies of the same brief -- so I wasn't trying to

24   skate around the Court's order.

25          THE COURT:  I know it wasn't clear, that's fine.

1          MR. ROSEN:  I apologize for any --

2          THE COURT:  You don't need to apologies.

3          So, Mr. Zangrillo, you're here today because the

4    government has brought up the fact that there are potential

5    and, I believe, actual conflicts of interest regarding your

6    representation, and so I'm required by law to have a hearing at

7    which I make sure you understand what the conflicts of interest

8    are or may be and what effect they might have on your

9    representation.  And I do want to make clear to you that no

02:08 10   one, not your lawyers, not the government, and least of all me,

11   knows what problems might arise in the future because of the

12   multiple representations.  So things may well change from how

13   they are today.  It's very difficult to foresee those kinds of

14   issues.  So I'm going to bring up some kind of specific issues

15   that may arise, but, really, no one knows what might happen in

16   the future.

17          And then if you intend to waive your constitutional

18   right to be represented by attorneys free from any potential

19   conflicts, then I need to make sure that your waiver is knowing

02:08 20   and voluntary.  So I'm going to talk for a little while now.

21          I'm going to allow your lawyer and the government to

22   speak if they wish to, and then I'm going to ask you some --

23   I'm going to swear you in and ask you some questions.

24          So, first, you're represented by Attorney Weinberg,

25   who also represents another defendant in the case, Mr. Sidoo;

1    and, as I'm sure you know, you are charged as co-conspirators.

2    And one argument that Mr. Weinberg has raised as to why he

3    should not be required to withdraw from the case is that you

4    and Mr. Sidoo do not know each other and that you're not in the

5    same conspiracy; and of course, the government strongly

6    contests this.  And whether you are in the same conspiracy

7    still has to be litigated.  And the government has proposed

8    questions to me, which I'm not going to read verbatim, but

9    these are their allegations, that you and Ms. -- well, I'll get

02:08 10   to the point about Ms. Isackson in a moment.  I think their

11   questions have to do with her.

12          Okay.  So you are also represented by the law firm of

13   Boies Schiller, and that same firm represents Ms. Isackson, who

14   has pled guilty and is cooperating with the government, and

15   this is a very clear conflict of interest.  It's not potential,

16   it's actual.  And the law firm argues that they have taken

17   steps to prevent this from prejudicing you, and I'd like to

18   hear about that from your counsel.  They've set out in great

19   detail the steps that the firm has taken, and under the case

02:08 20   law there are cases in which those kind of ameliorative steps

21   have been held to be adequate to prevent prejudice to people,

22   but, of course, you don't know if, for example, if sending out

23   a memo out to all the people in the firm is really effective,

24   if they all read it, if they're all going to abide by it, and

25   that sort of thing.  So they certainly have taken steps to try

 1    to prevent you from being harmed by that.  The fact that they

 2    also represent someone who may well testify against you -- but

 3    I want to be clear that you -- you're relying on that and not

 4    all of those kinds of measures really are fail proof.

 5         So I'm going to refer to an attorney in my comments

 6    here today, and I mean by that an attorney or a single law

 7    firm, because for ethical rules, single law firm is considered

 8    to be a single lawyer.  So when I say "lawyer," I'm talking

 9    about both the issue with Mr. Weinberg and the issue with the

02:08 10    law firm.  And as far as ethical requirements go, there's no

11    difference between an attorney representing two defendants or a

12    law firm representing two defendants.

13         So the problem with the conflict of interest is that

14    counsel's obligation to zealously defend each of their clients

15    may be compromised, and even if an attorney feels that the

16    joint representation will not affect their representation of

17    each client.  As I said earlier, the attorney just cannot

18    anticipate every development that will arise as the case

19    progresses.

02:08 20         So you have the right to retain an attorney of your

21    own choosing, whether that lawyer has a conflict of interest or

22    not, but you also have the right to have an attorney who is

23    free of a conflict of interest.  So you really have competing

24    rights here.  And there are very serious risks inherent in

25    being represented by an attorney who represents another

1    defendant in the same case, and I'm going to go over some of

2    those risks.

3         And now I think I'll talk about what the government

4    alleges.

5         So I understand your lawyer is stating in the

6    pleadings that you are not in the same conspiracy and so

7    there's not really a conflict, but the government is alleging

8    that you and Ms. Isackson are involved in a single conspiracy,

9    that she has pled guilty and acknowledged her participation in

02:08  10   the same conspiracy in which you have been charged.  You've

11   been charged with defrauding the same victim, the University of

12   Southern California.  You've been charged, alleged by the

13   government, in a conspiracy with the same goal: to gain

14   admission to USC through the payment of bribes and falsified

15   athletic and academic credentials.  You've both been charged

16   with using Rick Singer's services to accomplish this goal.  And

17   the government is alleging that whether the case involves

18   multiple conspiracies or not is a question in fact that the

19   jury cannot resolve pretrial.

02:08  20        And I know your lawyers may have a different view, but

21   this is the government's view, and that Ms. Isackson is

22   cooperating with the government, she may testify against you.

23   The government asserts that she can testify against you.  Even

24   if you don't know anything about her, that she would testify

25   about the existence of the conspiracy with which you are

1   charged with being a member.  So that's where that conflict of

2   interest may arise.

3          So I'm going to ask you later whether in view of all

4   the risks you still want to be represented by the same counsel,

5   and it doesn't have anything to do with the particular lawyers

6   you have chosen.  This is really just having to do with the

7   risks that are inherent in joint representation.  And I want

8   you to be very certain about your decision.  So if you don't

9   understand something or you have a question, you can ask me;

02:08 10   or, if you want, we can take a break and you can talk to your

11   lawyers; or, if you feel you need to ask questions or say

12   something that might compromise your defense, we are permitted

13   by law to have an *ex parte* hearing and a private hearing on

14   this matter.  So just you and your attorneys without the

15   government there on the record but in a closed session, that

16   type of hearing could be held, and the record would be placed

17   under seal.  And also, if you want to, we could continue the

18   hearing to another day if you want to consult with your lawyers

19   or with a different lawyer in the meantime.

02:08 20          So here's some examples of some of the risks that can

21   arise if you're represented by an attorney or law firm that

22   represents another defendant in the case.

23          First of all, your counsel may not be able to conduct

24   an independent investigation of the facts on your behalf, for

25   example, because that might mean that the lawyer is

1  investigating the other client, or that the lawyer is looking

2  for evidence that would undermine something the other client

3  told him that's necessary for that client's defense.

4  You might want to testify, and that could pose an

5  issue since your testimony might contradict the other defendant

6  or incriminate another defendant.

7  Your counsel might not be able to present evidence

8  that's favorable to you if it's harmful to the other defendant.

9  And your counsel may not be able to cross-examine

02:08 10  witnesses fully if the witness helps one client but hurts

11  another.

12  The attorney-client privilege may prevent your counsel

13  from telling you something that the other client told him, that

14  either helps or hurts your case.

15  So this type of problem often manifests itself at

16  sentencing.  The government might want to offer immunity or

17  recommend a lesser sentence to one defendant for cooperating

18  with the government, and if you got such an offer, your counsel

19  might not be able to fairly advise you whether to take it

02:08 20  because it could potentially harm the other client.

21  The government might let one defendant plead guilty to

22  lesser charges than another but require that defendant to

23  testify, and that puts the lawyer in a position of perhaps

24  having to recommend that the first defendant not plead guilty

25  to protect the other defendant.

1          Or the opposite could be true, he could recommend a

2    defendant plead guilty which could harm the case of the other

3    defendant.

4          This can -- this type of situation, dual

5    representation, can affect how your client (sic.) exercises

6    challenges to jurors if they help one client but not another.

7    And the best defense for a defendant often is the argument that

8    other defendants might be guilty but this defendant is not, and

9    if a lawyer represents more than one defendant, they might not

02:08 10   be able to effectively make such an argument.

11         And at sentencing, again, dual representation might

12   hurt the lawyer from engaging in negotiations with the

13   government as to full disclosure by one defendant against

14   another, and it can also prohibit the lawyer from arguing the

15   relative culpability of the defendants to the sentencing judge.

16         So these are some potential issues that may arise in

17   very broad terms, but, as I said, no one knows what's going to

18   happen.

19         And now I'm going to ask the parties to speak and any

02:08 20   questions they have, and then I'm going to ask you some

21   questions.

22         Do you have any questions so far?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Okay.  And would you like to take a break

25   for any reason?

1        THE DEFENDANT:  No, your Honor.

2        THE COURT:  No, okay.  All right.

3        So, Mr. Weinberg.

4        MR. WEINBERG:  Yes, your Honor.

5        THE COURT:  Yes.

6        MR. WEINBERG:  I think there are two issues in regards

7   to my joint, current joint representation of Mr. Sidoo and

8   Mr. Zangrillo, but neither of them currently affect his right

9   to have my counsel pretrial, and there are many pretrial issues

02:08 10   in this case.  There are discovery and Brady and Title III and

11   e-mail search issues and venue issues and a whole panoply of

12   engaging legal issues that do not affect my common interests to

13   Mr. Zangrillo and Mr. Sidoo.  Neither of them have indicated

14   any interest in pleading guilty and cooperating with the

15   government.  Both of them have indicated an interest in

16   litigating the viability of the government's current charges.

17        And so what I've identified for Mr. Rose is that I

18   don't intend and don't think I should, whether or not it's a

19   waivable conflict or not, stand in a courtroom or stand at

02:08 20   sentencing and represent two defendants for many of the same

21   reasons that your Honor identified.  I think that does create

22   the dynamic where the risks of multiple representation are

23   greater than pretrial.

24        I'm not here to litigate the severance motion, whether

25   it's Rule 8 or Rule 14.  I feel strongly about it, whether it's

1   a matter of law or whether some day Judge Gorton may feel that

2   20 defendants or 15 defendants or 10 are too great to try in

3   the same case, but I think we'd be premature to litigate that

4   issue in the context of a waiver hearing.  But for now, there

5   is no conflict, although there's potential future issues

6   between Mr. Zangrillo and Mr. Sidoo.

7          Mr. Zangrillo understands that if there was a joint

8   trial, I would need to withdraw because Mr. Sidoo hired me

9   first, quite frankly, not because I prefer Mr. Sidoo to

02:08 10   Mr. Zangrillo, it's just I made the first commitment to him.

11   And I can commit to the Court, and Mr. Zangrillo will commit to

12   the Court, that we're not using this as a manipulation of the

13   trial schedule.  There will be no -- he will waive his right to

14   seek a continuance because of the timing of my withdrawal.  I

15   understand my obligations to the Court.  I'm not going to

16   withdraw the day before and allow a client to use my

17   circumstances as an excuse to try to get a separate or delayed

18   trial.  So putting aside the continuance issue, which I think

19   is waivable, and Mr. Zangrillo understands and will tell the

02:08 20   Court that he's not going to rely in the future on the timing

21   of my withdrawal to seek judicial relief.

22          The other issues are speculative.  They're potential.

23   There's -- there is no actual conflict.  There is no ability to

24   cooperate against each other in a meaningful way.  Mr. Sidoo's

25   charges are 2011 through '13, he lives in British Columbia, he

         1    never met Mr. Zangrillo.  The allegation there is someone took

         2    tests for his kid.  They went to different schools.  If this

         3    case was broken up by schools, they'd be in separate groups.

         4    And Mr. Zangrillo's charges are years later.  He doesn't know

         5    Mr. Sidoo.  And were he offered immunity and testified, his

         6    testimony, like Ms. Isackson, might be broad about an alleged

         7    relationship to Singer, but it wouldn't pinpoint to Mr. Sidoo.

         8            So I've made the judgment, with all due respect, that

         9    I could comfortably, ethically tell the Court and put my

02:08   10    reputation behind that representation that I can offer both

        11    Mr. Sidoo and Mr. Zangrillo loyal and effective representation

        12    up to the point where I need to withdraw from one of the other

        13    because my discomfort is to represent two people in the

        14    courtroom in front of the same jury, if that's what happens,

        15    which may or may not happen.

        16            Thank you, Judge.

        17            THE COURT:  Okay.

        18            Yes.

        19            MR. SCHWARTZ:  Good afternoon, your Honor, Matthew

02:08   20    Schwartz from Boies Schiller.  Your Honor referenced Boies

        21    Schiller as having an actual conflict here.  I think you

        22    correctly observed that any actual conflict turns on the notion

        23    that an attorney and his or her law firm are treated

        24    interchangeably under the ethical rules.

        25            As, however, I think the government and defendant

1  agree, that usual presumption can be overcome when a law firm

2  takes appropriate steps to ensure that conflicts that one

3  attorney may suffer under are not imputed to the firm.

4       And so if it would be helpful, what I'd like to do is

5  lay out on the record the robust steps that Boies Schiller has

6  taken from the very outset to ensure that there was no

7  communication of confidential material between the attorneys

8  and non-attorney staff representing Mr. Zangrillo and the folks

9  that were representing Divina Isackson.

02:08 10       So, first of all, we have ensured and communicated to

11  all staff at the firm that no attorney or non-attorney staff

12  who is working on Mr. Zangrillo's behalf works on

13  Ms. Isackson's behalf.  And likewise, we've ensured that no one

14  who is working on Ms. Isackson's behalf worked in any way on

15  Mr. Zangrillo's behalf.

16       We have also ensured that there was no communication

17  regarding the case between anyone, lawyer or non-lawyer,

18  working on Ms. Isackson's behalf and those folks who are

19  working on Mr. Zangrillo's behalf.

02:08 20       We have ensured that the electronic case files for the

21  representation of Mr. Zangrillo and those for Ms. Isackson are

22  locked down in our system.  They are password protected and can

23  only be accessed by individuals who are authorized to do so

24  using their personal credentials, and that's tracked by our IT

25  system, and in that way we ensure that only people involved in

1    the representation of Mr. Zangrillo can access his case

2    materials and only people representing Ms. Isackson can access

3    her case materials.

4         Everything that I've just laid out was also

5    communicated to everyone in the entire firm through a

6    memorandum from our general counsel that I know had the benefit

7    of consultation with outside ethics counsel.

8         That's not because this was a particularly tricky

9    issue, but because of course we always want to make sure we're

02:08 10   doing things the correct and proper way.

11        I will say also that this is an issue that was flagged

12   at the very outset of this case, even before the

13   representations had been finalized on the very day that the

14   government made its first arrests, before the firm even knew

15   who it was going to be representing.  The general counsel

16   convenes a call amongst the folks at the firm who do this kind

17   of work in anticipation that we would get phone calls, or some

18   of us had already gotten those phone calls, to ensure that we

19   were taking the steps that I just outlined and so that there

02:08 20   would be no communication of confidential material between

21   people who ultimately did or even potentially could represent

22   clients in this case.

23        It is also true as a matter of fact that everyone

24   representing Mr. Zangrillo is staffed in our New York or

25   Florida offices, and everyone representing Ms. Isackson is in

1    our Los Angeles office.  That physical separation ensures that

2    there is no inadvertent communication of confidential material,

3    that there is no easy access to, for example, hard copy

4    documents, to the extent that they exist, and that certainly

5    ameliorates any risk that confidential material might be

6    inadvertently shared amongst the different teams.

7         And finally, since your Honor acknowledged the

8    unrefutable truth that no system is perfect, I will represent

9    to you that there has been no communication of confidential

02:08 10   material between the Isackson team and the Zangrillo team at

11   Boies Schiller, and we will make sure that remains true going

12   forward.

13         So those steps which are outlined in the case law and

14   are about as robust as a law firm can take to make sure there's

15   no dissemination of confidential information ensures that any

16   conflict that might otherwise be imputed to the firm is not.

17   For that reason we believe it's a waivable conflict, and I

18   expect that Mr. Zangrillo will waive the conflict.

19         THE COURT:  Okay, thank you.

02:08 20        Any other word?  Mr. Theodorou, do you have anything?

21        MR. THEODOROU:  No, your Honor.  I think I'm the only

22   one here who doesn't have any potential conflict.

23        THE COURT:  I think so, too.

24        Yes, Mr. Rose.

25        MR. ROSEN:  Just briefly, your Honor.  You know, I,

1    too, believe that the conflicts are most likely waivable

2    conflicts at this time.  Obviously events can change later on

3    down the road, and if your Honor does find the -- you know, the

4    measures taken by Boies Schiller could be sufficient, then it

5    will be up to Ms. Isackson to determine whether she, too,

6    waives the conflict.

7         I don't think the creation of an ethical wall means

8    that there is no conflict or it disappears, at least under the

9    ethical rules that I've reviewed.

02:08 10         With respect to Mr. Weinberg, we, of course,

11   appreciate his candor and the willingness to withdraw.  The

12   only issue with that is I do wonder -- and he's made

13   representations and I take him obviously at his word that Foley

14   Hoag will be prepared to proceed to trial in his place and it

15   won't necessitate a continuance or anything like that in an

16   intent to manipulate any type of trial schedule.

17        The only issue is obviously one of enforceability of

18   that and how that would be enforced going forward, and that

19   I'm a little bit at a loss for.  I know we can say now that no

02:08 20  motions for continuances will be made, but at the time of trial

21   I think that's a different one and before potentially a

22   different court.

23        THE COURT:  I think counsel is kind of --

24        MR. THEODOROU:  Your Honor, I don't think it's a

25   question of me substituting Mr. Weinberg.  I've been counsel on

1    this case right from the beginning.  This is the trial team for

2    Mr. Zangrillo, so it's not that question.

3         I'm just trying to clarify that subtle distinction I

4    think Mr. Rose was trying to make.  It's not a substitution

5    issue.

6         THE COURT:  Okay.

7         MR. THEODOROU:  So I don't have the conflicts issue,

8    and I've been counsel right from the first day in the case.

9         THE COURT:  Okay.

02:08 10      So, Mr. Rose, do you know of any issues that may arise

11   that might change the present situation into one where the

12   conflicts could be greater?

13        (Discussion off the record.)

14        THE COURT:  Or the risk.

15        MR. ROSEN:  If I could have one moment, your Honor.

16        THE COURT:  Sure.

17        (Discussion off the record.)

18        MR. ROSEN:  In a pretrial posture, the only one I

19   could really think of at this point would just be if a

02:08 20   defendant does wish to obviously cooperate with the government,

21   that would create, I think, a really an unwaivable conflict.

22   And really it's not just about the defendant cooperating, it's

23   how would you even broach that topic with a defendant, so

24   they'd have to waive their right to any real potential

25   cooperation with -- through their lawyer.  I think that would

1    be a very difficult issue.

2         I do think that both of the defendants would be able

3    to cooperate if they so chose, they don't have to obviously,

4    but they're both alleged to be part of the conspiracy and they

5    can testify as to about the nature and their understanding of

6    how it worked, you know, along with that of Ms. Isackson.

7         So I do think they can waive that particular conflict,

8    but in the future, it would be a ripe actual conflict that I

9    think would be unwaivable.

02:08 10         MR. WEINBERG:  What's different here, your Honor, is

11   that Mr. Zangrillo has the independent services of

12   Mr. Theodorou to discuss that issue.  Mr. Sidoo has the

13   independent services of Mr. Chesnoff at Schonfeld to discuss

14   his services.  So if the government is to make an offer or if

15   either defendant is interested in exercising those options,

16   they could certainly do it through independent counsel.

17         THE COURT:  Okay.

18         Well, I agree with the government that these -- and

19   defendant as well that these are waivable, and so let me ask

02:08 20  you some questions.

21         Mr. Zangrillo, do you mind standing up just to take an

22   oath, and then you can sit back down.

23         (Defendant sworn in by the clerk.)

24         THE COURT:  Thank you.  You can be seated again.

25         So do you feel okay this morning?  You're not under

1     the influence of any medication or anything that would affect

2     your judgment in this matter today?

3           THE DEFENDANT:  No I'm not, your Honor.

4           THE COURT:  Okay.  And is there any reason you'd like

5     to take a break or continue the hearing to another day?

6           THE DEFENDANT:  No, thank you, your Honor.

7           THE COURT:  So you understand that you have an

8     absolute right to retain separate counsel in this case?

9           THE DEFENDANT:  Yes, I do.

02:08 10           THE COURT:  And I typically would tell someone in your

11     position that if you can't afford counsel, the court will

12     appoint one, but I'm assuming there's no question that you

13     could afford another lawyer if you wanted to.

14           THE DEFENDANT:  That's correct, your Honor.

15           THE COURT:  Okay.  So I'm not going to mention that.

16     But if people are financially qualified, they can have a

17     separate lawyer appointed by the court at no charge.

18           So do you want to consult with counsel, not your

19     present attorneys, but someone else or even your present

02:08 20     attorneys before you make a decision today?

21           THE DEFENDANT:  No, your Honor.

22           THE COURT:  And do you feel that you understand the

23     risks involved in dual representation?

24           THE DEFENDANT:  I believe I do, your Honor.

25           THE COURT:  And have you discussed this matter with

1    all of your attorneys?

2              THE DEFENDANT:  Yes, I have, your Honor.

3              THE COURT:  And do you wish to have a private

4    conversation with me and your counsel about these issues?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Okay.  Do you want to ask your lawyers

7    about that?  I noticed you slightly hesitating.

8              THE DEFENDANT:  They concur, your Honor.

9              THE COURT:  All right.

02:08 10         So in view of these risks and in view of your right to

11   have an attorney who only represents you and not other

12   defendants, do you still wish to be represented by Mr. Weinberg

13   and the attorneys at Boies Schiller?

14             THE DEFENDANT:  Yes, I do, your Honor.

15             THE COURT:  Okay.

16         So at some point in the future if you find that you

17   have a question about this and you're changing your mind and

18   you think you need to have an attorney who only represents you,

19   you may contact the Court directly if you don't want to go

02:08 20   through your lawyers, or you could retain another lawyer who

21   could raise this issue.  But I will tell you, as Mr. Weinberg

22   was saying, that switching lawyers later in a case, especially

23   after a hearing such as this one, where you've said that you

24   understand the risks going forward, it's -- it could be very

25   difficult to get a continuance to get someone new up to speed.

1          Okay.  And I think I can say that defense counsel do

2     not have any reservations about the joint representation.

3          MR. WEINBERG:  I do not.

4          THE COURT:  That's clear.

5          MR. SCHWARTZ:  Agreed.

6          THE COURT:  I think also counsel have represented that

7     they've explained to Mr. Zangrillo the potential for conflict

8     in light of the factors of this case?

9          MR. WEINBERG:  Yes, your Honor, we have.

02:08 10          MR. SCHWARTZ:  Yes.

11          THE COURT:  Okay, all right.

12          So I'll accept the waiver, and it needs to be in

13     writing, so we have a form for Mr. Zangrillo to sign, and then

14     I'm going to issue an order.

15          Anything else from the government?

16          MR. ROSEN:  Just briefly.  It's been brought to my

17     attention, it can also -- a conflict can also affect his

18     appellate issues as well as to whether he can successfully

19     argue or even move for a potential ineffective assistance of

02:08 20     counsel should that be made later on.  I just want him to

21     understand that, too, as well, in the event that there is a

22     conviction here.

23          THE COURT:  Sure.

24          So, Mr. Zangrillo, your lawyers can explain this much

25     better to you probably than I can.  But sometimes on appeal

1   people will say -- defendants will say, I didn't get a fair

2   trial because my client (sic.) had a conflict of interest.  And

3   in fact, that's often the reason why the government brings this

4   issue forward because if they don't, on appeal, it's the

5   government's burden to show that the conviction was not

6   affected by the conflict of interest.  But once we have had

7   this hearing, your chances of raising such an issue on appeal

8   are very, very small successfully.  You can raise whatever

9   issues you want, but the idea that you could argue, Oh, my

02:08 10   client -- my lawyers had a conflict and I didn't get a fair

11   trial becomes much, much harder.  So I think that's what the

12   government wanted me to add here.

13          Okay.  Anything else at this time?

14          MR. WEINBERG:  May I hand the two written waivers in,

15   one from myself and one from Mr. Schwartz?

16          THE COURT:  Yes.

17          Okay.  And I'll issue an order on the docket and we'll

18   straighten out the issue about the redacted motion and try to

19   get that posted publicly as soon as we can.

02:08 20          Okay.

21          Anything else?

22          MR. ROSEN:  No, your Honor.

23          THE COURT:  Okay thank you very much.

24          THE CLERK:  Court is in recess.

25          (Court adjourned at 2:08 p.m.)

```
 1                  - - - - - - - - - - -

 2                      CERTIFICATION

 3          I certify that the foregoing is a correct transcript

 4    of the record of proceedings in the above-entitled matter to

 5    the best of my skill and ability.

 6

 7

 8

 9    /s/Debra M. Joyce              June 14, 2019
      Debra M. Joyce, RMR, CRR, FCRR      Date
10    Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```