UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) ) ) ) ) | |
| v. | | |
| | | CRIMINAL NO. 19-CR-10080 |
| DAVID SIDOO, et al | | FILED UNDER SEAL |
| Defendants | | |

**DEFENDANT ROBERT ZANGRILLO'S SEALED MOTION FOR RULE 17(c) PRE-TRIAL SUBPOENA**

Now comes the Defendant Robert Zangrillo, by and through undersigned counsel, and hereby respectfully moves this Honorable Court, pursuant to Fed. R. Crim. P. 17(c) and the Compulsory Process Clause of the Sixth Amendment, for the issuance of a subpoena *duces tecum* returnable pre-trial directed to the University of Southern California ("USC") and seeking the production of documents listed in Exhibit 1.

As grounds and reasons therefor, Mr. Zangrillo states that the issuance of the requested subpoena and access to the listed documents are necessary to the adequate preparation of his defense to the serious charges against him. Those charges are based on Mr. Zangrillo's purported agreement to pay Rick Singer a total of $250,000 to facilitate his daughter's admission to USC. *See* Dkt. 314, Superseding Indictment ¶ 262. The government alleges that Mr. Zangrillo's daughter's "application included falsified athletic credentials." *Id.* ¶ 263. The requested subpoena seeks records and information maintained by USC in its regular course of business that relate to other similarly situated

1

students applying for admission in close proximity to a financial donation from a parent.

I. **BACKGROUND**

The Indictment charges Mr. Zangrillo with one count of conspiracy to commit mail and wire fraud and honest services mail and wire fraud, as well as one count of conspiracy to commit money laundering. The first count alleges that Mr. Zangrillo used the mails and interstate wires in furtherance of "a scheme and artifice to defraud and to obtain money and property, to wit, . . . admission to [USC], by means of materially false and fraudulent pretenses, representations, and promises, and to defraud and deprive . . . [USC] of [its] right to the honest and faithful services of [its] . . . athletic coaches and university administrators, through bribes and kickbacks." Dkt. 343 ¶ 323. The money laundering count alleges that Mr. Zangrillo conducted and attempted to conduct financial transactions involving the proceeds of the foregoing fraud. *See id.* ¶ 325.

[redacted]

[REDACTED]

## II. <u>LEGAL STANDARD</u>

"Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *United States v. Beckford,* 964 F. Supp. 1010, 1019 (E.D. Va. 1997) (quoting *In re Martin Marietta Corp.,* 856 F.2d 619, 621 (4th Cir. 1988)). Indeed, the Supreme Court has expressly acknowledged that "[t]he right to the production of all evidence at a criminal trial . . . has constitutional dimensions." *United States v. Nixon,* 418 U.S. 683, 711 (1974). The Court explained:

> The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.

*Id.* To effectuate these fundamental guarantees, Rule 17 permits defendants, like the government, to subpoena evidentiary materials for use in their defense, and district courts have the discretion to order that Rule 17(c) subpoenas be returnable prior to trial. *See id.* at 698-99 (the "chief innovation [of Rule 17(c)] was to expedite trial by providing a time and place before

3

trial for the inspection of subpoenaed materials").

Under *Nixon*, in order to obtain production of subpoenaed documents prior to trial, the moving party must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699-700 (internal footnote omitted). In short, a party seeking a pre-trial Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700; *see also, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (referring to "threshold showing of admissibility, relevancy, and specificity").[1]

Ultimately, all that is required is a likelihood that the subpoenaed materials will reveal "relevant evidence, admissible at trial." *LaRouche*, 841 F.2d at 1180. This threshold inquiry simply "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

---

[1] Mr. Zangrillo notes that some courts have suggested that the *Nixon* requirement that the subpoenaed documents be "evidentiary" should not be applied where the Rule 17(c) subpoena is directed to a third party, as opposed to the government. *See, e.g., United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (holding that the defendant "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond"); *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000) ("[T]he judicial gloss that the material sought must be evidentiary—defined as relevant, admissible and specific—may be inappropriate in the context of a defense subpoena of documents from third parties"). While the defense believes that, for the reasons outlined below, the *Nixon* standard is satisfied here, it alternatively contends that the subpoena should be authorized under the less stringent "material to the defense" standard.

4

or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). It is not required that the subpoenaed materials actually be introduced into evidence, so long as the motion represents "a good-faith effort . . . to obtain evidence." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) ("[T]he *Bowman Dairy* court interpreted Rule 17 as neither a discovery device to examine documents for whatever might turn up, nor as a mechanism to obtain documents that a defendant can identify in advance, but rather a way for a defendant to examine documents he believes to exist that would be relevant to, and therefore presumptively admissible in, his defense.").

### III. THE DOCUMENTS AND INFORMATION SOUGHT ARE RELEVANT, EVIDENTIARY, AND MATERIAL TO MR. ZANGRILLO'S DEFENSE

Here, as reflected in Exhibit 1, Mr. Zangrillo seeks:

a. The number of prospective students, including transfer students, designated as "VIP," "special interest," and/or "university advancement" from January 1, 2015 through February 28, 2019 by any USC personnel;

b. The names, departments (including but not limited to the athletic department), and titles of the university personnel responsible for each such designation above, including the number of students designated by each individual employee;

c. For each prospective student designated as "VIP," "special interest," and/or "university advancement" during the relevant time period, the amount of any donations made to USC by the student's parent(s) within the period beginning twelve months prior to the student's admission and ending twelve months after his or her admission, as well as the specific USC department or employee receiving each donation;

d. Information regarding the percentage of students designated as "VIP," "special interest," and/or "university advancement" that were accepted for admission to USC, including the percentage of such students admitted within twelve months before or after a donation from a parent of at least $50 thousand, and also

5

including a comparison to the percentage of students accepted after presentation to the athletic subcommittee, and the percentage of all other applicants accepted;

e. A copy of the University Advancement database referenced in Exhibit 5 current as of June 17, 2018, the date Mr. Zangrillo's daughter was admitted to USC;

f. Any and all documents indicating that the President of USC received and/or reviewed applications from students flagged as "VIP," "special interest," and/or "university advancement"; and

g. All communications including but not limited to emails, text messages, and instant messages sent or received by any USC personnel relating to Amber Zangrillo.

[redacted]



7

████████████████████████████ The requested university documents are highly likely to satisfy the business records exception to the rule against hearsay and failure to obtain access to the potentially voluminous records before trial may tend to cause unreasonable delay. *See* Fed. R. Evid. 803(6); *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000). ("Because the documents primarily seek business records, they are at this early stage likely to be admissible at trial.").

IV. **CONCLUSION**

For the foregoing reasons, Mr. Zangrillo respectfully requests that this Honorable Court grant his motion and issue the requested subpoena.

**COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

Undersigned counsel conferred with counsel for the Government and the Government, by and through AUSA Eric Rosen, takes no position at present on the defense request for issuance of a subpoena.

Respectfully Submitted,
Robert Zangrillo
By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Nicholas Theodorou**

Nicholas Theodorou
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1163
ntheodorou@foleyhoag.com

**/s/ Matthew L. Schwartz**
Matthew L. Schwartz
Boies Schiller Flexner
55 Hudson Yards, 20th Floor
New York, NY 1001
(212) 303-3646
mlschwartz@bsfllp.com

Dated: June 21, 2019

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, June 21, 2019, a redacted copy of the foregoing document has been served via electronic mail on AUSA Eric Rosen.