UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————————  )
                                                              )
UNITED STATES OF AMERICA                 )
                                                              )
           v.                                              )  Criminal Number 1:19-cr-10080-NMG
                                                              )
DAVID SIDOO, et al.                              )
———————————————————————————  )

## NON-PARTY UNIVERSITY OF SOUTHERN CALIFORNIA'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH

### I.  INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 17(c)(2), the University of Southern California ("USC") submits this Memorandum of Law in support of its Motion to Quash the subpoena ("the Subpoena") to produce documents issued by one of the defendants, Robert Zangrillo ("Defendant Zangrillo"), in the above-captioned matter.

The Subpoena is overbroad, improperly conceived, and inconsistent with the purpose of Federal Rule of Criminal Procedure 17(c).  It does not seek production of specific documents, but rather asks USC to identify and compile a sweeping amount of information that either does not exist at all or would require an unreasonably time-consuming and expensive effort to collect. Moreover, to the extent USC could even prepare materials responsive to Defendant Zangrillo's requests, the information contained therein would be neither relevant nor admissible at trial— indeed, the requests seek information nearly exclusively about unidentified people unrelated to the charges against Defendant Zangrillo.  The Subpoena amounts to a prototypical fishing expedition that would be improper in civil discovery, much less in the context of a Rule 17 Subpoena to a nonparty and victim of the alleged crime at issue.

Counsel for USC met and conferred with Defendant Zangrillo's counsel in an effort to narrow the scope of the Subpoena, and has offered to produce all communications specifically regarding Defendant Zangrillo's daughter found in an email review of all senior employees in the Athletics Department and the Office of Admission. USC requests that the Court so limit the Subpoena and quash its remainder because compliance would be unreasonable and oppressive.

## II.    **BACKGROUND**

On March 11, 2019, Defendant Zangrillo was criminally charged with conspiring with Rick Singer ("Singer") to commit bribery and fraud in order to secure his daughter's admission into college. *See* Affidavit in support of Criminal Complaint ("Criminal Complaint"). Defendant Zangrillo allegedly paid Singer $200,000. *Id.* at ¶ 283.

As part of their arrangement, one of Singer's employees, Mikaela Sanford, is alleged to have secretly taken classes on behalf of Defendant Zangrillo's daughter in order to achieve better grades. *Id.* at ¶¶ 274, 279-281. These allegedly fraudulently-obtained grades were submitted to a number of colleges, including USC. *Id.* at ¶ 274.

Defendant Zangrillo and Singer also allegedly conspired to bribe Donna Heinel, a senior associate athletic director at USC, to help secure Defendant Zangrillo's daughter's admission to USC. *See* Criminal Complaint at ¶¶ 276-278. As alleged in the affidavit in support of the criminal complaint, Defendant Zangrillo and Singer had a phone conversation, which was intercepted by a Court-authorized wiretap, in which Singer explained to Defendant Zangrillo that his daughter would be put through USC's admissions process as a purported recruit for the women's rowing team. *Id.* at ¶ 278. Although being designated as a prospective student-athlete does not guarantee admission to USC, it does enhance a prospective student's chances of admission because USC considers the applicant's exceptional athletic talents as part of a holistic review of the student's application. *See* Brunold Decl. ¶ 2. After Defendant Zangrillo's

daughter was admitted to USC, Defendant Zangrillo mailed a $50,000 check to a USC's Women's Athletics, an account controlled by Heinel, per Singer's instructions.  *See* Criminal Complaint at ¶ 285.

Both Defendant Zangrillo and Singer thought that Defendant Zangrillo's daughter was admitted to USC as a purported rower.  *See* Criminal Complaint at ¶¶ 278, 282.  Unbeknownst to either Singer or Defendant Zangrillo at the time, Defendant Zangrillo's daughter was never considered by USC's Office of Admission as a recruited athlete.  *Id.* at 282.  However, the Athletics Department caused her application to be marked with a special interest "tag."[1]  *Id.*; *see also* Brunold Decl. ¶ 3.

USC allows various departments and individuals throughout the university to "tag" student applicants who are of special interest.  *See* Brunold Decl. at ¶ 3.  The tags may be applied for a number of other reasons.  This practice, which is common at universities throughout the country, allows USC to track particular applicants.  *Id.*  USC has neither official procedures nor specific documents identifying all of the students who are tagged, who applied the tags, why the tags were applied, or when they were applied.  *Id.* at ¶¶ 4-5.  Some of this information would be impossible to compile.  *Id.*  For example, USC would not be able to identify the person who proposed the designation of each student with a special interest tag, even if it had unlimited time and resources to do so.  *Id.*  To the extent some information could be compiled, doing so would be incredibly time-consuming and burdensome.  *Id.*

---

[1]   In his opposition to USC's motion for an extension of time to respond to the Subpoena, Defendant Zangrillo explained that "he expects the requested documents to establish that, contrary to the government's allegations, Mr. Zangrillo's daughter was admitted to USC as a so-called 'VIP' applicant rather than as an 'athlete'."  *See* Defendant's Opposition for an Extension of Time, at 1.  This point is not disputed, and therefore provides no basis for broad discovery on non-party USC.  The government does not allege that Defendant Zangrillo's daughter was admitted on the basis of being a purported recruit student-athlete; in fact, the government and USC agree that Defendant Zangrillo's daughter: (1) was never evaluated by USC's Office of Admission as a prospective student-athlete; and (2) was designated by USC's Athletics Department with a special interest tag.  *See* Criminal Complaint ¶ 282; Brunold Decl. ¶ 3.  Therefore, the Subpoena, and the massive burden it imposes, cannot be justified on this basis.

Contrary to Defendant Zangrillo's apparent assumption, applicants who receive a special interest tag are not guaranteed admission. Indeed, the majority are not admitted. *See* Brunold Decl. at ¶ 3. And those who are admitted have applications consistent with other admitted students in terms of grades, academic rigor, test scores, extracurricular activities and several other factors.[2] *Id.* There is also no reason to believe Defendant Zangrillo had any insight into USC's use of special interest tags at the time he allegedly conspired with Singer to bribe Heinel. *See* Criminal Complaint at ¶¶ 276-278, 282.

Defendant Zangrillo also appears to assume that a $50,000 donation affects an applicant's chances of being admitted. He is mistaken. The Office of Admission has no role with respect to donations – it does not track donations; it does not know how much the family of an applicant has donated; and it does not focus on donations in deciding whether to admit an applicant – including those whose applications have been marked with special interest tags. *See* Brunold Decl. at ¶ 6.[3]

### III.  **PROCEDURAL HISTORY**

On July 11, 2019, Defendant Zangrillo served USC with the Subpoena seeking the following seven broad categories of documents and information (attached hereto as Exhibit A). The requests consisted of:

---

[2] In his opposition to USC's motion for an extension of time, Defendant Zangrillo argued, "The documents are also likely to demonstrate that this VIP admission process was a regular practice at USC, accepted by the university's highest admissions officers." *See* Defendant's Opposition for an Extension of Time at p. 1. It is possible that Defendant Zangrillo is referring to the use of special interest tags as a "VIP admission process." Although special interest tags were issued to certain students, most students who received a special interest tag were not admitted. Brunold Decl. ¶ 3. Once again, Defendant Zangrillo's purported justification for his fishing expedition is invalid.

[3] In fact, the government's charges against Defendant Zangrillo, Singer, and Heinel rest on the assumption that $50,000 would be insufficient to secure admission to USC. If USC were willing to grant admission in exchange for $50,000, there would be no need for Defendant Zangrillo, Singer, and Heinel to conspire to defraud USC's Office of Admission.

A. The number of prospective students, including transfer students, designated as "VIP," special interest," and/or "university advancement" from January 1, 2015 through February 28, 2019 by any USC personnel;

B. The names, departments (including but not limited to the athletic department), and titles of the university personnel responsible for each such designation above, including the number of students designated by each individual employee;

C. For each prospective student designated as "VIP," "special interest," and/or "university advancement" during the relevant time period, the amount of any donations made to USC by the student's parent(s) within the period beginning twelve months prior to the student's admission and ending twelve months after his or her admission, as well as the specific USC department or employee receiving each donation;

D. Information regarding the percentage of students designated as "VIP," "special interest," and/or "university advancement" that were accepted for admission to USC, including the percentage of such students admitted within twelve months before or after a donation from a parent of at least $50 thousand, and also including a comparison to the percentage of students accepted after presentation to the athletic subcommittee, and the percentage of all other applicants accepted;

E. A copy of the University Advancement database referenced in Exhibit 5 current as of June 17, 2018, the date Mr. Zangrillo's daughter was admitted to USC;

F. Any and all documents indicating that the President of USC received and/or reviewed applications from students flagged as "VIP," "special interest," and/or "university advancement"; and

G. All communications including but not limited to emails, text messages, and instant messages sent or received by any USC personnel relating to Amber Zangrillo.

On July 16, 2019, counsel for USC conferred with counsel for Defendant Zangrillo in an attempt to narrow the scope of the Subpoena. Counsel for USC explained the problems with the Subpoena, which are discussed in this motion, and in an effort to reach a good faith compromise, offered to produce all communications specifically regarding Defendant Zangrillo's daughter found in an email review of all senior employees in the Athletics Department and the Office of Admission. Counsel for Defendant Zangrillo declined this offer and did not make a counteroffer.

IV.   **LEGAL STANDARD**

The seminal United States Supreme Court case considering Rule 17 subpoenas, *United States v. Nixon*, emphasized that one of the "fundamental characteristics of the subpoena duces tecum in criminal cases" is that "it was not intended to provide a means of discovery…." *United States v. Nixon*, 418 U.S. 683, 698 (1974). "Courts invariably define Rule 17 in the negative: subpoenas are not discovery devices or investigatory tools." *United States v. Pereira*, 353 F. Supp. 3d 158, 160 (D.P.R. 2019). The text of Rule 17 makes clear that subpoenas must designate specific documents or other materials: "A subpoena may order the witness to produce…books, papers, documents, or other objects the subpoena designates." Fed. R. Crim. P. 17; *see, e.g., United States v. Weisberg*, No. 08-CR-347 NGG RML, 2010 WL 5027537, at *2 (E.D.N.Y. Dec. 3, 2010) (Granting a Motion to Quash because "Defendant's requests do not identify specific documents or sufficiently narrow categories of specific documents as required to survive a motion to quash."); *United States v. Libby*, 432 F. Supp. 2d 26, 35 (D.D.C. 2006) ("[Rule 17 subpoenas] may be used solely to secure <u>specifically identified evidence</u> for trial…") (emphasis added).

The Court, upon motion made promptly, may quash or modify a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17. The Supreme Court elucidated the standard to require production of documents pursuant to Rule 17 as follows: the party seeking production must show "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699 (1974); *see also United States v. Godfrey,* 2013 WL

5780439, at *1 (D. Mass. Oct. 18, 2013) (reciting *Nixon* standard as the "significant showing" required to issue a Rule 17 subpoena in this district).   In order to satisfy this standard, the moving party must "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity."   *Nixon,* 418 U.S. at 700.   The party seeking the production of documents bears the burden to clear each of these three hurdles.   *United States v. Ventola*, 2017 WL 2260065, at *1 (D. Mass. May 23, 2017).

To satisfy the specificity prong, the moving party must show that its request is not so broad as to constitute a "fishing expedition."   For instance, in *Pereira*, 353 F. Supp. 3d 158 at 161, *supra*, a defendant served a subpoena requesting "all pertinent documentation, rules, [and] regulations" related to one of the offenses charged.   The court concluded that the request for "all" pertinent information indicated that the requests were "fishing expeditions designed to assist [the defendant] in forging a defense against the allegations set forth in the indictment…. The Court cannot authorize subpoenas to reveal *potential* evidence because doing so would wrongly convert Rule 17 into a discovery device."   *Id.* (emphasis in original); *see also United States v. Manghis,* 2010 WL 349583, at *2 (D. Mass. Jan. 22, 2010) ("[Defendant's] request for any and all documents…is overbroad and amounts to little more than a fishing expedition.") Courts outside this Circuit similarly find that subpoenas requesting "all" documents constitute impermissible "fishing expeditions" and should be quashed.   *See, e.g., United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010) (upholding the trial court's decision to quash the defendant's request for all records relating to a third-party online service provider's relationship with the Department of Justice because the defendant was "merely fishing for evidence that might support his theory, as if he were in the discovery phase of a civil action"); *United States v. Avalos-Martinez*, 299 F.R.D. 539, 540 (W.D. Tex. 2014) (granting the government's motion to

quash defendant's subpoena because the defendant sought "'any and all' materials related to the

preparation of three large government reports" and did not "identify any specific document by

name"); *United States v. Wittig*, 250 F.R.D. 548, 551 (D. Kan. 2008) (refusing to issue the

defendant's requested subpoena because "it read[s] like a civil discovery request, including…an

expansive 'Definitions' section that seeks 'each' and 'every,' 'any' and 'all,' 'without

limitation,' 'however denominated.'")

   Courts find that subpoenas that would require the complying party to compile documents

or that would require substantial time and cost likely constitute "fishing expeditions" and thus

fail the specificity prong.  For example, in *United States v. Skylar Ariel Phoenix*, the court

quashed a third-party subpoena due to lack of specificity because it requested e-mails with "no

limits on document custodians." *United States v. Skylar Ariel Phoenix*, 2015 WL 6094882, at *2

(N.D. Cal. Oct. 16, 2015).  The court also noted that several requests "would require [the

subpoenaed party] to compile documents into spreadsheets—compilations that do not even

exist." *Id.*  The court quashed the subpoena, concluding that the "burden on [the subpoenaed

party] from Defendants' demand would be undue." *Id.*

   To satisfy the admissibility prong, the moving party must make "a sufficient preliminary

showing" that the subpoenaed material "contains evidence admissible with respect to the

offenses charged in the indictment." *United States v. LaRouche Campaign*, 841 F.2d 1176, 1179

(1st Cir. 1988).  Courts find that when the moving party makes no showing that the requested

documents are admissible, and there is reason to believe the documents will not be admissible, a

motion to quash should be granted.  For example, in *United States v. Cartagena-Albaladejo*, 299

F. Supp. 3d 378 (D.P.R. 2018), a defendant issued a subpoena to the law enforcement agent that

investigated his case requesting, among other documents, investigative notes in connection with

his arrest.  Although the requested documents were clearly relevant, the court granted the motion

to quash the subpoena because the defendant "ma[de] no argument regarding the purported

admissibility of the…documents requested….  Investigative notes produced by law enforcement

are out-of-court statements that would generally constitute inadmissible hearsay if offered to

prove the truth of the matter asserted." *Cartagena-Albaladejo*, 299 F. Supp. 3d at 387.

To satisfy the relevancy prong, the moving party must show that that there is a "sufficient

likelihood" that the subpoenaed records are "relevant to the offenses charged in the indictment."

*Pereira*, 353 F. Supp. 3d at 161.

## V.   <u>ARGUMENT</u>

Defendant Zangrillo falls woefully short of satisfying his burden of showing good cause,

as the Subpoena does not meet <u>any</u> of the three required prongs (relevancy, admissibility, and

specificity).  This is so primarily because Defendant Zangrillo is on an impermissible fishing

expedition.  None of the seven requests calls for production of a specific document.  Rather, the

first four requests ask USC to compile information and statistical data not contained in any

preexisting document.  The last three requests ask for huge amounts of data and "any" and "all"

documents and communications.  These are exactly the type of requests courts have found

impermissible under Rule 17.  *See, e.g., Pereira*, 353 F. Supp. 3d at 161 (quashing defendant's

request for "all pertinent documentation, rules, [and] regulations" because it was a "fishing

expedition[] designed to assist [the defendant] in forging a defense against the allegations set

forth in the indictment.")  In addition, the compilations sought by Defendant Zangrillo are

inadmissible hearsay.  And critically, all of the requests seek irrelevant information unrelated to

the charges brought against Defendant.  Because Defendant Zangrillo cannot satisfy his burden

of showing that his requests seek (1) relevant, (2) admissible, <u>and</u> (3) specific information, the

Court should quash the Subpoena, except to the extent that it requests all emails specifically

related to Amber Zangrillo sent or received by senior employees in the Athletics Department and Office of Admission.

### A.    Request A

Request A, which seeks the number of students who received a special interest tag over a 50-month period, fails the *Nixon* test because it utterly lacks specificity, is not likely to lead to the production of admissible evidence, and is not relevant to the case.  Like the impermissible request in *Avalos-Martinez,* Request A does not "identify any specific document by name." *Avalos-Martinez*, 299 F.R.D. 539 at 540.  Rather, it calls for the *number* of prospective students who received special interest tags.  Defendant Zangrillo cannot identify any specific document that would satisfy this request because no such document exists.  Brunold Decl. at ¶ 4.  Indeed, as indicated above, USC does not track this information in the ordinary course.  *Id.*  Thus, like the improper request in *Skylar Ariel Phoenix,* 2015 WL 6094882, at *2, in order to comply with Request A, USC would have to create a "compilation" that does not currently exist by wading through more than 200,000 applications USC received during the 50-month period in question to determine which of the applicants received special interest tags.  This is inconsistent with the purpose and intent of Rule 17, and alone warrants quashing Request A.

Moreover, Defendant Zangrillo makes no attempt to show that if USC compiled the number of prospective students who received special interest tags, this would be admissible evidence.  Defendant Zangrillo has the burden of making a sufficient preliminary showing that any information produced would be admissible.  *LaRouche Campaign*, 841 F.2d at 1179.  When, as in *Cartagena-Albaladejo,* there is reason to believe that any evidence produced would not be admissible, the court should be even more wary of upholding the subpoena.  *See* 299 F. Supp. 3d at 387.  Here, even if USC was able to compile the requested information, such information would, as with the evidence in *Cartagena-Albaladejo*, constitute hearsay if offered substantively.

*See id.*  Because USC would have to compile this information for purposes of responding to the Subpoena, it would likely not meet any traditional hearsay exception such as the business records exception.

Lastly, the requested information is not relevant.  As an initial matter, it seeks information purely about <u>other</u> individuals and is not relevant to the allegations that Defendant Zangrillo paid someone to take classes for his daughter and bribed someone to help ensure his daughter's acceptance to USC.  In addition, the government does not allege that Defendant Zangrillo knowingly and in an improper manner utilized a special interest "tag" to secure his daughter's admission to USC.  Instead, the affidavit in support of the criminal complaint alleges with specificity how Defendant Zangrillo conspired to secure his daughter's admission to USC as a recruited athlete.  *See* Criminal Complaint at ¶¶ 274, 278.  Information related to other students who received a special interest tag is irrelevant to Defendant Zangrillo's attempt to secure his daughter's admission as a fictitious athlete through bribery with his co-conspirators.  Furthermore, there is no evidence or reason to believe that Defendant Zangrillo understood the process or significance of a special interest tag with respect to the admissions process at USC.  It was only *after* Defendant Zangrillo's daughter was admitted that both Singer and Defendant Zangrillo learned that Heinel did not present her as a recruited student-athlete but rather tagged her as an applicant with a special interest tag.  *See* Criminal Complaint at ¶¶ 281-282.  Under *Pereira*, 353 F. Supp. 3d at 161, Defendant Zangrillo has failed to make a preliminary showing of relevance.  He is instead improperly using the Subpoena as a discovery tool in the hopes of stumbling upon potential evidence.

### B.      Request B

Request B is similarly unreasonable and oppressive.  It seeks the names, departments and titles of each person at USC who designated any applicant with a special interest tag, and asks

USC to calculate the number of prospective students so tagged by each USC employee.  As with

Request A, this request fails the specificity test under *Nixon* because it does not request a specific

document.  *Nixon,* 418 U.S. at 699.  Instead, it reads like an interrogatory in civil discovery.

Moreover, USC does not have a document reflecting the requested information, and is not

capable of creating such a document.  Brunold Decl. at ¶ 5.  USC does not maintain records of

which employee designated a specific student with a special interest tag, much less maintain

records for how many tags each employee gives.  *Id.*  As with the impermissible request in

*Skylar Ariel Phoenix*, 2015 WL 6094882, at *2, USC would have to review a vast quantity of

documents to even attempt to comply with this request, and even then USC could not match

every special interest tag with an individual employee who requested it.  In addition, for the same

reasons discussed with regard to Request A, Defendant cannot show that the information sought

in Request B is admissible or relevant.  For example, the title of an employee who caused a

particular applicant, unrelated to this matter, to receive a special interest tag is not relevant to

Defendant Zangrillo's defense.  For all of these reasons Request B should be quashed.

### C.      Request C

Request C does not satisfy any of the three prongs.  First, it is insufficiently specific and

amounts to an overbroad interrogatory.  The request calls for the amount of money donated over

a two-year period by the parents of any student identified in Request A who was admitted to

USC, and asks USC to identify the USC department or employee receiving each donation.  Like

with Requests A and B, USC is not in possession of any document reflecting the information

requested.  USC does not maintain a list of students who received a special interest tag and were

admitted, let alone the amount of money donated by their parents.  Brunold Decl. at ¶ 4; Vranich

Decl. at ¶ 2.  To compile the information—an act that is itself indicative of the impermissible

nature of the request (*see Skylar Ariel Phoenix*, 2015 WL 6094882, at *2, quashing a subpoena

that "would require [the subpoenaed party] to compile documents into spreadsheets—compilations that do not even exist")—would require the painstaking effort of attempting to, for a different 24-month date range in each situation, (1) identify each student who received a tag; (2) identify the donations attributable to each student; and then (3) determine the ultimate destination of each donation.  Vranich Decl. at ¶ 2.  Not only would this exercise consume enormous time and resources, it also would necessarily be incomplete as donations are often made anonymously or by corporate or other entities not easily attributable to a particular student. *Id.*

Moreover, this request again fails to meet the requirements of relevance and admissibility.  A compilation of admitted students who received special interest tags and the amount of their families' donations to USC, if any, is in no way probative of whether the Defendant conspired to have his daughter admitted to USC as a fake athlete based on an allegedly false transcript.  In any event, the requested compilation would not demonstrate that anyone was admitted because of a special interest tag or a donation.  As mentioned above, the majority of prospective students who receive special interest tags are not admitted.  Brunold Decl. at ¶ 3.  That is so because admissions decisions are based on a wide range of factors, not based solely on the special interest tag and not because of money their parents may have donated.  *Id.*  Thus, the compilations that USC would be forced to expend significant resources creating based on multiple layers of hearsay would only lead to speculation as to why the students on the list were admitted.  Lastly, Defendant Zangrillo is requesting private and sensitive financial information from a large group of people having nothing to do with this matter.  For all of these reasons, Request C should be quashed.

### D.     Request D

Request D is similarly defective.  It is actually a four-part request, asking USC to compile information and do calculations every step along the way.  First, it seeks the percentage of students who receive special interest tags and who are admitted to USC over an unspecified time period.  Again, USC does not track the number of students receiving special interest tags.  Brunold Decl. at ¶ 3.  Nor does it track how many students with special interest tags are admitted to the university each year.  *Id.*  While that percentage is known to be less than 50%, the exact figure is unknown and would need to be calculated for each year in question.  Second, Request D then seeks the percentage of students who receive special interest tags and are admitted and whose parents donate at least $50,000 within 12 months before or after the students' admission, also over an unspecified time period.  USC does not have documents reflecting these figures, and compiling this information would involve the same herculean effort discussed above with respect to Request C.  Vranich Decl. at ¶ 2.  Third, Request D seeks to require USC to calculate the percentage of students admitted to USC after being presented to USC's Athletics Subcommittee, again over an unidentified time period.  USC does not have that figure on hand, and would have to manually calculate it—to the extent it could even do so.  Fourth, Request D asks USC to calculate the percentage of all students admitted seemingly after removing those who were approved as prospective student-athletes.  USC also does not have documents reflecting that figure and would need to run those calculations.

Just like requests A, B, and C, Request D fails for a lack of specificity and seeks information that is neither admissible nor relevant.  To comply with the request would be onerous, time consuming, and an unreasonable use of resources for USC to expend on information that is unrelated to Defendant Zangrillo's alleged bribery and which would ultimately be of no use at trial.  For all of these reasons, Request D should be quashed.

E.      **Request E**

Request E, which seeks a copy of the University Advancement database as of June 17, 2018, is neither specific nor relevant, and is an unreasonable and overly burdensome request. First, there is no "copy of the University Advancement database . . . current as of June 17, 2018." To the extent records of donations are maintained, there is no master database of donations that can be produced as of June 17, 2018.  Vranich Decl. at ¶ 3.  Moreover, the request makes no attempt to specify a donor, time period, donation amount, or type of donation.  Instead, this is yet another request that would require USC to expend vast resources compiling data in response to a fishing expedition.  Records of every donation ever received by USC is also not remotely relevant or specifically related to whether or not the Defendant conspired to secure his daughter's admission to USC as a fake rower and based on a falsified transcript.  Past donations made by thousands of other individuals, corporations, and charities, all of which is highly sensitive and private information, cannot possibly have any bearing on the Defendant's state of mind at the time he allegedly engaged in the conspiracy alleged by the government.  Moreover, donations made in the normal course by families of student applicants are not considered or even known by the admissions officers determining which students are admitted.  Brunold Decl. at ¶ 6.  As such, there can be no argument that the information is relevant.

F.      **Request F**

Request F is similarly neither specific nor relevant.  In seeking "any and all" documents indicating the President of USC received and/or reviewed applications from students who received special interest flags over an unspecified time period, Request F runs headlong into the litany of cases, in this circuit as well as others, holding that subpoenas requesting "all" documents are impermissible "fishing expeditions."  *See, e.g., United States v. Manghis,* 2010 WL 349583, at *2 ("[Defendant's] request for any and all documents…is overbroad and amounts

to little more than a fishing expedition."); *United States v. Richardson*, 607 F.3d 357 at 68

(upholding the trial court's decision to quash the defendant's request for all records relating to a

third-party online service provider because the defendant was "merely fishing for evidence that

might support his theory, as if he were in the discovery phase of a civil action."). A nearly

identical request—a request for "all pertinent documentation"—was found to be impermissibly

unspecific in this circuit this year. *See Pereira*, 353 F. Supp. 3d at 158. There is no reason to

find differently here. The documents sought are not remotely relevant to the government's

charges. In addition, USC has no reason to believe that any responsive documents exist. And

searching for potentially responsive documents would be incredibly burdensome, essentially

requiring USC to comb through the President's emails for the name of every student who

received a special interest tag. Furthermore, any existing documents would be highly sensitive,

implicating significant privacy concerns. Because a defendant cannot use Rule 17 to seek

"*potential* evidence," *Pereira*, 353 F. Supp. 3d 158 at 161, the fishing expedition undertaken in

Request F should be quashed.

## G.      Request G

Request G, which seeks "all communications including but not limited to emails, text

messages, and instant messages sent or received by any USC personnel relating to Amber

Zangrillo, is so blatantly lacking in specificity that USC could not possibly fully comply with the

request. Amber Zangrillo is a current student at USC. She likely has thousands of emails with

various students, professors, administrators, and other school personnel, all having nothing to do

with the circumstances of her admission to USC. Counsel for Defendant Zangrillo would like

USC to review not only the emails of every single employee, but also confiscate their phones and

review all of their text messages. This, of course, is a gargantuan task that could not be

reasonably undertaken. In a good faith effort to reasonably narrow the scope of the request, USC is willing to produce all emails specifically related to Amber Zangrillo sent or received by all senior employees in the Athletics Department, including the head coaches of USC's varsity athletic teams, and the senior employees in the Office of Admission. This proposed approach casts a wider net and would result in a more voluminous production of documents regarding Amber Zangrillo than what USC previously produced to the government, and represents a good faith effort to search for and produce evidence that might actually be relevant to Defendant Zangrillo's criminal case.

## VI.   **CONCLUSION**

Defendant Zangrillo has issued document requests to non-party USC that are in fact interrogatories seeking data that would be extraordinarily burdensome to compile if, indeed, it could be compiled at all. Moreover, the information sought is largely inadmissible hearsay and irrelevant to the government's charges. Defendant Zangrillo's Subpoena is a blatant and improper abuse of Rule 17(c). For all of the foregoing reasons, USC requests that this court grant its Motion to Quash.

Respectfully submitted,
UNIVERSITY OF SOUTHERN CALIFORNIA,
By its attorneys,


*/s/ Debra Wong Yang*
Debra Wong Yang (*Pro Hac Vice* Admission Pending)
Douglas M. Fuchs (Admitted *Pro Hac Vice*)
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213)229-7000
dwongyang@gibsondunn.com
dfuchs@gibsondunn.com

/s/ Anthony E. Fuller
Anthony E. Fuller (BBO #633246)
Elizabeth C. Pignatelli (BBO #677923)
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston, MA  02110
(617) 371-1000
anthony.fuller@hoganlovells.com
elizabeth.pignatelli@hoganlovells.com

Dated: August 22, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants.

/s/ Anthony E. Fuller
Anthony E. Fuller