UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
              Plaintiff,                                    :
                                                            :
     -against-                                             : No. 1:19-cr-10080-NMG
                                                            :
DAVID SIDOO, ET AL                                          :
                                                            :
              Defendant.                                    :
                                                            :
                                                            :
------------------------------------------------------------x

### DECLARATION OF TIMOTHY BRUNOLD IN SUPPORT OF NON-PARTY UNIVERSITY OF SOUTHERN CALIFORNIA MOTION TO QUASH

I, Timothy Brunold, declare as follows:

1. I am the Dean of Admission at the University of Southern California ("USC"). I graduated from USC in 1992, magna cum laude with a degree in international relations. I have worked in the Admission Department at USC since 1999. I served as the Director of Undergraduate Admission from 2005 to 2010. Since August 2010, I have served as the Dean of Admission.

2. Various departments and individuals within USC can apply a special interest "tag" to a student's application, as there are 22 colleges within USC. Students who receive such tags must still satisfy a number of other criteria, including but not limited to grades, test scores, academic rigor, and extracurricular activities, in order to be admitted.

3. USC does not possess any documents containing a complete list of students who received a special interest tag. This information would have to be compiled and assembled, which would be time-consuming and burdensome.

4.      When I referenced a "university-wide VIP spreadsheet" in a March 10, 2016 email (attached to Defendant Zangrillo's Opposition as Exhibit 3), I was referring to a document that could be created through compiling data maintained in our internal application processing system. To the extent any document was created in March 2016, I did not maintain either a hard copy or electronic copy, and I do not believe a copy exists today.

5.      I have reviewed the charts related to special interest students that appear to have been created and maintained by Donna Heinel (attached to Defendant Zangrillo's opposition as Exhibits 1-2, 4-6). The Office of Admission does not maintain any comparable document listing special interest students, their sponsors, and information relating to why they may have been designated. I do not recall anyone other than Heinel providing me with the names of special interest students in this format.

6.      The students listed in Ms. Heinel's internal charts only represent a subset of the overall number of applicants who receive special interest tags, and extrapolating percentages based on Ms. Heinel's internal charts is not an accurate representation of the number of students who receive a special interest tag and are admitted. When I previously stated that a majority of students who receive special interest tags are not admitted, I was focused on freshmen fall admission.

7.      My preference is that the department designating a special interest student apply the tag directly in USC's student information system. However, I am often provided the names of special interest students directly. That is often done over the phone. When I am contacted concerning a special interest student, the only information that is relevant is the name of the student so that I or someone on my staff can go into the student information system and enter the special interest tag. I have reviewed the February 7, 2014 email that Heinel sent me (attached to

Defendant Zangrillo's Opposition as Exhibit 4).  Other than the applicant's name, I did not want, request, or rely upon any other information, including the employee connected to the student or any internal notes Heinel kept about the student.  When I responded to Heinel that I would "track" these students, I simply meant that I would make sure these students received a special interest tag.

8.      Students who receive a special interest tag are evaluated in the same pool with the same criteria as students without a special interest tag.  Receiving a special interest tag primarily helps the University monitor applications for prospective students for whom there is a unique interest.  If an applicant is on the cusp of admission, having a special interest tag might garner a second review of their application.  This is similar to an applicant who is a potential ROTC participant or a first-generation college student, both of which are other tags that a student's application may receive.  No single tag ensures a student will be admitted; rather, the applicants who receive a tag, must still satisfy a number of other criteria, including but not limited to grades, test scores, academic rigor, and extracurricular activities, in order to be admitted.

9.      If USC became aware that a student knowingly submitted an application with fraudulent information, that student would not be admitted to USC, regardless of whether the student received a special interest tag.

10.     I do not recall ever sending, giving, or transmitting any prospective student's application to the President of USC for review.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on September 12, 2019, at Los Angeles, California.

_____
Timothy Brunold