1                    UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS

3     _____

4     UNITED STATES OF AMERICA,

5                        Plaintiff,         Criminal Action
                                           No. 19-cr-10080-NMG
6     v.
                                           February 27, 2020
7     DAVID SIDOO, et al.,

8                        Defendants.        Pages 1 to 26

9     _____

10

11
                      TRANSCRIPT OF STATUS CONFERENCE
12              BEFORE THE HONORABLE NATHANIEL M. GORTON
                      UNITED STATES DISTRICT COURT
13               JOHN J. MOAKLEY U.S. COURTHOUSE
                        ONE COURTHOUSE WAY
14               BOSTON, MASSACHUSETTS   02210

15

16

17

18

19

20                    JOAN M. DALY, RMR, CRR
                       Official Court Reporter
21               John J. Moakley U.S. Courthouse
                    One Courthouse Way, Room 5507
22               Boston, Massachusetts   02210
                      joanmdaly62@gmail.com
23

24

25

```
 1    APPEARANCES:

 2
      FOR THE GOVERNMENT:
 3
              ERIC S. ROSEN, AUSA
 4            KRISTEN A. KEARNEY, AUSA
              LESLIE WRIGHT, AUSAU
 5            Assistant U.S. Attorneys
              U.S. Attorney's Office
 6            John J. Moakley Courthouse
              One Courthouse Way, Suite 9200
 7            Boston, Massachusetts 02210
              617.748.3100
 8            eric.rosen@usdoj.gov
              kristen.kearney@usdoj.gov
 9            leslie.wright@usdoj.gov

10
      FOR THE DEFENDANT DAVID SIDOO:
11
              MARTIN G. WEINBERG, ESQUIRE
12            Martin g. Weinberg, PC
              20 Park Plaza
13            Suite 1000
              Boston, Massachusetts 02116
14            617.227.3700
              owlmcb@att.net
15
      FOR THE DEFENDANTS GREGORY COLBURN and AMY COLBURN:
16
              DAVID S. SCHUMACHER, ESQUIRE
17            Hooper, Lundy & Bookman, P.C.
              470 Atlantic Avenue
18            Suite 1201
              Boston, Massachusetts 02210
19            617.532.2704
              dschumacher@health-law.com
20
              PATRIC HOOPER, ESQUIRE
21            Hooper, Lundy & Bookman, P.C.
              1875 Century Park East
22            Suite 1600
              Los Angeles, California 90067
23            310.551.8165
              phooper@health-law.com
24

25
```

1    FOR THE DEFENDANT GAMAL ABDELAZIZ:

2            BRIAN T. KELLY, ESQUIRE
             Nixon Peabody, LLP
3            100 Summer Street
             Boston, Massachusetts 02110
4            617.345.1000
             bkelly@nixonpeabody.com
5

6    COUNSEL FOR THE DEFENDANTS DIANE BLAKE and TODD BLAKE:

7            DAVID E. MEIER, ESQUIRE
             MELINDA L. THOMPSON, ESQUIRE
8            Todd & Weld
             One Federal Street
9            27th Floor
             Boston, Massachusetts 02110
10           617.720.2626
             dmeier@toddweld.com
11           mthompson@toddweld.com

12
     COUNSEL FOR DEFENDANT I-HSIN CHEN:
13
             REUBEN CAMPER CAHN, ESQUIRE
14           Keller/Anderle LLP
             18300 Von Karman Avenue, Suite 930
15           Irvine, California 92612
             949.476.8700
16           rcahn@kelleranderle.com

17
     COUNSEL FOR DEFENDANTS MOSSIMO GIANNULLI and LORI LOUGHLIN:
18
             GEORGE W. VIEN, ESQUIRE
19           Donnelly, Conroy & Gelhaar, LLP
             260 Franklin Street
20           Boston, Massachusetts 02110
             617.720.2880
21           gwv@dcglaw.com

22           WILLIAM J. TRACH, ESQUIRE
             Latham & Watkins, LLP
23           John Hancock Tower, 27th Floor
             200 Clarendon Street
24           Boston, Massachusetts 02116
             617.880.4514
25           william.trach@lw.com

```
 1          SEAN M. BERKOWITZ, ESQUIRE
            Latham & Watkins, LLP
 2          330 North Wabash Avenue
            Suite 2800
 3          Chicago, Illinois 60611
            312.777.7016
 4          sean.berkowitz@lw.com
            (Present telephonically)
 5

 6   COUNSEL FOR DEFENDANT ELISABETH KIMMEL:

 7          R. ROBERT POPEO, ESQUIRE
            CORY S. FLASHNER, ESQUIRE
 8          EOIN P. BEIRNE, ESQUIRE
            MARK E. ROBINSON, ESQUIRE
 9          Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
            One Financial Center
10          42nd Floor
            Boston, Massachusetts 02111
11          617.542.6000
            rpopeo@mintz.com
12          csflashner@mintz.com
            ebeirne@mintz.com
13          merobinson@mintz.com

14

15   COUNSEL FOR DEFENDANT WILLIAM MCGLASHAN, JR.:

16          JACK W. PIROZZOLO, ESQUIRE
            Sidley Austin LLP
17          60 State Street
            34th Floor
18          Boston Massachusetts 02109
            617.223.0304
19          jpirozzolo@sidley.com

20          MARSHALL A. CAMP, ESQUIRE
            Hueston Hennigan LLP
21          523 West 6th Street
            Suite 400
22          Los Angeles, California 90014
            213.778.4340
23          mcamp@hueston.com

24

25
```

```
 1     COUNSEL FOR THE DEFENDANT MARCI PALATELLA:

 2            MICHAEL K. LOUCKS, ESQUIRE
              Skadden, Arps, Slate, Meagher & Flom LLP
 3            500 Boylston Street
              Boston, Massachusetts 02116
 4            617.573.4840
              michael.loucks@skadden.com
 5

 6     COUNSEL FOR THE DEFENDANT JOHN WILSON:

 7            MICHAEL KENDALL, ESQUIRE
              White & Case, LLP
 8            75 State Street
              Boston, Massachusetts 02109
 9            617.939.9310
              michael.kendall@whitecase.com
10
              ANDREW E. TOMBACK, ESQUIRE
11            White & Case LLP
              1221 Avenue of the Americas
12            New York, New York 10020
              212.819.8428
13            andrew.tomback@whitecase.com

14
       COUNSEL FOR THE DEFNDANT HOMAYOUN ZADEH:
15
              TRACY A. MINER, ESQUIRE
16            Miner Orkand Siddall LLP
              470 Atlantic Avenue
17            4th Floor
              Boston, Massachusetts 02210
18            617.273.8421
              tminer@mosllp.com
19

20     COUNSEL FOR THE DEFENDANT ROBERT ZANGRILLO:

21            MARTIN G. WEINBERG, ESQUIRE
              Law Office of Martin G. Weinberg
22            20 Park Plaza
              Suite 1000
23            Boston, Massachusetts 02116
              617.227.3700
24            marty@martinweinberglaw.com

25
```

1          P R O C E E D I N G S

2                    (The following proceedings were held in open

3     court before the Honorable Nathaniel M. Gorton, United States

4     District Judge, United States District Court, District of

5     Massachusetts, at the John J. Moakley United States

6     Courthouse, One Courthouse Way, Boston, Massachusetts, on

7     February 27, 2020.)

8                    THE CLERK:  All rise.  Thank you.  You may be

9     seated.  This is criminal action number 19-10080, United

10    States of America versus David Sidoo, et al.  Will counsel,

11    please, identify themselves for the record.

12                   MR. ROSEN:  Good morning, Your Honor.  Eric Rosen,

13    Leslie Wright and Ms. Kearney for the government.

14                   THE COURT:  Mr. Rosen, Ms. Wright, Ms. Kearney.

15                   MR. TRACH:  Good morning, Your Honor.  William

16    Trach for defendants Mossimo Giannulli and Lori Loughlin.

17                   THE COURT:  Mr. Trach.

18                   MS. MINER:  Good morning, Your Honor.  Tracy Miner

19    on behalf of Homayoun Zadeh.

20                   THE COURT:  Ms. Miner.

21                   MR. WEINBERG:  Good morning, Your Honor.  Martin

22    Weinberg on behalf of Robert Zangrillo.

23                   THE COURT:  Mr. Weinberg.

24                   MR. KENDALL:  Good morning, Your Honor.  Mike

25    Kendall from White & Case on behalf of John Wilson.

1          THE COURT:  Mr. Kendall.

2          MR. POPEO:  Good morning, Your Honor.  Robert Popeo

3    on behalf of Elisabeth Kimmel.

4          THE COURT:  Mr. Popeo.

5          MR. CAHN:  Good morning, Your Honor.  Reuben Cahn

6    on behalf of Mr. Chen who is present.

7          THE COURT:  Mr. Cahn.

8          MR. LOUCKS:  Good morning, Your Honor.  Michael

9    Loucks for Marci Palatella.

10          THE COURT:  Mr. Loucks.

11          MR. SCHUMACHER:  Good morning, Your Honor.  David

12    Schumacher on behalf of Amy Colburn and Gregory Colburn.  And

13    Patric Hooper is here as well.

14          THE COURT:  Yes.  Mr. Schumacher.

15          MR. PIROZZOLO:  Good morning, Your Honor.  Jack

16    Pirozzolo on behalf of William McGlashan.  And with me is

17    Marshall Camp also on behalf of William McGlashan.

18          THE COURT:  Mr. Pirozzolo.

19          MR. MEIER:  Good morning, Your Honor.  David Meier

20    on behalf of Diane Blake and Todd Blake.

21          THE COURT:  Mr. Meier.

22          MR. VIEN:  Good morning, Your Honor.  George Vien

23    on behalf of Mossimo Giannulli.

24          THE COURT:  Mr. Vien.

25          MR. KELLY:  Good morning, Your Honor.  Brian Kelly

1    on behalf of defendant Gamal Abdelaziz.

2              THE COURT:  Mr. Kelly.  Thank you.  I would invite

3    those in the jury box who are attending to also introduce

4    themselves, please.

5              MR. FLASHNER:  Good morning, Your Honor.  Cory

6    Flashner also on behalf of Elisabeth Kimmel.

7              THE COURT:  Mr. Flashner.

8              MR. CAMP:  Good morning, Your Honor.  Marshall Camp

9    on behalf of Bill McGlashan.

10             THE COURT:  Mr. Camp.

11             MR. TOMBACK:  Good morning, Your Honor.  Andrew

12   Tomback of White & Case on behalf of Mr. Wilson.

13             THE COURT:  Mr. Tomback.

14             MR. BEIRNE:  Good morning, Your Honor.  Eoin Beirne

15   also on behalf of Elisabeth Kimmel.

16             THE COURT:  Mr. Beirne.

17             MS. THOMPSON:  Good morning, Your Honor.  Melinda

18   Thompson on behalf of Todd and Diane Blake.

19             THE COURT:  Ms. Thompson.

20             MR. ROBINSON:  Good morning, Your Honor.  Mark

21   Robinson also on behalf of Elisabeth Kimmel.

22             THE COURT:  Mr. Robinson.

23             MR. HOOPER:  Good morning, Your Honor.  Patric

24   Hooper also here on behalf of Greg and Amy Colburn.

25             THE COURT:  Good morning, Mr. Hooper.  We have

1    apparently Mr. Berkowitz on the phone as well.

2            MR. BERKOWITZ:  Thank you, Your Honor.  Sean

3    Berkowitz on behalf of Lori Loughlin and Mossimo Giannulli.

4    I appreciate you allowing me to participate by phone.

5            THE COURT:  Good morning, Mr. Berkowitz.  As we are

6    aware, the defendants Giannulli and Loughlin late yesterday

7    filed a supplemental memorandum regarding trial groups and a

8    motion to postpone setting a trial date.  It was docket

9    number 875.  They make very serious *Brady* violation

10   allegations and charges of prosecutorial misconduct in that

11   pleading.

12           The government of course has not had an opportunity

13   to respond to it.  I am not going to postpone this hearing or

14   my addressing the need to set a schedule for the resolution

15   of this multi-defendant case.  But I am now directing the

16   moving defendants and any other defendant who intends to join

17   them to file on or before Friday March 13 a joint motion to

18   dismiss, to suppress, and/or for sanctions and supporting

19   memoranda based upon the information just brought to the

20   Court's attention to which the government can file its

21   opposition and memorandum, if any, on or before Friday,

22   March 27.

23           I will take that matter under advisement separately

24   from the other matters and may schedule a hearing in early

25   April.  It will not affect any other time deadlines set in

1    this case.

2            Now I am going to proceed with the original purpose

3    of this status conference, which is to discuss trial groups

4    and dates for trial if one is ultimately necessary.  This

5    case, counsel, was indicted in March of last year.  And I

6    recognize that there have been superseding indictments in

7    March, April, and October of 2019 and again last month.  It

8    is also true that there has been production of voluminous

9    discovery in a rolling fashion.  And there are 15 defendants

10   involved in this alleged conspiracy, the very existence of

11   which is contested.

12           I grant you all of that, but this case needs to be

13   resolved expeditiously either by trial or otherwise.  And I

14   mean to make that happen by dealing with the dispositive

15   motions later this spring, and, if necessary, a trial of

16   about one half of the defendants in early October of this

17   year.  It goes without the necessity of citation that the

18   prompt resolution of criminal cases is not only in the

19   interest of those charged with serious crimes, their counsel,

20   and prosecutors, but also the public at large and the

21   criminal justice system generally.

22           It is not only the right of the accused to a timely

23   inquiry into the charges against them but also a fundamental

24   duty of the charging authority and the Court to provide a

25   prompt trial.  I am also fully aware that there are pending

1    discovery issues before Magistrate Judge Kelley and motions

2    pending to dismiss before me.  But I assure you, that those

3    motions will be resolved with or without hearings before the

4    end of June this year.

5         With respect to the grouping of defendants, the

6    government has provided me with no logical reason to adopt

7    either of its proposals.  And I agree with the defendants

8    generally that to the extent possible, the defendants with

9    like charges pending against them and the defendants with

10   familial relationships ought to be tried together to avoid

11   inefficiencies and the introduction of unrelated and possible

12   prejudicial evidence.  That makes sense to me.

13        But I do agree with the government that this case,

14   or at least the first group of the defendants to be tried in

15   this case, ought to go forward in October of this year.  I do

16   not want to try this case three times.  So for the time being

17   I am going to divide the defendants into two groups.  The

18   first group of eight defendants will be the defendants who

19   are charged with making corrupt donations to the University

20   of Southern California to gain admission for their children

21   through the so-called side door and who were not involved in

22   the alleged test cheating or with other universities.

23        Accordingly, group one to be tried in October will

24   be defendants Abdelaziz, the Blakes, Giannulli, Loughlin,

25   Wilson, Zadeh and Zangrillo.  I expect the impanelment of the

1    jury in this case will not be easy and will take several

2    days.  So we will begin impanelment on Monday, September 28,

3    and continue from day to day until the jury is picked.  The

4    trial itself will begin on Monday, October 5, and will

5    proceed day to day thereafter.

6              I believe this trial can be completed in four

7    weeks.  But if it is not, we will keep going, and it will be

8    completed well before Thanksgiving.  As a safety valve, I am

9    going to schedule a status conference some time during the

10   summer, probably late in July, to revisit this schedule and,

11   if necessary, determine whether one or two defendants need to

12   be deferred until a subsequent trial.  But all counsel for

13   the named defendants are to be prepared to try this case as

14   it is currently scheduled.

15             The second trial involving the remaining defendants

16   will begin in January, probably Monday, January 11, 2021, and

17   follow a similar course.  Any motions to sever or oppose

18   these groups must be filed on or before April 1 in accordance

19   with Magistrate Judge Kelley's existing schedule for motions.

20             I am also going to amend the back end for the

21   filing of dispositive motions.  Those motions will be due as

22   originally scheduled on April 1, but the government's

23   opposition memorandum will be due on April 30.  And replies,

24   if any, by May 15.  Hearing on those motions, if any, will be

25   in early June.  Are there any questions, counsel?

1          Hearing none, we will proceed to some other matters

2     that I have in mind.  Let's give them a date for the status

3     conference in late July, avoiding my MDL conflict.

4          THE CLERK:  How about we could do Tuesday the 28th

5     at 3 p.m.?

6          THE COURT:  Tuesday, July 28 at 3 p.m. there will

7     be a status conference here in this courtroom.  Any problem

8     with that date for anybody?  Okay.  I also want to set a

9     final pretrial conference the week before we impanel.  Again

10    I also have to avoid MDL conflict, but early that week.

11         THE CLERK:  Tuesday, September 22 at 3 p.m.

12         THE COURT:  Tuesday, September 22 at 3 p.m.  Any

13    problem with that date?  Okay.  I am concerned about pretrial

14    publicity.  Needless to say, this is a high profile case, but

15    it is not going to be tried in the newspapers or on the

16    Internet.  And counsel are forewarned that if I become aware

17    that counsel for either the government or the defendants is

18    not exercising appropriate constraint in that regard, there

19    will be consequences.

20         And finally, let me say that I have heard from

21    Magistrate Judge Kelley who has informed me that her ruling

22    on production or other matters will be entered forthwith.  Is

23    there anything else that needs to come to my attention at

24    this conference?  Anything anybody wants to bring up?

25    Mr. Weinberg?

1          MR. WEINBERG:  Just, Your Honor, in order for us to

2     have the trial in the fall as scheduled, we would ask the

3     Court to not follow the local rule on schedule which would

4     provide exhibit and witness lists just seven days before

5     trial.  With eight defendants having their own universes of

6     discovery, there's over 3.2 million pages in all, it would

7     help all the parties for Your Honor to set an exhibit

8     production list --

9          THE COURT:  Good point, Mr. Weinberg.  Is there any

10    reason why we can't alter those dates as far as the

11    government is concerned?

12         MR. ROSEN:  No, Your Honor.  I think we should

13    probably confer with each other about applicable dates.

14         THE COURT:  Why don't you do that, Mr. Weinberg,

15    with the government, and give me all of your proposed dates

16    to in limine motions, responses to in limine motions,

17    responses to witnesses and exhibits, the proposed voir dire

18    questions for the jury panel.  All of those in my normal

19    sequence go three weeks, two weeks, and one week before

20    trial.  In this case they can be five, four, and three.

21         MR. WEINBERG:  Thank you, Judge.

22         THE COURT:  I think your point is well taken.  This

23    is too much material to wait until the last week.

24         MR. WEINBERG:  Thank you, sir.

25         THE COURT:  You're welcome.  Anybody else?

1    Anything from the government?

2          MR. ROSEN:  Now that we have a trial date, Judge, I

3    just want to inform the Court that we will be doing a very

4    early production of *Jencks* material in this case, getting

5    everything out.  That will be forthwith provided.

6          THE COURT:  That is appropriate.  I am not going to

7    make this into a motion hearing, but I know this matter that

8    was filed late yesterday afternoon is very serious.  I take

9    it the government is going to have some reasonable

10   explanation for the Court quickly.

11         MR. ROSEN:  Absolutely, Judge.  Just very briefly.

12   The dispositive issue is the fact that in the notes we

13   believe -- First of all, these were taken three or four days

14   after Rick Singer began cooperating with the government.  He

15   obviously wasn't being very forthright.  He was writing these

16   notes.  These were directed to his lawyer.  He sent these

17   notes to his lawyer.  His lawyer afterwards claimed privilege

18   over these notes.

19         In the top portion of the note that was filed, the

20   note that's blacked out, that's Singer's plea colloquy.

21   That's why we carved this aside for a privilege review.

22   Because although we had downloaded his phone --

23   unfortunately, it's blacked out in the filing, but it says,

24   "Thoughts I need to start my plea with.  Where it all

25   started."

1          At that point we hadn't charged anyone in this

2     case, and we were very concerned about inadvertently looking

3     at privileged material that he was sending to his lawyer.  We

4     had a discussion with him later, and we stopped looking at

5     the notes because of that.  All of these notes were sent to

6     his attorney.  The issue in the note that's been flagged by

7     defendants is simply that the payments were going to the

8     program, not the coach, and he would say it was a donation.

9          Judge, that's our theory of the case that we've

10    been proceeding on for the entirety of this case.  We have

11    disclosed that to the defendants on numerous, numerous

12    occasions.  In footnote 17, the very first wiretap affidavit,

13    we say that.  "Investigators analyzing Singer's bank records

14    have seen payments directly to university athletic programs

15    in addition to payments to individual coaches.  I believe

16    that these payments to athletic programs are also payments in

17    furtherance of a fraudulent scheme even though universities

18    are receiving a portion of the money because I believe the

19    universities are unaware that the coaches and/or

20    administrators are recruiting those students in exchange for

21    the monetary payments."

22          We have disclosed this in charging documents.  We

23    have written motion responses in this case stating that, "The

24    parents were told that the money was going to the program and

25    this was still a bribe because these were fake athletes being

 1  recruited."

 2        Page 21 of docket 736 we write, "Contrary to the

 3  defendants' suggestion, the government has never contended

 4  that Singer told the Giannullis that their money would be

 5  directed to Heinel personally.  Rather the Giannullis are

 6  charged with conspiring to bribe Heinel to facilitate their

 7  daughter's admission to USC as a fraudulent athletic recruit

 8  in exchange to a contribution to a USC fund that benefited

 9  Heinel in breach of her duty to honest services to USC."

10        We've disclosed all the evidence, numerous calls,

11  emails, Singer tells his clients that the money is going to

12  the program, and he characterizes this as a donation.

13        In our discovery responses, we have provided the

14  defendants with examples of these calls.  We have written

15  letters to the defense explaining that Singer told the

16  Giannullis and others that the money was going mostly to the

17  program.  I did that most recently at the end of January

18  2020.  The first 50,000 went directly to USC program.  And

19  Singer, to the extent he recalled it, he believed that the

20  Giannullis knew that part of the $200,000 sent to KWF was

21  going to a USC program.  They did not specifically discuss

22  the amount that would go to the USC program out of the

23  $200,000.

24        *Brady* is a rule of fundamental fairness, not a

25  discovery rule.  We cannot suppress what the defendants have

1    already been told because that's obviously within their
2    knowledge.  We have told the defendants several times, and we
3    will continue to do so, that this case is a bribery case
4    about payments to a program that Singer characterized as a
5    donation.  It was a quid pro quo.  Pay the money.  Their kids
6    would be recruited guaranteeing them effective admission for
7    a sport they either didn't play well or, in the Giannullis
8    case, they didn't play at all.
9           Judge, Doug Hodge, Michelle Janavs and Elizabeth
10   Henriquez pled guilty in this court to honest services fraud
11   on the fact that those payments went to the program, and that
12   they understood it was a bribe because they were corrupt
13   payments.  Your Honor accepted those pleas.  That was in
14   their plea colloquies, their PSR's, and their sentencing
15   memos that have been filed.
16          Doug Hodge even wrote an op-ed in the Wall Street
17   Journal saying this as well.  Two have been sentenced based
18   on this.  And in the most recent sentencing involving
19   Michelle Janavs where the parties agreed that the money was
20   going to be used by USC for their program, Your Honor
21   repeatedly referred to this as a bribery case because it is.
22   You pay the money.  You get in as a fake athlete.
23          By the way, just because Singer said the money was
24   going to the program, doesn't mean that that's what the
25   parents took away from it.

1          Marci Palatella, a charged defendant, wrote in a

2     text message to her friend after paying money to the

3     "program", which by the way, was filtered through basically a

4     sham charity, "I don't think most of it went to the school,

5     between us only.  Please never repeat anything."  The notes

6     that we produced are consistent with the government's case

7     and cumulative of other evidence already provided to the

8     defendants.

9          And as Your Honor knows in repeatedly stating that

10    this is a bribery case on these very facts calling something

11    a donation or making it out to the program does not make it

12    legitimate and certainly does not make it a donation.  USC or

13    any school does not have a legitimate admissions process for

14    fake rowers, fake football players, fake pole vaulters, or

15    fake anything whether you call it a donation, a payment, a

16    bribe, or simply nothing at all.  And I direct the defendants

17    to Section 2569 of the --

18          THE COURT:  All right.  I think we've had enough of

19    your response.

20          MR. ROSEN:  What I'm saying is that as soon as we

21    completed the tape review, we turned it over.  Should we have

22    done that earlier?  Absolutely.  We've made a concerted

23    effort.  We're going to produce *Jencks* as soon as possible.

24    We're going to produce all the iPhone images probably early

25    next week.  We're going to get this done, and we're going to

1    get this tried.  I do point out if this was so exonerating
2    for the defendants rather than cumulative, they'd want to try
3    this case.  I want to try this case.
4           THE COURT:  Thank you.  I will give the defendants
5    an equal five minutes to respond.  If each one wants to
6    speak, you understand five minutes total.
7           MR. TRACH:  I understand.  A few things, Your
8    Honor.  First off, in the same way that saying that something
9    is a donation doesn't necessarily make it a donation if
10   there's other evidence that suggests it's a bribe, turning a
11   donation into a bribe doesn't make it a bribe either.  And
12   that's what happened here.  In fact, we know that the U.S.
13   Attorney himself in the press conference announcing this case
14   said this case is not about making donations to a school to
15   help your children get into the school.  That happens.  It's
16   perfectly lawful.  The question comes behind whether this
17   was, in fact, a bribe.
18          And what we have here in this statement is Singer
19   himself, immediately upon cooperating, saying the government
20   wants me to say that these were bribes.  What I told the
21   parents was that these were donations, not bribes.  They want
22   me to lie.  They're yelling at me to get me to say something
23   else, Your Honor.
24          And, yes, Your Honor has sentenced people.  And in
25   those findings you have found based on the information that

1    the government gave you that what was paid was bribes.  What

2    Your Honor didn't have was the fact that Singer himself

3    immediately upon cooperating was saying that, in fact, he

4    told the parents that these payments were legitimate and that

5    they were not, in fact, bribes.  That is not information that

6    the Court had.  That's not information that Judge Woodlock

7    had when he sentenced Mr. Bizzack.  It's not information that

8    any the other judges had who sentenced people.

9           And if you look at what was said about those people

10   in those sentences hearings, Your Honor, it was not that this

11   was generally a bribe because it went to a USC payment, the

12   government stood up and said the payments that were made to

13   the Key Worldwide were made by those defendants with the

14   understandings that those bribes were going to be paid either

15   to the school or to the coaches.  And that's not true.  And

16   they knew it was not true because Singer said that, Your

17   Honor.

18          They did not share that with the Court.  They did

19   not share that with defense counsel who pled guilty.  They

20   did not share that before those people were sentenced, and

21   that is a problem.  And it is a big problem, Your Honor,

22   because it is exonerating information.

23          The fact that somebody made the donation to USC

24   with the goal of getting their children into USC is not a

25   crime.  Everybody admits that that's not a crime.  And

1  calling it a bribe because you made the payments with the

2  expectation that you would get something in response doesn't

3  make it a bribe.  And the fact of the matter is this whole

4  case keys in on what is it that the people who made these

5  donations believed that they were doing in paying money to

6  USC or paying money to the Key Worldwide Foundation.  Were

7  they making legitimate donations that were obviously going to

8  help their kids get into school?  Or were they instead

9  somehow lining somebody's pockets or giving somebody money in

10  exchange for that person corruptly giving them something that

11  they wouldn't get otherwise?  That's the whole case.

12           And the fact is that this evidence demonstrates

13  that it was the former and not the latter.  And that's not

14  anything like what's been produced to us in discovery today.

15  This is exactly what we've been asking for, and we have been

16  told it doesn't exist.  And that is an enormous problem, Your

17  Honor.  And what I would ask is that rather than having us

18  have to file our dispositive motion on this issue that is

19  before you, Your Honor, as instructed on the timeline, that

20  we be permitted to file before Judge Kelley who has this

21  *Brady* issue before her to be able to develop the necessary

22  record that we need to develop on this so we can file an

23  informed motion before Your Honor informed by all the facts,

24  not just what we've received belatedly.

25           MR. KELLY:  Your Honor, one minute left on the

clock before AUSA Rosen responds.  Putting aside whether or
not these notes are actually privileged and whether you
should go to the attorney rather than the cooperating witness
to waive the privilege, put that aside.  The note itself
talks about a "loud and abrasive call".  We haven't seen that
call.  They haven't disclosed that call to us.

They have over 50 hours of supposed nonpertinent
calls.  They were probably sitting on that.  And that's pure
*Brady* if the agent is telling this cooperating witness to lie
about our clients.  If that call exists, we would like it.

THE COURT:  Wait a minute, counsel.  The Magistrate
Judge is going to handle those discovery issues.  This court
is going to handle the motion itself under the schedule that
I have directed earlier today.

MR. KELLY:  Thank you.

THE COURT:  Briefly.

MR. ROSEN:  There is nothing in these notes that
suggest what they were doing is legitimate.  Absolutely
nothing.  And the fact is that they blacked out a lot of the
portions of the notes where Rick is writing that it wasn't
legitimate.  "Spoke to Augustin."  That's Huneeus.  He's pled
guilty.  "He wanted to know I was backing Augustin as hard as
anything.  I have confirmed I spoke to Donna Heinel, and
Augustin will be admitted by the second week of November.
Spoke about the fake photo I put on the profile."  That's not

1    legitimate.  A legitimate donation is when you don't get

2    anything for that donation.

3            THE COURT:  All right.  I expect that I will see

4    that in writing later this month.  Is there anything else

5    that needs to -- let me talk to my Deputy a minute.

6            My Deputy brings up a good point.  Is there a

7    necessity for a motion to exclude time?

8            MR. WEINBERG:  We certainly agree this is a complex

9    case.  There are motions pending that would provide a second

10   basis for a speedy trial exception, and there will be motions

11   throughout the next few months.  The defendants all assent

12   to --

13           THE COURT:  Let that not be avoided, counsel.  It

14   needs to be resolved.  Anything else?

15           MR. KENDALL:  Your Honor, I want to take ten

16   seconds.  I know we're imposing on your patience.  Mr. Rosen

17   made directly incorrect statements that are related to my

18   client.  Those documents that he's talking about show that my

19   client's son was they were told he was a great athlete.  He

20   was a member of the U.S. Junior Olympic Development Team.  He

21   was recruited.  He came and he played on the USC team and was

22   a water polo player at USC.  For them to claim that

23   everybody's a false athlete and that's what those documents

24   show, it's just not an accurate picture for the record.

25   Thank you, Your Honor.

1          MR. WEINBERG:  If I could burden the Court for ten

2    more seconds.  This evidence will also reflect that USC is

3    not a victim of wire or mail fraud.  They as an institution

4    that sought these donations and received them and welcomed

5    them.

6          THE COURT:  Thank you, counsel.  We are adjourned.

7          THE CLERK:  All rise.

8          (Court recessed at 12:44 p.m.)

```
 1                    - - - - - - - - - - -
 2                        CERTIFICATION
 3
 4          I certify that the foregoing is a correct
 5    transcript of the record of proceedings in the above-entitled
 6    matter to the best of my skill and ability.
 7
 8
 9
10    /s/ Joan M. Daly                 February 28, 2020
11
12    _____             _____
13    Joan M. Daly, RMR, CRR           Date
      Official Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```