# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------x
                                                     :
UNITED STATES OF AMERICA,                            :
                                                     :
                Plaintiff,                           :
                                                     :
        -against-                                    :   Criminal No. 1:19-cr-10080-NMG
                                                     :
DAVID SIDOO, ET AL,                                  :
                                                     :
                Defendant.                           :
                                                     :
                                                     :
-----------------------------------------------------x
```

## EXHIBITS IN SUPPORT OF NON-PARTY UNIVERSITY OF SOUTHERN CALIFORNIA'S OBJECTION AND MOTION TO MODIFY MAGISTRATE JUDGE'S ORDER ON DEFENDANT ZANGRILLO'S RULE 17(c) SUBPOENA

| Exhibit | Description | Citation |
|---------|-------------|----------|
| A | USC Admission Statistics – Special Interest Fall Admission Applicants | Zangrillo 000231 |
| B | USC Admission Statistics – Special Interest Transfer Admission Applicants | Zangrillo 000232 |
| C | Declaration of Timothy Brunold (Aug. 22, 2019) | D.E. 532-3 |
| D | Declaration of Timothy Brunold (Sept. 12, 2019) | D.E. 557-2 |
| E | Subpoena to Produce Documents, Information, or Objects, *United States v. Sidoo*, No. 1:19-cr-10080-NMG (July 11, 2019) | D.E. 458 |
| F | Email from Douglas Fuchs to Martin Weinberg and Accompanying Attachment (Oct. 18, 2019) | |
| G | Email from Martin Weinberg to Douglas Fuchs (Oct. 18, 2019) | |
| H | Sealed Letter from Douglas Fuchs to Magistrate Judge M. Page Kelley (Feb. 6, 2020) (Filed Under Seal & *ex parte*) | |

# EXHIBIT A

# USC Freshman Admission - Fall 2018 Cycle

| | All USC | ATHL VIP | UADV | TRUS | DEAN | PRES | PROV | ALL VIP* |
|---|---|---|---|---|---|---|---|---|
| Freshman Applications | 65,291 | 45 | 399 | 291 | 266 | 77 | 11 | 846 |
| Fall Admits | 8,339 | 15 | 143 | 118 | 114 | 34 | 4 | 316 |
| Admit Rate | 12.77% | 33.33% | 35.84% | 40.55% | 42.86% | 44.16% | 36.36% | 37.35% |
| # Admitted as % of Total Applicants | 12.77% | 0.02% | 0.22% | 0.18% | 0.17% | 0.05% | 0.01% | 0.48% |
| SAT (25th%-75th%) | 1430-1540 | 1360-1470 | 1400-1530 | 1360-1500 | 1360-1500 | 1360-1500 | 1295-1368 | 1400-1520 |
| GPA (25th%-75th%) | 3.79-4.00 | 3.47-3.94 | 3.54-3.93 | 3.60-3.90 | 3.46-3.91 | 3.47-3.94 | 3.49-3.90 | 3.55-3.93 |
| Freshman Applications | 65,291 | 45 | 399 | 291 | 266 | 77 | 11 | 846 |
| Spring Admits | 1434 | 13 | 107 | 57 | 65 | 16 | 2 | 207 |
| Admit Rate | 2.20% | 28.89% | 26.82% | 19.59% | 24.44% | 20.78% | 18.18% | 24.47% |
| # Admitted as % of Total Applicants | 2.20% | 0.02% | 0.16% | 0.09% | 0.10% | 0.02% | 0.00% | 0.32% |
| SAT (25th%-75th%) | 1380-1520 | 1290-1430 | 1360-1470 | 1360-1470 | 1350-1470 | 1320-1430 | 1273-1378 | 1360-1470 |
| GPA (25th%-75th%) | 3.63-3.96 | 3.38-3.80 | 3.39-3.83 | 3.35-3.79 | 3.38-3.81 | 3.39-3.63 | 2.83-3.09 | 3.39-3.82 |

* Note that applicants can have more than one tag.  However, ALL VIP is a unique count of students.

Freshman Admit VIP Tag 2018.xlsx

LKH

CONFIDENTIAL

USC-Zangrillo-000231

# EXHIBIT
# B

# USC Transfer Admission – Fall 2018 Cycle

| | All USC | ATHL VIP | UADV | TRUS | DEAN | PRES | PROV | ALL VIP* |
|---|---|---|---|---|---|---|---|---|
| Transfer Applications | 9,781 | 21 | 130 | 65 | 71 | 19 | 2 | 239 |
| Fall Admits | 2,338 | 15 | 79 | 33 | 42 | 15 | 2 | 146 |
| Admit Rate | 23.90% | 71.43% | 60.77% | 50.77% | 59.15% | 78.95% | 100.00% | 61.09% |
| # Admitted as % of Total Applicants | 23.90% | 0.15% | 0.81% | 0.34% | 0.43% | 0.15% | 0.02% | 1.49% |
| GPA (25th%-75th%) | 3.62-3.93 | 3.34-3.79 | 3.42-3.84 | 3.44-3.83 | 3.41-3.87 | 3.39-4.00 | 3.65-3.74 | 3.41-3.84 |
| Transfer Applications | 9,781 | 21 | 130 | 65 | 71 | 19 | 2 | 239 |
| Spring Admits | 656 | 2 | 12 | 9 | 7 | 0 | 0 | 23 |
| Admit Rate | 6.71% | 9.52% | 9.23% | 13.85% | 9.86% | 0.00% | 0.00% | 9.62% |
| # Admitted as % of Total Applicants | 6.71% | 0.02% | 0.12% | 0.09% | 0.07% | 0.00% | 0.00% | 0.24% |
| GPA (25th%-75th%) | 3.55-3.91 | 3.34-3.47 | 3.24-3.46 | 3.37-3.78 | 3.05-3.52 | N/A | N/A | 3.26-3.68 |

* Note that applicants can have more than one tag. However, ALL VIP is a unique count of students.

CONFIDENTIAL          USC-Zangrillo-000232

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------x

UNITED STATES OF AMERICA,

             Plaintiff,

  -against-

DAVID SIDOO, ET AL

             Defendant.

-----------------------------------------------------------x

No. 1:19-cr-10080-NMG

**DECLARATION OF TIMOTHY BRUNOLD IN SUPPORT OF NON-PARTY
UNIVERSITY OF SOUTHERN CALIFORNIA MOTION TO QUASH**

     I, Timothy Brunold, declare as follows:

1.     I am the Dean of Admission at the University of Southern California ("USC").  I

graduated from USC in 1992, magna cum laude with a degree in international relations.  I have

worked in the Admission Department at USC since 1999.  I served as the Director of

Undergraduate Admission from 2005 to 2010.  Since August 2010, I have served as the Dean of

Admission.

2.     I am a participating member of USC's Athletics Admission Subcommittee, which

evaluates the applications of prospective student-athletes.  Although being designated as a

prospective student-athlete does not guarantee admission to USC, it does enhance a prospective

student's chances of admission because USC considers the applicant's exceptional athletic

talents as part of a holistic review of the student's application.

3.     Various departments and individuals within USC can "tag" a student's application.  This

allows USC personnel to keep track of students for whom there is a special interest.  Although

USC does not specifically track the percentage of special interest students who are admitted, the

majority of students who receive a special interest tag are not admitted.  Students who receive special interest tags must still satisfy a number of other criteria, including but not limited to grades, test scores, academic rigor, and extracurricular activities, in order to be admitted.  Amber Zangrillo received a special interest tag from the Athletics Department.

4.      USC does not possess any documents containing a complete list of students who received a special interest tag.  This information would have to be compiled and assembled, which would be time-consuming and burdensome.

5.      There is no possible way to consistently determine which employees issued special interest tags to which students, or how many special interest tags were issued by a particular employee.  There are no documents that contain such information, and no realistic way to identify and compile such information.

6.      The Admission Department has no involvement with respect to donations or potential donations.  The Admission Department does not track donations by an applicant's family.  Information concerning donations by an applicant's family is not included in an applicant's file.  If I had known that a prospective student's family had donated $50,000 or $100,000 to USC, it would not have affected the Admission Department's decision whether to admit the student.


I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on August 21, 2019, at Los Angeles, California.


Timothy Brunold

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :
                        Plaintiff,                    :
                                                      :
        -against-                                     :   No. 1:19-cr-10080-NMG
                                                      :
DAVID SIDOO, ET AL                                    :
                                                      :
                        Defendant.                    :
                                                      :
                                                      :
------------------------------------------------------x

## DECLARATION OF TIMOTHY BRUNOLD IN SUPPORT OF NON-PARTY UNIVERSITY OF SOUTHERN CALIFORNIA MOTION TO QUASH

I, Timothy Brunold, declare as follows:

1.      I am the Dean of Admission at the University of Southern California ("USC").  I graduated from USC in 1992, magna cum laude with a degree in international relations.  I have worked in the Admission Department at USC since 1999.  I served as the Director of Undergraduate Admission from 2005 to 2010.  Since August 2010, I have served as the Dean of Admission.

2.      Various departments and individuals within USC can apply a special interest "tag" to a student's application, as there are 22 colleges within USC.  Students who receive such tags must still satisfy a number of other criteria, including but not limited to grades, test scores, academic rigor, and extracurricular activities, in order to be admitted.

3.      USC does not possess any documents containing a complete list of students who received a special interest tag.  This information would have to be compiled and assembled, which would be time-consuming and burdensome.

4.      When I referenced a "university-wide VIP spreadsheet" in a March 10, 2016 email

(attached to Defendant Zangrillo's Opposition as Exhibit 3), I was referring to a document that

could be created through compiling data maintained in our internal application processing

system.  To the extent any document was created in March 2016, I did not maintain either a hard

copy or electronic copy, and I do not believe a copy exists today.

5.      I have reviewed the charts related to special interest students that appear to have been

created and maintained by Donna Heinel (attached to Defendant Zangrillo's opposition as

Exhibits 1-2, 4-6).  The Office of Admission does not maintain any comparable document listing

special interest students, their sponsors, and information relating to why they may have been

designated.   I do not recall anyone other than Heinel providing me with the names of special

interest students in this format.

6.      The students listed in Ms. Heinel's internal charts only represent a subset of the overall

number of applicants who receive special interest tags, and extrapolating percentages based on

Ms. Heinel's internal charts is not an accurate representation of the number of students who

receive a special interest tag and are admitted.  When I previously stated that a majority of

students who receive special interest tags are not admitted, I was focused on freshmen fall

admission.

7.      My preference is that the department designating a special interest student apply the tag

directly in USC's student information system.  However, I am often provided the names of

special interest students directly.  That is often done over the phone.  When I am contacted

concerning a special interest student, the only information that is relevant is the name of the

student so that I or someone on my staff can go into the student information system and enter the

special interest tag.  I have reviewed the February 7, 2014 email that Heinel sent me (attached to

Defendant Zangrillo's Opposition as Exhibit 4).  Other than the applicant's name, I did not want, request, or rely upon any other information, including the employee connected to the student or any internal notes Heinel kept about the student.  When I responded to Heinel that I would "track" these students, I simply meant that I would make sure these students received a special interest tag.

8.      Students who receive a special interest tag are evaluated in the same pool with the same criteria as students without a special interest tag.  Receiving a special interest tag primarily helps the University monitor applications for prospective students for whom there is a unique interest.  If an applicant is on the cusp of admission, having a special interest tag might garner a second review of their application.  This is similar to an applicant who is a potential ROTC participant or a first-generation college student, both of which are other tags that a student's application may receive.  No single tag ensures a student will be admitted; rather, the applicants who receive a tag, must still satisfy a number of other criteria, including but not limited to grades, test scores, academic rigor, and extracurricular activities, in order to be admitted.

9.      If USC became aware that a student knowingly submitted an application with fraudulent information, that student would not be admitted to USC, regardless of whether the student received a special interest tag.

10.     I do not recall ever sending, giving, or transmitting any prospective student's application to the President of USC for review.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on September 12, 2019, at Los Angeles, California.

_Timothy E. Brunold_

Timothy Brunold

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT
# F

| | |
|---|---|
| **From:** | Fuchs, Douglas |
| **To:** | Martin G. Weinberg |
| **Cc:** | "Fuller, Anthony" |
| **Subject:** | zangrillo.usc.17c.letter.doc DRAFT.doc A (002).doc |
| **Date:** | Friday, October 18, 2019 10:10:17 AM |
| **Attachments:** | zangrillo.usc.17c.letter.doc DRAFT.doc A (002).doc |

Marty, here is the edited letter.  The reason I wanted to move beyond the letter is that it is outdated with the passage of time.  For instance, my edits reflect what USC is willing to produce, not what it is considering producing.  I removed the so-called lobbying emails from the letter because USC is not willing to produce them at this time given your willingness to review a portion of the documents USC is willing to produce to determine whether you actually need the lobbying emails (understanding that you are reserving your rights and will likely continue to request them).  In addition the letter does not cover the timing of production, which I am trying to pin down today.  And the letter is outdated with regard to the protective order as several changes were made to the document and I'm trying to get sign off on that today as well.  Please take a look at the letter and let's schedule a time to discuss it this morning.  Thanks,

Doug

# MARTIN G. WEINBERG, P.C.
## ATTORNEY AT LAW

*20 PARK PLAZA, SUITE 1000*
*BOSTON, MASSACHUSETTS 02116*

————
*(617) 227-3700*
————
*FAX (617) 338-9538*
————
*NIGHT EMERGENCY:*
*(617) 901-3472*

*EMAIL ADDRESSES:*
————
*owlmcb@att.net*

October 8, 2019

**VIA EMAIL**
Douglas Fuchs
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

      RE:   **Rule 17(c) Subpoena**
            ***United States v. David Sidoo, et al*, Crim. No. 19-10080**

Dear Doug:

    I am writing to memorialize our settlement discussions which were intended to resolve Robert Zangrillo's Motion for Rule 17(c) Subpoena, *see* Dkt. 432, and USC's Motion to Quash, *see* Dkt. 532. Based on our conversation on Monday, I understand that your client is deciding whether to produce the following (subject to redaction to protect student identities):

1. ~~All C~~communications ~~exchanged by USC athletics, admissions, development, and/or the President's office~~ relating to Amber Zangrillo's admission to USC in 2018 found in the search of emails of over 50 custodians in USC's Athletics Department, Office of Admission, University Advancement, and Office of the President;

2. A detailed declaration by an individual at USC with first hand knowledge resulting from his or her review of databases as to the number of applicants to USC for the 2018 academic year who were tagged special interest, as well as the percentage of those applicants who were subsequently admitted to USC including specific breakdowns for each of the 6 tags used to particularize the source of a special interest applicant eg President, Development, Athletics, Deans, ~~VIP,~~ etc and that a declaration will be prepared that will detail the basis for the conclusions*;

3. ~~All D~~documents ~~sent or~~ received by Tim Brunold ~~and/or Kirk Brennan or persons acting at their behalf~~ listing students to receive special interest designations~~discussing students tagged special interest or VIP including lists received from all sources who conveyed this~~

~~information by email~~ including but not limited to <u>lists emailed by</u> Engineering, Business (Marshall), Development, etc ~~as well as incoming emails advocating for specific special interest applicants and outgoing emails informing the specific entities as to the decisions by admission~~; and

4. A chart listing applicants for the 2018 academic year, ~~(by number or by initials with full names redacted)~~ including fall and spring term and transfers, who were tagged special interest, including any and all notes or comments regarding those applicants <u>redacted to anonymize the student and anyone sponsoring the student</u>.

5. ~~A comparison of the~~ <u>For applicants who received</u> special interest <u>tags, were admitted and matriculated, information in USC's University Advancement database reflecting the donations made by family members or others associated with the student from April 1, 2017 to April 1, 2019, comparable to the donation made by Robert Zangrillo.</u> ~~tagged applicants who were admitted and agreed to attend USC and donations received from parents, grandparents, or others identified with such a student for the twelve month period before and after the Admissions decision to admit for the 2018 academic year~~

I have also reviewed the draft protective order that you provided. The only amendment that I would request is the addition of a paragraph making clear that I may provide the documents produced by USC to the government as required by reciprocal discovery rules, ~~and that I may provide the documents to co-defendants provided that the Government and those co-defendants agree to comply with the terms of our protective order which would govern use of the specifically received documents and information provided by you.~~

The foregoing is intended to resolve all outstanding issues raised by Mr. Zangrillo's pretrial Motion for Rule 17(c) Subpoena and USC's Motion to Quash, but Mr. Zangrillo reserves the right to issue a further subpoenas for testimony and documents to USC employees or former employees if the need arises before and in anticipation of the trial in this matter.

Please do not hesitate to contact me at 617-227-3700 if you have any questions or would like to discuss.

Yours truly,

Martin G. Weinberg

\* If the Government objects to such future testimony whether offered as a business record, or through testimony, on grounds other than relevance, the defendant and USC agree to allow the Party's access to the underlying materials subject to the Protective Order

# EXHIBIT
# G

| | |
|---|---|
| **From:** | Martin G. Weinberg |
| **To:** | Fuchs, Douglas |
| **Cc:** | "Fuller, Anthony"; owlmgw@att.net; "Michael Pabian" |
| **Subject:** | RE: zangrillo.usc.17c.letter.doc DRAFT.doc A (002).doc |
| **Date:** | Friday, October 18, 2019 10:37:04 AM |

[External Email]

Edits raise the following issues:

As to paragraph 3, the elimination of Brennan and representatives of Brennan and Brunold would eliminate lists of tagged students being sent to Admissions through others than Brunold. Further, the deletion of lists sent by Admissions to the various departments advising them of decisions is not acceptable. Finally, the word "documents" needs to include lists sent by email, added by depts to the database, etc rather than just a list sent as a word doc or excel

As to par 4 - I do not agree that notes, comments identifying the sponsor should be redacted. By charts we are including the VIP Spreadsheet and VIP Transfer Spreadsheet redacted.

As to par 5 - what is mean by "comparable to RZ donation"?

We can draft an additional paragraph as to how we intend to resolve the advocacy email issue - I want to schedule a court hearing since it is unlikely that a review of the lists will obviate my need for them. My offer to view the lists was based on a timeline that would not put off this requirement. As things drag, without a hard time line of receiving the docs by mid-week and having a hearing date by end of the week, I think we should just assume this needs to be resolved and get a date for a hearing.

All of this is dependent on a production of docs next week.

After I review the edits to PO we should speak

Thanks

Marty

Martin G. Weinberg, Esq.
20 Park Plaza
Suite 1000
Boston, MA  02116
(617) 227-3700 - Office
(617) 901-3472 - Cell

=================================This Electronic Message contains information from the Law Office of Martin G. Weinberg, P.C., and may be privileged. The information is intended for the use of the addressee only. If you are not the addressee, please note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.

**From:** Fuchs, Douglas <DFuchs@gibsondunn.com>
**Sent:** Friday, October 18, 2019 10:10 AM
**To:** Martin G. Weinberg <owlmgw@att.net>
**Cc:** 'Fuller, Anthony' <anthony.fuller@hoganlovells.com>
**Subject:** zangrillo.usc.17c.letter.doc DRAFT.doc A (002).doc

Marty, here is the edited letter.  The reason I wanted to move beyond the letter is that it is outdated with the passage of time.  For instance, my edits reflect what USC is willing to produce, not what it is considering producing.  I removed the so-called lobbying emails from the letter because USC is not willing to produce them at this time given your willingness to review a portion of the documents USC is willing to produce to determine whether you actually need the lobbying emails (understanding that you are reserving your rights and will likely continue to request them).  In addition the letter does not cover the timing of production, which I am trying to pin down today.  And the letter is outdated with regard to the protective order as several changes were made to the document and I'm trying to get sign off on that today as well.  Please take a look at the letter and let's schedule a time to discuss it this morning.  Thanks,

Doug

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

 Virus-free. www.avast.com

# EXHIBIT H
# FILED UNDER SEAL AND
# EX PARTE