# EXHIBIT D



U.S. Department of Justice

***Andrew E. Lelling***
United States Attorney
District of Massachusetts

*Main Reception: (617) 748-3100*                                John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

October 31, 2019

**VIA E-MAIL**
Counsel of Record

      Re:    *United States v. David Sidoo, et al.*
               Case No. 19-cr-10080-NMG

Dear Counsel:

We write in response to your letters of: (a) September 27, 2019, requesting purported *Brady* material; (b) September 27, 2019, concerning other discovery matters; and (c) October 11, 2019, concerning purported technical production issues. We address each letter, in turn, below.

      **PURPORTED *BRADY* REQUESTS**

Your letter of September 27, 2019, styled as a request pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), and Local Rule 116.2, requests that the government produce "[a]ll evidence" regarding: (a) William "Rick" Singer's representations to clients; (b) the "Colleges' Knowledge of and Attitudes Toward the Alleged Conduct;" and (c) various topics including internal investigations conducted by the victim colleges.

*Brady* and its progeny do not create a general right to criminal discovery. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). Rather, *Brady* obligates the government "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011). "The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*." *Id.* at 268. The government is familiar with its *Brady* obligations, has complied with them, and will continue to do so.

Your sweeping requests for "all evidence" in a variety of generic categories amount to little more than fishing expedition. None of your requests articulates – let alone with specificity – what specific evidence the defendants expect to find, why the defendants believe that evidence would be found in the requested materials, or why that evidence would be favorable and material to the defendants. *See Prochilo*, 629 F.3d at 268 (defendant's *Brady* request "cannot consist of mere

speculation," and defendant "should be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material"). To the contrary, your requests appear, on their face, to seek evidence that is quintessentially not *Brady*, insofar as it is immaterial to guilt or punishment, affirmatively inculpatory, and/or within the defendants' knowledge.

For example, many of your requests seek information about alleged representations that Singer made to "Clients," which you define to include, among others, "actual client[s], potential clients . . . and persons [Singer] claims to have been clients." *See, e.g.*, Requests 1-7, 11-12, 14-15. To the extent that Singer made representations to actual or potential clients who are not defendants in this case, such representations are, on their face, irrelevant to this case. Likewise, many of your requests seek information about purported representations concerning "Colleges," which you define to include, *inter alia*, "all colleges, graduate schools, and universities with whom Rick Singer communicated or claimed to have communicated about student admissions." *See, e.g.*, 4, 6, 12, 15. But, of course, the defendants are charged with conspiring to defraud specific colleges and universities through bribery and fraud. Evidence concerning Singer's communications with colleges and universities the defendants did *not* conspire to defraud – while conceivably *inculpatory* to the extent it suggests, for example, that the defendants chose the targeted colleges because there was an available bribe opportunity – is not favorable to the defendants, nor is it material to their punishment. Still other requests seek information concerning "Educational institutions," which you define to include not just colleges and universities with whom Singer communicated or claimed to have communicated about student admissions (whether or not those communications concerned the defendants) but also high schools and public school districts (regardless of whether the defendants' children attended those schools or lived in those school districts). Such requests are wildly overbroad.

Even to the extent the requests are narrowed to concern the defendants themselves, and the colleges and universities they conspired to defraud, several requests seek information that is affirmatively inculpatory, such as evidence that Singer and his employees misrepresented themselves as the defendants in communications with the College Board and the Educational Testing Service, discouraged the defendants from speaking to college employees about their payments, or advised defendants to route money through The Key. *See, e.g.*, Requests 9, 12, 14. Several requests seek information about events that occurred "without the [defendants'] knowledge" or that was otherwise unknown to them and/or that occurred after they agreed to commit the charged offenses. *See, e.g.*, Requests 8-10, 13, & 15-32. Such information is neither relevant nor material to the defendants' knowledge or intent at the time they are alleged to have committed the charged crimes. Likewise, several requests seek information concerning where the bribe payments were directed or how they would be spent. *See, e.g.*, Requests 1-3, 7, 11-15, 17. This information is also neither relevant nor material to whether the defendants understood the payments to be bribes or kickbacks. *See, e.g.*, *United States v. DeMizio*, 741 F.3d 373, 382 (2d Cir. 2014) (rejecting "contention that a payment in a private-sector scheme does not qualify as a kickback unless the defendant employee himself or herself receives the payoff") (favorably citing *United States v. Hausmann*, 345 F.3d 952, 954 (7th Cir. 2003), for proposition that kickbacks could include payments to charities defendant supported). And several requests seek information concerning statements allegedly made to the defendants. *See, e.g.*, Requests 1-15 & 29. Such

2

evidence, to the extent it exists, would of course be known to the defendants and would therefore not fall within the scope of *Brady*. *See United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) ("*Brady* applies to material that was known to the prosecution but unknown to the defense").

If, after reviewing the discovery, you continue to have a non-speculative basis to believe there is specific evidence in the government's possession that is favorable and material to the defendants, we would be happy to discuss those specific requests further. *See, e.g., United States v. Rose*, 11-10062-NMG, 2012 WL 1744757, at *4 (May 16, 2012) (holding that a "defendant must make some showing that the [purported *Brady*] material in question could contain favorable, material evidence," and "[t]hat showing cannot be based on speculation.") (internal quotations omitted).

### OTHER DISCOVERY MATTERS

*Expert Witnesses*: Inasmuch as no trial date has yet been set, we believe it is premature to discuss a timetable for expert disclosures.

*Protective Order*: You indicate that the defendants intend to ignore the designation of certain documents under the protective order by making "appropriate redactions of the relevant information." The government objects to your unilateral decision to circumvent the express terms of the protective order in the absence of additional information allowing us to assess whether your practice is sufficient. Please provide a list of documents you consider to be governed by this approach, and how you propose to handle those documents.

*Table of Contents*: The government has complied with the requirements of Local Rule 116.10 by providing multiple indices that identify the origin, type, and location of documents within the larger production. In addition, as you are aware, all discovery has been produced in a manageable electronic format on either hard drives or discs, which have been organized into labeled folders that include load-ready files so the defendants can uses that data in searchable electronic databases. Each production, moreover, has been accompanied by detailed letters describing the documents provided in the production, the location of the information on the hard drive or discs, and the corresponding Bates range for the information. Under such circumstances, the government need not produce more detailed indexes. *See, e.g., United States v. Cadden*, No. 14-10363-RGS, 2015 WL 13683814 (D. Mass. July 13, 2015) (denying request for more detailed indexes where government had produced detailed cover letters and searchable data in a production of over 8 million pages).

*Heinel Search Warrant*: The government produced to the defendants the search warrant application, affidavit, and order related to the search of a University of Southern California e-mail account identified as dheinel@usc.edu. *See* USAO-LP-000468 through USAO-LP-000559. The government has produced all records and data it seized pursuant to Attachment B of that search warrant.

**TECHNICAL ISSUES**

With respect to the technical issues you have identified in the government's productions, we believe it makes sense to schedule a call between technical staff from your law firms and our office. Please provide the contact information for your representative. We note, however, that many of the issues you raise – *e.g.*, missing metadata fields, missing native Excel files, etc. – appear to be a product of the way materials were produced to the government by third-parties. The defendants have the materials in the same format in which the government received them.

With respect to the financial records that have been produced, the government will re-produce those documents with Bates numbers. Finally, with respect to the mobile phone text messages, the government has produced all text messages in its possession between the defendants and Singer. The reports included in the government's production identify the participants in each text exchange, the content of the text, if available, as well as the date and time of each text. We believe this satisfies the government's Rule 16 obligations. *See, e.g., United States v. Murray*, No. 3:18-cr-30018-MGM, 2019 WL 1993785, *7 (D. Mass. May 6, 2019) (denying defense request for text message metadata from cooperator's cellphone).

\*   \*   \*

The government reiterates its request for reciprocal Rule 16 discovery.

Sincerely,

ANDREW E. LELLING
United States Attorney

By:   */s Justin D. O'Connell*
Eric S. Rosen
Justin D. O'Connell
Kirsten A. Kearney
Leslie A. Wright
Assistant U.S. Attorneys

4