# EXHIBIT QQ

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID SIDOO, et al.,<br><br>Defendants. | Case No. 19-cr-10080-NMG |

**AFFIDAVIT OF JOHN B. WILSON IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS INDICTMENT WITH PREJUDICE
OR, IN THE ALTERNATIVE, FOR SUPPRESSION OF EVIDENCE
BASED ON GOVERNMENTAL MISCONDUCT**

I, John B. Wilson, declare the following:

1. I am a defendant in this action. I make this affidavit pursuant to *Simmons v. United States*, 390 U.S. 377 (1968), and in support of Defendants' Motion to Dismiss Indictment with Prejudice or, in the Alternative, for Suppression of Evidence Based on Governmental Misconduct.

2. Almost a decade ago, I hired William "Rick" Singer to provide college counseling for my son. Mr. Singer provided typical college-counseling services, such as tutoring for standardized tests, and advice on essay-writing and selecting appropriate colleges.

3. As part of this process, Mr. Singer told me that the University of Southern California was one of several schools that had a sports program that welcomed donations from parents of student-athlete applicants, and that the donations could be considered in admissions. Mr. Singer used the term "side door" to describe this program, and said that it was a legitimate and common practice. He said that doing this was similar to donating a building or endowing a chair, but involved smaller donations. He also said that many of the school's athletic teams—including water polo, which Mr. Singer knew my son played—depended on such side-door donations.

4. Mr. Singer told me that my donation would go to the school and to support the USC water polo team. He never said that any part of my donation would be a bribe or illegal payment to any individual or school.

5. In September 2018, I had several conversations with Mr. Singer about him providing college-advising services to my two daughters. In one of the conversations, consistent with his prior descriptions of side-door donations as proper (and common), he told me that, because he had recently facilitated several side-door donations to Harvard University, he would be negotiating side-door donations directly with the President of Harvard. To start his counseling of my daughters, Mr. Singer agreed to conduct a Skype video/audio meeting with my family on September 28, 2018.

6. On the afternoon of September 28, 2018, Mr. Singer was texting about our meeting and sent a text asking to move the conversation from Skype to FaceTime. I understand that FaceTime is an audio/video application offered on iPhones.

7. My family conducted this FaceTime meeting with Mr. Singer on September 28, 2018. I participated in some but not all of the FaceTime conversation with Mr. Singer. To the best of my memory, during this call and in other conversations, among the things Mr. Singer said were:

   a. The side-door program was more popular and widespread than it had been in 2013-2014, and was occurring at many more schools and with more students.

   b. Schools knew and accepted that applicants utilizing the side-door program did not have to be athletes capable of competing on the school's varsity sports team, and did not need to be accomplished athletes. They could be team

2

assistant managers or have similar nonplaying roles. Thus, the side-door would be appropriate for my daughters.

c. Mr. Singer did not say this program involved bribery of coaches, administrators, or schools. He described it as a legitimate and common fundraising method.

9. I have reviewed the transcripts produced by the government of recorded conversations I had with Mr. Singer from September 29, 2018 through 2019. In some of these conversations, Mr. Singer used words that are ambiguous, misleading, or inconsistent with how he described the side-door program in the September 28, 2018 conversation and in prior conversations.

10. I have not seen a transcript of this September 28, 2018 FaceTime conversation in the materials produced by the government.

11. Mr. Singer sent numerous texts to me and my family from 2010 to 2019. I have reviewed text messages from Mr. Singer that the government has produced in this case. Text messages my family and I exchanged with Mr. Singer are missing from the government productions that I have reviewed, including texts between iPhones during September 20-30, 2018. For example, I did not see in the government productions a September 28, 2018 text message asking to switch the call from Skype to FaceTime, or other texts about this meeting.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 25, 2020.

_____
John B. Wilson