## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 19-CR-10080-NMG |
| | ) |
| DAVID SIDOO, et al., | )   ORAL ARGUMENT REQUESTED |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNT ONE INSOFAR AS IT ALLEGES CONSPIRACY TO DEFRAUD <u>TESTING COMPANIES OF PROPERTY AND HONEST SERVICES</u>

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 4

III.   ARGUMENT ......................................................................................................... 5

      A.     Conspiracy To Fraudulently Obtain "Money Or Property" ................................. 6

            1.     Legal Standard .............................................................................. 6

            2.     "Test Scores" Do Not Constitute "Money Or Property" ......................... 7

            3.     "Standardized Tests" Are Not An Object Of The Alleged
                  Conspiracy ................................................................................ 10

      B.     Conspiracy To Obtain Theft Of Honest Services ............................................... 12

            1.     Legal Standard ............................................................................ 12

            2.     The Indictment Does Not Allege A Relationship Giving Rise
                  To Fiduciary Duties ..................................................................... 13

IV.   CONCLUSION ................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bennett Importing v. Cont'l Airlines*,
　　1998 WL 34031697 (D. Mass. Dec. 27, 1998) .............................................................. 14

*Carpenter v. United States*,
　　484 U.S. 19 (1987) ............................................................................................................ 6, 7

*Cleveland v. United States*,
　　531 U.S. 12 (2000) .................................................................................................. 2, 6, 9, 10

*De Lima v. Sessions*,
　　867 F.3d 260 (1st Cir. 2017) .................................................................................................. 6

*Giragosian v. Ryan*,
　　547 F.3d 59 (1st Cir. 2008) ................................................................................................ 3, 9

*Hamling v. United States*,
　　418 U.S. 87 (1974) ............................................................................................................. 11

*McNally v. United States*,
　　483 U.S. 350 (1987) ........................................................................................................... 6, 7

*Rewis v. United States*,
　　401 U.S. 808 (1971) ............................................................................................................. 6

*Skilling v. United States*,
　　561 U.S. 358 (2010) .................................................................................................. 4, 13, 14

*Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt., LLC*,
　　2013 WL 1703890 (D. Mass. Apr. 18, 2013) .................................................... 4, 13, 14

*United States v. Alsugair*,
　　256 F. Supp. 2d 306 (D.N.J. 2003) ....................................................................................... 6

*United States v. Chandler*,
　　376 F.3d 1303 (11th Cir.) ...................................................................................................... 2

*United States v. Czubinski*,
　　106 F.3d 1069 (1st Cir. 1997) ........................................................................................ 4, 13

*United States v. Ferrara*,
　　701 F. Supp. 39 (E.D.N.Y. 1988) ................................................................................ 2, 7, 8

*United States v.* Goldberg,
　　913 F. Supp. 629 (D. Mass. 1996) ..................................................................................... 11

*United States v. Harder*,
　　168 F. Supp. 3d 732 (E.D. Pa. 2016) ................................................................................. 15

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*United States v. Hedaithy*,
    392 F.3d 580 (3d Cir. 2004)....................................................................... 8, 9

*United States v. Martin*,
    228 F.3d 1 (1st Cir. 2000)............................................................................ 12

*United States v. Sawyer*,
    85 F.3d 713 (1st Cir. 1996)......................................................................... 13

*United States v. Sorich*,
    523 F.3d 702 (7th Cir. 2008) ................................................................ 11, 12

*United States v. Troy*,
    618 F.3d 27 (1st Cir. 2010)............................................................ 3, 11, 12, 15

*United States v. Universal C.I.T. Credit Corp.*,
    344 U.S. 218 (1952)................................................................................. 6, 7

*United States v. Urciuoli*,
    513 F.3d 290 (1st Cir. 2008)...................................................................... 13

*United States v. Yefsky*,
    994 F.2d 885 (1st Cir. 1993)......................................................... 3, 11, 12, 15

*United States v. Zauber*,
    857 F.2d 137 (3d Cir. 1988)....................................................................... 15

**<u>Rules</u>**

Fed. R. Crim. P. 7(c)(1) .................................................................... 3, 11, 15

Fed. R. Civ. P. 201(b)(2)...................................................................... 3, 9

Defendants respectfully submit this memorandum in support of the joint Motion To Dismiss Count One Insofar As It Alleges Conspiracy to Defraud College Admissions Testing Companies Of Property And Honest Services.[1]

## I.    INTRODUCTION

The Government alleges that Rick Singer agreed with William McGlashan, I-Hsin "Joey" Chen, Marci Palatella, and Gregory and Amy Colburn (collectively, the "Testing Defendants") to have a proctor, Mark Riddell, change answers on ACT or SAT college admission exams taken by the Testing Defendant's children, in order to improve their scores, and to bribe a test site "administrator" to permit the cheating.  Count One of the indictment alleges that this constitutes a conspiracy to defraud the testing companies (ACT, Inc., which administers the ACT, and the College Board, which administers the SAT) of "money or property" in the form of "standardized tests and test scores," and of the "honest services" of the companies' "test administrators[.]" Fourth Superseding Indictment ("FSI"), ECF No. 732 ¶ 370.a. & b.  In other words, according to the Government, cheating on a college admissions exam—or even helping improve someone else's score without that person's knowledge—is a violation of the federal mail and wire fraud statutes, carrying a potential 20-year term of imprisonment.  The alleged conspiracy to defraud the testing companies should be dismissed because each of the three purported objects of the alleged fraud— "test scores," "standardized tests," and "honest services"—fail as a matter of law.    The Government's overzealous effort to expand the sweep of federal criminal law flies in the face of

---

[1] The indictment contains specific factual allegations regarding admissions testing only with respect to Defendants William McGlashan, I-Hsin "Joey" Chen, Marci Palatella, and Gregory and Amy Colburn (collectively, the "Testing Defendants").  *See* FSI ¶¶ 97, 107, 135, 138, 182, 191, 210, 216.  Because the indictment names all Defendants in Count One, however, this motion is joined by all Defendants, including those against whom no testing-related allegations are made.  (The indictment's inclusion of numerous, distinct alleged conspiracies in a single count is addressed in Defendants' separate Motion To Dismiss, Or In The Alternative, To Sever, Pursuant To Federal Rules of Criminal Procedure 8, 12(b)(3)(B)(i), (iv), And (v), 12(b)(3)(D), And 14.)

decades of precedent regarding the scope of the mail and wire fraud statutes and the strict construction they must be given.

*First,* "test scores" are not a traditional form of property, as is required to constitute "money or property" for purposes of mail and wire fraud. *See United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988) (holding that a certificate of passage of a standardized English proficiency exam "is not a property interest cognizable under the federal mail fraud statute."). The Government's theory—that standardized test scores are "property" of the testing companies and that cheating on a test is therefore within the scope of the mail and wire fraud statutes—would represent an alarming expansion of federal criminal law. *See United States v. Chandler*, 376 F.3d 1303, 1314 (11th Cir.), *on reh'g*, 388 F.3d 796 (11th Cir. 2004) ("If we were to hold allegations of an agreement to participate in 'illegitimate' conduct . . . sufficient to convict under the federal conspiracy statute, then we would permit a 'breathtaking' expansion of a statute that already is 'harnessed into service' by the government when other prohibitions will not serve. The mail fraud conspiracy statute applies broadly enough as it is. We shall not extend its reach even further.") (citations omitted). It would mean that almost any conceivable form of cheating on an exam, even copying off a neighbor's answer sheet, could constitute a federal felony punishable by up to 20 years' imprisonment. This effort to criminalize such a vast swath of conduct flies in the face of decades of precedent regarding the interpretation of federal criminal law generally, and mail and wire fraud particularly. In addition, for purposes of the fraud statutes, "the thing obtained must be property *in the hands of the victim*"—in this case the testing companies—not the Testing Defendants or their children. *Cleveland v. United States*, 531 U.S. 12, 18 (2000) (emphasis added). But as ACT, Inc. publicly acknowledges on its website, "*students own their scores*," and they may

even "direct ACT to delete" the scores if they choose.[2]  "Test scores" thus do not and cannot constitute a form of "property" for purposes of mail or wire fraud.

*Second*, although there may be circumstances in which the Government could attempt to fashion an argument where "standardized tests" themselves might be considered "property" under the fraud statutes, that is not what is alleged in this case.  The indictment expressly alleges a conspiracy involving, among other things, "fraudulently obtained *test scores*," not fraudulently obtained *tests*.  FSI ¶ 65 (emphasis added).  There is no allegation, for example, that the Testing Defendants' children were complicit in or even aware of the alleged cheating, that they were ineligible to take the exams or receive score reports, or that anyone copied or removed proprietary exam materials without permission.  Rather, the Government's inclusion of "standardized tests" alongside "test scores" in the statutory charging language of Count One—at page 60 of a 70-page indictment—appears to reflect a transparent effort to insert a potentially cognizable object of mail and wire fraud next to one that almost certainly is not.  But an indictment must allege "the essential *facts* constituting the offense charged," not merely statutory boilerplate.  Fed. R. Crim. P. 7(c)(1) (emphasis added)); *see United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010); *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993).  The indictment does not allege any *facts* establishing a scheme to fraudulently obtain "standardized tests," and these allegations should be dismissed.

*Third*, the alleged theft of honest services, which is based on allegations that a test site administrator was "brib[ed]" to permit the alleged cheating (FSI ¶¶ 66.c. & 370.a.-b.), fails because the indictment does not allege any facts establishing that the test administrator owed a *fiduciary duty* to the testing companies, which is an essential element of theft of honest services.  *See United*

---

[2]  *See* Help and FAQ's, ACT (accessed March 31, 2020), https://www.act.org/content/act/en/products-and-services/the-act/help.html#testday (emphasis added).  The Testing Defendants respectfully request that the Court take judicial notice of this publicly available information, the accuracy of which "cannot reasonably be questioned." *See* Fed. R. Civ. P. 201(b)(2); *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).

*States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997) (there "must be a breach of fiduciary duty" to constitute theft of honest services); *Skilling v. United States*, 561 U.S. 358, 417 (2010) (Scalia, Thomas, Kennedy, JJ., concurring in part) (noting that the existence of a fiduciary relationship is "*central* to the 'fraud' offense") (emphasis added).  The Government alleges only that the test administrator relevant here, Igor Dvorskiy, was "compensated" by the testing companies.  FSI ¶ 32.  Although compensation, standing alone, may suffice to allege an independent contractor relationship, an independent contractor "does not typically owe a fiduciary duty for the services [he] performs."  *Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt., LLC*, 2013 WL 1703890, at *7 (D. Mass. Apr. 18, 2013).  A *fiduciary* relationship requires something more, such as an employee-employer or attorney-client relationship.  The indictment does not allege any such facts.  And although unnecessary to the Court's decision, this fatal defect does not appear to be one the Government could cure by superseding, as discovery produced in this case suggests that Dvorskiy was in fact never more than an independent contractor of the testing companies.

Accordingly, and for the reasons set forth below, the Testing Defendants respectfully request that the Court dismiss Count One of the indictment insofar as it alleges a conspiracy to defraud ACT, Inc. and the College Board of money or property and of honest services.

## II.    BACKGROUND[3]

ACT, Inc. and The College Board (together with Educational Testing Service) are non-profit organizations that develop and administer, respectively, the ACT and SAT standardized college admissions exams.  FSI ¶¶ 21, 22.  The indictment alleges that the Testing Defendants conspired with Rick Singer to have answers changed on their children's ACT or SAT exams in

---

[3] Movants respectfully request that the Court incorporate herein the factual and legal background set forth in Defendants' Motion to Dismiss Count One Insofar As It Alleges Conspiracy to Defraud Universities of Property.

order to improve their scores.  *See* FSI ¶¶ 66 d., 97, 107, 135, 138, 182, 191, 210, 216.  According to the indictment, after the Testing Defendants' children took their exams, Mark Riddell, who served as a proctor for the exams, "secretly correct[ed]" answers on their exams, which were then sent to the testing companies by Dvorskiy, the alleged test administrator.  FSI ¶¶ 97, 107, 109, 138, 141, 191, 194, 216, 218.  There is no allegation that any of Testing Defendants' children were complicit in or even aware of the alleged cheating.

The Testing Defendants are charged in Count One of the indictment with a mail and wire fraud conspiracy to defraud ACT, Inc. and The College Board of "money and property, to wit, ACT, SAT and other standardized tests and test scores … and to defraud and deprive, variously, ACT, Inc. [and] the College Board … of their right to the honest and faithful services of their test administrators…."  FSI ¶ 370.a.-b.  With respect to the allegation of honest services fraud, the indictment alleges that the conspiracy included "[b]ribing college entrance exam administrators … to permit cheating, in violation of the administrators' duty of honest services to ACT, Inc. and the College Board…."  FSI ¶ 66.c.

## III.    ARGUMENT

The Government alleges that the testing companies were defrauded of: (1) "money or property," in the form of "standardized tests and test scores"; and (2) "honest and faithful services of their test administrators[.]"   FSI ¶¶ 66.c & 370.a.-b.  Standardized "test scores" are not a traditional form of property and thus do not constitute "money or property" for purposes of the mail and wire fraud statutes.  "Standardized tests" are not objects of the alleged conspiracy under any fair reading of the indictment, and the indictment thus fails to allege the essential facts of a conspiracy to obtain "standardized tests."  Finally, theft of honest services is not adequately alleged as an object of the conspiracy because the Government does not (and discovery suggests cannot) allege that the relevant test administrator owed any fiduciary duty to either ACT, Inc. or the

College Board.  Accordingly, Count One should be dismissed to the extent it alleges a conspiracy to defraud ACT, Inc. and the College Board of "money or property" and honest services.

### A.   Conspiracy To Fraudulently Obtain "Money Or Property"

#### 1.   Legal Standard

As discussed in Defendants' separate motion regarding university admissions slots, "money or property" for purposes of the mail and wire fraud statutes is limited to "traditional concepts of property[.]"  *See* Defendants' Motion to Dismiss Count One Insofar As It Alleges Conspiracy to Defraud Universities of Property (quoting *Cleveland*, 531 U.S. at 24); *see also Carpenter v. United States*, 484 U.S. 19, 25 (1987) (mail fraud statute is "limited in scope to the protection of property rights").  The object of an alleged mail or wire fraud must therefore be of a type that has "long been recognized as property."  *Id*. at 26.  Services in general are not within the scope of the "money or property" provisions of the fraud statutes.  *See McNally v. United States*, 483 U.S. 350, 360-61 (1987) (holding that the "money or property" prong of the mail fraud statute does not encompass honest services fraud); *De Lima v. Sessions*, 867 F.3d 260, 266 (1st Cir. 2017) (noting that "the traditional common-law definition of theft was limited to property, and . . . services were not considered property in many common-law jurisdictions"); *United States v. Alsugair*, 256 F. Supp. 2d 306, 314 (D.N.J. 2003) ("Quite simply, there is no authority to support the proposition that services are a traditional property interest.").

The Supreme Court has repeatedly advised that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'"  *Cleveland*, 531 U.S. at 25 (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).  This interpretive canon is "especially appropriate in construing" the mail and wire fraud statutes, which are not only expansive in their own rights, but also predicates for the RICO and money laundering statutes.  *See id.*  Thus, "[i]n deciding what is 'property' under § 1341," the Supreme Court has observed that "'it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is

clear and definite.'"  *Id*. at 25 (quoting *United States v. Universal C.I.T. Credit Corp*., 344 U.S. 218, 222 (1952)).  Courts do not interpret the fraud statutes to sweep in a broad range of conduct "where Congress has not made such a design clear."  *Id*. at 26.

2.      <u>"Test Scores" Do Not Constitute "Money or Property"</u>

According to the indictment (the allegations of which are accepted as true only for purposes of this motion), ACT Inc. is an organization that provides one service: administering the ACT, a standardized test widely used in U.S. college admissions.  *See* FSI § 21.  The College Board (together with the Educational Testing Service ("ETS")) is alleged to be an organization that administers the SAT, another widely used standardized test.  *See* FSI § 22.  Calculating test scores is part of the service of administering a standardized test.  But that service does not constitute "money or property" for purposes of the fraud statutes (*see, e.g*., *McNally*, 483 U.S. at 360-61), and test scores calculated as part of that service are likewise not something that has "long been recognized as property."  *Carpenter*, 484 U.S. at 26.

The decision in *United States v. Ferrara*, 701 F. Supp. 39 (E.D.N.Y. 1988), is instructive. That case involved testing certificates issued by the Educational Commission for Foreign Medical Graduates ("ECFMG"), "a not-for-profit corporation that administers an examination designed to assess the English proficiency and medical knowledge of graduates of nonaccredited medical schools planning to participate in residencies in American hospitals."  *Id*. at 40.  When a candidate successfully completes the ECFMG exam, "an ECFMG certificate for the graduate is issued."  *Id*. The "certificate" is thus effectively a "score," indicating that a candidate passed the exam.

The Government in *Ferrara* acknowledged that the test certificates issued by ECFMG had "no calculable dollar value," but argued that because the certificates are the "work-product" of the testing company and are relied upon by hospitals and licensing boards, the "integrity of the certificates" represents a "property interest of ECFMG."  *Id*. at 42-43.  The court rejected these

arguments, noting that the Government had not even attempted to argue that "reputation" is a traditionally "recognized property interest" for purposes of the fraud statutes.  *Id*. at 43.  The court thus held that the "ECFMG certificate is *not a property interest* cognizable under the federal mail fraud statute."  *Id*. at 43 (emphasis added).

Notably, the only contrary authority of which counsel are aware, *United States v. Hedaithy*, 392 F.3d 580 (3d Cir. 2004), is a case that expressly declined to follow the Supreme Court's reasoning in *Cleveland* and involved materially different facts than those alleged here.   In *Hedaithy*, foreign nationals were alleged to have "paid an impostor to take and pass" the Test of English as a Foreign Language ("TOEFL") in their places.  *Id*. at 582-84.  The court acknowledged that the Supreme Court's decision in *Cleveland* "clearly holds that [] such a score report would not be property if it was issued by a governmental entity," for example, in connection with a "bar exam or medical licensing exam…."  *Id.* at 596.  The court nonetheless held that the TOEFL score report could constitute "property" for purposes of mail fraud.  *Id*. at 594.

So far as counsel are aware, in the 16 years since *Hedaithy* was decided, no court has followed its holding.  But this Court need not consider becoming the first, because *even under the reasoning of Hedaithy*, the test scores at issue in this case would not constitute property for purposes of the fraud statutes.

In *Hedaithy*, the Government alleged that at the time of the TOEFL tests, the "impostors" falsely identified themselves as the defendants, fraudulently executed confidentiality agreements with the testing company in the defendants' names, and directed the test results to be sent to an address controlled by a co-conspirator, where the physical score reports were "doctored" to insert the defendants' photographs in place of the impostor's.  *Id*. at 584, 595.  The court concluded that the testing company, ETS, "would not have allowed the hired test-takers to sit for the exam had it known that they were not actually the Defendants, and had it known that they did not actually

agree to preserve the exam's confidentiality." *Id.* at 595.  The court reasoned that ETS "possesses a property interest in the materials bearing its trademarks … , 'such as the TOEFL' … score report," and that because ETS "reserve[d] the right to convey [the reports] only to those individuals who [met] its prescribed conditions," reports fraudulently sent to an impostor constituted "property" for purposes of the fraud statutes.  *Id.* at 594-97.

By contrast, in this case, there is no allegation that any of the Testing Defendants' children lied about their identifies, falsely signed a confidentiality agreement, were not entitled to receive a score report, or doctored the reports they received.  *See generally* FSI.  Indeed, the indictment does not even allege that the children were aware of the alleged cheating.  Rather, what the Government alleges is that "test scores" *themselves* were fraudulently inflated—unbeknownst to the people who actually took the tests.  *See, e.g.*, FSI ¶ 65 (alleging "fraudulently obtained *test scores*") (emphasis added).  Whatever property interest testing companies might have in a physical score *report* "bearing [their] trademarks," such companies do not have any interest—much less a traditionally recognized property interest—in the scores themselves.  *Cf. Hedaithy*, 392 F.3d at 594.

Indeed, although unnecessary to the Court's decision, it is notable that ACT, Inc. publicly acknowledges on its website that "*students own their test scores*," and that students may even "direct ACT to delete their scores for a particular test date."[4]  It is beyond serious dispute that something students "own" and can instruct a testing company to "delete" is not something in which that company has a "property interest" under any traditional understanding.  Moreover, even if a test score could in certain circumstances constitute a traditional form of "property" (which it

---

[4]   *See* Help and FAQ's, ACT (accessed March 31, 2020), https://www.act.org/content/act/en/products-and-services/the-act/help.html#testday (emphasis added).  The Testing Defendants again respectfully request that the Court take judicial notice of this publicly available information, the accuracy of which "cannot reasonably be questioned."  *See* Fed. R. Civ. P. 201(b)(2); *Giragosian*, 547 F.3d at 65.

cannot), the object of a mail or wire fraud must be property *of the alleged victim*—in this case, the testing companies—not some other recipient. *See Cleveland*, 531 U.S. at 15 ("It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim."). This is an additional and independently sufficient reason why the test scores at issue here do not constitute "property" for purposes of the fraud statutes.

Indeed, the Government's novel theory that "test scores" constitute "property" for purposes of mail and wire fraud represents a breathtaking expansion of the scope of those statutes, which would cause them to sweep in a huge array of additional conduct. If it is a federal crime to cheat on a standardized test, then presumably *any* cheating—even looking over a neighbor's shoulder and copying an answer—could lead to a potential felony conviction and up to 20 years' imprisonment. That cannot be and is not the law.

As the Supreme Court has said, courts should decline to adopt "encompassing" interpretations of mail and wire fraud "where Congress has not made such a design clear." *Cleveland*, 531 U.S. at 26. The Court should reject the Government's attempt to radically expand the scope of the definition of "property" under the fraud statutes and dismiss Count One insofar as it alleges a conspiracy to fraudulently obtain standardized test scores.

### 3.   "Standardized Tests" Are Not An Object Of The Alleged Conspiracy

Despite asserting throughout the indictment that the alleged conspiracy included the use of "fraudulently obtained *test scores*," conclusory charging language in Count One alleges a scheme "to obtain … *standardized tests and* test scores…." FSI ¶ 370.a, b. (emphasis added); *see generally* FSI. This boilerplate accusation, which is contradicted by other allegations throughout the indictment, does not suffice to allege a conspiracy to obtain "standardized tests."

An indictment must contain a "definite written statement of the essential *facts* constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1) (emphasis added). Although "statutory language may be used in the indictment to describe the offense, '… it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence" charged in the indictment. *Troy*, 618 F.3d at 34 (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)). A mail fraud indictment fails to state an offense if it relies on "conclusory language" that does not "divulge the factual basis" of the charge. *Yefsky*, 994 F.2d at 893.

The indictment alleges that "fraudulently obtained *test scores*" were procured by "[p]aying [Mark] Riddell … to pose as an exam proctor … [and] replace the students' exam responses with his own," and by "[b]ribing college entrance exam administrators … to permit [the] cheating …." FSI ¶¶ 65, 66.c, d. (emphasis added). According to the indictment, Riddell "corrected" the students' answers after they completed their exams, and then provided the completed exams to an "exam administrator," Dvorskiy, who sent them to the testing companies. FSI ¶¶ 107, 109, 138, 141, 191, 194, 216, 218.[5]

These allegations expressly describe a scheme that included "fraudulently obtained *test scores*" (*id*. ¶ 65 (emphasis added)), but it does not allege—expressly or otherwise—a scheme to obtain standardized *tests*. *See United States v. Goldberg*, 913 F. Supp. 629, 637 (D. Mass. 1996) ("A 'scheme to obtain' requires proof of a false statement and must have as its *object* deprivation

---

[5] Although the indictment alleges that Riddell in some instances "secretly provide[d] students with answers during the exam" and "[took] the exam in place of the students" (FSI ¶ 66.d.), those allegations do not apply to the Testing Defendants. As to each of the Testing Defendants, the indictment alleges that Riddell "corrected" answers *after* their children took the exams. *See* FSI ¶ 107 (Defendants Gregory and Amy Colburn), ¶ 138 (Defendant Chen), ¶ 191 (Defendant McGlashan), ¶ 216 (Defendant Palatella). The indictment also refers to a "third party" in addition to Riddell who allegedly also served as an exam proctor (*id*. ¶ 66.d), but the allegations against the Testing Defendants relate only to Riddell. FSI ¶¶ 107, 138, 191, 216. The indictment similarly references a second test administrator, Niki Williams (FSI ¶ 33), but the allegations against the Testing Defendants relate only to Dvorskiy. *See* FSI ¶¶ 109, 141, 194, 218.

of property rights.") (emphasis added); *see also United States v. Sorich*, 523 F.3d 702, 713 (7th Cir. 2008) (noting that reversal of a mail fraud conviction is appropriate where the money or property at issue is only "incidental" to the alleged scheme). For example, there is no allegation that the students were ineligible to take the exams or fraudulently obtained access to test materials, that exams were improperly duplicated or removed from test centers, or that completed exams were sent anywhere other than to the testing companies. *See generally* FSI. The indictment in this case has been superseded three times and spans over 70 pages in its current iteration. *See* FSI at 1, 72. If the Government were able to allege facts demonstrating a scheme to fraudulently obtain standardized tests, they would have done so. They did not. Accordingly, the indictment does not contain an adequate "statement of the facts and circumstances as will inform the accused of the specific offence" regarding an alleged conspiracy to obtain standardized tests. *Troy*, 618 F.3d at 34; *accord Yefsky*, 994 F.2d at 893 (concluding that a mail fraud indictment was insufficient because it relied on "conclusory" language that did not "divulge the factual basis of [the] accusation").

Count One should therefore be dismissed in its entirety to the extent it alleges a conspiracy to obtain "money or property" from ACT, Inc. and the College Board.

## B.     Conspiracy To Obtain Theft Of Honest Services

Count One of the indictment must also be dismissed insofar as it alleges a theft of honest services conspiracy, because it does not (and cannot) allege that the relevant test administrator— Igor Dvorskiy—had a fiduciary relationship with either testing company.

### 1.     Legal Standard

As discussed above, the federal fraud statutes do not criminalize theft of services *generally*. Rather, they encompass only theft of *honest services*, a doctrine that has "mainly been used to punish fraud against the citizenry perpetrated by government officials." *United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000). Although theft of honest services has been applied in a handful of

cases to private sector relationships, there "must be a breach of a *fiduciary duty*" owed to the victim

for the statute to apply. *United States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997) (emphasis

added). Indeed, the existence of a fiduciary duty is "*central* to the 'fraud' offense." *Skilling*, 561

U.S. at 417 (Scalia, Thomas, Kennedy, JJ., concurring in part) (emphasis added).

In the handful of private sector cases addressing theft of honest services, "[t]he existence

of a fiduciary relationship, under any definition of that term, was usually beyond dispute," as in

the context of "employee-employer" relationships. *Skilling*, 561 U.S. at 408 n.41. By contrast,

fiduciary duties are *not* owed in many other private sector relationships, as in the case of an

independent contractor. *See, e.g.*, *Spring Inv'r Servs., Inc.*, 2013 WL 1703890, at *7 (observing

that an independent contractor "does not typically owe a fiduciary duty for the services [he]

performs.").

The rule that "ambiguity concerning the ambit of criminal statutes should be resolved in

favor of lenity" is "especially appropriate in construing" the mail and wire fraud statutes. *Skilling*,

561 U.S. at 410-11 (citations omitted). The First Circuit has cautioned in particular against

expansive interpretations of the "vague and undefined" concept of "honest services." *United

States v. Urciuoli*, 513 F.3d 290, 294 (1st Cir. 2008). In construing the scope of that doctrine,

paramount concerns include "assuring fair notice to those governed by the statute," and "cabining

the statute—a serious crime with severe penalties—lest it embrace every kind of legal or ethical

abuse[.]" *Id*. at 294; *see also United States v. Sawyer*, 85 F.3d 713, 725 (1st Cir. 1996) (noting

that the mail fraud statute "does not encompass every instance of official misconduct that results

in the official's personal gain.").

2.    The Indictment Does Not Allege A Relationship Giving Rise To Fiduciary
      Duties

Count One of the indictment alleges a mail and wire fraud conspiracy "to defraud and

deprive, variously, ACT, Inc. and the College Board … of their right to the honest and faithful

services of their test administrators …."  FSI ¶ 370.a., b.; *see also* FSI ¶ 66.c. (alleging means and manner of conspiracy included "[b]ribing college entrance exam administrators … of the administrators' duty of honest services to ACT, Inc. and the College Board").  The allegations against the Testing Defendants relate to only one test administrator, Dvorskiy.  FSI ¶ 32; *see* FSI 32, 66 b. & c., 105, 138, 191, 212, 215.  According to the indictment, Dvorskiy "served as a compensated standardized test administrator for ACT, Inc. and the College Board."  FSI ¶ 32.  The indictment does not contain any other allegations regarding the nature of Dvorskiy's purported relationships with the testing companies, apart from the bald legal assertion that "ACT and SAT administrators are agents of ACT and the College Board, respectively, and owe a duty of honest services to those organizations."  FSI ¶ 49; *see generally* FSI.

The fact that one private sector party is "compensated" by another does not establish a fiduciary relationship.  To the contrary, "[i]t is well-settled that a person who contracts to perform an act for another, but who is not a fiduciary for the 'other,' is an independent contractor, not an agent." *Bennett Importing v. Cont'l Airlines*, 1998 WL 34031697, at *5 (D. Mass. Dec. 27, 1998) (emphasis added); *see also Spring Inv'r Servs., Inc.*, 2013 WL 1703890, at *7 (noting that an independent contractor "does not typically owe a fiduciary duty for the services it performs.").  Although the fact that one party "compensated" another might give rise to an independent contractor relationship, establishing that the compensated party was a *fiduciary* of the party paying the compensation requires more, such as an "employee-employer" relationship.  *See Skilling*, 561 U.S. at 408 n.41.

The indictment's allegation that Dvorskiy was a "compensated standardized test administrator for ACT, Inc. and the College Board" (FSI ¶ 32), thus does not suffice to allege a fiduciary relationship as required for theft of honest services.  Standing alone, the fact that Dvorskiy was allegedly "compensated" by the testing companies might suggest that he was an

independent contractor, but not a fiduciary.  The indictment's generic allegation that "ACT and SAT administrators are agents of ACT and the College Board respectively, and owe a duty of honest services to those organizations" (FSI ¶ 49), does not remedy this fatal defect.

As noted above, an indictment must contain a "definite written statement of the essential *facts* constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1) (emphasis added); *accord Troy*, 618 F.3d at 34; *Yefsky*, 994 F.2d at 893.  Thus, in deciding a motion to dismiss an indictment, a court "must accept factual allegations and disregard legal conclusions to determine whether the alleged facts constitute a crime."  *United States v. Harder*, 168 F. Supp. 3d 732, 737 (E.D. Pa. 2016) (citing *United States v. Zauber*, 857 F.2d 137, 144 (3d Cir. 1988)).  The allegations that Dvorskiy was "an agent" of the testing companies and owed those companies a "duty of honest services" constitute bald legal conclusions.  The only *fact* alleged regarding this relationship—that Dvorskiy was "compensated"—suggests he was at most an independent contractor, not an agent or a fiduciary.  The indictment thus fails to allege *facts* sufficient to establish the essential elements of a conspiracy to obtain theft of honest services.

Although not necessary to the Court's decision on this point, the indictment's failure to allege such facts does not appear to be something that the Government could cure by superseding. Documents produced by the Government in discovery show that Dvorskiy was in fact only loosely affiliated with ACT, Inc. as *an independent contractor*, and may not even have been "compensated" as the indictment alleges.  *See* VB-RECORDS-00053480 at 00053480 (ACT, Inc. document entitled "Terms and Conditions for Testing Staff," which specifies that "[a]ll Test supervisors, substitute test supervisors, room supervisors, proctors (all test center staff members) and other suppliers who provide services to ACT at test centers (e.g., custodians, security personnel) are *independent contractors, not employees of ACT*") (emphasis added); VB-RECORDS-00052055 at 00052056 ("When [Dvorskiy] worked in 2017 and 2018 he no longer

had [a payment] account on file so his payments weren't made[.]").  Although the precise nature of Dvorskiy's relationship with the College Board is unclear, Dvorskiy appears to have only been paid small honoraria sums akin to an independent contractor, rather than as an employee on the College Board's regular payroll.  *See* VB-RECORDS-00063956 at 00063970-73 (honoraria payment history to Dvorskiy).

Regardless, because the indictment does not allege any facts establishing a fiduciary relationship between Dvorskiy and the testing companies, the theft of honest services conspiracy fails as a matter of law and should be dismissed.

## IV.    CONCLUSION

Accordingly, the Court is respectfully requested to dismiss Count One's allegations of a conspiracy to defraud ACT, Inc. and the College Board of money or property, and of theft of honest services.

Dated: April 1, 2020                          Respectfully submitted,


John C. Hueston (*pro hac vice*)          */s/ Jack. W. Pirozzolo*
jhueston@hueston.com                  Jack W. Pirozzolo (BBO # 564879)
Marshall Camp (*pro hac vice*)          jpirozzolo@sidley.com
mcamp@hueston.com                   SIDLEY AUSTIN LLP
HUESTON HENNIGAN LLP            60 State Street, 36th Floor
523 W. 6th Street, Suite 400            Boston, MA 02109
Los Angeles, CA 90014                 (617) 223-0304
(213) 788-4340
                                  *Attorneys for Defendant*
                                  *William McGlashan, Jr.*


                                  */s/ Cory S. Flashner*
                                  Cory S. Flashner (BBO # 629205)
                                  R. Robert Popeo (BBO # 403360)
                                  Mark E. Robinson (BBO # 423080)
                                  Eóin P. Beirne (BBO # 660885)
                                  MINTZ,    LEVIN,    COHN,    FERRIS,
                                  GLOVSKY AND POPEO, P.C.
                                  One Financial Center
                                  Boston, MA 02111
                                  (617) 348-1605 (telephone)
                                  (617) 542-2241 (fax)
                                  rpopeo@mintz.com
                                  mrobinson@mintz.com
                                  ebeirne@mintz.com

csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

*/s/ William J. Trach*

Sean M. Berkowitz (admitted pro hac vice)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

Perry J. Viscounty (admitted pro hac vice)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com

Sean M. Berkowitz (admitted pro hac vice)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

David C. Scheper (admitted pro hac vice)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071
Phone: 213.613.4655
Fax: 213.613.4656
dscheper@scheperkim.com

*Counsel for Lori Loughlin*

George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554

gwv@dcglaw.com
jnr@dcglaw.com

Mark E. Beck (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

/s/ David E. Meier
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA  02110
(617) 720-2626
dmeier@toddweld.com

/s/ Stephen H. Sutro
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ Reuben Camper Cahn

Reuben Camper Cahn *(pro hac vice)*
Jennifer L. Keller *(pro hac vice)*
Chase A. Scolnick *(pro hac vice)*
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*


/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*


/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301

(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*


/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*


/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*


/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428

- 20 -

andrew.tomback@whitecase.com

*Counsel for John Wilson*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I filed this document through the CM/ECF system and a copy will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Jack W. Pirozzolo*
Jack W. Pirozzolo