**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:19-cr-10080-NMG |
| Plaintiff, | |
| vs. | |
| DAVID SIDOO, *et al.* | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE MONEY LAUNDERING CONSPIRACY (COUNT III)**

**ORAL ARGUMENT REQUESTED**

i

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ....................................................................................................................... 1

    I.    Singer's College Admissions Operations ........................................................ 1

    II.   Count III:  Money Laundering Conspiracy .................................................... 3

    III.  Factual Deficiencies In The Indictment ......................................................... 5

ARGUMENT ............................................................................................................................. 6

    I.    Proceeds Must Be Generated From A Specified Unlawful Activity Before They Can Be Used For Money Laundering. ................................................ 7

    II.   The Money Laundering Conspiracy Count Must Be Dismissed Because The Government Failed To Allege That The "Proceeds" Were Generated From An Underlying Specified Unlawful Activity. ................................................ 12

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Hamling v. United States*, 418 U.S. 87, 117-18 (1974) ............................................................ 6

*United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002) .................................................... 6, 7

*United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004) ...................................................... 8

*United States v. Christo*, 129 F.3d 578, 579 (11th Cir. 1997) ................................................... 8

*United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994) ..................................................... 7, 8

*United States v. Eirby*, 262 F.3d 31, 38 (1st Cir. 2001) ........................................................... 6

*United States v. Ford*, 839 F.3d 94, 104 (1st Cir. 2016) ........................................................... 6

*United States v. Gemma*, 818 F.3d 23, 30 (1st Cir. 2016) ........................................................ 6

*United States v. Grasso*, 173 F. Supp. 2d 353, 362-363 (E.D. Pa. 2001) .................................. 11

*United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011) .......................................................... 6

*United States v. Heaps*, 39 F.3d 479, 485 (4th Cir. 1994) ........................................................ 8

*United States v. LaBrunerie*, 914 F.Supp. 340, 342 (W.D. Mo. 1995) ...................................... 9

*United States v. Martinez-Medina*, 279 F.3d 105, 115 (1st Cir. 2002) ....................................... 7

*United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007) ..................................... 1, 7, 8

*United States v. Nunez*, 419 F. Supp. 2d 1258, 1260 (S.D. Cal. 2005) ................................. 10, 11

*United States v. O'Brien*, 994 F. Supp. 2d 167, 173 (D. Mass. 2014) ......................................... 6

*United States v. Parigian*, 824 F.3d 5, 9 (1st Cir. 2016) ....................................................... 6, 7

*United States v. Richard*, 234 F.3d 763, 769 (1st Cir. 2000) ...................................... 7, 10, 11, 13

*United States v. Romero-Lopez*, 695 F.3d 17, 24 n.5 (1st Cir. 2012) ........................................... 7

*United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) ....................................................... 6

**Statutes**

18 U.S.C. § 1956(a)(1)(B)(i) ..................................................................................................... 1

18 U.S.C. § 1956(h) .................................................................................................................. 3

**Rules**

Fed. R. Crim. P. 7(c) ................................................................................................ 6

Fed. R. Crim. P. 8 .................................................................................................... 2

Fed. R. Crim. P. 12(b)(3)(B)(i) ................................................................................ 2

Fed. R. Crim. P. 12(b)(3)(B)(iv) .............................................................................. 2

Fed. R. Crim. P. 12(b)(3)(B)(v) ...................................................................... 1, 2, 7

## INTRODUCTION

Count III of the Fourth Superseding Indictment (ECF No. 732) (the "Indictment"), charging all remaining defendants with a single money laundering conspiracy, must be dismissed because the Indictment does not allege a transaction involving proceeds generated by a specified unlawful activity. To properly allege a money laundering conspiracy, an indictment must allege (1) that each defendant agreed with at least one co-conspirator to knowingly conduct a financial transaction; (2) that the defendant knew that the transaction involved funds that were proceeds of some unlawful activity; (3) that the transaction involved funds that were proceeds of a specified unlawful activity; and (4) that the defendant knew the transactions were designed to conceal characteristics of the unlawful activity. *See United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007); 18 U.S.C. § 1956(a)(1)(B)(i).

The Indictment falters on the third element of the offense, as it fails to allege a completed specified unlawful activity (or a completed "phase" of the specified unlawful activity), a specific money laundering transaction, or when the specific money laundering transaction occurred relative to the specified unlawful activity and who participated in that transaction, such that the alleged payments could be "proceeds" of unlawful activity. Because of these deficiencies, the defendants[1] request that this Court dismiss Count III of the Indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v).

## BACKGROUND

### I.    Singer's College Admissions Operations

The Indictment combines over a dozen distinct relationships that the defendants had with William "Rick" Singer ("Singer") into a single, general "conspiracy," and sets out at least three

---

[1]      All of the defendants join in this motion.

1

distinct types of allegedly unlawful objectives into a single conspiratorial goal.[2]  The Indictment contains various allegations against the fifteen defendants.  It alleges that six defendants—all parents of prospective college applicants—paid Singer to alter their children's scores on exams by bribing the exam administrator and arranging for one of Singer's associates to pose as an exam proctor and secretly correct the children's answers.[3]  ¶¶ 45-54, 66(a)-(d).  It further alleges that Singer had an employee and another unnamed individual take online courses posing as the daughter of one defendant.  ¶¶ 66(e), 253-71, 278.  Finally, it alleges that eleven of the defendants agreed to pay Singer and/or university coaches or administrators, in different amounts and in different ways, allegedly to facilitate their children's college admission through a "side door," i.e., by "[b]ribing athletic coaches and university administrators to designate students as purported athletic recruits . . . and as members of other favored admissions categories," or by "[f]abricating athletic 'profiles' containing falsified athletic credentials . . . to submit in support of the students' college applications."  ¶¶ 66(f), 66(g).

The Indictment combines the various and distinct allegations summarized above and charges each of the fifteen defendants with conspiracy to commit mail and wire fraud, honest services mail and wire fraud, and money laundering, (Counts One and Three) ¶¶ 369-70, 373-74; eleven of the defendants with conspiracy to commit federal programs bribery, (Count Two) ¶¶ 371-72; four of the defendants with substantive counts of wire fraud and honest services wire fraud, (Counts Four through Ten) ¶¶ 375-76; and one of the defendants with a substantive count

---

[2]    The Indictment itself and the allegations of a vast "hub and spoke conspiracy," which the defendants submit lacks any rim, are the subject of a separate motion to dismiss pursuant to Federal Rules of Criminal Procedure 8, 12(b)(3)(B)(i), (iv), and (v), filed contemporaneously with this motion.

[3]    The facts recited herein, which support this motion and justify dismissal, are taken directly and exclusively from the Fourth Superseding Indictment. Citations in the form "¶--" refer to the paragraphs of the Fourth Superseding Indictment.

of federal programs bribery, ¶¶ 377-78, and filing a false tax return, (Counts Eleven through Thirteen) ¶¶ 379-80.

## II.     Count III:  Money Laundering Conspiracy

Count III of the Indictment alleges that the defendants entered into a "money laundering conspiracy," in violation of 18 U.S.C. § 1956(h).  ¶ 374.  The Indictment states:

> From in or about 2011 through in or about February 2019 . . . the defendants . . . conspired with others known and unknown to the Grand Jury to commit the following offenses:
>
> (a) to conduct and attempt to conduct financial transactions, to wit, bribe payments and other payments funneled through a purported charitable organization and a for-profit corporation, knowing that that [sic] the property involved in such transactions represented the proceeds of some form of unlawful activity and which, in fact, involved the proceeds of specified unlawful activity, that is, mail and wire fraud and honest services mail and wire fraud, in violation of . . . [18 U.S.C. §§] 1341, 1343, and 1346, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of . . . [18 U.S.C. §] 1956(a)(1)(B)(i);
>
> (b) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds, to wit, bribes and other payments, to a place in the United States from and through a place outside the United Sates, with the intent to promote the carrying on of specified unlawful activity, that is, mail and wire fraud and honest services mail and wire fraud, in violation of . . . [18 U.S.C. §§] 1341, 1343, and 1346, in violation of . . . [18 U.S.C. §] 1956(a)(2)(A).[4/]
>
> All in violation of . . . [18 U.S.C. §] 1956(h).

¶ 374.

The Indictment alleges that "[t]he defendants conspired with others . . . to conceal their fraud scheme by funneling bribe and other payments through The Key or KWF [the Key Worldwide Foundation], including via payments to and from accounts in the District of

---

[4/]     Only defendant David Sidoo, who pled guilty on March 13, 2020, is alleged to have engaged in a monetary transaction from a location outside the United States (Canada).  ¶ 311.

Massachusetts, and to promote their fraud scheme via payments to The Key and KWF from outside the United States."  ¶ 307.  The alleged "principal objects and purposes of the money laundering conspiracy" were "(a) to conceal and disguise the nature, location, source, ownership, and control of the bribe and other payments in furtherance of the fraud scheme . . . and, (b) to transport, transmit, and transfer funds to a place in the United States from and through a place outside the United States, with the intent to promote the fraud scheme[.]"  ¶ 308.  The alleged "manner and means" by which the defendants carried out the alleged conspiracy were:

> (a) [m]aking purported charitable donations to KWF or payments to The Key to fund the bribe and other payments in furtherance of the fraud and bribery schemes;
> (b) [h]aving KWF issue letters falsely attesting that the purported donations would help 'provide educational and self-enrichment programs to disadvantaged youth,' and that 'no goods or services were exchanged' for the money;
> (c) [h]aving The Key issue falsified 'consulting' agreements and invoices stating that payments were for legitimate services, when in fact the payments were made in furtherance of the fraud and bribery schemes; and
> (d) [i]ssuing bribe and other payments in furtherance of the fraud and bribery schemes from accounts in the name of The Key and KWF.

¶ 309.

The Indictment further alleges that each named defendant undertook various acts in furtherance of the alleged money laundering conspiracy.  ¶¶ 310-52.  Specifically, the Indictment alleges that each defendant either (a) agreed to pay The Key or KWF a sum of money to facilitate his or her child's admission to a college as a "purported" athletic "recruit"[5/] or (b) agreed to pay

---

[5/]    The defendants allegedly involved in the alleged athletic recruitment scheme are Gamal Abdelaziz, ¶¶ 317-18; Diane Blake, ¶¶ 319-22; Todd Blake, *id.*; Mossimo Giannulli, ¶¶ 326-29; Lori Loughlin, *id.*; Elisabeth Kimmel, ¶¶ 330-35; Marci Palatella, ¶¶ 338-39; John Wilson, ¶¶ 340-44; Homayoun Zadeh,  ¶¶ 345-48; and Robert Zangrillo, ¶¶ 349-50.

The Key or KWF a sum of money to "pay for the SAT cheating scheme" run by Singer.[6/]  The Indictment also alleges that Singer "funneled bribes through the KWF and The Key to athletic coaches and university administrators . . . on behalf of other co-conspirators known and unknown to the Grand Jury, in order to conceal and disguise the nature, location, source, ownership, and control of bribe money and other payments in furtherance of the bribery and fraud schemes." ¶ 351.

### III.   Factual Deficiencies In The Indictment

The deficiencies in the Indictment, with respect to the money laundering conspiracy charge, are nearly identical for each defendant and can be examined by reviewing the allegations against one of the defendants, Elisabeth Kimmel.  With respect to Mrs. Kimmel, the Indictment alleges, "[b]eginning in or about 2012, KIMMEL agreed to pay Singer an amount, ultimately totaling $275,000, to facilitate her daughter's admission to Georgetown as a purported tennis recruit." ¶ 165.  The Indictment states that Mrs. Kimmel caused the Meyer Charitable Foundation to issue three checks to Singer, through KWF, dated April 4, 2013, June 19, 2013, and July 2, 2013, totaling $275,000 in furtherance of an agreement "securing her daughter's admission to Georgetown as a purported tennis recruit."  ¶¶ 330, 332-33.

The Indictment also states that Mrs. Kimmel caused the Meyer Charitable Foundation to issue a check to Singer, through KWF, dated February 1, 2018, in the amount of $200,000, as payment for securing her son's admission to the University of Southern California ("USC") as a purported track and field recruit.  ¶ 334.

---

[6/]    The defendants allegedly involved in the purported test-taking fraud are David Sidoo, ¶ 311; Gregory Colburn, ¶¶ 312-16; Amy Colburn, *id.*; I-Hsin "Joey" Chen, ¶¶ 323-25; and William McGlashan, Jr., ¶¶ 336-37.

The Indictment alleges that after the payments allegedly made to facilitate Mrs. Kimmel's daughter's admission to Georgetown and her son's admission to USC, employees of Singer sent letters to the Meyer Charitable Foundation "falsely indicating that 'no goods or services were exchanged' for the purported donation." ¶¶ 331, 335.

## ARGUMENT

Count III of the Indictment must be dismissed because it fails to meet the basic pleading standards of the federal rules. An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "An indictment is sufficient 'if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy.'" *United States v. Parigian*, 824 F.3d 5, 9 (1st Cir. 2016) (citing *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993)); *United States v. Gemma*, 818 F.3d 23, 30 (1st Cir. 2016); *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011). The indictment is sufficient "as long as th[e] words set forth all the elements of the offense without any uncertainty or ambiguity." *United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002).

Although the statutory language may be used in the indictment to articulate the general elements of the offense, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974); *see United States v. O'Brien*, 994 F. Supp. 2d 167, 173 (D. Mass. 2014). "[M]istaken or omitted indictment language is reversible if 'it deprived the appellant of notice or otherwise misled him to his detriment.'" *United States v. Ford*, 839 F.3d 94, 104 (1st Cir. 2016) (quoting *United States v. Eirby*, 262 F.3d 31, 38 (1st Cir. 2001)). If an indictment does not "set forth all the elements of the offense without any uncertainty of ambiguity," then the court should dismiss the portion of

6

the indictment outlining that particular offense. *Brown*, 295 F.3d at 154; *see* Fed. R. Crim. P.

12(b)(3)(B)(v); *Parigian*, 824 F.3d at 9. Accordingly, the Court should dismiss Count III of the

Indictment.

I.   **Proceeds Must Be Generated From A Specified Unlawful Activity Before They Can Be Used For Money Laundering.**

The elements of "conspiracy to commit money laundering" are that the defendant "agreed

with one or more co-conspirators to 1) knowingly conduct a financial transaction 2) involving

funds that [the defendant] knew to be the proceeds of some form of unlawful activity, and 3) that

were in fact the proceeds of a 'specified unlawful activity,' and 4) that [the defendant] knew the

transactions to be designed in whole or in part to conceal or disguise the nature, location, source,

ownership, or control of the proceeds of such unlawful activity." *Misla-Aldarondo*, 478 F.3d at

68; *see United States v. Romero-Lopez*, 695 F.3d 17, 24 n.5 (1st Cir. 2012); *United States v.*

*Martinez-Medina*, 279 F.3d 105, 115 (1st Cir. 2002).

For purposes of this motion, a critical element is the third one—that the money laundering

transaction involved the "proceeds of a specified unlawful activity." This element requires both

(1) that the specified unlawful activity is sufficiently ***distinct*** from the money laundering

transaction and (2) that the specified unlawful activity generated proceeds ***before*** the money

laundering transaction. *See United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994) ("there

[must] be some distinction between the specified unlawful activity [that generated the proceeds]

and the financial transaction" that forms the basis of the money laundering charge); *see also*

*United States v. Richard*, 234 F.3d 763, 769 (1st Cir. 2000) ("[M]oney laundering criminalizes a

transaction in proceeds, not the transaction that creates the proceeds . . . [t]hus the laundering of

funds cannot occur in the same transaction through which those funds first became tainted by

crime[.]" (internal citations and quotation marks omitted)).

7

The First Circuit has affirmed that money laundering requires two separate criminal offenses: the specified unlawful activity and the money laundering transaction. *See United States v. Castellini*, 392 F.3d 35, 38 (1st Cir. 2004).  As the court clearly articulated in *Castellini*, "[t]he 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity of money laundering itself."  *Id.*  The First Circuit has also affirmed that the specified unlawful activity must occur prior to the money laundering transaction.  *See Misla-Aldarondo*, 478 F.3d at 68.  While the specified unlawful activity must generate proceeds prior to the money laundering transaction, the specified unlawful activity does not need to be fully complete before the money laundering can begin; a completed "phase" of the specified unlawful activity is sufficient to generate the funds to be laundered.  *See id.*; *Conley*, 37 F.3d at 980 (proceeds must be "derived from an already completed offense, or a completed phase of an ongoing offense, before they can be laundered").

Given these requirements, courts have dismissed money laundering conspiracy charges that do not allege that the defendant completed either a specified unlawful activity or a phase of an ongoing specified unlawful activity before engaging in the alleged money laundering transaction.  For example, in *United States v. Christo*, 129 F.3d 578, 579-80 (11th Cir. 1997) (per curiam), the court vacated the defendants' convictions for money laundering because the financial transaction upon which the money laundering charge was based was the same as the financial transaction at the heart of the underlying offense.  The court concluded that the alleged facts were "insufficient to establish that [the defendant] engaged in a monetary transaction that was separate from and in addition to the underlying criminal activity," because "the withdrawal of the funds charged as money laundering was one and the same as the underlying criminal activity of bank fraud."  *Id.* at 580; *see United States v. Heaps*, 39 F.3d 479, 486 (4th Cir. 1994) ("Congress

intended to prevent an ill other than those already prevented by other laws. The [money laundering] statute should not be interpreted to make any drug transaction a money laundering crime.").

Money that is not *generated from* a specified unlawful activity, but rather *will be used to commit* a specified unlawful activity in the future, is not "proceeds." In *United States v. LaBrunerie*, 914 F.Supp. 340, 342 (W.D. Mo. 1995), for example, a money laundering indictment was dismissed because the financial transaction involved "clean" money (money not generated from an unlawful activity) intended to be paid as a bribe. The Court held that though the agreement to pay the bribe was a completed bribery offense, the money was not proceeds from a specified unlawful activity under the money laundering statue until the bribe was actually paid. *Id.* at 346. More specifically, in *LaBrunerie,* the defendant was charged with conspiracy, bribery, and money laundering arising out of his bribes paid to a city council representative. *Id.* at 342. The government claimed that the defendant's $50,000 payment to the city council representative was a money laundering transaction. *Id.* The court dismissed the money laundering charge, holding that "[a]lthough the indictment charges [the] defendants with attempting to disguise the source of the money paid to Hernandez [the city council representative], that money cannot be said to be proceeds of bribery at the time the monetary transaction occurred" because the underlying crime—bribery—did not occur until the money was transferred. *Id.* at 346. The Court went on to note, "neither [18 U.S.C.] § 1956 nor [18 U.S.C.] § 1957 criminalize monetary transactions conducted with money which has not yet been received by the person committing the predicate offense." *Id.* at 347.

In cases in which courts have denied motions to dismiss money laundering charges despite the fact that the specified unlawful activity was not complete prior to the money laundering

transaction, the indictments contained sufficient allegations to deduce that the money laundering transaction occurred after a "completed phase of an ongoing offense."  *See, e.g.*, *Richard*, 234 F.3d at 769; *United States v. Nunez*, 419 F. Supp. 2d 1258, 1260 (S.D. Cal. 2005).  In each of these cases, the defendant did not merely take a step towards completing the specified unlawful activity; instead, the defendant had ***fully satisfied*** all elements of a specified unlawful activity and was ***also*** continuing to commit the offense.  The courts' decisions in these two cases thus reaffirm the principle that a defendant cannot avoid money laundering charges simply by continuing the same specified unlawful activity and describing it as "incomplete," merely because it is ongoing. But these decisions also reaffirm the converse principle, relevant here: that some phase of the specified unlawful activity must be ***complete*** before an individual can even begin to engage in money laundering for purposes of federal prosecution.

In *Richard*, 234 F.3d at 769, the defendants were charged with money laundering and bankruptcy fraud (the specified unlawful activity).  One defendant had separately sued Key Bank of Maine and defrauded individuals into "investing" in the lawsuit, in return for a "sure thing" profit on their money.  *Id.* at 765.  The ringleader of the scheme fell into bankruptcy but continued to raise money from investors while concealing investor payments from the bankruptcy court.  *Id* at 766.  This evidence was sufficient for the jury to find that the defendant "engaged in the concealment of assets from the bankruptcy trustee immediately upon receipt of the checks [constituting] a completed phase in the ongoing bankruptcy fraud."  *Id*. at 770.  In other words, an instance of bankruptcy fraud was complete upon the receipt of each concealed investor check, with the check only afterwards constituting "proceeds."  *Id*.  The court concluded that the bankruptcy fraud—the specified unlawful activity—was complete as soon as some assets were concealed from the bankruptcy trustee and that any subsequent financial transactions were

10

separate money laundering transactions, even if the bankruptcy fraud continued. *Id.* at 769-770 ("[T]he defendants' fraudulent scheme generated proceeds, and then [the defendant] committed separate acts to launder the proceeds after he took them into his possession.").

In *Nunez*, 419 F. Supp. 2d at 1260, the defendant was accused of money laundering, with the specified unlawful activity of bankruptcy fraud. The indictment alleged that the defendant failed to disclose his ownership of a large yacht to the bankruptcy court—the bankruptcy fraud— and then sold the yacht and deposited the funds into his son's bank account—the money laundering. *Id.* at 1261. The defendant argued that the bankruptcy fraud was not complete until the bankruptcy judgment had issued because he could correct any misrepresentation to the bankruptcy court during the pendency of the bankruptcy proceeding. *Id.* at 1264. The deposits of proceeds from the sale of the yacht took place prior to the conclusion of the bankruptcy proceeding. *Id.* Therefore, the defendant argued, because he had not completed the specified unlawful activity prior to the alleged money laundering transactions, the alleged money laundering transactions did not involve proceeds of the specified unlawful activity and he could not be guilty of money laundering. *Id.* The court rejected this argument, finding that the "initial concealment (or non-disclosure)" from the bankruptcy court was a completed phase of a specified unlawful activity, and therefore the deposits made after the initial non-disclosure did involve proceeds and were money laundering transactions. *Id.* at 1269; *see United States v. Grasso*, 173 F. Supp. 2d 353, 362-363 (E.D. Pa. 2001) (holding that the indictment alleged a completed phase of a specified unlawful activity because, even though the specified unlawful activity—fraud— was ongoing, "[e]ach time Defendant allegedly committed mail fraud by causing a customer to mail him an advance fee, proceeds were created which could be the subject of money laundering charges").

II.   **The Money Laundering Conspiracy Count Must Be Dismissed Because The Government Failed To Allege That The "Proceeds" Were Generated From An Underlying Specified Unlawful Activity.**

Here, the Indictment does not sufficiently allege that the defendants completed a phase of an ongoing specified unlawful activity—and thereby generated proceeds—before engaging in a separate money laundering transaction involving those proceeds.  The defendants alleged to have participated in the athletic recruitment scheme are accused of agreeing to transfer money to The Key or KWF, with the intent that Singer then transfer the money to individuals at USC, Georgetown, and other schools, in exchange for the admission of the defendants' children. ¶¶ 307-10.  The defendants alleged to have participated in the test-taking scheme are accused of agreeing to transfer money to The Key or KWF, with the intent that Singer then transfer the money to individuals alleged to have been involved in proctoring the tests or taking the tests for others. The Indictment states that the specified unlawful activity is "mail fraud and wire fraud and honest services mail and wire fraud," but does not allege which transaction or transactions constituted the specified unlawful activity and which transactions constituted the money laundering.  ¶ 374.

That failure is because the government is double-counting the same transaction.[7/]  All of the fraud charges are intertwined with the transfer of funds either to school officials (for the athletic recruitment scheme) or to individuals alleged to have been involved in proctoring the tests or taking the tests for others (for the test-taking scheme).  ¶¶ 307-10.  Because the specified unlawful activity is the alleged fraudulent bribe payments, which was accomplished only when the funds were transferred to the school officials, proctors, or individuals alleged to have taken the tests for others, any money laundering transaction must have taken place **after** the money was

---

[7/]      This infirmity is compounded by the fact that each parent-defendant is alleged to have engaged Singer separately, for distinct purposes, and through bespoke arrangements, which began and ended at different times.

transferred to those individuals. But the Indictment does not allege that the defendants or anyone else engaged in any transactions with the money after the money had been transferred to those individuals. Therefore, none of the transactions in which the defendants engaged involved proceeds, and none could be money laundering.

The government may argue that the defendants' transfers to The Key or KWF amount to a completed "phase" of the specified unlawful activity—the wire fraud—and therefore that the transfers from The Key or KWF to school officials, proctors, or individuals alleged to have taken the tests for others are transactions involving proceeds and thus money laundering transactions. But those transfers are the "transaction[s] that creat[ed] the proceeds," which are not criminalized by the money laundering statute. *Richard*, 234 F.3d at 769. Money laundering prohibits only the subsequent "transaction in proceeds" that were generated by the underlying specified unlawful activity. *Id.*

Moreover, unlike in *Richard* and *Nunez*, the defendants here were not engaged in the ongoing commission or continuing cover-up of an already-completed criminal offense. The transfer of the defendants' "clean" money to The Key or KWF is not a completed phase of the wire fraud. Even under the government's theory, when the defendants transferred money to the Key or KWF, no money was given to an individual in exchange for unwarranted favorable treatment; it was only when the money was subsequently transferred from The Key or KWF to the school officials, proctors, and individuals alleged to have taken the tests that the alleged "bribe" took place.

For example, the Indictment alleges that Mrs. Kimmel agreed to pay Singer $275,000, with the understanding that Singer would use that money to facilitate Mrs. Kimmel's daughter's admission to Georgetown. ¶¶ 165-75. Although no money is specifically tied to any financial

transaction connected to Mrs. Kimmel, the Indictment also alleges that between September 2012 and September 2013, Singer caused The Key and later KWF to pay Gordon Ernst, the Georgetown tennis coach, $244,000 in monthly installments.  ¶ 175.  Similarly, the Indictment alleges that Mrs. Kimmel agreed to pay Singer $200,000, by way of  KWF (and $50,000 to the USC Women's Athletic Board Fund "controlled" by USC Senior Administrator Donna Heinel), with the understanding that Singer would use that money to facilitate Mrs. Kimmel's son's admission to USC.  ¶¶ 176-80.  Again, although no money is specifically tied to any financial transaction connected to Mrs. Kimmel, the Indictment does allege that in "July 2018, KWF began paying Heinel $20,000 per month in exchange for facilitating the admission of defendant ABDELAZIZ's daughter, and the children of other Singer clients, to USC as purported athletic recruits."  ¶ 121.

While the Indictment indicates the dates that Mrs. Kimmel made the payments to Singer and the dates that Singer made the payments to Ernst and Heinel, it does not state which payments constituted the specified unlawful activity and which were the money laundering transactions. *See* ¶¶ 330-35.[8]  Because the Indictment does not specify which payments were the specified unlawful activity and which were the money laundering transactions, it also does not specify when each transaction took place.  Therefore, the Indictment does not allege that the specified unlawful activity was complete (or that a phase was complete) or that any proceeds were generated before the money laundering transaction took place.  Simply put, a violation of the money laundering statute could not take place until after the transfers from The Key or KWF to the school officials, proctors, or individuals alleged to have taken the tests for others (the completed phase of the specified unlawful activity), but the Indictment does not mention any transactions which occurred after the transfers from The Key or KWF to the school officials, proctors, or individuals alleged

---

[8]      This same infirmity plagues the allegations against each defendant.

to have taken the tests for others.  Therefore, the Indictment fails to properly allege a conspiracy to commit money laundering. For this reason, the Indictment fails to properly allege a money laundering conspiracy as to any of the defendants.

## CONCLUSION

For the reasons discussed herein, the defendants respectfully request that this Court dismiss Count III of the Indictment, for Money Laundering Conspiracy.

DATED: April 1, 2020                    Respectfully submitted,

*/s/ Cory S. Flashner*
Cory S. Flashner (BBO # 629205)
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
csflashner@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com

*Counsel for Elisabeth Kimmel*

15

Sean M. Berkowitz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

Perry J. Viscounty (*admitted pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com

/s/ William J. Trach
William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone: 617.948.6000
Fax: 312.993.9767
william.trach@lw.com

Roman Martinez (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Phone: 202.637.2200
roman.martinez@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554
gwv@dcglaw.com
jnr@dcglaw.com

Mark E. Beck (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

David C. Scheper (*admitted pro hac vice*)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071
Phone: 213.613.4655
Fax: 213.613.4656
dscheper@scheperkim.com

*Counsel for Lori Loughlin*

16

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

/s/ David E. Meier
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com

/s/ Stephen H. Sutro
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

/s/ Reuben Camper Cahn
Reuben Camper Cahn (*pro hac vice*)
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsen "Joey" Chen*

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that I conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion. The government opposes this motion.

*/s/ Cory S. Flashner*
Cory S. Flashner

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on April 1, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Cory S. Flashner*
Cory S. Flashner