# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

      v.

ROBERT ZANGRILLO,

        Defendant.

Case No. 19-cr-10080

## DEFENDANT ROBERT ZANGRILLO'S MEMORANDUM IN SUPPORT OF HIS MOTION TO STRIKE THE CLASS-TAKING ALLEGATIONS OR, IN THE ALTERNATIVE, TO SEVER COUNTS ONE AND FOUR, AND TO SEVER HIS TRIAL

### ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................5

I.      THE COURT SHOULD STRIKE THE CLASS-TAKING ALLEGATIONS IN THE INDICTMENT ..................................................................................................5

II.     IN THE ALTERNATIVE, THE COURT SHOULD SEVER COUNTS ONE AND FOUR TO THE EXTENT THEY ALLEGE THE CLASS-TAKING SCHEME ....................................................................................................................7

      A.     The Class-Taking Scheme Is Improperly Joined Under Rule 8. .............................7

      B.     The Class-Taking Scheme Alleged In Counts One and Four Should Be Severed Under Rule 14. ......................................................................................10

III.    THE COURT SHOULD SEVER MR. ZANGRILLO'S TRIAL ......................................12

CONCLUSION...................................................................................................................15

Case 1:19-cr-10080-NMG   Document 1046   Filed 04/01/20   Page 3 of 22

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Kotteakos v. United States*,
　　328 U.S. 750 (1946) ................................................................................. 13, 14

*United States v. Buchanan*,
　　930 F. Supp. 657 (D. Mass. 1996) ............................................................ 8, 11

*United States v. Capozzi*,
　　73 F. Supp. 2d 75 (D. Mass. 1999) ............................................................ 8, 9

*United States v. Cartagena-Merced*,
　　986 F. Supp. 698 (D.P.R. 1997) ................................................................... 11

*United States v. Colon-Ledee*,
　　785 F. Supp. 2d 1 (D.P.R. 2010) .................................................................... 5

*United States v. Davis*,
　　241 F. Supp. 3d 261 (D. Mass. 2017) ...................................................... 11, 12

*United States v. Drougas*,
　　748 F.2d 8 (1st Cir. 1984) ............................................................................ 13

*United States v. Halper*,
　　590 F.2d 422 (2d Cir. 1978) ........................................................................ 8, 9

*United States v. Lewis*,
　　40 F.3d 1325 (1st Cir. 1994) ........................................................................... 5

*United States v. Perkins*,
　　926 F.2d 1271 (1st Cir. 1991) ........................................................................ 11

*United States v. Randazzo*,
　　80 F.3d 623 (1st Cir. 1996) .................................................................... 8, 9, 10

*United States v. Raymond*,
　　697 F.3d 32 (1st Cir. 2012) ............................................................................ 12

*United States v. Rodriguez–Cardona*,
　　924 F.2d 1148 (1st Cir. 1991) ........................................................................ 11

*United States v. Scivola*,
　　766 F.2d 37 (1st Cir. 1985) ............................................................................ 11

*United States v. Taylor*,
　　54 F.3d 967 (1st Cir. 1995) .............................................................................. 8

*United States v. Torres-Gonzalez,*
 526 F. Supp. 2d 210 (D.P.R. 2007) ................................................................ 6, 7

*United States v. Turkette,*
 632 F.2d 896 (1st Cir. 1980), *rev'd on other grounds*, 452 U.S. 576 (1981) ...................... 7

*United States v. Varoudakis,*
 233 F.3d 113 (1st Cir. 2000) ................................................................ 12

*Zafiro v. United States,*
 506 U.S. 534 (1993) ................................................................ 13, 15

## STATUTES

18 U.S.C. § 1341 ................................................................ 2

18 U.S.C. § 1346 ................................................................ 2

18 U.S.C. § 1349 ................................................................ 2

## RULES

Fed. R. Crim. P. 14 ................................................................ 7, 10, 11, 13

Fed. R. Crim. P. 7 ................................................................ 5, 7

Fed. R. Crim. P. 8 ................................................................ 7, 10

Fed. R. Evid. 403 ................................................................ 12

Fed. R. Evid. 404 ................................................................ 11

## OTHER AUTHORITIES

Fed. R. Crim. P. 7(d), advisory committee note ................................................................ 5

Defendant Robert Zangrillo respectfully submits this memorandum of law in support of his motion to strike the Indictment's allegations that a Key Worldwide employee helped his daughter complete certain high school and college courses or, in the alternative, to sever Counts One and Four insofar as they allege a class-taking scheme, and to sever his trial from those of his co-defendants. By separate motion, Mr. Zangrillo also moves to dismiss those Counts. Mr. Zangrillo also joins in the motions of his co-defendants to the extent applicable to him.

## <u>INTRODUCTION</u>

Unlike every other defendant grouped for trial with Mr. Zangrillo, the Government does not allege that he conspired with William Singer to present his daughter as an athletic recruit to the University of Southern California ("USC"). Instead, the Government seeks to go forward with a trial against Mr. Zangrillo and seven co-defendants in which the Government will be required to present two unique (and novel) theories of wire fraud relevant only to Mr. Zangrillo.

As to the Government's first theory, despite not having any precedent supporting its theory, the government alleges that Mr. Zangrillo aided and abetted wire fraud because his daughter's academic transcripts that were sent to Boston University ("BU") and USC reflected grades from courses that she allegedly received assistance completing. No other defendant is charged with this type of garden variety academic dishonesty, nor has the Government pointed to case law or past practice demonstrating that this type of conduct has ever been criminalized.

As to the Government's second theory, despite the undisputed fact that Mr. Zangrillo made a lawful and undisputed donation to USC itself, the government alleges that he paid a bribe to USC in order to guarantee admissions for his daughter. Mr. Zangrillo noticeably stands apart from the other defendants to the extent that his donation to USC is not only well-documented but, unlike the other defendants, the government *admits* that Mr. Zangrillo's daughter was admitted to USC as a "VIP"—a University-wide program reserved for donors, legacy students, or any other

1

applicant whom a department or front office employee like the University President wanted to designate for special consideration—and not as a purported athletic recruit.

The differences between the charges against Mr. Zangrillo and the other defendants is stark. There is a substantial likelihood that a jury will confuse or conflate the charges and evidence against the other defendants when considering the case against Mr. Zangrillo. Principally, the Government's allegations and evidence related to the scheme to admit students as athletic recruits has no bearing on the government's case against Mr. Zangrillo. That information would inadmissible if he were tried alone. For that reason, joinder of Mr. Zangrillo with the other defendants is improper and prejudicial.

In addition, because the class-taking allegations fail to state an offense and are wholly unrelated to the bribery scheme, the class-taking allegations must be stricken from the Indictment in order to avoid significant prejudice to Mr. Zangrillo. In the alternative, for the same reason that Mr. Zangrillo's trial should be severed, the class-taking allegations must be severed from the bribery allegations.

## RELEVANT BACKGROUND

Count One of the Indictment charges Mr. Zangrillo with a conspiracy to commit (a) mail fraud and honest services mail fraud, and (b) wire fraud and honest services wire fraud, in violation of 18 U.S.C. § 1349. *See* Fourth Superseding Indictment ("FSI"), ECF No. 732 ¶ 370.

Count Four charges Mr. Zangrillo with substantive wire fraud and honest services wire fraud, in violation of 18 U.S.C. §§ 1341 and 1346, in connection with an August 24, 2017 e-mail in which Mr. Zangrillo's daughter's high school transcript was sent from her high school directly to BU. *Id.* ¶¶ 375-376; *see also id.* ¶ 262 (describing the August 24, 2017 e-mail).

Count Ten charges Mr. Zangrillo with an additional substantive count of wire fraud and honest services wire fraud, in violation of 18 U.S.C. §§ 1341 and 1346, relating to a January 3,

2019 telephone call with Rick Singer allegedly related to his daughter's admission to USC.  *See* FSI ¶ 376.[1]

For all three counts, the Indictment alleges that Zangrillo engaged in (or conspired to engage in) a scheme to defraud involving (1) obtaining money or property in the form of "ACT, SAT and other standardized tests and test scores, and admission to the Universities," and also (2) depriving "variously, ACT, Inc., the College Board, and the Universities, of their right to the honest and faithful services of their test administrators, athletic coaches and university administrators, through bribes and kickbacks."  *Id.* ¶ 376 (substantive count); *see also id.* ¶ 370 (alleging identical language as the objects of the Count One conspiracy).

The counts relate to two separate and unrelated schemes, both of which are described in detail in Mr. Zangrillo's Motion to Dismiss the Indictment, which is incorporated herein by reference.  *See* ECF No. 1044.  For the purposes of this motion, a brief summary of the Government's allegations is below.

The Alleged Class-Taking Scheme

The Government alleges that Mr. Zangrillo committed multiple federal crimes when he paid for Singer's employees to help his daughter with her online high school classes.

According to the Indictment, Mr. Zangrillo's daughter was admitted to BU in or about March 2017, for the fall 2017 term.  *Id.* ¶ 254.  The Indictment does not allege that at the time Mr. Zangrillo's daughter applied to or was accepted by BU she had received assistance from Singer's employees in completing her classes.  Nor does the Indictment allege that her acceptance to BU was tainted in any other way, such as through a bribe, faux athletic recruiting, or ACT/SAT

---

[1]     Mr. Zangrillo is also charged with conspiracy to commit federal programs bribery and money laundering conspiracy, both of which relate to his donation to USC.  FSI ¶¶ 305-06 (federal programs bribery over acts), ¶¶ 349-50 (money laundering over acts).

schemes as alleged against the other defendants.  Instead, the Indictment alleges that sometime in the spring of 2017, after she already was admitted to BU, Mr. Zangrillo's daughter "partially completed" her online high school courses and then received help from Singer's tutors to finish the work.  *Id.* ¶ 255.  The Indictment goes on to allege that five months after she was admitted to BU, Singer's employee e-mailed Mr. Zangrillo's daughter's high school, asking it to send her transcript to BU.  *Id*. ¶¶ 261-62.  The Indictment does not allege that Mr. Zangrillo knew that Singer's employee requested the high school send his daughter's transcript to BU, nor does the Indictment explain what BU did—if anything—with the transcript considering BU already accepted Mr. Zangrillo's daughter five months earlier, and she did not actually attend the school. *Id*. ¶ 254.

Without providing much detail, the Indictment also alleges that in or about June 2018, Mr. Zangrillo's daughter received assistance from Singer's employees completing additional online classes.  *Id*. ¶ 268.  According to the Indictment, at some unspecified time later, "[t]ranscripts reflecting the completion of these online courses were submitted to USC on behalf of Zangrillo's daughter."  *Id*. ¶ 271.  Again, the Indictment does not allege that Mr. Zangrillo knew that the transcript was being sent to USC or requested that it be sent.  The Indictment fails to allege to what extent, if any, USC reviewed or relied on the transcript or grades therein.

The Alleged Bribery Scheme

The Government alleges that the seven defendants Mr. Zangrillo is scheduled to go to trial with allegedly paid to have their children falsely admitted to college as athletic recruits.  *Id*. ¶¶ 114, 123, 144, 225, 245.  The Government has admitted, however, that Mr. Zangrillo's daughter was not presented to USC as an athletic recruit.  Rather, both the Government and USC agree that Mr. Zangrillo's daughter was admitted as a "VIP" student, consistent with a university-wide practice

sanctioned and utilized by the entire school hierarchy including USC's President, Vice Presidents, Provost, and most deans. *See* ECF Nos. 532-1 at 3 n.1; 951.

According to the Indictment, USC received $50,000 from Mr. Zangrillo, which was documented in the same manner as all ordinary donor gifts. FSI ¶ 273. Notwithstanding the fact that USC recognized Mr. Zangrillo's donation and flagged his daughter as a "VIP" candidate in the same manner as USC handles most applications from the children of large donors, the Government has characterized this payment as a bribe to "facilitate his daughter's transfer to USC." *Id.* ¶ 265.

## ARGUMENT

## I.     THE COURT SHOULD STRIKE THE CLASS-TAKING ALLEGATIONS IN THE INDICTMENT

The Court should strike all references to the class-taking scheme alleged in the Indictment. *See* FSI ¶¶ 253-264, 268-271. Since the class-taking scheme is not a federal crime under the wire fraud statute and is entirely unrelated to the bribery scheme, references in the Indictment to the fact that Mr. Zangrillo's daughter received assistance completing online classes is unduly prejudicial to Mr. Zangrillo.

Federal Rule of Criminal Procedure 7(d) provides that the court may "strike surplusage from the indictment or information." The Rule serves to "protect the defendant against immaterial or irrelevant allegations in an indictment, which may be prejudicial." *United States v. Lewis,* 40 F.3d 1325, 1346 (1st Cir. 1994) (quoting Fed. R. Crim. P. 7(d), advisory committee note). While an indictment may include "relevant" background information as well as "[w]ords describing what is legally essential to the charge," allegations that "are not relevant to the charge and are inflammatory and prejudicial" must be stricken. *United States v. Colon-Ledee*, 785 F. Supp. 2d 1, 2 (D.P.R. 2010).

As discussed in detail in Mr. Zangrillo's Motion to Dismiss the Indictment, the class-taking scheme does not constitute a federal crime under the wire fraud statute.  *See* ECF No. 1044 at 11-16.  Moreover, the fact that Mr. Zangrillo's daughter received assistance in her online classes is entirely unrelated to the Government's claim that Mr. Zangrillo paid a bribe to USC.  The two theories are logically incompatible.  The Government cannot allege that USC was misled into admitting Mr. Zangrillo's daughter on the merits based on its review of her transcript that included grades from classes she received assistance on, while at the same time alleging that her admission to USC was a foregone conclusion due to a bribe.  It follows that there is absolutely no need for the Indictment to reference the class-taking allegations because information about the alleged class-taking scheme is not background information relevant to the bribery scheme or necessary context.

Absent a principled basis in law to contend that the class-taking allegations constitute a federal crime, the only effect of referencing such "bad act" evidence is to condemn Mr. Zangrillo as a "cheater" in order to increase the chance of convicting him on the bribery counts.  Courts, however, have routinely held that where there is no relevant purpose for including unrelated allegations, the allegations must be stricken.  In *United States v. Torres-Gonzalez*, 526 F. Supp. 2d 210 (D.P.R. 2007), for example, the government charged the defendant with being a felon in possession of a weapon.  The court granted the defendant's motion to strike allegations related to his prior conviction, even though the prior felony conviction was an element of the offense.  *Id*. at 212.  According to the Court, while the defendant's "prior convictions may be relevant to the case at hand and could be admissible if the Government satisfies Fed.R.Evid. 403's standard . . . there seems no relevant purpose for including the above mentioned statements [about the prior convictions] in the Superseding Indictment."  *Id*.  The court went on to state that reference to the

prior convictions were "inflammatory and prejudicial to Defendants and if presented to the jury could color the jury's perception of Defendants' character." *Id.*

Here, reference to the class-taking scheme is even less relevant than the prior convictions that the court struck in *Torres-Gonzalez*. Because the class-taking scheme cannot constitute its own federal offense, the only purpose in referencing it is to inflame the jury and color its perception of Mr. Zangrillo. That plainly is prohibited by Rule 7(d). Accordingly, the Court should strike paragraphs 253-264 and 268-271 of the Indictment insofar as they reference the class-taking allegations.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD SEVER COUNTS ONE AND FOUR TO THE EXTENT THEY ALLEGE THE CLASS-TAKING SCHEME

If the Court declines to strike (or dismiss) the class-taking allegations in Counts One and Four, those charges should be severed from the rest of the counts in the Indictment either under Rule 8 or Rule 14 of the Federal Rules of Criminal Procedure. Because the class-taking scheme is an entirely separate scheme from the bribery scheme, occurring during a different time period and requiring different evidence, that conduct is improperly joined and should be severed to avoid unfair prejudice to Mr. Zangrillo at trial.

### A.   The Class-Taking Scheme Is Improperly Joined Under Rule 8.

Federal Rule of Criminal Procedure 8(a) governs joinder of offenses, while Rule 8(b) governs joinder of defendants. "Although, on its face, Rule 8(a) is not confined to single-defendant indictments, most courts have taken the position that it is so limited and, where more than one defendant is involved, Rule 8(b) alone provides the appropriate standards for joinder." *United States v. Turkette*, 632 F.2d 896, 907 (1st Cir. 1980), *rev'd on other grounds*, 452 U.S. 576 (1981).

Rule 8(b) provides that the indictment may charge two or more defendants if they are alleged to have "participated in the same act or transaction, or in the same series of acts or

transactions, constituting an offense or offenses."  In determining whether counts are properly joined under Rule 8(b), the First Circuit has instructed trial courts to look at "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred."  *United States v. Capozzi*, 73 F. Supp. 2d 75, 81 (D. Mass. 1999), (*citing United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).  While considerations of judicial efficiency favor joint trials, "Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts."  *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996).  Thus, courts have repeatedly affirmed the proposition that "[a] vague thematic connection among offenses may not support joinder."  *United States v. Buchanan*, 930 F. Supp. 657, 662 (D. Mass. 1996).

In *United States v. Buchanan*, for example, the government charged the CEO of MassBank with two separate instances of mail and wire fraud in a single indictment.  The first allegation had to do with misappropriating MassBank money to pay personal expenses to enrich his family.  *Id*. at 660.  The second allegation had to do with defrauding a real estate partnership he was associated with in order to steal money to extend a loan to a MassBank customer.  *Id*. at 661.  Despite the fact that both groups of charges involved MassBank and occurred during overlapping periods, the court found that there was no "common scheme or plan."  *Id*. at 663-64.  The court severed the two counts, stating that "[t]he government cannot link cases simply by changing the level of abstraction—namely that this case is about an abuse of trust, rather than about two distinct allegedly illegal schemes."  *Id.* at 662.

In analyzing the severance issues, the *Buchanan* court looked to the Second Circuit case *United States v. Halper*, 590 F.2d 422 (2d Cir. 1978) for guidance, noting that the First Circuit has

adopted the logic of *Halper*.  In *Halper*, the Second Circuit reviewed a trial court's decision to permit joinder of charges of Medicaid fraud and tax evasion.  The government argued joinder was appropriate because the two offenses were "connected transactions" since the defendant's scheme to defraud the Medicaid system resulted in the income that he did not report which violated the tax laws.  *Id*. at 429.  The court disagreed, stating that the "[c]omission of one of the offenses neither depended on nor necessarily led to the commission of the other; proof of the one act neither constituted nor depended upon proof of the other."  *Id*.

In this case, like in *Buchanan* and *Halper*, the class-taking scheme alleged by the Government is an entirely distinct scheme from the bribery scheme – involving different people, different conduct, different witnesses, different time periods, different victims, and ultimately different evidence.  *See* FSI ¶¶ 256, 265.  Moreover, while Singer likely would be a witness to both offenses, the rest of the evidence is entirely non-overlapping.  *See Capozzi*, 73 F. Supp.2d at 81 (finding that one overlapping witness is insufficient to warrant joining two dissimilar counts).  Whether Mr. Zangrillo's daughter cheated in online classes and whether the transcript reflecting those classes was material to the admissions decision at BU and USC requires entirely different documents and witnesses from the question of whether Mr. Zangrillo paid a bribe to get his daughter admitted to USC.  The former requires documents and witnesses from BU and Mr. Zangrillo's daughter's online courses and tutors.   The latter requires evidence from USC concerning whether USC admitted Mr. Zangrillo's daughter because she was labeled a VIP student (as opposed to a student athlete) and what Singer told Mr. Zangrillo about how his donation was being used.  Where, as here, "important evidence" differs, Rule 8 is not satisfied and the counts must be severed.  *See Randazzo*, 80 F.3d at 628 (finding the requirements of Rule 8 not satisfied where the two counts "revolve around quite different facts.")

In addition, the modi operandi of the two alleged schemes are entirely different.  While the Government may argue that, in the abstract, both schemes shared the goal of getting Mr. Zangrillo's daughter admitted to college, the purported schemes are entirely different.  One apparent scheme involves paying tutors to help complete online classes.  The other apparent scheme involves paying a so-called bribe to USC officials.  The two offenses do not depend on each other and one cannot be used to prove the other.  In fact, the exact opposite is true.  The schemes are logically incompatible.  If Mr. Zangrillo's daughter was guaranteed a spot in college due to an alleged bribe regardless of her grades, there would be no need for her to cheat on classes to inflate her grades.  Thus, there is no common scheme or plan connecting the class-taking allegations and the bribery allegations.  Because the Government has failed to meet the requirements of Rule 8, the court should sever the class-taking scheme alleged in Counts One and Four from the rest of the Indictment.

**B.     The Class-Taking Scheme Alleged In Counts One and Four Should Be Severed Under Rule 14.**

At trial, the Government will be unable to demonstrate that Mr. Zangrillo willfully participated in either of the class-taking scheme or the bribery scheme.  Mr. Zangrillo, however, should not have to defend against both allegations at a single trial.  Even if the court finds that the counts are joined properly under Rule 8, Rule 14 requires severance of the class-taking counts because Mr. Zangrillo will face significant and undue prejudice should the two schemes be tried together.

Under Rule 14, a judge has discretion to order severance of counts, even if properly joined under Rule 8, to avoid undue prejudice.  *Randazzo*, 80 F.3d at 627.  In deciding a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials. *United States v. Perkins,* 926 F.2d 1271,

1280 (1st Cir. 1991).  There are generally three types of prejudice relevant to a Rule 14 severance that may emerge from joining offenses pursuant to Rule 8(a): (1) the defendant may become embarrassed, or confounded in presenting separate defenses; (2) proof that the defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.  *United States v. Cartagena-Merced*, 986 F. Supp. 698, 703 (D.P.R. 1997) (*citing United States v. Scivola,* 766 F.2d 37, 41–42 (1st Cir. 1985)).

As relevant here, Rule 14 allows severance if "proof that the defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense." *United States v. Davis*, 241 F. Supp. 3d 261, 263 (D. Mass. 2017).  Courts often refer to this as "spillover prejudice."  In analyzing whether "spillover prejudice" rises to the Rule 14 standard, it is instructive to consider whether the Government could introduce evidence of the high school cheating scheme alleged in Count Four in a trial on the bribery counts, or whether the evidence would be inadmissible "bad acts" evidence under Rule 404(b) of the Federal Rules of Evidence. *See Buchanan*, 930 F. Supp. at 666.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  To be admissible, such "bad acts" evidence must pass a two-part test. *See United States v. Rodriguez–Cardona*, 924 F.2d 1148, 1150–51 (1st Cir. 1991).  First, the evidence must have "special relevance" to a contested issue, such as intent or knowledge, and it must not include bad character or propensity as a necessary link in the inferential chain. *See United*

*States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000).  Second, the evidence must withstand Federal Rule of Evidence 403, which demands that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice.  *See United States v. Raymond*, 697 F.3d 32, 38 (1st Cir. 2012).

In this case, evidence of the bribery scheme clearly would be inadmissible in a separate trial on the class-taking scheme.  The bribery allegations have no "special relevance" to the allegations that a tutor helped Mr. Zangrillo's daughter with some of her high school classes.  Moreover, the alleged class-taking scheme occurred during a different time period and involved a different university than the bribery allegations against Mr. Zangrillo.  The only reason to offer evidence of the bribery scheme in a trial on the class-taking scheme would be to show that Mr. Zangrillo is a "cheater" – that is, that he has a propensity to engage in dishonest behavior to try to help his daughter get into college.  The Government will try to show that Mr. Zangrillo was likely to help his daughter cheat in classes because he also paid an alleged bribe to get her into college.  This raises the odds that a jury will convict Mr. Zangrillo not based on the facts, but based on conflating a separate, unrelated "bad act into bad character."  *Varoudakis*, 233 F.3d at 122.  It also compounds the prejudice from the duplicity discussed in Mr. Zangrillo's motion to dismiss, *see* ECF No. 1044 at 9-11, because evidence of one scheme cannot be used as a "link in the inferential chain" between the other.  *Davis*, 241 F. Supp. 3d at 263 (severing two counts because the risk of spillover prejudice).  Because the there is a substantial risk that Mr. Zangrillo would be prejudiced should the unrelated schemes be tried together, the Court should sever the class-taking scheme as alleged in Counts One and Four.

## III.   THE COURT SHOULD SEVER MR. ZANGRILLO'S TRIAL

In addition, the Court should sever Mr. Zangrillo's trial because he is uniquely situated from the seven co-defendants he is set to be tried alongside.  The allegations against Mr. Zangrillo

have absolutely *no* overlap with the other defendants.  Unlike his co-defendants, the Government has expressly conceded that it "is not disputed" that Mr. Zangrillo's daughter was admitted to USC as a so-called "VIP" applicant rather than as a fake athletic recruit.  *See* ECF 532-1 at 3 n.1.  And no one else is charged with the class-taking scheme.  Thus, trying Mr. Zangrillo alongside seven defendants who the Government claims paid to have their children admitted to USC as fake athletes is highly prejudicial to Mr. Zangrillo.[2]

As explained above, Rule 14 permits a court to sever a defendant's trial from a consolidated trial with his co-defendants if he can show he would suffer substantial prejudice from a joint trial. Fed. R. Crim. P. 14(a); *United States v. Drougas*, 748 F.2d 8, 18 (1st Cir. 1984).  As the Supreme Court explained in *Zafiro v. United States*, 506 U.S. 534, 539 (1993), severance is warranted where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  The Court explained that "[s]uch a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."  *Id*.  For example, "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty" and therefore may require severance to avoid prejudice.  *Id*.  The Court stated that, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened."  *Id*. (citing *Kotteakos v. United States,* 328 U.S. 750, 774-775 (1946).

---

[2]     If the Court denies Mr. Zangrillo's motion for severance and proceeds with a joint trial, Mr. Zangrillo believes the present trial groupings, *see* ECF 883, remain the best possible alternative because the current grouping at least involves defendants who allegedly defrauded USC.

Here, there is significant risk that Mr. Zangrillo will be prejudiced if tried alongside co-defendants who are alleged to have engaged in an entirely different scheme with a heighted degree of culpability than Mr. Zangrillo.  As an initial matter, the Government improperly joined all defendants into a single case notwithstanding the fact that there was no single conspiracy.  As explained in detail in the defendants' joint motion, the Indictment does not allege that Mr. Zangrillo knew any of the other defendants or coordinated, cooperated, or conspired with any of them to commit an act in furtherance of a joint conspiracy.  ECF 1032 at 5-6, 11-15.  Instead, the Indictment alleges a "rimless wheel" conspiracy where the only connection among the defendants is their connection to Singer.  *See Kotteakos v. United States*, 328 U.S. 750 (1946).

While the Government's failure to allege a single conspiracy is sufficient to warrant severance as to all the defendants, the harm to Mr. Zangrillo is especially pronounced.  This is because the government alleges that Mr. Zangrillo engaged in an entirely different scheme from his co-defendants.  Mr. Zangrillo is set to be tried alongside defendants Gamal Abdelaziz, Diane Blake, Todd Blake, Mossimo Giannulli, Lori Loughlin, John Wilson, and Homayoun Zadeh.  *See* ECF 883.  Unlike Mr. Zangrillo, however, the Government alleges that each of these seven defendants conspired with Singer to present their children as student-athletes to gain admission to USC.  *See* FSI ¶¶ 114, 123, 144, 225, 245.  In contrast, it is undisputed that Mr. Zangrillo's daughter was *not* presented to USC as a student athlete.  Rather, she was "flagged" as a "VIP" applicant consistent with a university-wide practice sanctioned and utilized by the highest echelons of USC, including its President, Vice Presidents, and Provost.

Trying Mr. Zangrillo alongside these seven co-defendants would result in a jury hearing evidence about a scheme to admit students as athletic recruits, which is entirely irrelevant to the case against Mr. Zangrillo.  Evidence related to a scheme to present a student as an athletic recruit

*would not* be admissible in a separate trial with Mr. Zangrillo as the sole defendant. As a result, there is a cognizable risk that the jury will conflate the evidence concerning the scheme to misrepresent students as athletes with the evidence related to Mr. Zangrillo. Moreover, Mr. Zangrillo would be forced to highlight the differences between the evidence against him and the other defendants. While not quite "pointing the finger" at the other defendants, Mr. Zangrillo's defense is certainly "mutually antagonistic" with the other defendants insofar as he will need to demonstrate that his daughter was *not* presented as a student-athlete, but was admitted through USC's well-established VIP program. *See Zafiro*, 506 U.S. at 537, 539. This is a legal as well as factual difference, too: since USC well knew about and blessed the VIP program, Mr. Zangrillo's use of it could not have deprived USC of the honest services of its employees or been the basis of a scheme to defraud USC, as charged.

In addition, the class-taking allegations are also unique to Mr. Zangrillo. No other defendant is charged with aiding and abetting their child engaging in garden variety academic dishonesty in connection with completing certain classes. If the class-taking allegations are tried along with the bribery counts against the other co-defendants, there is a significant risk of spillover prejudice. There is a substantial risk that the jury will overlook the lack of evidence as to the class-taking scheme and convict Mr. Zangrillo anyway based on the volume of evidence connected to the scheme to present students as athletic recruits. Mr. Zangrillo would be guilty by association despite the complete lack of evidence that he knew transcripts reflecting grades in which his daughter received assistance were submitted to BU or USC. Because this would be fundamentally unfair to Mr. Zangrillo, the Court should sever Mr. Zangrillo and try him alone.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should strike the class-taking allegations or, in the alternative, sever Counts One and Four as against Mr. Zangrillo to the extent they allege the class-

taking allegations.   The Court also should sever Mr. Zangrillo's trial from those of his co-defendants.

Dated:  April 1, 2020                               Respectfully submitted,

                                                   */s/ Martin G. Weinberg*
                                                   Martin G. Weinberg, Esq. (BBO # 519480)
                                                   20 Park Plaza, Suite 1000
                                                   Boston, MA  02116
                                                   Tel: (617) 227-3700
                                                   owlmgw@att.net

                                                   Matthew L. Schwartz (*admitted pro hac vice*)
                                                   Sara K. Winik (*pro hac vice pending*)
                                                   BOIES SCHILLER FLEXNER LLP
                                                   55 Hudson Yards, 20th Floor
                                                   New York, NY  10001
                                                   Tel: (212) 446-2300
                                                   mlschwartz@bsfllp.com
                                                   swinik@bsfllp.com

                                                   *Counsel for Robert Zangrillo*

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Undersigned counsel certifies that he conferred with counsel for the Government in an attempt to resolve or narrow the issues raised in this Motion.  The Government opposes this Motion.

/s/ Martin G. Weinberg
Martin G. Weinberg

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with the Clerk of the United States District Court for the District of Massachusetts via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users; these are identified on the Notice of Electronic Filing.  Paper copies will be sent to those identified as non-registered participants.

/s/ Martin G. Weinberg
Martin G. Weinberg