UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

DAVID SIDOO, et al.,

Defendants.

Case No. 19-cr-10080-NMG

*Leave to File Granted on 4/14/20*

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS INDICTMENT WITH PREJUDICE OR, IN THE ALTERNATIVE, FOR SUPPRESSION OF EVIDENCE BASED ON GOVERNMENTAL MISCONDUCT AND FOR DISCOVERY AND AN EVIDENTIARY HEARING (ECF NO. 971)**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................3

    I.    SINGER HAS ALLEGED THAT THE GOVERNMENT FABRICATED EVIDENCE GOING TO THE HEART OF THIS CASE .......................................3

    II.    THE GOVERNMENT'S UNSUBSTANTIATED DENIALS ARE INADEQUATE ..................................................................................................6

    III.    THE UNREBUTTED GOVERNMENT MISCONDUCT WARRANTS DISMISSAL, OR AT MINIMUM SUPPRESSION AND A HEARING ................9

CONCLUSION ...............................................................................................................................10

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Limone v. Condon*,
   372 F.3d 39 (1st Cir. 2004) ............................................................................................. 4, 9, 10

*Rivera-Corraliza v. Morales*,
   794 F.3d 208 (1st Cir. 2015) .................................................................................................. 8

*Rogan v. City of Boston*,
   267 F.3d 24 (1st Cir. 2001) .................................................................................................... 8

*Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*,
   637 F.3d 53 (1st Cir. 2011) .................................................................................................... 7

*United States v. Dimasi*,
   215 F. Supp. 3d 179 (D. Mass. 2016) .................................................................................... 8

*United States v. Horn*,
   29 F.3d 754 (1st Cir. 1994) .................................................................................................... 9

### RULES

Fed. R. Evid. 901 ........................................................................................................................ 10

Local Rule 7.1(b)(2) ...................................................................................................................... 7

Local Rule 116.6 ........................................................................................................................... 8

**INTRODUCTION**

Rick Singer has alleged that federal agents coerced him to trick Defendants into "agree[ing] to a lie" on recorded phone calls that the Government plans to use as Exhibit A in proving Defendants' guilt at trial. Defs' Br., Ex. A (hereinafter Ex. A) at 1. Singer memorialized that allegation in a contemporaneous note describing the Government's instructions to "bend the truth," "tell a fib," and thereby "retrieve responses [from Defendants] that are not accurate" as to whether they believed their payments were legitimate "donation[s]" or illegitimate "Bribe[s]." *Id.* Singer's notes further state that this pressure tactic was part of the Government's plan to "nail" Defendants "at all costs." *Id.* The Government implemented this plan by hiding the notes for nearly 16 months and committing a host of other misconduct designed to deprive Defendants of a fair trial.

The Government's response to Singer's allegations—and to the other misconduct detailed in Defendants' motion—is to pretend that none of it matters or deserves a serious response.

*First*, the Government contends that the false information it instructed Singer to elicit is irrelevant, because this case is not "*only* about bribery." Opp. at 1 (emphasis added). But the Government's lengthy factual assertions that the college applications at issue inflated students' athletic profiles do not eliminate its need to prove Defendants' intent to defraud for every claim in this case. And, of course, proving bribery is an essential element of both the honest-services fraud and federal-programs bribery charges. The core allegation in Singer's notes is that the Government *fabricated* evidence to create the false impression that Defendants knowingly paid bribes to corrupt insiders, rather than made legitimate donations to help their children's chances of admission. That fake evidence is essential to the Government's case because the other evidence bearing on Defendants' intent shows that they believed their payments were legitimate donations—not bribes. Without proof of fraudulent intent, the Government's case falls apart.

*Second*, the Government repeatedly asserts that Singer's allegations are "untrue" as a

factual matter. But the Government offers not a scintilla of actual proof to support that core factual assertion. Strikingly, the Government submits no affidavits or other evidence from the federal agents or prosecutors allegedly involved in fabricating evidence. Nor does it submit an affidavit from Singer recanting his allegations. The Government's vague and general denial—essentially urging the Court to "trust us, we're the Government"—does not cut it, especially with Defendants' liberty at stake. And the Government's factual responses to the other forms of alleged misconduct are equally unavailing: The Government concedes the *Brady* violation (but tries to excuse it), ignores its misrepresentations to the Court and Defendants, and does not deny that it failed to prevent Singer from deleting scores of potentially significant text messages.

*Finally*, the Government closes with the shocking assertion that "[e]ven if the contentions in Singer's notes were true"—*i.e.*, even if federal agents coerced a cooperating witness into fabricating evidence—such misconduct "would not justify" suppression of the fake evidence (let alone dismissal of the indictment). *Id.* at 33. That is flat wrong. If Singer's allegations are true, the Government cannot use the fruit of its misconduct to inflame the jury and convict Defendants of crimes they did not commit. This Court should reject the Government's no-consequences approach to its egregious misconduct.

The facts documented in Defendants' motion warrant dismissal of the indictment or suppression of the consensual recordings. At a minimum, the Government's unsubstantiated denials of Singer's claims must be probed at an evidentiary hearing to resolve the dispute about whether, how, and to what extent agents pressured him to generate false evidence. Allowing this case to move forward under the current cloud of impropriety would threaten Defendants' constitutional rights and undermine the public's interest in seeing that justice is done.

# ARGUMENT

## I. SINGER HAS ALLEGED THAT THE GOVERNMENT FABRICATED EVIDENCE GOING TO THE HEART OF THIS CASE

The Government's principal response to Defendants' motion is to downplay the significance of the bribery charges—and thus of Singer's allegation that federal agents instructed him to trick Defendants into agreeing (or not disputing) that they paid illegitimate bribes instead of legitimate donations.  But bribery is an essential element of the Government's honest-services fraud and federal-programs bribery charges, and a central feature of the defense will be the absence of proof that Defendants knew their payments were bribes to corrupt insiders.  Moreover, even under the Government's property-fraud theory, it must prove that the Defendants intended to defraud the universities:  If Singer told them his methods were legitimate, the Government cannot prove its case.  Singer's misconduct allegations thus directly undermine this prosecution.

The Government's response catalogues its investigation of Singer from June 2018 until it confronted him in September 2018.  That investigation included extensive searches of his email accounts and a Title III wiretap of his phone, showing that Singer helped dozens of clients make donations to university athletic programs, in part by representing that his clients' children would be considered as walk-ons to various sports, with the goal of increasing their chances of admission.  But what did not show up in the Government's investigation before it approached Singer is proof that Singer told Defendants their payments were bribes to benefit corrupt university insiders.  Nor is there proof that Singer told Defendants that the universities themselves were being deceived.

The absence of such evidence is crucial.  The most contested issue in this case will likely be whether Defendants understood their payments to the universities and to Singer's foundation to be legitimate donations, or bribes to corrupt insiders betraying their university employers.  If the Defendants believed their payments were legitimate donations, each of the Government's claims

3

against them necessarily fails. And because Defendants mainly dealt with Singer in the admissions process, what he told Defendants about their payments is critical evidence of whether they understood their payments to be legitimate donations or unlawful bribes.[1]

We now know that from the beginning of his cooperation, Singer informed the Government that he had told parents that their payments were legitimate donations to university programs—*not* bribes to benefit corrupt insiders. *See* Defs' Br. at 12; Ex. A. But because those facts would undermine its case, the Government became "loud and abrasive" and browbeat Singer into trying to procure false admissions from parents over the phone. According to Singer, the Government instructed him to "tell a fib and not restate" that he had previously told parents that their money would go "to the program not the coach," and thereby to "ask[] each person to agree to a lie I was telling them" and "retrieve responses [from the parents] that are not accurate." Ex. A at 1. And Singer carried out the Government's scheme by calling his clients on recorded lines.

The Government now wants to use these recordings—which Singer says were engineered to create false evidence—to show that Defendants knew their payments were illegal bribes. The Government now admits that "most of the defendants understood their money to be going to designated programs," Opp. at 9 n.7, and it believes the calls show that those otherwise innocuous donations were actually pay-offs to corrupt insiders. But if Singer's allegations are true, then (1) the calls have no evidentiary value, and (2) the Government engaged in the worst kind of official misconduct imaginable: fabricating evidence to secure a wrongful conviction. *See Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004). This kind of misconduct cannot be ignored.

---

[1] Without a bribe, the Government's litany of other evidence purportedly showing that the applications overinflated the students' athletic credentials (Opp. at 3-13) is beside the point. None of it shows Singer telling parents that their payments would benefit corrupt insiders or lead them to betray their employers. And the Government's cherry-picked examples omit critical parts of recorded calls and other evidence directly contradicting their claims. *See* Defs' Br. at 8-13.

In response to Singer's allegations, the Government's principal legal argument is that

> Just because neither Singer nor the defendants actually used the word "bribe" to describe the purported donations doesn't mean that they were legitimate. They were bribes, regardless of what Singer and the defendants called them, because, ***as the defendants knew,*** the ***corrupt insiders*** were soliciting the money in exchange for recruiting unqualified students, ***in violation of their duty of honest services to their employer.***

Opp. at 23 (emphasis added). That argument attacks a straw man. As Defendants have previously explained, their defense is not that the labels ("donation" vs. "bribe") are dispositive as a matter of law. Rather, Defendants' straightforward argument is that they believed their payments were legitimate donations, and the universities accepted them as such. *See, e.g.*, Defs' *Brady* Reply, ECF No. 807 at 6. Singer's characterization of the payments to his clients as "donations"—not "bribes"—strongly supports Defendants' belief that the process of applying through the Athletic Department and making a donation was legitimate, and did not involve defrauding the university or corruptly inducing university insiders to betray their fiduciary duties.

The Government's argument also engages in textbook question begging—a characteristic of its bribery theory already highlighted by Judge Woodlock. *See United States v. Bizzack* Sent'g Tr., ECF No. 693-7 at 13-39. The italicized language block-quoted above simply *assumes* the truth of the very issue in dispute: whether Defendants *knew* their payments went to a corrupt university official who was acting against the interest of the university. Singer's characterization of the payments as donations undermines the Government's assumption. When Singer told the Government that he had informed Defendants that the payments were donations, not bribes, he was telling the Government that he had informed them that the payments were *legitimate*. In doing so, he also confirmed what the Government already knew from its lengthy investigation—that Singer did not tell Defendants that their payments were going to corrupt insiders soliciting money in violation of their fiduciary duties, but that the donations were authorized by the schools to raise

money for their athletic programs.  *See, e.g.,* Ex. SSS to Gov't *Brady* Opp., ECF No. 736-1 at 361-63 (Singer email assuring parent that "side door" approach was "not improper" but rather a way that "all schools fund their special programs or needs").

Finally, the Government's insistence that the bribe/donation distinction is immaterial rings especially hollow in light of the substance of Singer's allegations.  If the distinction were meaningless, then why would federal agents be so insistent that Singer lie about it on the recorded calls to his clients?  And why would Singer be so resistant to the Government's directions?  The answer is obvious:  The Government knew then—and knows now—that the distinction *does* matter, and that having Singer characterize the payments as legitimate donations to school programs undermines the Government's case.  As Singer rightly recognized at the time, recharacterizing the donations as bribes is simply a "lie."

## II.     THE GOVERNMENT'S UNSUBSTANTIATED DENIALS ARE INADEQUATE

The Government's second tactic is simply to deny that Singer's notes accurately reflect his interaction with federal agents.  Throughout its response, the Government variously denounces Singer's factual account as "untrue," "flatly untrue," "absurd," "demonstrably untrue," and the like.  Opp. at 16, 22, 26, 28, 32.  But this effort at proof by repeated assertion falls flat.  That is because the Government submits no evidence—*none*—actually contradicting Singer's description of the October 2 call.  Nor does it explain why Singer would have had any motive to write a false note to himself (or even to his lawyer).  The Government's conclusory denials are plainly inadequate in at least two respects.

First, they are too ill-defined to adequately address the specific, detailed allegations in Singer's notes.  The response is entirely unclear as to whether the Government is denying *every* assertion in Singer's October 2 note, or only some of them (and if so, which ones).  Does the Government deny, for example, that federal agents spoke to Singer on October 2?  Does it deny

6

that agents expressed a desire to "nail" one of the defendants "at all costs"?  That the discussion was "loud and abrasive"?  That they asked Singer to lie?  That Singer is accurately characterizing the substance of the lie?  Some or all of the above?  The Government does not say.  Its studiously ambiguous—and entirely conclusory—denials offer no basis for the Court (or Defendants) to understand what the Government is claiming happened on the crucial call.

Second, the Government's assertions are just that—*assertions*, made in a brief by Government lawyers lacking firsthand knowledge of all of the facts.  Those assertions are not evidence.  If the Government had any evidence to support its denials, it presumably would have filed it with its brief (as Defendants did).  The Government could have filed an affidavit from Singer recanting the allegations in his October 2 note.  It could have filed affidavits from the agents and prosecutors implicated in the alleged incident.  It could have submitted contemporaneous documentary evidence, such as FBI 302 reports or agent notes, describing what occurred between the agents and Singer.  Had it submitted such evidence, the Government would have at least created a factual dispute over the truth of Singer's allegations.  Its utter failure to introduce anything from any of the relevant participants (all of whom are under Government control) speaks volumes.[2]

The Government's reliance on unverified assertions challenging Singer's account cannot be credited.  Local Rule 7.1(b)(2) *requires* a party opposing a motion on factual grounds to support its factual assertions with affidavits or other evidence: "Affidavits and other documents setting forth or evidencing facts on which the opposition is based *shall be filed* with the opposition."  As the First Circuit has emphasized, courts must "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, [or] unsupported speculation, or evidence.'"  *Tropigas de P.R., Inc. v.*

---

[2] The only evidence the Government cites is a carefully worded statement from Singer's lawyer declaring that no misconduct occurred "in my presence."  Opp. at 23.  But that statement proves nothing, because Singer did not allege that his counsel was on the October 2 call.

7

*Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (citation omitted); *see also Rivera-Corraliza v. Morales*, 794 F.3d 208, 224-25 (1st Cir. 2015) (same); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) (same).  These rules apply to the Government just like anyone else.  *See United States v. Dimasi*, 215 F. Supp. 3d 179, 180 (D. Mass. 2016) (rejecting Government's assertions because "unverified statements" in brief are not "evidence").

The Government should not assume this Court will give it a free pass from the standard rules that govern ordinary litigants in federal court.  Nor is the Government entitled to the benefit of any doubt.  Indeed, its other misconduct throughout the case—above and beyond the October 2 call—reveals a systematic disregard for Defendants' rights.  And the Government provides no meaningful response—evidentiary or otherwise—as to that conduct either.  For example:

- The Government concedes that it violated *Brady*, but then tries to excuse its error by hiding behind a privilege claim.  *See* Opp. at 23, 29.  But that claim is wholly frivolous, as detailed in Defendants' brief (at 18-24), and as readily confirmed by the Government's own taint team, *see* Defs' Br., Ex. O at 1.  The best the Government can muster in response is the bald assertion that "[i]t was facially reasonable" for AUSAs Rosen and O'Connell to conclude that the notes were privileged, Opp. at 29, despite the fact that (1) both Singer and his attorney consented to the Government searching the phone, and (2) a privilege claim cannot trump *Brady*, *see* Defs' Br. at 22-23.  And even if there were some legitimate reason to think that Singer's notes were privileged, the Government provides no explanation for why it failed to use this Court's mandatory procedures for withholding *Brady* information.  *See* L.R. 116.6.

- The Government offers no explanation for the repeated misrepresentations by AUSAs Rosen and O'Connell to this Court and Defendants.  For months, Defendants asked the Government to produce exculpatory evidence about how Singer described the payments to Defendants.  Defs' Br. at 2-4.  And for months, AUSAs Rosen and O'Connell flatly denied that the Government was "withholding any exculpatory evidence" on this issue.  ECF 736 at 2; *see also id.* at 1, 21-22 n.14; ECF No. 834 at 2.  During that entire extended exchange, Rosen and O'Connell knew that the Government was withholding the precise evidence that Defendants were requesting.  That conduct should not be countenanced by the Court.

- The Government does not deny that AUSA Rosen scripted other Singer calls with Defendants and instructed him to deliberately avoid mentioning exculpatory and true evidence.  *See* Defs' Br. at 11-12.  That the Government describes this effort to craft misleading evidence as "unremarkable" (Opp. at 28) reflects the prosecutorial team's preference for securing convictions over doing justice.

8

- The Government does not deny that it failed to prevent Singer from deleting hundreds of potentially exculpatory text messages and discarding the phone from which they were sent. *See* Defs' Br. at 25-26. But it offers no explanation for those failures, only unsupported and unverifiable claims about the spoliated texts. *See* Opp. at 29.

In sum, the Government's response is replete with denials or sweeping assertions that its misconduct is somehow nonexistent or irrelevant. But fact-free denials are not enough. The Government has failed to rebut Defendants' evidence, and it must now be held to account.

### III. THE UNREBUTTED GOVERNMENT MISCONDUCT WARRANTS DISMISSAL, OR AT MINIMUM SUPPRESSION AND A HEARING

Defendants acknowledge that dismissal is an extreme sanction reserved for truly outrageous misconduct. But the unrebutted record of extraordinary Government misconduct in this case warrants that extraordinary form of relief. Because there is credible evidence that the Government fabricated evidence against Defendants, and the Government has provided no countervailing evidence to dispute that allegation, the indictment should be dismissed.

If the Court concludes that dismissal is unwarranted at this stage, it should nonetheless suppress the fruits of the Government's misconduct: the consensual recordings. Again, the record shows that those recordings are tainted by the agents' improper efforts to fabricate evidence, and the Government has introduced no evidence to prove otherwise. This Court should suppress the recording to protect Defendants' due-process rights and deter future government misconduct. *See Limone*, 372 F.3d at 44-45; *United States v. Horn*, 29 F.3d 754, 766-67 (1st Cir. 1994).

Finally, if the Court does not dismiss the indictment, it should at a very minimum order an evidentiary hearing to determine the full extent of the Government's misconduct. There are many unanswered questions about how the Government handled Singer's notes, and about its repeated misrepresentations to the Court and Defendants that it was unaware of any exculpatory evidence, *see supra* at 6-8. But there is one simple question that the Court must be confident it has fully addressed before proceeding to trial: *Are Singer's notes true?* Did the Government pressure

9

Singer to "tell a fib" and to "bend the truth"?  Did the Government fabricate evidence?

The Government argues that an evidentiary hearing "would serve no purpose" because "*[e]ven if the contentions in Singer's notes were true*," that would "[a]t most" raise an issue for the jury.  Opp. at 33 (emphasis added); *see also id.* at 31 (similar).  To be clear, the contentions in Singer's notes are that the Government *fabricated evidence*.  And the Government is now arguing that even if that is true—even if the Government fabricated evidence—trial should proceed as normal and the concededly fabricated evidence should be put before the jury.

That claim is stunning.  Fabricated evidence violates one of the most "fundamental" concepts of justice, *Limone*, 372 F.3d at 44-45, and it has no place before any jury, ever.  How can the Government possibly argue otherwise?  Indeed, evidence that is concededly fabricated would plainly be inadmissible; by definition, such evidence is not authentic.  *See* Fed. R. Evid. 901.

Perhaps the most troubling part of the Government's assertion is that it reveals a profound misunderstanding of the seriousness of the alleged misconduct, and of this Court's role in ensuring any trial is fair.  *If the contentions in Singer's notes are true*, the Government has engaged in a sustained, orchestrated effort to cheat the justice system and win convictions at all costs—despite the facts.  This case should not proceed to trial without a thorough examination of what actually happened.  The only way to protect Defendants' constitutional rights—and ensure that any eventual trial is fair—is to order an evidentiary hearing and let the truth come to light.

## CONCLUSION

When Defendants first uncovered Singer's notes, this Court immediately recognized that they implicate "very serious" claims of official misconduct that cannot be ignored and require a "reasonable explanation" from the Government.  Defs' Br., Ex. K at 9, 15.  The Government has failed to provide that explanation.  This Court should either dismiss the indictment or suppress the consensual recordings and order an evidentiary hearing into Singer's allegations of misconduct.

10

Dated: April 17, 2020

Respectfully submitted,

/s/ *William J. Trach*

| | |
|---|---|
| Sean M. Berkowitz (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue<br>Suite 2800<br>Chicago, IL 60611<br>Phone: 312.777.7700<br>sean.berkowitz@lw.com | William J. Trach (BBO #661401)<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>Phone: 617.948.6000<br>Fax: 617.948.6001<br>william.trach@lw.com |
| Perry J. Viscounty (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>650 Town Center Drive<br>20th Floor<br>Costa Mesa, CA 92626<br>Phone: 714.540.1235<br>perry.viscounty@lw.com | Roman Martinez (*admitted pro hac vice*)<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW<br>Suite 1000<br>Washington, DC 20004<br>Phone: 202.637.2200<br>roman.martinez@lw.com |

*Counsel for Mossimo Giannulli and Lori Loughlin*

| | |
|---|---|
| George W. Vien (BBO #547411)<br>Joshua N. Ruby (BBO #679113)<br>DONNELLY, CONROY & GELHAAR, LLP<br>260 Franklin Street, Suite 1600<br>Boston, MA 02110<br>Phone: 617.720.2880<br>Fax: 617.720.3554<br>gwv@dcglaw.com<br>jnr@dcglaw.com | David C. Scheper (*admitted pro hac vice*)<br>SCHEPER KIM & HARRIS LLP<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA 90071<br>Phone: 213.613.4655<br>Fax: 213.613.4656<br>dscheper@scheperkim.com<br><br>*Counsel for Lori Loughlin* |

Mark E. Beck (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com

*Counsel for Mossimo Giannulli*

| | |
|---|---|
| */s/ Brian T. Kelly* | */s/ David E. Meier* |
| Brian T. Kelly (BBO No. 549566) | David E. Meier (BBO #341710) |
| Joshua C. Sharp (BBO No. 681439) | Todd & Weld LLP |
| Lauren M. Maynard (BBO No. 698742) | One Federal Street, 27th Floor |
| NIXON PEABODY LLP | Boston, MA  02110 |
| 53 State Street | (617) 720-2626 |
| Boston, MA 02109 | dmeier@toddweld.com |
| 617-345-1000 | |
| bkelly@nixonpeabody.com | */s/ Stephen H. Sutro* |
| jsharp@nixonpeabody.com | Stephen H. Sutro, Esq. |
| lmaynard@nixonpeabody.com | Duane Morris, LLP |
| | Spear Tower |
| Robert Sheketoff (BBO No. 457340) | One Market Plaza, Suite 2200 |
| One McKinley Square | San Francisco, CA 94105-1127 |
| Boston, MA 02109 | (415) 957-3008 |
| 617-367-3449 | SHSutro@duanemorris.com |
| | |
| *Counsel for Gamal Abdelaziz* | *Counsel for Diane Blake and Todd Blake* |
| | |
| */s/ David S. Schumacher* | /s/ *Reuben Camper Cahn* |
| David S. Schumacher (BBO #647917) | Reuben Camper Cahn *(pro hac vice)* |
| HOOPER, LUNDY & BOOKMAN, P.C. | Jennifer L. Keller *(pro hac vice)* |
| 470 Atlantic Avenue, Suite 1201 | Chase A. Scolnick *(pro hac vice)* |
| Boston, MA 02210 | KELLER/ANDERLE LLP |
| (617) 532-2700 | 18300 Von Karman Avenue, Suite 930 |
| (617) 345-3927 (fax) | Irvine, CA 92612 |
| dschumacher@health-law.com | Tel: (949) 476-8700 |
| | rcahn@kelleranderle.com |
| Patric Hooper (*pro hac vice*) | |
| HOOPER, LUNDY & BOOKMAN, P.C. | *Counsel for I-Hsen "Joey" Chen* |
| 1875 Century Park East, Suite 1600 | |
| Los Angeles, California 90067-2517 | |
| (310) 551-8111 | |
| (310) 551-8181 (fax) | |
| phooper@health-law.com | |
| | |
| Jordan Kearney (*pro hac vice*) | |
| HOOPER, LUNDY & BOOKMAN, P.C. | |
| 575 Market Street, Suite 2300 | |
| San Francisco, CA 94105 | |
| (415) 875-8500 | |
| (415) 875-8519 (fax) | |
| jkearney@health-law.com | |
| | |
| *Counsel for Amy and Gregory Colburn* | |

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*Counsel for William McGlashan, Jr.*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

*/s/ R. Robert Popeo*
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

*/s/ Michael K. Loucks*
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (*pro hac vice*)
Allen J. Ruby (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Marci Palatella*

| | |
|---|---|
| */s/ Tracy A. Miner*<br>Tracy A. Miner (BBO No. 547137)<br>Megan A. Siddall (BBO No. 568979)<br>Miner Orkand Siddall LLP<br>470 Atlantic Ave, 4th Floor<br>Boston, MA 02110<br>Tel.: (617) 273-8377<br>Fax: (617) 273-8004<br>tminer@mosllp.com<br>msiddall@mosllp.com<br><br>*Counsel for Homayoun Zadeh* | */s/ Martin G. Weinberg*<br>Martin G. Weinberg<br>Mass. Bar No. 519480<br>20 Park Plaza, Suite 1000<br>Boston, MA 02116<br>(617) 227-3700<br>owlmgw@att.net<br><br>Matthew L. Schwartz (*admitted pro hac vice*)<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Tel.: (212) 446-2300<br>Fax: (212) 446-2350<br>E-mail: mlschwartz@bsfllp.com<br><br>*Counsel for Robert Zangrillo* |

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those identified as non-registered participants.

/s/ William J. Trach
William J. Trach