UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| DAVID SIDOO, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO SEVER PURSUANT TO
FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)(3)(D) AND 14 (DKT. 1033)**

Acknowledging that it "is premature to move for severance," the defendants nonetheless move to sever their trials from one another, insisting that no fewer than 11 trials are necessary to protect against a risk of prejudice that they fail to articulate with any specificity.  Dkts. 1033, 1034 at 2 n.1.  They concede only that "*perhaps* married couples" could be jointly tried.[1]  Dkt. 1034 at 1 (emphasis added).  Their motion is without merit.  It rehashes the same argument they make in their parallel motion to dismiss:  that the government has improperly joined them together in a single conspiracy.  To the extent the defendants add anything new here, it is the conclusory assertion that they would face "unfair, substantial prejudice . . . should *any of the defendants*, other than perhaps married couples, be tried together."  *Id.* (emphasis added).  The defendants' contentions are unsupported and untrue, and fail to meet the high standard required for severance. Their request, if granted, would impose an enormous burden on this Court, the government, and

---

[1] The defendants argue in the alternative, in their memorandum in support of their Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(b)(3)(B)(i), (iv), and (v), that if the Court declines to dismiss Counts One through Three, it should sever them pursuant to Rule 8(b).  Dkt. 1032 at 29 n.9.

the witnesses in this case, and constitute a massive waste of judicial and prosecutorial resources. It should be denied.

## RELEVANT BACKGROUND

Count One charges the defendants with engaging in a single conspiracy with a common goal:  to secure their children's admission to elite colleges and universities through fraud and bribery.  The manner and means of the conspiracy included paying off standardized test proctors and administrators to engage in cheating on college entrance exams, falsifying their children's college applications in order to portray them as elite athletes, having third parties take online classes on behalf of their children, and bribing college athletic coaches and administrators, through purported donations to their programs, to designate the children as athletic recruits based on those phony credentials.  Some of the parents pursued one of those means to achieve the fraud; some pursued more than one.  Count Two charges eleven of the defendants with conspiracy to commit federal programs bribery.  Count Three charges all of them with conspiracy to commit money laundering.  The conspiracies are properly alleged, for all the reasons set forth in the government's forthcoming opposition to the defendants' Motion to Dismiss Pursuant to Federal Rules of Criminal Procedure 8 and 12(B)(3)(B)(i), (iv), and (v).  The government will not repeat those arguments here, but incorporates them by reference.

In anticipation of trial, the Court divided the defendants into two groups.  In so doing, the Court noted that it was grouping the defendants based on the similarity of the conduct in which they allegedly engaged and that it was thereby mitigating any risk of potential prejudice.  The first group consists of eight defendants, including two married couples.  Through the charged conspiracy, all are alleged to have secured the fraudulent admission of their children to the University of Southern California ("USC").  The second group consists of six defendants,

including one married couple.  Five are alleged to have arranged for cheating on their children's college entrance exams, two of those are alleged to have *also* pursued their children's fraudulent admission to USC as purported athletic recruits, and one is alleged to have pursued her children's fraudulent admission to both USC and Georgetown University as purported athletic recruits.

The evidence in the two trials will overlap extensively.  Multiple cooperating witnesses will testify in both trials about the existence and nature of the conspiracy, and the nature of cooperating witness William "Rick" Singer's college counseling business.  This will include testimony about how the scheme operated, how its finances were managed, how participants came to be involved in it, and what their respective roles were.  In both trials, witnesses from USC will testify about the admissions and athletic recruitment process.  In both trials, law enforcement and summary witnesses will likely summarize financial information concerning the defendants and their co-conspirators and testify about the flow of funds through Singer's operation.  In at least the second trial, cooperating witnesses and witnesses from the standardized testing organizations will testify about the standardized testing process. In both trials, the government will introduce voluminous, and overlapping, documentary and audio evidence, including email communications and calls between Singer and numerous co-conspirators that were either consensually recorded or intercepted pursuant to Court-authorized wiretaps.

## **ARGUMENT**

A.  Applicable Law

Although properly joined, defendants may seek severance under Federal Rule of Criminal Procedure 14 on the basis that they will suffer "severe and compelling prejudice" if they are tried together.  *See United States v. Babich*, No. 16-CR-10343-ADB, 2019 WL 163102, at *2 (D. Mass.

Jan. 10, 2019) (Burroughs, J.).  The required showing of prejudice is a stringent one, and the hurdle

is nearly insurmountable in conspiracy cases.  As this Court has noted:

> In considering a motion to sever pursuant to Fed. R. Crim. P. 14, the
> general rule in the First Circuit Court of Appeals is that those
> indicted together are tried together to prevent inconsistent verdicts
> and to conserve judicial and prosecutorial resources…To overcome
> the presumption in favor of a joint trial, a defendant must
> demonstrate prejudice so pervasive that a miscarriage of justice
> looms…Under this stringent standard, the requisite showing of
> prejudice means more than just a better chance of acquittal at a
> separate trial…The preference for a joint trial is particularly strong
> in conspiracy cases…Demonstrating unfair prejudice sufficient to
> require severance of coconspirators' trials is a difficult battle for a
> defendant to win…In fact, severance will rarely, if ever, be required
> in the context of a conspiracy case.

*United States v. DeNunzio*, No. CRIM.A. 14-10284, 2015 WL 2226251, at *2–3 (D. Mass. May

12, 2015) (Gorton, J.) (internal citations and quotation marks omitted); *see also United States v.

Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995) ("Thus, when multiple defendants are named in a

single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one

only by making a strong showing of evident prejudice.  The hurdle is intentionally high[.]").

### B.   The Defendants' Arguments About Spillover Prejudice Are Without Merit

The defendants argue that, although the Court has already mitigated any risk of prejudice

by splitting them into two groups based on the similarity of their conduct, they must *all* be tried

separately (with the possible exception of married couples) to prevent "near certain" spillover

prejudice.[2]  The defendants' claims are speculative, vague, and unsupported, and their proposal

would result in a tremendous waste of judicial and prosecutorial resources.

---

[2] The defendants also suggest that their individual defenses are likely to be antagonistic to
one another but concede that it is premature to sever on that basis.  Dkt. 1034 at 2 n.1.  The law is
clear that a court should grant severance based on a claim of conflicting defenses "only if there is
a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or
prevent the jury from making a reliable judgment about guilt or innocence."  *See United States v.*

General claims of spillover prejudice do not warrant severance.  *See, e.g., United States v. Webb*, 827 F. Supp. 840, 843 (D. Mass. 1993) (Gorton, J.) (unsupported allegations of potential spillover do not compel severance); *Babich*, 2019 WL 163102, at *3 ("Conclusory allegations of prejudice do not suffice to overcome the presumption in favor of joinder.") (citation and internal quotation marks omitted); *United States v. Yefsky*, 994 F.2d 885, 896 (1st Cir. 1993) ("Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.") (citations omitted); *United States v. Azor*, 881 F.3d 1, 12 (1st Cir. 2017) ("The 'spillover effect,' whereby evidence against co-defendants may inspire a 'transference of guilt from one [defendant] to another,' rarely constitutes sufficient prejudice to warrant severance.") (quoting *Kotteakos v. United States*, 328 U.S. 750, 774 (1946)).

Contrary to the defendants' contentions, the evidence at trial will prove that they engaged together in the charged conspiracies.  Virtually all of the evidence the government introduces to prove the existence, nature, scope, operation, and membership of those conspiracies will be relevant and independently admissible against each of the defendants.  *See Flores-Rivera*, 56 F.3d at 325–26 ("To convict any of the defendants under a conspiracy theory, the government had to show the existence of an illicit scheme . . . and because [the defendant] and his codefendants were charged as coconspirators, virtually all the evidence relating to the other conspirators was also directly relevant to, and, therefore, independently admissible in, the prosecution's case against

---

*Webb*, 827 F. Supp. 840, 843 (D. Mass. 1993) (Gorton, J.) (quoting *Zafiro v. United States,* 506 U.S. 534, 539 (1993)); *see also United States v. Arruda*, 715 F.2d 671, 679 (1st Cir. 1983) ("The law in this circuit is well settled; antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other…Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant.") (internal citations and quotation marks omitted).  The defendants' "assertions regarding potential antagonistic defenses . . . are conclusory and devoid of any legal or evidentiary support," and provide no justification for severance on that basis.  *Babich*, 2019 WL 163102, at *4.

him.") (citation omitted).  Indeed, the First Circuit has instructed that "[w]here evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect."  *Id.* at 326 (quoting *United States v. O'Bryant,* 998 F.2d 21, 26 (1st Cir.1993)); *see also United States v. Tiem Trinh*, 665 F.3d 1, 19 (1st Cir. 2011) (the fact that the majority of the evidence presented was admissible against both the defendant and his co-defendants, whether they were tried jointly or independently, weighed against a finding of prejudice in the denial of a severance motion); *Azor*, 881 F.3d at 12 ("[S]ome level of prejudice is inherent in trying two or more defendants together . . . But, where the evidence against a defendant might show a defendant's association with his co-defendants even if he were tried alone, the argument for prejudice becomes much weaker.") (internal citation omitted).  Moreover, even if, as the defendants contend, there were *multiple* conspiracies, there would still be sufficient evidentiary overlap to justify joinder.  *See United States v. Prange*, 922 F. Supp. 2d 127, 129 (D. Mass. 2013) (Gorton, J.) ("Joinder will provide a substantial benefit as three separate trials would be extremely costly to both government and judicial resources.  Although the superceding indictment charges each of the moving defendants in separate conspiracies with Prange, the presumptive benefit of proof of facts relevant to all of the alleged transactions clearly justifies the joinder of the defendants.").

The defendants' unsupported assertion that there is no common or overlapping evidence relevant to all defendants in each trial group is incorrect.  In the first trial for example, all of the defendants are alleged to have worked with Singer and other co-conspirators to secure their children's admission to USC as phony athletic recruits.  All of the documentary evidence and witness testimony relating to USC's admissions and athletic recruitment process, and all of the evidence relating to Singer and his operation, will therefore be relevant to *all* of the defendants.

Intercepted and consensually recorded calls among Singer and his co-conspirators—including other parents who are alleged to have participated in the conspiracy—will be offered against all the defendants to prove the existence, nature, and scope of the charged conspiracy. And much of this same evidence will be introduced again in the second trial, along with additional evidence about the test-cheating aspect of the scheme and the nature and operation of standardized college entrance exams.

In addition, the defendants' arguments about evidentiary spillover and jury confusion are vague and speculative. They provide no specifics, save to argue that evidence that a defendant who pursued Singer's scheme by cheating on standardized tests cannot be used to convict another defendant who pursued the scheme only by fabricating her children's athletic credentials. But the notion that evidence of one defendant's guilt cannot be used to convict another is unexceptional. It is true of every multi-defendant trial. *See, e.g., United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990) (denial of severance proper where there was "little beyond the type and degree of prejudice customary in virtually all high-profile trials of multiple defendants and charges" and there were appropriate limiting instructions about the need to determine guilt on an individual basis). And in making that argument, the defendants incorrectly identify the methods of their conspiracy as distinct schemes—rather than as different means of executing the same scheme, which is what the government has charged. More importantly, they fail to identify what the risk of spillover is, much less why it would be so prejudicial that separate trials are required. All of the defendants in this case are alleged to have done the same thing: conspire to use fraud and bribery to secure their children's admission to college. As they correctly note, none of them is alleged to be a "kingfish" in the scheme. Neither, however, are they minnows. They are all similarly situated, further reducing any risk of prejudicial spillover. Indeed, "[e]ven where large

amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others," severance is not required. *O'Bryant,* 998 F.2d at 26 (quoting *Boylan*, 898 F.2d at 246).

In any event, any minimal risk of transference of guilt from evidence relating primarily to one defendant or one married couple can be properly mitigated by clear limiting instructions to the jury. *See, e.g.*, *United States v. Smolar*, 557 F.2d 13, 21 (1st Cir. 1977) (potential for prejudice in complex conspiracy trial involving several defendants is minimized where trial court gives appropriate limiting instructions and impresses upon jury its duty to assess guilt individually); *Babich*, 2019 WL 163102, at \*3 ("Even if some evidence may be inadmissible at a separate trial, carefully crafted jury instructions can safeguard against the potential for prejudicial spillover. Thus, the purported spillover evidence…does not present prejudice sufficient to warrant a severance.").  The defendants' concern that limiting instructions would be needed for every witness and every document and recording in order to avoid juror confusion is exaggerated and does not suffice to show that further severance is required.  *See Azor*, 881 F.3d at 12 ("The district court found that adequate safeguards, such as clear limiting instructions to the jury, could successfully limit the spillover effect, and Appellant has failed to explain why these safeguards do not suffice."); *Babich*, 2019 WL 163102, at \*3 (noting that the defendant had failed to show that appropriate limiting instructions would not mitigate any ensuing spillover prejudice).

In sum, the general rule that defendants indicted together should be tried together is especially true in a conspiracy case like this one, and the defendants have failed to meet their burden of demonstrating "prejudice so pervasive that a miscarriage of justice looms." *United States v. Sotomayor-Vazquez,* 249 F.3d 1, 17 (1st Cir. 2001).  The defendants have not demonstrated any heightened risk of prejudice that sets this case apart from any other. *See Azor*,

881 F.3d at 12 ("[T]here can be no doubt that here, given the number of defendants and charges, the risk of prejudice from the spillover effect clearly existed.  However, this risk exists in every case involving co-defendants, and Appellant has failed to show that the district court abused its discretion in finding that this case lacked a heightened level of prejudice.").  The defendants may believe they have a better chance of acquittal if they are tried separately in 11 different trials, but that does not justify severance, and the tremendous waste of resources that would accompany it.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendants' motion should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Leslie A. Wright*
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: April 30, 2020

*/s/ Leslie A. Wright*
Leslie A. Wright