UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 19-10080-NMG |
| | ) | |
| DAVID SIDOO, *et al.*, | ) | <u>LEAVE TO FILE PARTIALLY UNDER SEAL</u> |
| | ) | <u>GRANTED ON APRIL 30, 2020 (DKT. 1130)</u> |
| Defendants. | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO SUPPRESS WIRETAP EVIDENCE (Dkts. 1015, 1024)**

The government respectfully files this response in opposition to the defendants' motions to suppress evidence derived from four wiretaps.   For the reasons set forth below, the defendants' motions, and their request for a hearing pursuant to *Franks v. Delaware*, should be denied.

## INTRODUCTION

The defendants' motions rely on two principal arguments.   Both are without merit.

*First*, they argue that the court was not authorized to issue the wiretap orders because Rick Singer, whose cellular phone was the subject of the wiretaps, lived and worked in California, and the interceptions were therefore "outside of the territorial jurisdiction" of a Massachusetts court. (Dkt. 1015).   That contention is incorrect as a matter of law.   Every appellate court to have considered the matter has held that a district court can issue a wiretap order *either* for a phone that is used within the district *or* if the "listening post" for the interceptions is located there.   Here, agents intercepted Singer's communications at a listening post in Massachusetts, and the district court was therefore authorized to issue the interception orders.

*Second*, they argue that the wiretap affidavits failed to demonstrate "necessity," meaning that the government did not "run the gamut of normal investigative procedures" before seeking a wiretap.   But as Judge Burroughs repeatedly found, viewed in the context of the goals of the

investigation—to identify all individuals paying and receiving bribes—the affidavits demonstrated

that agents had either tried or considered (but rejected) traditional investigative techniques.   And

given the scope of the scheme, a wiretap was the only method to achieve the investigative goals.

## FACTUAL BACKGROUND

June 5, 2018 Wiretap Affidavit and Application

On June 5, 2018, Judge Burroughs authorized the interception of Singer's telephone for a

period of 30-days.   *See* Dkt. 1015 Ex. 1 [Jun. 5, 2018 affidavit].[1] ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████.

---

[1] All exhibits referenced are to the Appendix filed in support of Dkt. 1015, unless otherwise noted.



---

has pled guilty to securities fraud and conspiracy to commit securities fraud and is scheduled to be sentenced in June 2020.  *See* 18-CR-10444-NMG.







- ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

<u>July 3, 2018 Wiretap Affidavit and Application</u>

███████████████████████████████████████████████████

████ ███ ██████ █ █ ████ █████ ██████████ ██

██████████████████████████████████████████████████

████████████████ █ ██████████████████████████

████████████████████████████████████



*See* Ex. 2 ¶¶ 4, 10.



August 2, 2018 Wiretap Affidavit and Application



<u>August 30, 2018 Wiretap Affidavit and Application</u>

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

- █████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  █████████████████████████████████████████████████████

▌ ████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ████████████████████████

- ███████████████████████████████████████████ n to Georgetown and
  Yale, and Amherst and Williams in Massachusetts.   *Id*. ¶¶ 53-76.

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



## ARGUMENT[8]

### I.  The District Court had "territorial jurisdiction" to authorize the interceptions.

> *A.  District courts have "territorial jurisdiction" if the "listening post" is within the district.*

The defendants argue that the district court did not have "territorial jurisdiction" to issue the wiretap orders based on the fact that the "listening post" was in Massachusetts.   Dkt. 1015 at 10-11.   That contention is incorrect as a matter of law.

Under Title 18, United States Code, § 2518(3), a judge may authorize the interception of wire or electronic communications within the "territorial jurisdiction" of the court.   "Intercept" is defined as the "aural or other acquisition of the contents of any wire, electronic or oral

---

[8] Under Title 18, United States Code, § 2518(10(a), only aggrieved persons may move to suppress a wiretap, and an aggrieved person is a party to an interception or a target subject.   As a result, defendants Chen and Colburn have standing to contest only the third period of interception; defendants Kimmel and McGlashan have standing to contest only the second, third and fourth periods of interception; and, defendants Palatella and Wilson have standing to contest only the fourth period of interception.   Defendant Zangrillo has standing to contest all four wiretaps.

communication through the use of any electronic, mechanical or other device."   18 U.S.C. § 2510(4).   Every appellate court to consider the issue has concluded that the interception occurs *either* where the phone is located *or* where the "listening post" is located.   *See United States v. Rodriguez*, 968 F.2d 130, 136-37 (2d Cir. 1992); *United States v. Cano-Flores*, 796 F.3d 83, 87 (D.D.C. 2015); *United States v. Henley*, 766 F.3d 893, 911-12 (8th Cir. 2014); *United States v. Luong*, 471 F.3d 1107, 1109-10 (9th Cir. 2006); *United States v. Jackson*, 207 F.3d 910, 914-15 (7th Cir.), *vacated on other grounds*, 531 U.S. 953 (2000); *United States v. Denman*, 100 F.3d 399, 402-03 (5th Cir. 1996); *see also United States v. Jackson*, 849 F.3d 540, 552 (3d Cir. 2017) (interceptions occurred at location of "listening post" under Pennsylvania statute modeled after Title III); *United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir. 1994) (same, Oklahoma statute). Likewise, in *Dadha v. United States*, 138 S. Ct. 1491 (2018), the Supreme Court concluded that, although a federal court in Kansas could not issue wiretap orders that exceeded the court's "territorial jurisdiction," a "listening post within the court's territorial jurisdiction could lawfully intercept communications made to or from telephones located within Kansas or outside Kansas." *Id*. at 1499.   Accordingly, even though Singer's phone was typically located outside of Massachusetts,[9] the court had statutory authority to issue the wiretap orders because the "listening post" was inside Massachusetts.

The defendants' arguments rest entirely on a 1992 concurrence by Judge Meskill that has not been followed by any appellate-level court.   *See Rodriguez*, 968 F.2d at 144 (Meskill, J., concurring).   Dkt. 1015 at 11.   The concurrence focused on landline telephones, and expressed

---

[9] During the fourth period of interception, from approximately September 21 to 24, 2018, Singer was in Massachusetts.   Singer flew to Massachusetts at the behest of CD-2, who was acting at the direction of agents, and was confronted by agents on September 21.   The wiretap continued until approximately midnight on September 28, 2018.

concern that a court in New York could authorize the tap of a landline phone in Alaska, for example.   *Id*.   Those concerns are no longer relevant in the age of cellular phones, as the District of Columbia Court of Appeals recently noted in declining a defendant's invitation to reject the "listening post" theory.   The court explained that, under the defendants' reasoning, "[g]overnment officials would be required to obtain a wiretap order in every district where they thought a target could make calls," and that "by diffusing oversight responsibilities, it might weaken the court's ability to protect citizens' privacy by monitoring the wiretap process."   *Cano-Flores*, 796 F.3d at 87.   In short, stationing the "listening post" in a district provides a court with the authority to order a wiretap regardless of where a phone is used.[10]

### B.   The defendants are not entitled to a Franks hearing.

The defendants argue that they are entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the government made "material misrepresentations in its affidavits regarding the lack of any connection between Singer's suspected illegal activity and this District."   Dkt. 1015 at 13-14.   But the defendants have failed to show *any* misrepresentations or omissions, let alone material misrepresentations that would have "likely

---

[10]   Even if this Court determines that the location of a listening post in Massachusetts does *not* supply "territorial jurisdiction," ███████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████   The fact that these contacts were initiated by law enforcement is irrelevant. *See United States v. Valenzuela*, 849 F.3d 477, 488 (1st Cir. 2017) (government agents may influence where federal crimes occur, and there is no such thing as venue entrapment or manufactured venue); *United States v. Cordero*, 668 F.2d 32, 44 (1st Cir. 1981) (venue in Puerto Rico proper where government agent located in Puerto Rico made calls to co-conspirators outside Puerto Rico).

affected the Court's determination that it possessed territorial jurisdiction to authorize the interceptions."

A defendant is not entitled to an evidentiary hearing simply because he asks for one.[11] Rather, to obtain a hearing under *Franks*, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56; *United States v. Cartagena*, 593 F.3d 104, 112 (1st Cir. 2010). To prove reckless disregard, a defendant must demonstrate that an affiant "in fact entertained serious doubts as to the truth" of the allegations. *See United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002). If a defendant makes that substantial showing, "a *Franks* hearing may be held to address allegations of both material omissions as well as false statements." *Cartagena*, 593 F.3d at 112; *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir.2000) ("These elements are hard to prove, and thus *Franks* hearings are rarely held."); *United States v. Patterson*, 120 F.Supp.3d 12, 17 (D. Mass. 2015) (Gorton, J.) (recognizing the high bar defendants must clear before obtaining a *Franks* hearing).

The defendants' request for a *Franks* hearing fails because it is based on their faulty contention that the location of the "listening post" does not give rise to territorial jurisdiction, and because the government informed the Court, in each affidavit, that the listening post was in Massachusetts and Singer resided in California. Nothing more is required. Accordingly, there was *no* omission, let alone a material one, and the defendants' request should be denied.[12]

---

[11] The defendants provide no support for their assertion that the *Franks* hearing standard "is readily applicable to the issue of territorial jurisdiction under Title III." Dkt. 1015 at 14.

[12] The defendant's remaining arguments bear little mention because they are premised on a faulty

II.     **The defendants are not entitled to a *Franks* hearing on whether the affidavits omitted information suggesting that the defendants were not complicit.**

The defendants also argue that the wiretap affidavits omitted material information concerning Singer's interactions with various parents, including Zangrillo, which would have "given the Court cause to believe that rather than being complicit in Singer's bribery scheme, Mr. Zangrillo and the other parents were themselves victims of Singer's fraud."   Likewise, the defendants argue that the affidavits failed to describe calls and emails concerning parents who were not charged, which the defendants contend would have persuaded the Court that the defendants were victims, not co-conspirators.   These arguments are without merit.

*First*, to qualify for a *Franks* hearing, the purported "omissions" must be "necessary to the finding of probable cause."   *United States v. Castillo*, 287 F.3d 21, 25 (1st Cir. 2002).   Here, the relevant inquiry is whether the affidavits presented sufficient evidence to find probable cause that the wiretap of Singers' phone and email would reveal evidence of his scheme.   As described above, each of the affidavits included examples of criminal activity committed by Singer and his co-conspirators over the telephone and email.   Thus, *even if* the calls the defendants cite were knowingly or recklessly omitted—which they were not—they were not "necessary to the finding of probable cause."   On that basis alone, the defendants' request should be denied.

---

legal theory (as described above), and even if they weren't, the alleged omissions are not material to territorial jurisdiction, and there is no evidence that they were made knowingly, intentionally or in reckless disregard for the truth.   As noted in footnote 12, it is irrelevant that the government initiated the overt acts that occurred in Massachusetts and thus any omission in this regard is immaterial.

*Second*, the purported "omissions" were not exculpatory. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████      The defendants' claim that the government omitted exculpatory information by failing to note that Zangrillo's daughter was not ultimately admitted as a crew recruit ignores the significance of the call, which demonstrates that Zangrillo intended to defraud USC. This intent evidence is not negated because, unbeknownst to Zangrillo, a corrupt USC insider later facilitated her admission in a different way.

Likewise, the defendants overstate the significance of calls with parents who were not charged. In the calls they cite, Singer does *not*, in fact, describe a scheme that was "legitimate and accepted." Dkt. 1015 at 17-18 [Exs. 21, 22 and 23]. But even if he *did*, Singer's discussions with parents who were not charged are not exculpatory as to parents who were. The government has never alleged that *all* of Singer's clients were complicit in his scheme.[13]

For these reasons, the defendants' request for a *Franks* hearing should be denied.[14]

---

[13]     Even if this information were exculpatory, the fact that it was not included in the affidavit is not fatal. *See United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) ("absence of exculpatory circumstances for a few of the conversations does not make the remaining information misleading"); *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (*Franks* only protects against "omissions that are designed to mislead"); *United States v. King*, 991 F. Supp. 77, 89 (E.D.N.Y. 1998) ("[T]he suggestion that by not referring to some conversations in his affidavit, [the agent's] omissions trigger a *Franks* hearing is rejected." (quoting *United States v. Sanchez-Flores*, No. 94-CR-864 (JFK), 1995 WL 765562, at *5 (S.D.N.Y. Dec. 29, 1995))).

[14]     The defendants argue that the "good-faith" exception under *United States v. Leon*, 468 U.S. 897, 923 (1984), does not apply to Title III applications. While this Court need not reach that issue given that the defendants have shown no basis to suppress the intercepts, many courts have

### III.     The Wiretap Affidavits Demonstrated "Necessity."

The defendants next argue that the affidavits failed to demonstrate "necessity."   Dkt. 1025 at 7-22.   The defendants are mistaken, and there is no basis to overturn Judge Burroughs's contrary conclusion.

### A.  Legal Standard

Each "application for an order authorizing or approving the interception of a wire, oral, or electronic communication . . . shall include," *inter alia*, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."   *See* 18 U.S.C. § 2518(1)(c).   A wiretap affidavit "should demonstrate that the government has made a 'reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls."   *United States v. Villarman-Oviedo*, 325 F.3d 1, 9 (1st Cir. 2003).   However, it is "not necessary . . . to show that other methods have been entirely unsuccessful" or that the government has "exhaust[ed] all other investigative measures before resorting to wiretapping."   *Cartagena*, 593 F.3d at 109; *United States v. David*, 940 F.2d 722, 728-29 (1st Cir. 1991) (necessity requirement satisfied even though government did not use search warrants, pen registers, or undercover agents).

A district court reviewing a prior district judge's wiretap authorization should not engage in *a de novo* review, but instead "decide by looking to the affidavit on its face, whether the facts are reasonably adequate to support the issuing judge's implicit determination that other procedures reasonably appear to be unlikely to succeed."   *See United States v. Ashley*, 876 F.2d 1069, 1074

---

applied the "good-faith" exception in declining to suppress wiretaps.   *See United States v. Spann*, 409 F.Supp.3d 619, 624-25 (N.D. Ill. 2019) (citing cases).

(1st Cir. 1989); *United States v. Serrano*, 632 F.Supp.2d 100, 105 (D. Mass. 2009) (Gorton, J.) (reviewing court "<u>must</u> uphold a wiretap 'if the facts [in the affidavit] are reasonably adequate to support the issuing judge's implicit determination that other procedures reasonably appear to be unlikely to succeed.") (underline added).

Any assessment of necessity must be case-specific, taking into account the complexity of the case and the goals of the investigation.   *See, e.g., United States v. Martinez*, 452 F.3d 1, 6 (1st Cir. 2006) (broad investigative goals such as identifying suppliers and co-conspirators in a drug operation were "discrete and realistic goals" that "legitimately cast a wide net."); *United States v. Scibelli*, 549 F.2d 222, 227 (1st Cir. 1977) (large-scale gambling conspiracy "may by its structure and modus operandi give rise to a reasonable inference that other investigative procedures . . . reasonably appear to be unlikely to succeed if tried" (internal citations omitted)); *United States v. Gianelli*, 585 F.Supp.2d 150, 156 (D. Mass. 2008) (Gorton, J.) (noting that First Circuit "has upheld wiretaps where the goals of the investigation were to uncover the 'full scope' of the crimes under investigation and the people involved and to obtain information about the 'totality of the offenses' in which the targets were involved").

B.   <u>The wiretap affidavits pled "necessity" with sufficient specificity.</u>

The wiretap affidavits in this case were, by any measure, "reasonably adequate" to support Judge Burroughs' determination that a wiretap necessary.

The June 5, 2018 affidavit described a complex fraud and bribery scheme of national scope.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████   ██████████████████████

████████████████████████████████████████████████████

███████████████████

As a threshold matter, the nature of Singer's scheme made traditional investigative techniques inadequate.   Singer bribed coaches in multiple states, including North Carolina, California, Connecticut and Washington, D.C.   His clients resided in the United States and abroad.   His criminal associates lived in Florida, Texas and Tennessee.   Singer created entities to disguise his crimes, including a charitable foundation.   Parents paid bribe money into KWF or Singer's for-profit entity, The Key, which Singer then distributed.   Simply put, the sheer scope and complexity of Singer's enterprise made clear that traditional investigative techniques were unlikely to achieve all of the investigative goals set forth in the affidavit.   ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

The affidavits also detailed steps agents took prior to seeking authorization for a wiretap.

████████████████████████████████████████████████████

███████████████████████████████████████   Far from providing

---

[15] The defendants contend that the government sought the wiretap "two months" after the investigation began.   Dkt. 1025 at 18.   In fact, it was three months.   ████████   Regardless, the First Circuit has approved of wiretaps issued after as little as *three weeks* of investigation, and has rejected requests to "place talismanic significance on time alone."   *David*, 940 F.2d at 22

boilerplate language to the reviewing court, as the defendants contend (Dkt. 1025 at 18), the affidavit identified what techniques had been used and why they would not achieve the goals of the investigation. *See Lopez*, 300 F.3d at 53-54 (rejecting defendant's argument that affidavit was "mere boilerplate" where affidavit contained details about the investigation and attempts to use less invasive techniques).



(rejecting argument that investigation "had only been in progress for three weeks and that this interval was too short for the government to have adequately explored less intrusive avenues"); *see also United States v. Nelson-Rodriguez*, 319 F.3d 12, 33 (1st Cir. 2003) ("There is no rule on the amount of time investigators must try and fail, using other methods, before turning to a wiretap application.").

The fact that agents achieved some success through the use of such techniques is beside the point.   As Judge Zobel explained in *United States v. Rodrigues*, 13-CR-10017-RWZ, Dkt. 1373 (D. Mass. Jan. 23, 2015), *aff'd*, 850 F.3d 1, 12 (1st Cir. 2017) (opinion attached as <u>Exhibit A</u>), success in an investigation is a *prerequisite* to a wiretap.   *Id.* at 3 ("Defendants' understanding of Title III's 'necessity' requirement would put government investigators between a rock and a hard place: if its conventional investigation is too effective, there is no necessity for the wiretap; if not effective enough, there is no ground for the wiretap.").   This Court, too, has recognized the need for a wiretap, despite early success, where it is obvious from the goals of the

investigation and the nature of the crimes that a wiretap is needed.   *See Gianelli*, 585 F. Supp. 2d at 157-58 (Gorton, J.) (rejecting argument that "normal investigative techniques were yielding results and therefore wiretapping was premature" and holding that there was "no reasonable prospect that traditional investigative methods would expose the full scope and membership of the conspiracy.   Such detail and reasoning is sufficient to meet the necessity requirement.").

Judge Burroughs knew this.   And the affidavits made clear that the investigation had been in progress for approximately three months, had achieved some success, and that the government was still reviewing evidence it had obtained.   Armed with those facts, Judge Burroughs correctly determined that the information in the affidavits was at least "reasonabl[y] adequate" to support a finding of necessity, and her conclusion is entitled to deference.

C. <u>The email warrants were insufficient to achieve the goals of the investigation.</u>

The defendants' primary argument for suppression is that the government sought the wiretap before completing its review of emails obtained through search warrants.   Dkt. 1025 at 8-14.   Had the government first reviewed the emails, the defendants contend, it would have been able to "identify parents paying bribes and coaches receiving bribes," making the wiretap unnecessary.   *Id*. at 9.   In short, the defendants' assert, the emails contained "the type of information that the Government told the Court it could not obtain without a wiretap."   *Id*. at 11. The defendants' argument is flawed.

*First*, the defendants misconstrue the goals of the investigation, which were *not* simply to obtain evidence *identifying* who paid or received bribes, but to develop *proof* beyond a reasonable doubt.   ███████████   *Gianelli*, 585 F.Supp.2d at 157 (D. Mass. 2008) (necessity standard met where evidence established probable cause but not proof beyond a reasonable doubt).   ███████ ████████████████████████████████████████████████████████████████████,"

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████     ███████████████████████████

███████████████████████████████████████████████████████

*Id.*; *United States v. Cao*, 471 F.3d 1, 3 (1st Cir. 2006) ("Plainly the *partial* success of the investigation did not mean that there was nothing more to be done.").

*Second*, the affidavits set forth the basis for this belief.   ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████ .

███████████████████████████████████████████████████

███████████████████████████████████████████████████████ ▮

▮ ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

─────────────────────

[16] The defendants' assertion that the government "*repeated*[ly]" failed to review Singer's emails is not true.   Dkt. 1025 at 8.   The second, third and fourth affidavits contain dozens of examples of emails to or from Singer. ████████████████████████████████████████

███████████████████████████████████████████████████████



The defendants' contention that the emails contained "precisely the type of information that the Government told the Court it could not obtain without a wiretap," is, accordingly, refuted by the affidavits themselves.[17]   As the affidavits made clear, the emails were necessary but not sufficient to achieve the government's investigative goals. *See United States v. Santana-Dones*, 920 F.3d 70, 78 (1st Cir. 2019) ("government's successful use of traditional investigative tools up to the date of [the agent's] affidavit does not defenestrate its showing of necessity").[18]

_____

[17] While McGlashan now argues that the emails obtained through search warrants were sufficient for the government to prosecute its case, in earlier filings McGlashan has argued that the emails provide innocent explanations for his conduct.  *See, e.g.,* Dkt. 697 at 6-7 (using emails to argue that the reason McGlashan's son took the ACT at Dvorskiy's test center was because the center "offered a date that was before finals and not during the holiday break").

[18] Given that conclusion, investigators were not required to review *every* email obtained via search warrant, or even most of them, before seeking a wiretap.  *See Cartagena*, 593 F.3d at 109 (government need not "*exhaust all other investigative measures before resorting to wiretapping.*") (emphasis added); *see also United States v. Delima*, 886 F.3d 64, 70 (1st Cir. 2018) ("We have upheld wiretap applications supported by affidavits that explain why the continued use of traditional investigative techniques (such as confidential sources, grand jury subpoenas, search warrants, surveillance and consensual monitoring) would be ineffective in uncovering the full scope of the potential crimes under investigation.") (internal citations omitted).

D.  <u>The defendants remaining contentions are without merit.</u>

The defendants' remaining contentions are without merit.

*First*, the fact that the government included emails in the indictment as evidence of the scheme does not mean that there was no need to intercept Singer's calls.  Dkt. 1025 at 10.  The government has never disputed that emails are important evidence in this case, *and it told the Court as much in each of its affidavits*.  But the fact that the government obtained *some* evidence against *some* defendants does not mean the government had *sufficient* evidence as to *every* defendant.

*Second*, the government did not minimize the value of the email evidence.  Dkt. 1025 at 10-11.  To the contrary, it sought to intercept Singer's emails in real-time.  This demonstrates that the government viewed the email evidence as critical *and said as much to the Court.*

*Third*, the fact that the affidavits contained emails related to some targets while omitting emails related to others is hardly surprising.  The government received 30 gigabytes of data from email search warrants.  Including every relevant email would have been impossible.  █████

████████████████████████████████████████████████████████████

█████████████████████  *see Cartagena*, 593 F.3d at 110 ("full and complete statement" requirement does not mandate that officers include every detail of an investigation).

*Fourth*, the defendants contend that the government lacked necessity because many of them are charged with committing fraud *prior* to the wiretap.  But the government charged more than 50 individuals in this and related cases.  The wiretap captured evidence against some, while emails and consensually recorded calls provided evidence against others.  That fact has no bearing on the necessity determination.

*Fifth*, the defendants contend that the government "misrepresented and minimized the value of" interviews and cooperators.  Dkt. 1025 at 14-17.  That is untrue.  The government used

two cooperators prior to seeking the wiretap, ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ *see also United States v. Hoffman*, 832 F.2d

1299, 1306 (1st Cir. 1987) (Title III does not "force the government to run outlandish risks . . .

before seeking a wiretap.").   Likewise, the affidavits discussed interviewing parents who paid

bribes, but concluded that without specific evidence documenting the bribes, the parents were

likely to make self-serving statements.  ████████████████████████████████

████████

   *Sixth*, the defendants incorrectly contend that the government stopped relying on CD-2

prematurely.   Dkt. 1025 at 15-16.   ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  ██████████████████

████████████████████████████████████████████████████

   *Seventh*, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████.[19]

---

[19] Indeed, even after being approached by agents, Singer *did* obstruct the investigation by alerting a number of his co-conspirators, including McGlashan.

E. <u>The defendants' are not entitled to a *Franks* hearing as to necessity.</u>

The defendants are not entitled to a *Franks'* hearing because they have not made a preliminary showing that: (1) the affiant *knowingly and intentionally or with reckless disregard* made a materially false statement or omission; and (2) the false statement or omission would have altered the court's necessity analysis.  *See United States v. Rose*, 802 F.3d 114, 118 (1st Cir. 2015) ("when a defendant asserts that the requesting officer omitted critical information from the affidavit . . . we only consider 'whether, had the omitted information been included, there would still have been a minimally adequate' basis for determining that the wiretap was necessary'").

The defendants contend that the affidavits contain misrepresentations and omissions regarding the significance and probative value of (1) emails and documentary evidence and (2) interviews of and cooperation by Singer's co-conspirators.  Dkt. 1025 at 20-21.  Citing no evidence other than the purported misrepresentations themselves, the defendants conclude that they demonstrate, at a minimum, reckless disregard for the truth.  *Id.* at 20.  That is not true.

The government was transparent regarding the investigative techniques it had used and the potential of those and other techniques to achieve the goals of the investigation.  ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮  The defendants' principal critique appears to be that the government sought a wiretap before reviewing every email.   Yet the defendants *concede* that the government *told* the

court ██████████████████████████████   The very statements on which the defendants

rely thus make clear that there was no material misrepresentation or omission.[20]

And even assuming that the government recklessly omitted a material fact related to

necessity—which it did not—the defendants do not even attempt to show that, "had the omitted

information been included," there would not have been "a minimally adequate basis for

determining that the wiretap was necessary."  *Rose*, 802 F.3d at 118.  For these reasons, the

defendants' request for a *Franks* hearing on the issue of necessity should be denied.

## IV.    The Wiretaps Were Properly Sealed

Finally, the defendants argue that the wiretaps should be suppressed because the

government failed to timely seal them.   That is untrue.   Section 2518(8)(a) provides that a Title

III wiretap must be sealed "[i]mmediately upon the expiration of the period of the [wiretap] order,

**or extensions thereof**."  *See United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir. 1977) (where an

eavesdropping order is extended, no requirement to seal until end of final extension).   The initial

wiretap of Singer's phone was authorized on June 5, 2018.   Judge Burroughs authorized

extensions of the interception, and the interception of e-mails, on July 3, August 2, and August 30.

*See* Ex. 8 [Jul. 3, 2018 order at USAO-LP-001222]; Ex. 9 [Aug. 2, 2018 order at USAO-LP-

001430]; Ex. 10 [Aug. 30, 2018 order at USAO-LP-001600]; *see also United States v. Rodrigues*,

13-CR-10017-RWZ, Dkt. 1373 at 8 (D. Mass. Jan. 23, 2015), *aff'd*, 850 F.3d 1, 12 (1st Cir. 2017)

(wiretap authorization that granted "continued monitoring of both of the prior two targets" was an

---

[20] Relately, the defendants express confusion over the ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

extension).[21]   The wiretap ended at midnight on Friday, September 28,[22] and the voice

interceptions were sealed on Tuesday, October 2, the second business day after the wiretap

ended.[23]   As Judge Zobel determined in *Rodrigues*, "a two business-day delay in sealing does not

violate 18 U.S.C. § 2518 (8)(a), particularly where, as here, the expiration date was the day after

Thanksgiving, and the recordings were kept in a secure location with limited access and password

protection."   13-CR-10017-RWZ, Dkt. 1373 at 8; *see also United States v. Carson*, 969 F.2d

1480, 1487, 1498 (3rd Cir. 1992) ("immediately . . . means as soon as practical, and not *instanter*

. . . . [W]hen the intervening weekend is considered, there is no indication in the record that the

tapes were not sealed as soon as was practical"); *United States v. Romeu*, No. 3:18-CR-114, 2020

WL 118594, *28 (M.D. Pa. Jan. 9, 2020) (where wiretap ended on Saturday and tapes sealed on

Tuesday, sealing occurred "as soon as was practical" under 2518(8)).

    With respect to the email interceptions, Judge Burroughs authorized the interception of

Singer's two email addresses on July 3, 2018.   On August 2, 2018, Judge Burroughs authorized

---

[21]  While the government did seal voice interceptions after each of the 30-day periods, the sealing motions stated that this was out of an abundance of caution and not because sealing was required. *See* Ex. 14 [Jul. 12, 2018 sealing order at USAO-LP-00198]; *see also* Ex. 15 [Aug. 6, 2018 sealing order at USAO-LP-001320]; Ex. 16 [Sep. 5, 2018 sealing order at USAO-LP-001444].

[22]  Although Singer consented to a wiretap on September 27, the 30-day period for the non-consensual wiretap did not expire until midnight on September 28.  *See* Govt. Ex. B [report documenting end of wiretap].   Accordingly, the date listed in the government's sealing motion— September 27—was incorrect. *See* Ex. 18 at USAO-LP-001616 [Oct. 3, 2018 sealing order].

[23]  Several courts have held that weekends need not be counted in determining whether sealing orders were timely.  *See, e.g., United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994); *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994); *United States v. Carson*, 969 F.2d 1480, 1498 (3d Cir. 1992).   In *Rodrigues*, the First Circuit did not definitively answer the question but did take the weekend into account in determining whether the government had provided a satisfactory explanation for a delayed sealing.   850 F.3d at 12.   The court explained that a primary purpose of sealing is to protect the "integrity of the tapes."   *Id*.   Here, the defendants do not argue that the recordings have been compromised.

the continued interception of rickwsinger@gmail.com, and investigators ceased interceptions of rwsinger@gmail.com.   On August 6, 2018, two business days after the end of the interception, the disk containing those emails was sealed.   The emails intercepted over rickwsinger@gmail.com were also sealed in an abundance of caution, even though interceptions continued.   On August 30, 2018, Judge Burroughs extended the interception of rickwsinger@gmail.com, and those interceptions ceased at midnight on September 28, 2018. Judge Burroughs sealed the emails on October 3, 2018, three business days after the wiretap ended.[24]   Delays of two or three days are facially reasonable, and the defendants' motion to suppress on this ground should be denied. *See, e.g., United States v. Mastronardo*, 987 F.Supp.2d 545, 558 (E.D. Pa. 2013) (sealing after "six-day delay is immediate when the delay includes an intervening weekend").

## CONCLUSION

For the foregoing reasons, the defendants' motions should be denied without a hearing.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ Eric S. Rosen
ERIC S. ROSEN
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
KARIN M. BELL
STEPHEN E. FRANK
Assistant United States Attorneys

Date:   April 30, 2020

---

[24] The additional day was due to the fact that Title III email interceptions are collected at FBI headquarters in Quantico, Virginia.   In this case, Quantico had to deal with an issue involving the potential over-collection of Singer's emails, and then send the disk to Boston, where it was sealed the next day.   *See* Govt. Ex. C [FBI report and sealing envelope].

30

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this partially under seal document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 30, 2020, and that an unredacted copy of the brief will be sent to the moving defendants via e-mail.

By:    */s/ Eric S. Rosen*
           ERIC S. ROSEN
           Assistant United States Attorney