# Exhibit 6

1                 UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3    _____

4    UNITED STATES OF AMERICA,

5                     Plaintiff,        Criminal Action
                                        No. 19-cr-10080-NMG
6    v.
                                        February 27, 2020
7    DAVID SIDOO, et al.,

8                     Defendants.       Pages 1 to 26

9    _____

10

11
                     TRANSCRIPT OF STATUS CONFERENCE
12              BEFORE THE HONORABLE NATHANIEL M. GORTON
                     UNITED STATES DISTRICT COURT
13              JOHN J. MOAKLEY U.S. COURTHOUSE
                        ONE COURTHOUSE WAY
14              BOSTON, MASSACHUSETTS   02210

15

16

17

18

19

20                   JOAN M. DALY, RMR, CRR
                      Official Court Reporter
21               John J. Moakley U.S. Courthouse
                  One Courthouse Way, Room 5507
22                Boston, Massachusetts   02210
                      joanmdaly62@gmail.com
23

24

25

APPEARANCES:


FOR THE GOVERNMENT:

         ERIC S. ROSEN, AUSA
         KRISTEN A. KEARNEY, AUSA
         LESLIE WRIGHT, AUSAU
         Assistant U.S. Attorneys
         U.S. Attorney's Office
         John J. Moakley Courthouse
         One Courthouse Way, Suite 9200
         Boston, Massachusetts 02210
         617.748.3100
         eric.rosen@usdoj.gov
         kristen.kearney@usdoj.gov
         leslie.wright@usdoj.gov


FOR THE DEFENDANT DAVID SIDOO:

         MARTIN G. WEINBERG, ESQUIRE
         Martin g. Weinberg, PC
         20 Park Plaza
         Suite 1000
         Boston, Massachusetts 02116
         617.227.3700
         owlmcb@att.net

FOR THE DEFENDANTS GREGORY COLBURN and AMY COLBURN:

         DAVID S. SCHUMACHER, ESQUIRE
         Hooper, Lundy & Bookman, P.C.
         470 Atlantic Avenue
         Suite 1201
         Boston, Massachusetts 02210
         617.532.2704
         dschumacher@health-law.com

         PATRIC HOOPER, ESQUIRE
         Hooper, Lundy & Bookman, P.C.
         1875 Century Park East
         Suite 1600
         Los Angeles, California 90067
         310.551.8165
         phooper@health-law.com

```
 1    FOR THE DEFENDANT GAMAL ABDELAZIZ:

 2          BRIAN T. KELLY, ESQUIRE
            Nixon Peabody, LLP
 3          100 Summer Street
            Boston, Massachusetts 02110
 4          617.345.1000
            bkelly@nixonpeabody.com
 5

 6    COUNSEL FOR THE DEFENDANTS DIANE BLAKE and TODD BLAKE:

 7          DAVID E. MEIER, ESQUIRE
            MELINDA L. THOMPSON, ESQUIRE
 8          Todd & Weld
            One Federal Street
 9          27th Floor
            Boston, Massachusetts 02110
10          617.720.2626
            dmeier@toddweld.com
11          mthompson@toddweld.com

12
      COUNSEL FOR DEFENDANT I-HSIN CHEN:
13
            REUBEN CAMPER CAHN, ESQUIRE
14          Keller/Anderle LLP
            18300 Von Karman Avenue, Suite 930
15          Irvine, California 92612
            949.476.8700
16          rcahn@kelleranderle.com

17
      COUNSEL FOR DEFENDANTS MOSSIMO GIANNULLI and LORI LOUGHLIN:
18
            GEORGE W. VIEN, ESQUIRE
19          Donnelly, Conroy & Gelhaar, LLP
            260 Franklin Street
20          Boston, Massachusetts 02110
            617.720.2880
21          gwv@dcglaw.com

22          WILLIAM J. TRACH, ESQUIRE
            Latham & Watkins, LLP
23          John Hancock Tower, 27th Floor
            200 Clarendon Street
24          Boston, Massachusetts 02116
            617.880.4514
25          william.trach@lw.com
```

```
 1          SEAN M. BERKOWITZ, ESQUIRE
            Latham & Watkins, LLP
 2          330 North Wabash Avenue
            Suite 2800
 3          Chicago, Illinois 60611
            312.777.7016
 4          sean.berkowitz@lw.com
            (Present telephonically)
 5

 6    COUNSEL FOR DEFENDANT ELISABETH KIMMEL:

 7          R. ROBERT POPEO, ESQUIRE
            CORY S. FLASHNER, ESQUIRE
 8          EOIN P. BEIRNE, ESQUIRE
            MARK E. ROBINSON, ESQUIRE
 9          Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC
            One Financial Center
10          42nd Floor
            Boston, Massachusetts 02111
11          617.542.6000
            rpopeo@mintz.com
12          csflashner@mintz.com
            ebeirne@mintz.com
13          merobinson@mintz.com

14
      COUNSEL FOR DEFENDANT WILLIAM MCGLASHAN, JR.:
15
            JACK W. PIROZZOLO, ESQUIRE
16          Sidley Austin LLP
            60 State Street
17          34th Floor
            Boston Massachusetts 02109
18          617.223.0304
            jpirozzolo@sidley.com
19
            MARSHALL A. CAMP, ESQUIRE
20          Hueston Hennigan LLP
            523 West 6th Street
21          Suite 400
            Los Angeles, California 90014
22          213.778.4340
            mcamp@hueston.com
23

24

25
```

```
 1    COUNSEL FOR THE DEFENDANT MARCI PALATELLA:

 2            MICHAEL K. LOUCKS, ESQUIRE
              Skadden, Arps, Slate, Meagher & Flom LLP
 3            500 Boylston Street
              Boston, Massachusetts 02116
 4            617.573.4840
              michael.loucks@skadden.com
 5

 6    COUNSEL FOR THE DEFENDANT JOHN WILSON:

 7            MICHAEL KENDALL, ESQUIRE
              White & Case, LLP
 8            75 State Street
              Boston, Massachusetts 02109
 9            617.939.9310
              michael.kendall@whitecase.com
10
              ANDREW E. TOMBACK, ESQUIRE
11            White & Case LLP
              1221 Avenue of the Americas
12            New York, New York 10020
              212.819.8428
13            andrew.tomback@whitecase.com

14
      COUNSEL FOR THE DEFNDANT HOMAYOUN ZADEH:
15
              TRACY A. MINER, ESQUIRE
16            Miner Orkand Siddall LLP
              470 Atlantic Avenue
17            4th Floor
              Boston, Massachusetts 02210
18            617.273.8421
              tminer@mosllp.com
19

20    COUNSEL FOR THE DEFENDANT ROBERT ZANGRILLO:

21            MARTIN G. WEINBERG, ESQUIRE
              Law Office of Martin G. Weinberg
22            20 Park Plaza
              Suite 1000
23            Boston, Massachusetts 02116
              617.227.3700
24            marty@martinweinberglaw.com

25
```

1          P R O C E E D I N G S

2              (The following proceedings were held in open

3      court before the Honorable Nathaniel M. Gorton, United States

4      District Judge, United States District Court, District of

5      Massachusetts, at the John J. Moakley United States

6      Courthouse, One Courthouse Way, Boston, Massachusetts, on

7      February 27, 2020.)

8              THE CLERK:  All rise.  Thank you.  You may be

9      seated.  This is criminal action number 19-10080, United

10     States of America versus David Sidoo, et al.  Will counsel,

11     please, identify themselves for the record.

12             MR. ROSEN:  Good morning, Your Honor.  Eric Rosen,

13     Leslie Wright and Ms. Kearney for the government.

14             THE COURT:  Mr. Rosen, Ms. Wright, Ms. Kearney.

15             MR. TRACH:  Good morning, Your Honor.  William

16     Trach for defendants Mossimo Giannulli and Lori Loughlin.

17             THE COURT:  Mr. Trach.

18             MS. MINER:  Good morning, Your Honor.  Tracy Miner

19     on behalf of Homayoun Zadeh.

20             THE COURT:  Ms. Miner.

21             MR. WEINBERG:  Good morning, Your Honor.  Martin

22     Weinberg on behalf of Robert Zangrillo.

23             THE COURT:  Mr. Weinberg.

24             MR. KENDALL:  Good morning, Your Honor.  Mike

25     Kendall from White & Case on behalf of John Wilson.

```
1              THE COURT:  Mr. Kendall.
2              MR. POPEO:  Good morning, Your Honor.  Robert Popeo
3      on behalf of Elisabeth Kimmel.
4              THE COURT:  Mr. Popeo.
5              MR. CAHN:  Good morning, Your Honor.  Reuben Cahn
6      on behalf of Mr. Chen who is present.
7              THE COURT:  Mr. Cahn.
8              MR. LOUCKS:  Good morning, Your Honor.  Michael
9      Loucks for Marci Palatella.
10             THE COURT:  Mr. Loucks.
11             MR. SCHUMACHER:  Good morning, Your Honor.  David
12     Schumacher on behalf of Amy Colburn and Gregory Colburn.  And
13     Patric Hooper is here as well.
14             THE COURT:  Yes.  Mr. Schumacher.
15             MR. PIROZZOLO:  Good morning, Your Honor.  Jack
16     Pirozzolo on behalf of William McGlashan.  And with me is
17     Marshall Camp also on behalf of William McGlashan.
18             THE COURT:  Mr. Pirozzolo.
19             MR. MEIER:  Good morning, Your Honor.  David Meier
20     on behalf of Diane Blake and Todd Blake.
21             THE COURT:  Mr. Meier.
22             MR. VIEN:  Good morning, Your Honor.  George Vien
23     on behalf of Mossimo Giannulli.
24             THE COURT:  Mr. Vien.
25             MR. KELLY:  Good morning, Your Honor.  Brian Kelly
```

1  on behalf of defendant Gamal Abdelaziz.

2         THE COURT:  Mr. Kelly.  Thank you.  I would invite

3  those in the jury box who are attending to also introduce

4  themselves, please.

5         MR. FLASHNER:  Good morning, Your Honor.  Cory

6  Flashner also on behalf of Elisabeth Kimmel.

7         THE COURT:  Mr. Flashner.

8         MR. CAMP:  Good morning, Your Honor.  Marshall Camp

9  on behalf of Bill McGlashan.

10         THE COURT:  Mr. Camp.

11         MR. TOMBACK:  Good morning, Your Honor.  Andrew

12  Tomback of White & Case on behalf of Mr. Wilson.

13         THE COURT:  Mr. Tomback.

14         MR. BEIRNE:  Good morning, Your Honor.  Eoin Beirne

15  also on behalf of Elisabeth Kimmel.

16         THE COURT:  Mr. Beirne.

17         MS. THOMPSON:  Good morning, Your Honor.  Melinda

18  Thompson on behalf of Todd and Diane Blake.

19         THE COURT:  Ms. Thompson.

20         MR. ROBINSON:  Good morning, Your Honor.  Mark

21  Robinson also on behalf of Elisabeth Kimmel.

22         THE COURT:  Mr. Robinson.

23         MR. HOOPER:  Good morning, Your Honor.  Patric

24  Hooper also here on behalf of Greg and Amy Colburn.

25         THE COURT:  Good morning, Mr. Hooper.  We have

1  apparently Mr. Berkowitz on the phone as well.

2      MR. BERKOWITZ:  Thank you, Your Honor.  Sean

3  Berkowitz on behalf of Lori Loughlin and Mossimo Giannulli.

4  I appreciate you allowing me to participate by phone.

5      THE COURT:  Good morning, Mr. Berkowitz.  As we are

6  aware, the defendants Giannulli and Loughlin late yesterday

7  filed a supplemental memorandum regarding trial groups and a

8  motion to postpone setting a trial date.  It was docket

9  number 875.  They make very serious *Brady* violation

10 allegations and charges of prosecutorial misconduct in that

11 pleading.

12      The government of course has not had an opportunity

13 to respond to it.  I am not going to postpone this hearing or

14 my addressing the need to set a schedule for the resolution

15 of this multi-defendant case.  But I am now directing the

16 moving defendants and any other defendant who intends to join

17 them to file on or before Friday March 13 a joint motion to

18 dismiss, to suppress, and/or for sanctions and supporting

19 memoranda based upon the information just brought to the

20 Court's attention to which the government can file its

21 opposition and memorandum, if any, on or before Friday,

22 March 27.

23      I will take that matter under advisement separately

24 from the other matters and may schedule a hearing in early

25 April.  It will not affect any other time deadlines set in

1    this case.

2            Now I am going to proceed with the original purpose

3    of this status conference, which is to discuss trial groups

4    and dates for trial if one is ultimately necessary.  This

5    case, counsel, was indicted in March of last year.  And I

6    recognize that there have been superseding indictments in

7    March, April, and October of 2019 and again last month.  It

8    is also true that there has been production of voluminous

9    discovery in a rolling fashion.  And there are 15 defendants

10   involved in this alleged conspiracy, the very existence of

11   which is contested.

12           I grant you all of that, but this case needs to be

13   resolved expeditiously either by trial or otherwise.  And I

14   mean to make that happen by dealing with the dispositive

15   motions later this spring, and, if necessary, a trial of

16   about one half of the defendants in early October of this

17   year.  It goes without the necessity of citation that the

18   prompt resolution of criminal cases is not only in the

19   interest of those charged with serious crimes, their counsel,

20   and prosecutors, but also the public at large and the

21   criminal justice system generally.

22           It is not only the right of the accused to a timely

23   inquiry into the charges against them but also a fundamental

24   duty of the charging authority and the Court to provide a

25   prompt trial.  I am also fully aware that there are pending

1   discovery issues before Magistrate Judge Kelley and motions

2   pending to dismiss before me.  But I assure you, that those

3   motions will be resolved with or without hearings before the

4   end of June this year.

5         With respect to the grouping of defendants, the

6   government has provided me with no logical reason to adopt

7   either of its proposals.  And I agree with the defendants

8   generally that to the extent possible, the defendants with

9   like charges pending against them and the defendants with

10   familial relationships ought to be tried together to avoid

11   inefficiencies and the introduction of unrelated and possible

12   prejudicial evidence.  That makes sense to me.

13         But I do agree with the government that this case,

14   or at least the first group of the defendants to be tried in

15   this case, ought to go forward in October of this year.  I do

16   not want to try this case three times.  So for the time being

17   I am going to divide the defendants into two groups.  The

18   first group of eight defendants will be the defendants who

19   are charged with making corrupt donations to the University

20   of Southern California to gain admission for their children

21   through the so-called side door and who were not involved in

22   the alleged test cheating or with other universities.

23         Accordingly, group one to be tried in October will

24   be defendants Abdelaziz, the Blakes, Giannulli, Loughlin,

25   Wilson, Zadeh and Zangrillo.  I expect the impanelment of the

1    jury in this case will not be easy and will take several

2    days.  So we will begin impanelment on Monday, September 28,

3    and continue from day to day until the jury is picked.  The

4    trial itself will begin on Monday, October 5, and will

5    proceed day to day thereafter.

6              I believe this trial can be completed in four

7    weeks.  But if it is not, we will keep going, and it will be

8    completed well before Thanksgiving.  As a safety valve, I am

9    going to schedule a status conference some time during the

10   summer, probably late in July, to revisit this schedule and,

11   if necessary, determine whether one or two defendants need to

12   be deferred until a subsequent trial.  But all counsel for

13   the named defendants are to be prepared to try this case as

14   it is currently scheduled.

15             The second trial involving the remaining defendants

16   will begin in January, probably Monday, January 11, 2021, and

17   follow a similar course.  Any motions to sever or oppose

18   these groups must be filed on or before April 1 in accordance

19   with Magistrate Judge Kelley's existing schedule for motions.

20             I am also going to amend the back end for the

21   filing of dispositive motions.  Those motions will be due as

22   originally scheduled on April 1, but the government's

23   opposition memorandum will be due on April 30.  And replies,

24   if any, by May 15.  Hearing on those motions, if any, will be

25   in early June.  Are there any questions, counsel?

1           Hearing none, we will proceed to some other matters

2     that I have in mind.  Let's give them a date for the status

3     conference in late July, avoiding my MDL conflict.

4           THE CLERK:  How about we could do Tuesday the 28th

5     at 3 p.m.?

6           THE COURT:  Tuesday, July 28 at 3 p.m. there will

7     be a status conference here in this courtroom.  Any problem

8     with that date for anybody?  Okay.  I also want to set a

9     final pretrial conference the week before we impanel.  Again

10    I also have to avoid MDL conflict, but early that week.

11          THE CLERK:  Tuesday, September 22 at 3 p.m.

12          THE COURT:  Tuesday, September 22 at 3 p.m.  Any

13    problem with that date?  Okay.  I am concerned about pretrial

14    publicity.  Needless to say, this is a high profile case, but

15    it is not going to be tried in the newspapers or on the

16    Internet.  And counsel are forewarned that if I become aware

17    that counsel for either the government or the defendants is

18    not exercising appropriate constraint in that regard, there

19    will be consequences.

20          And finally, let me say that I have heard from

21    Magistrate Judge Kelley who has informed me that her ruling

22    on production or other matters will be entered forthwith.  Is

23    there anything else that needs to come to my attention at

24    this conference?  Anything anybody wants to bring up?

25    Mr. Weinberg?

1          MR. WEINBERG:  Just, Your Honor, in order for us to

2     have the trial in the fall as scheduled, we would ask the

3     Court to not follow the local rule on schedule which would

4     provide exhibit and witness lists just seven days before

5     trial.  With eight defendants having their own universes of

6     discovery, there's over 3.2 million pages in all, it would

7     help all the parties for Your Honor to set an exhibit

8     production list --

9          THE COURT:  Good point, Mr. Weinberg.  Is there any

10    reason why we can't alter those dates as far as the

11    government is concerned?

12         MR. ROSEN:  No, Your Honor.  I think we should

13    probably confer with each other about applicable dates.

14         THE COURT:  Why don't you do that, Mr. Weinberg,

15    with the government, and give me all of your proposed dates

16    to in limine motions, responses to in limine motions,

17    responses to witnesses and exhibits, the proposed voir dire

18    questions for the jury panel.  All of those in my normal

19    sequence go three weeks, two weeks, and one week before

20    trial.  In this case they can be five, four, and three.

21         MR. WEINBERG:  Thank you, Judge.

22         THE COURT:  I think your point is well taken.  This

23    is too much material to wait until the last week.

24         MR. WEINBERG:  Thank you, sir.

25         THE COURT:  You're welcome.  Anybody else?

1    Anything from the government?

2           MR. ROSEN:  Now that we have a trial date, Judge, I

3    just want to inform the Court that we will be doing a very

4    early production of *Jencks* material in this case, getting

5    everything out.  That will be forthwith provided.

6           THE COURT:  That is appropriate.  I am not going to

7    make this into a motion hearing, but I know this matter that

8    was filed late yesterday afternoon is very serious.  I take

9    it the government is going to have some reasonable

10   explanation for the Court quickly.

11          MR. ROSEN:  Absolutely, Judge.  Just very briefly.

12   The dispositive issue is the fact that in the notes we

13   believe -- First of all, these were taken three or four days

14   after Rick Singer began cooperating with the government.  He

15   obviously wasn't being very forthright.  He was writing these

16   notes.  These were directed to his lawyer.  He sent these

17   notes to his lawyer.  His lawyer afterwards claimed privilege

18   over these notes.

19          In the top portion of the note that was filed, the

20   note that's blacked out, that's Singer's plea colloquy.

21   That's why we carved this aside for a privilege review.

22   Because although we had downloaded his phone --

23   unfortunately, it's blacked out in the filing, but it says,

24   "Thoughts I need to start my plea with.  Where it all

25   started."

1          At that point we hadn't charged anyone in this

2    case, and we were very concerned about inadvertently looking

3    at privileged material that he was sending to his lawyer.  We

4    had a discussion with him later, and we stopped looking at

5    the notes because of that.  All of these notes were sent to

6    his attorney.  The issue in the note that's been flagged by

7    defendants is simply that the payments were going to the

8    program, not the coach, and he would say it was a donation.

9          Judge, that's our theory of the case that we've

10   been proceeding on for the entirety of this case.  We have

11   disclosed that to the defendants on numerous, numerous

12   occasions.  In footnote 17, the very first wiretap affidavit,

13   we say that.  "Investigators analyzing Singer's bank records

14   have seen payments directly to university athletic programs

15   in addition to payments to individual coaches.  I believe

16   that these payments to athletic programs are also payments in

17   furtherance of a fraudulent scheme even though universities

18   are receiving a portion of the money because I believe the

19   universities are unaware that the coaches and/or

20   administrators are recruiting those students in exchange for

21   the monetary payments."

22          We have disclosed this in charging documents.  We

23   have written motion responses in this case stating that, "The

24   parents were told that the money was going to the program and

25   this was still a bribe because these were fake athletes being

1    recruited."

2            Page 21 of docket 736 we write, "Contrary to the

3    defendants' suggestion, the government has never contended

4    that Singer told the Giannullis that their money would be

5    directed to Heinel personally.  Rather the Giannullis are

6    charged with conspiring to bribe Heinel to facilitate their

7    daughter's admission to USC as a fraudulent athletic recruit

8    in exchange to a contribution to a USC fund that benefited

9    Heinel in breach of her duty to honest services to USC."

10           We've disclosed all the evidence, numerous calls,

11   emails, Singer tells his clients that the money is going to

12   the program, and he characterizes this as a donation.

13           In our discovery responses, we have provided the

14   defendants with examples of these calls.  We have written

15   letters to the defense explaining that Singer told the

16   Giannullis and others that the money was going mostly to the

17   program.  I did that most recently at the end of January

18   2020.  The first 50,000 went directly to USC program.  And

19   Singer, to the extent he recalled it, he believed that the

20   Giannullis knew that part of the $200,000 sent to KWF was

21   going to a USC program.  They did not specifically discuss

22   the amount that would go to the USC program out of the

23   $200,000.

24           *Brady* is a rule of fundamental fairness, not a

25   discovery rule.  We cannot suppress what the defendants have

1  already been told because that's obviously within their

2  knowledge.  We have told the defendants several times, and we

3  will continue to do so, that this case is a bribery case

4  about payments to a program that Singer characterized as a

5  donation.  It was a quid pro quo.  Pay the money.  Their kids

6  would be recruited guaranteeing them effective admission for

7  a sport they either didn't play well or, in the Giannullis

8  case, they didn't play at all.

9          Judge, Doug Hodge, Michelle Janavs and Elizabeth

10  Henriquez pled guilty in this court to honest services fraud

11  on the fact that those payments went to the program, and that

12  they understood it was a bribe because they were corrupt

13  payments.  Your Honor accepted those pleas.  That was in

14  their plea colloquies, their PSR's, and their sentencing

15  memos that have been filed.

16          Doug Hodge even wrote an op-ed in the Wall Street

17  Journal saying this as well.  Two have been sentenced based

18  on this.  And in the most recent sentencing involving

19  Michelle Janavs where the parties agreed that the money was

20  going to be used by USC for their program, Your Honor

21  repeatedly referred to this as a bribery case because it is.

22  You pay the money.  You get in as a fake athlete.

23          By the way, just because Singer said the money was

24  going to the program, doesn't mean that that's what the

25  parents took away from it.

1          Marci Palatella, a charged defendant, wrote in a

2    text message to her friend after paying money to the

3    "program", which by the way, was filtered through basically a

4    sham charity, "I don't think most of it went to the school,

5    between us only.  Please never repeat anything."  The notes

6    that we produced are consistent with the government's case

7    and cumulative of other evidence already provided to the

8    defendants.

9          And as Your Honor knows in repeatedly stating that

10   this is a bribery case on these very facts calling something

11   a donation or making it out to the program does not make it

12   legitimate and certainly does not make it a donation.  USC or

13   any school does not have a legitimate admissions process for

14   fake rowers, fake football players, fake pole vaulters, or

15   fake anything whether you call it a donation, a payment, a

16   bribe, or simply nothing at all.  And I direct the defendants

17   to Section 2569 of the --

18          THE COURT:  All right.  I think we've had enough of

19   your response.

20          MR. ROSEN:  What I'm saying is that as soon as we

21   completed the tape review, we turned it over.  Should we have

22   done that earlier?  Absolutely.  We've made a concerted

23   effort.  We're going to produce *Jencks* as soon as possible.

24   We're going to produce all the iPhone images probably early

25   next week.  We're going to get this done, and we're going to

1   get this tried.  I do point out if this was so exonerating

2   for the defendants rather than cumulative, they'd want to try

3   this case.  I want to try this case.

4          THE COURT:  Thank you.  I will give the defendants

5   an equal five minutes to respond.  If each one wants to

6   speak, you understand five minutes total.

7          MR. TRACH:  I understand.  A few things, Your

8   Honor.  First off, in the same way that saying that something

9   is a donation doesn't necessarily make it a donation if

10  there's other evidence that suggests it's a bribe, turning a

11  donation into a bribe doesn't make it a bribe either.  And

12  that's what happened here.  In fact, we know that the U.S.

13  Attorney himself in the press conference announcing this case

14  said this case is not about making donations to a school to

15  help your children get into the school.  That happens.  It's

16  perfectly lawful.  The question comes behind whether this

17  was, in fact, a bribe.

18          And what we have here in this statement is Singer

19  himself, immediately upon cooperating, saying the government

20  wants me to say that these were bribes.  What I told the

21  parents was that these were donations, not bribes.  They want

22  me to lie.  They're yelling at me to get me to say something

23  else, Your Honor.

24          And, yes, Your Honor has sentenced people.  And in

25  those findings you have found based on the information that

1     the government gave you that what was paid was bribes.  What

2     Your Honor didn't have was the fact that Singer himself

3     immediately upon cooperating was saying that, in fact, he

4     told the parents that these payments were legitimate and that

5     they were not, in fact, bribes.  That is not information that

6     the Court had.  That's not information that Judge Woodlock

7     had when he sentenced Mr. Bizzack.  It's not information that

8     any the other judges had who sentenced people.

9            And if you look at what was said about those people

10    in those sentences hearings, Your Honor, it was not that this

11    was generally a bribe because it went to a USC payment, the

12    government stood up and said the payments that were made to

13    the Key Worldwide were made by those defendants with the

14    understandings that those bribes were going to be paid either

15    to the school or to the coaches.  And that's not true.  And

16    they knew it was not true because Singer said that, Your

17    Honor.

18           They did not share that with the Court.  They did

19    not share that with defense counsel who pled guilty.  They

20    did not share that before those people were sentenced, and

21    that is a problem.  And it is a big problem, Your Honor,

22    because it is exonerating information.

23           The fact that somebody made the donation to USC

24    with the goal of getting their children into USC is not a

25    crime.  Everybody admits that that's not a crime.  And

1    calling it a bribe because you made the payments with the

2    expectation that you would get something in response doesn't

3    make it a bribe.  And the fact of the matter is this whole

4    case keys in on what is it that the people who made these

5    donations believed that they were doing in paying money to

6    USC or paying money to the Key Worldwide Foundation.  Were

7    they making legitimate donations that were obviously going to

8    help their kids get into school?  Or were they instead

9    somehow lining somebody's pockets or giving somebody money in

10   exchange for that person corruptly giving them something that

11   they wouldn't get otherwise?  That's the whole case.

12            And the fact is that this evidence demonstrates

13   that it was the former and not the latter.  And that's not

14   anything like what's been produced to us in discovery today.

15   This is exactly what we've been asking for, and we have been

16   told it doesn't exist.  And that is an enormous problem, Your

17   Honor.  And what I would ask is that rather than having us

18   have to file our dispositive motion on this issue that is

19   before you, Your Honor, as instructed on the timeline, that

20   we be permitted to file before Judge Kelley who has this

21   *Brady* issue before her to be able to develop the necessary

22   record that we need to develop on this so we can file an

23   informed motion before Your Honor informed by all the facts,

24   not just what we've received belatedly.

25            MR. KELLY:  Your Honor, one minute left on the

1    clock before AUSA Rosen responds.  Putting aside whether or

2    not these notes are actually privileged and whether you

3    should go to the attorney rather than the cooperating witness

4    to waive the privilege, put that aside.  The note itself

5    talks about a "loud and abrasive call".  We haven't seen that

6    call.  They haven't disclosed that call to us.

7           They have over 50 hours of supposed nonpertinent

8    calls.  They were probably sitting on that.  And that's pure

9    *Brady* if the agent is telling this cooperating witness to lie

10   about our clients.  If that call exists, we would like it.

11          THE COURT:  Wait a minute, counsel.  The Magistrate

12   Judge is going to handle those discovery issues.  This court

13   is going to handle the motion itself under the schedule that

14   I have directed earlier today.

15          MR. KELLY:  Thank you.

16          THE COURT:  Briefly.

17          MR. ROSEN:  There is nothing in these notes that

18   suggest what they were doing is legitimate.  Absolutely

19   nothing.  And the fact is that they blacked out a lot of the

20   portions of the notes where Rick is writing that it wasn't

21   legitimate.  "Spoke to Augustin."  That's Huneeus.  He's pled

22   guilty.  "He wanted to know I was backing Augustin as hard as

23   anything.  I have confirmed I spoke to Donna Heinel, and

24   Augustin will be admitted by the second week of November.

25   Spoke about the fake photo I put on the profile."  That's not

1  legitimate.  A legitimate donation is when you don't get

2  anything for that donation.

3           THE COURT:  All right.  I expect that I will see

4  that in writing later this month.  Is there anything else

5  that needs to -- let me talk to my Deputy a minute.

6           My Deputy brings up a good point.  Is there a

7  necessity for a motion to exclude time?

8           MR. WEINBERG:  We certainly agree this is a complex

9  case.  There are motions pending that would provide a second

10  basis for a speedy trial exception, and there will be motions

11  throughout the next few months.  The defendants all assent

12  to --

13           THE COURT:  Let that not be avoided, counsel.  It

14  needs to be resolved.  Anything else?

15           MR. KENDALL:  Your Honor, I want to take ten

16  seconds.  I know we're imposing on your patience.  Mr. Rosen

17  made directly incorrect statements that are related to my

18  client.  Those documents that he's talking about show that my

19  client's son was they were told he was a great athlete.  He

20  was a member of the U.S. Junior Olympic Development Team.  He

21  was recruited.  He came and he played on the USC team and was

22  a water polo player at USC.  For them to claim that

23  everybody's a false athlete and that's what those documents

24  show, it's just not an accurate picture for the record.

25  Thank you, Your Honor.

1           MR. WEINBERG:  If I could burden the Court for ten

2   more seconds.  This evidence will also reflect that USC is

3   not a victim of wire or mail fraud.  They as an institution

4   that sought these donations and received them and welcomed

5   them.

6           THE COURT:  Thank you, counsel.  We are adjourned.

7           THE CLERK:  All rise.

8           (Court recessed at 12:44 p.m.)

1                    - - - - - - - - - - -

2                         CERTIFICATION

3

4          I certify that the foregoing is a correct

5     transcript of the record of proceedings in the above-entitled

6     matter to the best of my skill and ability.

7

8

9

10    /s/ Joan M. Daly                  February 28, 2020

11

12    _____            _____

13    Joan M. Daly, RMR, CRR            Date
      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25