# Exhibit 3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

MARCUS BARRINGTON,
CHRISTOPHER JACQUETTE
 a/k/a Comp,
 and
LAWRENCE SECREASE
 a/k/a Law
_____/

INDICTMENT

4:08cr50-SPM

THE GRAND JURY CHARGES:

### COUNT ONE

#### Introduction

That at all times material to this Indictment:

1. PEOPLE SOFT was a system of computers used in interstate and foreign communication.

2. Student records, including, but not limited to, biographical information, residency, course information, and grades of students enrolled at the Florida Agricultural and Mechanical University (FAMU) were maintained on PEOPLE SOFT.

3. The records pertaining to grades and residency stored on PEOPLE SOFT could be changed only by authorized FAMU employees.

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

2008 OCT 21 PM 2: 51

FILED

4. Individuals identified herein by the initials A.P., C.R, S.J., T.F., and V.W., were employees in the FAMU Registrar's Office authorized to access and enter grade and residency changes in PEOPLE SOFT.

5. Each employee authorized to access PEOPLE SOFT had a unique username and password that permitted them to access the system and was designed to prevent unauthorized individuals from accessing PEOPLE SOFT.

6. Keystroke loggers were devices that could be installed on computers to record the identity and sequence of key strikes on a computer keyboard.

### The Conspiracy

Between in or about June 2007, and in or about December 2007, in the Northern District of Florida, and elsewhere, the defendants,

**MARCUS BARRINGTON,**
**CHRISTOPHER JACQUETTE**
**a/k/a Comp,**
**and**
**LAWRENCE SECREASE**
**a/k/a Law,**

did knowingly and willfully combine, conspire, confederate and agree together and with other persons, to commit offenses against the United States of America, namely,

i. to knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises by transmitting and causing to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

ii.     to knowingly and with the intent to defraud, access a protected computer without authorization and exceeding authorization, and by means of such access further the intended fraud and obtain things of value, in violation of Title 18, United States Code, Section 1030(a)(4).

## Manner and Means

It was part of the conspiracy that:

1.  The conspirators would and did surreptitiously install and caused to be installed keystroke loggers on computers used by employees of the FAMU Registrar's Office to access and alter student records stored on PEOPLE SOFT.

2.  Through the use of keystroke loggers, conspirators would and did obtain user names and PEOPLE SOFT passwords of FAMU Registrar's Office employees identified for purposes of this indictment by the initials T.F., S.J., A.P., C.R., and V.W.

3.  Without the consent, authorization, or knowledge of FAMU, the conspirators would and did use the user names and passwords of these FAMU registrar employees to access student records in PEOPLE SOFT through the Internet by various means, including computers located in California, at the Florida State University in Tallahassee, at FAMU, and via wireless access in locations in and around Tallahassee, Florida.

4.  Having accessed student records in PEOPLE SOFT, the conspirators changed and caused to be changed the grades of approximately 90 FAMU students and, during the course of the conspiracy, changed and caused to be changed approximately 650 grades overall.

5.  The majority of the grade changes caused by the conspirators had the effect of improving the overall grade point average of the students whose grades were changed.

6.  The conspirators also caused approximately 114 failing "F" grades to be changed to passing grades, which had the effect of awarding the students who had received the "F" grades thousands of dollars in credit hours to which they were not entitled.

7.  The increased grade point averages resulting from the grade changes also had the effect of causing students who would not have otherwise have been eligible for financial aid in the form of loans, grants, and scholarships, to be eligible for those monies.

8.  Having accessed student records in PEOPLE SOFT by the unauthorized use of the user names and passwords of authorized FAMU employees, the conspirators would and did cause the residency status of several FAMU students to be changed from out-of-state to in-state, thereby reducing the total tuition owed by these students to FAMU by thousands of dollars.

9.  After learning that FAMU had reversed the unauthorized grade changes initially made by the conspirators and had restored the students' grades to those originally awarded by FAMU staff, the conspirators again caused keystroke loggers to be installed on computers used by employees of the FAMU Registrar's Office a second time.

10. After installing keystroke loggers a second time, the conspirators caused grades that FAMU had changed back to the original grades to be changed again, once again increasing the grade point averages of students whose grades were changed, and awarding students credit hours for classes they had previously failed.

11. In order to divert attention away from changes made both to their own grades and the grades of their friends and associates, and to mislead investigators as to the identity of the individuals responsible for changing these grades, the conspirators would also change grades of randomly selected students without these students' consent or knowledge.

4

12. The conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### Overt Acts

In furtherance of this conspiracy and to effect the objects thereof, the following overt acts were committed:

1. In or about August 2007, MARCUS BARRINGTON created an email account whose address was famutorch2007@gmail.com.

2. On or about August 31, 2007, MARCUS BARRINGTON, CHRISTOPHER JACQUETTE, and LAWRENCE SECREASE met, after hours, at the FAMU Grand Ballroom, where computers used to register students were maintained.

3. On or about August 31, 2007, CHRISTOPHER JACQUETTE and LAWRENCE SECREASE entered the Grand Ballroom, while MARCUS BARRINGTON stood watch outside the ballroom.

4. In or about August 2007, MARCUS BARRINGTON offered to change a FAMU student's grades.

5. In or about August 2007, CHRISTOPHER JACQUETTE telephoned a FAMU student, read off a list of her grades of that student's present grades, and asked the student whether she wanted the grades changed.

6. In or about August 2007, CHRISTOPHER JACQUETTE agreed to change a FAMU student's "D" grades to "A" grades.

7. In or about August 2007, MARCUS BARRINGTON and CHRISTOPHER JACQUETTE advised a FAMU student that they could change one of her failing grades to an "A."

8. In or about August 2007, CHRISTOPHER JACQUETTE told a FAMU student to provide him a list of grades she wanted changed.

9. In or about August 2007, LAWRENCE SECREASE showed a FAMU student a computer screen reflecting that he had accessed PEOPLE SOFT and had changed the student's grades.

10. In or about August 2007, CHRISTOPHER JACQUETTE obtained a notebook computer that the conspirators subsequently used to make grade changes by accessing People Soft through various wireless networks throughout Tallahassee.

11. Between in or about August and September 2007, CHRISTOPHER JACQUETTE transferred the notebook computer described in the preceding paragraph to MARCUS BARRINGTON.

12. On or about September 9, 2007, CHRISTOPHER JACQUETTE accepted payment of $1,200 from two FAMU students in exchange for arranging to change the residency status of these students from out of state to in-state residency.

13. On or about September 18, 2007, MARCUS BARRINGTON, CHRISTOPHER JACQUETTE, LAWRENCE SECREASE and others met at the residence of MARCUS BARRINGTON in Tallahassee, Florida.

14. On or about September 18, 2007, CHRISTOPHER JACQUETTE, LAWRENCE SECREASE and others went to the Office of the Registrar on the FAMU campus.

15. On or about September 18, 2007, MARCUS BARRINGTON, CHRISTOPHER JACQUETTE, and LAWRENCE SECREASE caused keystroke loggers to be installed on the computers of FAMU registrar employees.

16. Between in or about November 2007, and in or about December 2007, MARCUS BARRINGTON transferred the notebook computer described in paragraph 10 to a third party.

All in violation of Title 18, United States Code, Sections 371 and 1349.

## COUNT TWO

Between in or about August 2007, and in or about October 2007, in the Northern District of Florida, the defendants,

**MARCUS BARRINGTON,
CHRISTOPHER JACQUETTE
a/k/a Comp,
and
LAWRENCE SECREASE
a/k/a Law,**

knowingly and with the intent to defraud, did access a protected computer without authorization, and by means of such conduct did further such intended fraud and did obtain things of value, in violation of Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A), and 2.

## COUNT THREE

That between on or about August 24, 2007, and on or about September 13, 2007, in the Northern District of Florida, the defendants,

**MARCUS BARRINGTON,
CHRISTOPHER JACQUETTE
a/k/a Comp,
and
LAWRENCE SECREASE
a/k/a Law,**

7

did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the user name and password of a FAMU employee identified for purposes of this indictment as "T.F.," during and in relation to felony violations enumerated in Title 18, United States Code, Section 1028A(c), namely, conspiracy to commit wire fraud, as charged in Count One of this Indictment, and unauthorized access of a protected computer, as charged in Count Two of this Indictment, in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT FOUR

That between on or about October 2, 2007, and on or about October 15, 2007, in the Northern District of Florida, the defendants,

**MARCUS BARRINGTON**
**and**
**CHRISTOPHER JACQUETTE**
**a/k/a Comp,**

did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the user name and password of a FAMU employee identified for purposes of this indictment as "C.R.," during and in relation to felony violations enumerated in Title 18, United States Code, Section 1028A(c), namely, conspiracy to commit wire fraud, as charged in Count One of this Indictment, and unauthorized access of a protected computer, as charged in Count Two of this Indictment, in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT FIVE

That on or about October 29, 2007, in the Northern District of Florida, the defendant,

**MARCUS BARRINGTON,**

did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the user name and password of a FAMU employee identified for purposes of this

8

indictment as "V.W.," during and in relation to felony violations enumerated in Title 18, United States Code, Section 1028A(c), namely, conspiracy to commit wire fraud, as charged in Count One of this Indictment, and unauthorized access of a protected computer, as charged in Count Two of this Indictment, in violation of Title 18, United States Code, Sections 1028A and 2.

## FORFEITURE

The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

From their engagement in any or all of the violations alleged in Counts One and Two of this Indictment, the defendants,

**MARCUS BARRINGTON,
CHRISTOPHER JACQUETTE
a/k/a Comp,
and
LAWRENCE SECREASE
a/k/a Law,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2) any and all of the defendants' right, title and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred, sold to, or deposited with a third party;

    iii.    has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

[signature]

_____
THOMAS F. KIRWIN
Acting United States Attorney

[signature]

_____
ERIC K. MOUNTIN
Assistant United States Attorney