# Exhibit 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 14CR300 __ - MGM |
| | ) | |
| vs. | ) | VIOLATIONS: |
| | ) | |
| | ) | 18 U.S.C. § 1341 – Mail Fraud |
| JANET HENRY, | ) | |
| Defendant. | ) | |

INFORMATION

The United States Attorney charges:

COUNT ONE - Title 18, United States Code, Section 1341 (Mail Fraud)

1.     The Robert M. Hughes Academy Charter School (hereinafter "RMHACS") was

organized as a nonprofit organization to operate a public charter school in January, 1999.

Charter schools operate under a charter granted by the Massachusetts Department of Elementary

and Secondary Education ("MDESE"), and a board of trustees subsequently manages the charter

school independent of any school committee.  Beginning in March 2009, defendant JANET

HENRY became the principal of RMHACS.

2.     In January, 1999, the MDESE granted RMHACS a five-year charter, and

RMHACS officially began operation in September, 1999.  In addition to tuition reimbursements

from the state and other revenue sources, RMHACS received state and federal grants annually

since at least fiscal year 2001.  RMHACS's charter was renewed in 2004 and again in January,

2009.  In fiscal year 2009, RMHACS received a total of $235,053 in federal funds alone from the

United States Department of Education passed through the Massachusetts Department of

Elementary and Secondary Education.

3.      Like public schools, charter schools must give the Massachusetts Comprehensive Assessment Systems ("MCAS") examination to its students.  The MCAS scores serve as one tool by which the Massachusetts Department of Elementary and Secondary Education can assess a charter school's success and viability.  The principal at a charter school, like a public school principal, must ensure the proper administration of the MCAS examination.  The Massachusetts Department of Elementary and Secondary Education distributes a booklet called Principal's Administration Manual that outlines a principal's duties and responsibilities for the administration of the MCAS.  Those responsibilities include ensuring that test administrators and staff comply with the MCAS test requirements. The Principal's Administrative Manual provides that:

        a.      "Test administrators are responsible for ensuring that students provide answers that are strictly their own; do not participate in any form of cheating; . . . and do not consult other students, staff, or anyone else accessible to them during the test administration;"

        b.      "No test administrator or other school personnel may provide a student with the answer to any unreleased test question or make any suggestion as to how to respond to a test question at any time, whether before, during or after a test administration.  This prohibition includes provisions of clues, hints and/or actual answers in any written, printed, verbal and/or nonverbal form . . . ;" and

        c.      "No test administrator or other school personnel may coach a student during testing or alter or interfere with a student's responses in any way.  Examples of coaching include, but are not limited to, . . . influencing a student's responses by offering hints, clues, cues, facial expressions, nods, voice inflections; . . ."

4.      At the conclusion of a MCAS examination, the charter school principal must

submit to the Massachusetts Department of Elementary and Secondary Education a "Principal's

Certification of Proper Test Administration" in which the principal swears under oath that he or

she has followed the proper MCAS administration procedures as described in the Principal's

Administration Manual, including those described above.

<u>The 2009 MCAS Tests</u>

5.      The defendant became the Principal of RMHACS in March 2009 and ultimately

was responsible for the administration of the 2009 MCAS tests.  RMHACS administered an

English and a Math MCAS examination in March and April 2009 respectively.  During the

course of those two examinations, the defendant instructed teachers to give hints, clues and other

tips to students during the course of the test administration.  For example, the defendant told

teachers that if it appeared that a student was simply filling in test scores without any thought,

then the teachers should tell the students that they might want to check their answers or look at

their answers again.  Similarly, the defendant instructed teachers that if they saw answers that

were crazy, or if they saw nonsense answers, then they should tell the students to check their

answers or look at their answers again.

6.      During the defendant's meetings with the teachers in preparation for the MCAS

examinations and during the administration of the MCAS examination, the defendant stated to

some teachers that "this is where we earn our money."  The defendant also stated to some

teachers that RMHACS could close, and everyone would lose their jobs if RMHACS did not do

well.

7.      Consistent with the MDESE requirements, the defendant mailed RMHACS' 2009

MCAS examinations to New Hampshire, where the defendant understood that the MDESE had

3

contracted with a private company to score the MCAS examinations.  In addition, the defendant

also electronically sent the "Principal's Certification of Proper Test Administration" to the

private company in New Hampshire.  For the 2009 MCAS examinations administered at

RMHACS, the defendant certified, among other things, that "I, as principal, certify that our

school has followed proper MCAS administration procedures as described in the Principal's

Administration Manual," and that "I have complied with and enforced all MCAS security

requirements outlined in the Principal's Administration Manual."

      8.     Those certifications were not true.  The defendant understood that by falsely

certifying the MCAS test scores and test administration, the defendant caused the Massachusetts

Department of Elementary and Secondary Education and United States Department of Education

to believe that there had been no cheating during the MCAS tests, when in fact there had been.

      9.     The purpose of submitting the false certification of compliance to MDESE was to

continue to receive funding from MDESE and the United States Department of Education.

      10.    On or about April 15, 2009, within the District of Massachusetts,

JANET HENRY,

defendant herein, being an agent of RMHACS, together with others known and unknown,

having devised and intending to devise a scheme and artifice to defraud the Massachusetts

Department of Elementary and Secondary Education, and to obtain money from the

Massachusetts Department of Elementary and Secondary Education and the United States

Department of Education, by means of false or fraudulent pretenses, representations or promises,

and for the purpose of executing such scheme and artifice and attempting to do so, placed and

caused to be placed, and deposited and caused to be deposited, in a post office and authorized

4

depository for mail matter, and with a private or commercial interstate carrier, a matter and thing

to be sent and delivered by the Postal Service and any private or commercial interstate carrier,  to

be delivered according to the direction thereon, and knowingly caused to be delivered by the

Postal Service and such carrier, matters and things according to the direction thereon, to wit: to

the MCAS scoring company in New Hampshire, the RMHACS Principal's Certification for

Proper Test Administration for 2009 MCAS for Grades Three, Four, Five, Six, Seven and Eight,

which defendant signed and  which falsely certified the following statements:

    a.  I, as principal, certify that our school has followed proper MCAS administration
        procedures as described in the Principal's Administration Manual, which is posted on the
        Department's website at http://www.doe.mass.edu/mcas/admin.html, and that each of the
        following statements in true:

        I have coordinated all MCAS test activities in my school and ensured compliance with all
        MCAS administration requirements.

                    *              *              *

        Each test administrator in my school followed the instructions given in the Test
        Administrator's Manual.

                    *              *              *

        If any testing irregularities were discovered during the test administration, I have
        properly reported these irregularities to the Department by calling the Student
        Assessment Services Unit at 781-338-3625.

    b.  I certify that the information given on this form and show above is true and correct to the
        best of my knowledge.

Janet Henry
Thursday, April 16, 2009

when in truth and in fact, defendant JANET HENRY knew that she had participated and caused

RMHACS test administrators to participate in a form of cheating by, among other things,

offering clues, hints and other forms of verbal and non-verbal suggestions designed to influence

students' answers to MCAS test questions.

All in violation of Title 18, United States Code, Section 1341.

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:   _____

Kevin O'Regan
Dated: September 23, 2014                    Assistant U.S. Attorney

6