**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT ZANGRILLO,<br><br>Defendant. | Case No. 19-cr-10080 |

**DEFENDANT ROBERT ZANGRILLO'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO STRIKE THE CLASS-TAKING ALLEGATIONS OR, IN THE ALTERNATIVE, TO SEVER COUNTS ONE AND FOUR, AND TO SEVER HIS TRIAL**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

                                                                           **Page**

ARGUMENT ..............................................................................................................................1

I.      THE COURT SHOULD STRIKE THE CLASS-TAKING ALLEGATIONS ...................1

II.     IN THE ALTERNATIVE, THE COURT SHOULD SEVER COUNTS ONE AND FOUR TO THE EXTENT THEY ALLEGE THE CLASS-TAKING SCHEME ..................................................................................................................2

        A.      The Class-Taking Scheme Is Improperly Joined Under Rule 8. ............................2

        B.      The Class-Taking Scheme Alleged In Counts One and Four Should Be Severed Under Rule 14. ...........................................................................................4

III.    THE COURT SHOULD SEVER MR. ZANGRILLO'S TRIAL .......................................5

CONCLUSION ..........................................................................................................................6

Robert Zangrillo respectfully submits this reply memorandum of law in further support of his motion to strike or sever the Indictment's class-taking allegations, and to sever his trial from those of his co-defendants.

## ARGUMENT

**I.     THE COURT SHOULD STRIKE THE CLASS-TAKING ALLEGATIONS**

The Court should strike paragraphs 253-264 and 268-271 of the Indictment because they reference the class-taking scheme, which is not a federal crime under the wire fraud statute and is entirely unrelated to the alleged honest services bribery. *See* ECF 1044 at 11-18. Therefore, allegations that Mr. Zangrillo's daughter received assistance completing her online classes are irrelevant to the crime charged and unduly prejudicial to Mr. Zangrillo. *See United States v. Sawyer*, 878 F. Supp. 279, 294 (D. Mass 1995) (Gorton, J.), *aff'd*, 85 F.3d 713 (1st Cir. 1996).

In response, the government does not attempt to argue that the class-taking allegations are relevant to the bribery scheme. Nor could it—the two offenses cannot be harmonized. The government cannot claim that USC admitted Mr. Zangrillo's daughter based on her academic credentials and in reliance on her allegedly inflated transcript, while at the same time contending that her admission to USC was essentially guaranteed as a result of the alleged bribe.[1]

Instead, the government doubles down on its claim that even if the class-taking and the bribery constitute entirely separate conduct, they are still part of some overarching scheme because they allegedly share the same general goal of gaining admissions to college. The premise of the government's argument is incorrect. As explained in detail in Mr. Zangrillo's Reply Memorandum of Law in Support of His Motion to Dismiss the Indictment, the class-taking conduct and bribery

---

[1]     The government promises without further explanation that "[t]he evidence at trial will show that they [*i.e.*, the two alleged schemes] were not simply compatible, but reinforcing." (ECF 1137 at 8 n.3). Nothing produced in discovery thus far explains how that could possibly be so.

1

conduct are not part of a single offense. (ECF 1200 at 1-5). Thus, the risk to a fair trial on the pivotal bribery allegations by the addition of the class-taking allegations in the Indictment is to increase the chances of conviction by providing the jurors with two bases for a guilty verdict within a single count or to paint Mr. Zangrillo as someone who has a propensity to cheat. This plainly is inflammatory, prejudicial, and grounds to strike the class-taking allegations under Rule 7(d).

## II. IN THE ALTERNATIVE, THE COURT SHOULD SEVER COUNTS ONE AND FOUR TO THE EXTENT THEY ALLEGE THE CLASS-TAKING SCHEME

### A. The Class-Taking Scheme Is Improperly Joined Under Rule 8.

If the Court declines to dismiss or strike the class-taking allegations, the Court should, at the very least, sever those charges from the rest of the counts in the Indictment under Rule 8(b) of the Federal Rules of Criminal Procedure to avoid unfair prejudice to Mr. Zangrillo.

As an initial matter, the government ignores controlling precedent and incorrectly asserts that Rule 8(a), as opposed to 8(b), applies to questions involving the joinder of multiple offenses where multiple defendants are concerned. (ECF 1137 at 15). The First Circuit, however, has clearly held that "[i]n a case involving multiple defendants, Rule 8(b) governs joinder of defendants and offenses." *United States v. Natanel*, 938 F.2d 302, 306 (1st Cir. 1991). Unlike Rule 8(a), which is "generously construed in favor of joinder," Rule 8(b) is not as favorable to the government. *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996). While Rule 8(a) permits joinder of offenses that are of "the same or similar character," the more stringent Rule 8(b) standard only permits joinder of counts if "each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant." *United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997).

Taking all the allegations in the Indictment as true, it cannot be said that the class-taking allegations arise out of the same act or transaction, or series of acts or transactions, as the honest

2

services bribery scheme. The government does not dispute that the class-taking scheme involves different people, different conduct, different witnesses, different time periods, and different direct evidence than the bribery scheme. Its only rejoinder is that the class-taking scheme and the bribery scheme are two unrelated means of pursuing a single conspiracy, the goal of which is fraudulently gaining college admission. But "the inclusion of a conspiracy count will not rectify otherwise improper joinder." *United States v. Luna*, 585 F.2d 1, 4 (1st Cir. 1978).

In *United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996), which the government relies on, the First Circuit found offenses misjoined where the only connection was, as here, that they shared some alleged overarching purpose.[2] There, the government argued that a scheme to mislabel shrimp products was properly joined with a scheme to reduce reportable income by overstating corporate expenses because "both sets of offenses involved the use of falsehoods or omissions to profit at the expense of the federal government." *Id*. at 627. To support its argument, the government highlighted the fact that both sets of allegations "occurred during overlapping time frames; [the defendant's] control over the Company was a common element; and the Company's sagging financial condition provided a common motive." *Id*. The Court disagreed, stating that "it is very hard to describe adulterating or mislabeling shrimp as offenses 'similar' to tax fraud— *except at a level of generality so high as to drain the term of any real content*." *Id*. at 628 (emphasis added). Despite ultimately finding the error harmless, the court found that the government's characterization of the scheme "stretch[ed]" the facts too far. *Id*.

Here, as in *Randazzo*, the only thing joining the class-taking and bribery schemes is their alleged ultimate aim. Because the class-taking scheme arises from an entirely separate alleged transaction as the bribery scheme, to the extent the Court declines to dismiss or strike the class-

---

[2]    *Randazzo* involved one defendant, and so applied the more permissive Rule 8(a) standard.

taking allegations, they should, at the least, be severed from the other charges.

      **B.**      **The Class-Taking Scheme Alleged In Counts One and Four Should Be Severed Under Rule 14.**

Even if the Court does not sever the class-taking counts under Rule 8, the Court should sever them under Rule 14 because the bribery allegations are highly prejudicial "bad acts" evidence with no "special relevance" to the class-taking scheme (and vice versa), and Mr. Zangrillo will face unfair prejudice should they be tried together. (ECF 1046 at 7-10).

The government's only response is to offer a superficial and over-broad definition of "intrinsic evidence." Claiming that evidence of the bribery scheme "is related and intrinsic" to the class-taking scheme, the government repeats its argument that evidence of the bribery scheme would be admissible in a separate trial on the class-taking scheme because the schemes share the same "end" of gaining admission to college. (ECF 1137 at 17-18). The government's characterization of intrinsic evidence misstates the law. While evidence of acts intrinsic to a crime may be admissible under (or without reference to) Rule 404(b), intrinsic evidence must be more than evidence that is generally "related" to a crime. Intrinsic evidence is defined as evidence that is "inextricably intertwined" with or "part of the crime charged." *United States v. Perocier*, No. 08 243 (JAG), 2010 WL 339046, at *1 (D.P.R. Jan. 20, 2010).

In this case, evidence of the class-taking scheme does not go to any element of the bribery charge and is not "inextricably intertwined" with it, either. And while the government generically invokes acceptable uses of 404(b) evidence in asserting that evidence of bribery would somehow demonstrate "among other things, knowledge, intent, absence of mistake, and . . . proof that the alleged conduct was part of a common plan or scheme," it fails to explain *how*. (ECF 1137 at 18). That is not enough to offset the significant likelihood that a jury will convict Mr. Zangrillo based on the admission of legally irrelevant but highly prejudicial propensity evidence portraying him as

4

a "cheater." The Court should therefore sever the class-taking scheme in Counts One and Four.

### III. THE COURT SHOULD SEVER MR. ZANGRILLO'S TRIAL

In determining whether Mr. Zangrillo's trial should be severed, the question is not—as the government contends—whether Mr. Zangrillo's alleged conduct is covered by the Indictment. The question also is not whether Mr. Zangrillo and the other defendants were part of a single conspiracy or engaged in "similar conduct." According to Supreme Court precedent, the question that the Court must ask is whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Because the government expressly conceded that Mr. Zangrillo's daughter was not admitted to USC as a fake athletic recruit, but rather as VIP applicant, Mr. Zangrillo stands apart from the seven defendants set to be tried alongside him. Therefore, there is a significant risk that a jury will erroneously conclude he is guilty based, at least in part, on evidence that the *other* defendants' children were admitted as athletes. The government responds that this does not matter because the Indictment alleges that Mr. Zangrillo "intended" that his daughter be presented as a student athlete even if she ultimately was not. This argument misses the point. Regardless of what the Indictment wrongly claims was Mr. Zangrillo's intention, the government has admitted that is not what actually happened—an issue that will feature prominently at trial.

If Mr. Zangrillo were tried alone, the government would not be limited in its ability to prove its case. It would argue that Mr. Zangrillo conspired with others to have his daughter admitted as a student athlete, but somehow she was never presented as one. Relying on documents produced by the government and USC, Mr. Zangrillo would counter with substantial evidence about how his daughter was "flagged" as a "VIP" applicant consistent with USC's university-wide practice, which was sanctioned and utilized by the highest echelons of USC, including its

5

President, Vice President, and Provost. Mr. Zangrillo would show the high percentage of "VIP" students admitted after their parents made sizable, lawful donations or in explicit contemplation of such future donations. Mr. Zangrillo would show that the lawful donation *he* made to USC—and which he knew he was making to USC—was handled by the university in the same manner as it handles all other donations. And, Mr. Zangrillo would demonstrate, through contemporaneous emails, that neither Singer nor Heinel ever intended to present his daughter for admission as a purported athlete. Weighing the evidence, a jury would likely acquit Mr. Zangrillo because the government would have not met its burden of showing that he agreed with at least one other individual to engage in a scheme to present his daughter as a student athlete. Rather, he engaged in conduct that numerous other parents fortunate enough to have the means to do so engage in every year—with the full knowledge, authorization, and *encouragement* of USC.

Things would play out differently in a joint trial. A jury would hear evidence that the other seven defendants' children were admitted through USCs Athletic "Subco" program, and learn about how Singer had apparently corrupted coaches and ex-coaches from USC's athletics departments to assist him in presenting his clients as athletes with fake athletic profiles. Even though there is substantial evidence that Mr. Zangrillo did not engage in that conduct, there is a significant risk that the jury would consider evidence about the other defendants and their children and not focus on the individual aspects of the very distinct VIP program practices that resulted in Mr. Zangrillo's daughter's admission, *i.e.*, there is the very serious risk of spillover prejudice from being joined in a trial with other Singer clients whose children were admitted through separate USC programs and practices.

## **CONCLUSION**

The Court should strike, or alternatively sever, the class-taking allegations. The Court also should sever Mr. Zangrillo's trial from those of his co-defendants.

Dated:  May 15, 2020                                    Respectfully submitted,

/*s/ Martin G. Weinberg*
Martin G. Weinberg, Esq. (BBO # 519480)
20 Park Plaza, Suite 1000
Boston, MA  02116
Tel: (617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (*admitted pro hac vice*)
Sara K. Winik (*admitted pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY  10001
Tel: (212) 446-2300
mlschwartz@bsfllp.com
swinik@bsfllp.com


*Counsel for Robert Zangrillo*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed with the Clerk of the United States District Court for the District of Massachusetts via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users; these are identified on the Notice of Electronic Filing.

/s/ Martin G. Weinberg
Martin G. Weinberg