**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | Criminal No. 19-CR-10080-NMG |
| DAVID SIDOO, et al., | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNT
ONE INSOFAR AS IT ALLEGES CONSPIRACY TO DEFRAUD TESTING
COMPANIES OF PROPERTY AND HONEST SERVICES (Dkts. 341, 1021, 1170)**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

DISCUSSION ................................................................................................................... 3

    A.    Mail and Wire Fraud Is Limited In Scope To Traditional Property
        Rights .................................................................................................................. 3

    B.    The Fourth Superseding Indictment Does Not Allege Facts
        Showing Any Traditional Property Interest To Be The Object Of
        The Scheme ......................................................................................................... 5

    C.    The Government Has Not Properly Alleged a Fiduciary Duty
        Sufficient To Support An Honest Services Violation ...................................... 10

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Carpenter v. United States*,
   484 U.S. 19 (1987)................................................................................. 1, 3, 4, 8

*Cleveland v. United States*,
   531 U.S. 12 (2000)................................................................................. 1, 3, 4, 6

*De Lima v. Sessions*,
   867 F.3d 260 (1st Cir. 2017)........................................................................ 8

*FAMM Steel, Inc. v. Sovereign Bank*,
   571 F.3d 93 (1st Cir. 2009)........................................................................ 11

*Kelly v. United States*,
   140 S. Ct. 1565 (2020)....................................................................... 1, 6, 8, 9, 10

*Kimm v. Lee*,
   2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) .................................................. 7

*McNally v. United States*,
   483 U.S. 350 (1987)................................................................................... 8

*Pasquantino v. United States*,
   544 U.S. 349 (2005)................................................................................. 2, 4

*Roitman v. New York City Transit Auth.*,
   704 F. Supp. 346 (E.D.N.Y. 1989) ............................................................. 7

*Scheidler v. Nat'l Org. for Women, Inc.*,
   537 U.S. 393 (2003)................................................................................... 3

*Skilling v. United States*,
   561 U.S. 358 (2010)............................................................................... 10, 11

*Stokeling v. United States*,
   139 S. Ct. 544 (2019)................................................................................. 3

*United States v. Alkaabi,*
   223 F. Supp. 2d 583 (D.N.J. 2002) ............................................................ 5, 6

*United States v. Alsugair*,
   256 F. Supp. 2d 306 (D.N.J. 2003) .............................................................. 8

*United States v. Berroa*,
   856 F.3d 141 (1st Cir. 2017)....................................................................... 3

TABLE OF AUTHORITIES (cont.)

Page(s)

*United States v. Czubinski,*
106 F.3d 1069 (1st Cir. 1997) ....................................................................................... 10

*United States v. Dray*,
901 F.2d 1132 (1st Cir. 1990) ......................................................................................... 4

*United States v. Ferrara,*
701 F. Supp. 39 (E.D.N.Y. 1988) ................................................................................... 7

*United States v. Harder,*
168 F. Supp. 3d 732 (E.D. Pa. 2016) ...................................................................... 11, 12

*United States v. Hedaithy,*
392 F.3d 580 (3d Cir. 2004) ................................................................................ 1, 2, 5, 6

*United States v. LaMacchia,*
871 F. Supp. 535 (D. Mass 1994) ................................................................................... 7

*United States v. Lusk,*
2015 WL 1808909 (S.D.W. Va. Apr. 21, 2015) ........................................................... 10

*United States v. Milovanovi*c,
678 F.3d 713 (9th Cir. 2012) ........................................................................................ 10

*United States v. Murphy,*
762 F.2d 1151 (1st Cir. 1985) ....................................................................................... 11

*United States v. Ochs,*
842 F.2d 515 (1st Cir. 1988) ...................................................................................... 3, 4

*United States v. Rachal,*
222 F. Supp. 3d 113 (D. Mass. 2016) ............................................................................. 5

*United States v. Rosen,*
130 F.3d 5 (1st Cir. 1997) .............................................................................................. 4

*United States v. Rybicki,*
354 F.3d 124 (2d Cir. 2003) .......................................................................................... 11

*United States v. Walters,*
997 F.2d 1219 (7th Cir. 1993) ........................................................................................ 6

TABLE OF AUTHORITIES (cont.)

Page(s)

**<u>Rules</u>**

Fed. R. Crim. P. 7(c)(1) ............................................................................................... 11

Fed. R. Crim. P. 8, 12(b)(3)(B)(i), (iv), And (v), 12(b)(3)(D), And 14 ........................................ 1

Defendants respectfully submit the following reply memorandum in support of their Motion To Dismiss Count One Insofar As It Alleges Conspiracy to Defraud Testing Companies of Property and Honest Services.[1]

## INTRODUCTION

In an overzealous effort to build a federal criminal case against the parent Defendants for allegedly aiding cheating on college entrance exams, the Government in this case runs afoul of a recently reinforced admonition from the Supreme Court requiring strict construction of the mail and wire fraud statutes to avoid "a sweeping expansion of federal criminal jurisdiction." *See Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (quoting *Cleveland v. United States*, 531 U.S. 12, 24 (2000)). In its unanimous opinion, the Justices asserted that the mail and wire fraud statutes are not intended to criminalize all conduct that prosecutors consider wrongful, dishonest, or deceptive. *Kelly*, 140 S. Ct. at 1571. Instead, mail and wire fraud is at its core "property fraud." *Id.* Accordingly, under well-established precedent, mail and wire fraud requires a fraudulent scheme with an object to obtain a traditional property interest. *Id.* at 1568; *Carpenter v. United States*, 484 U.S. 19, 26 (1987).

Against this clear and consistent edict, the Government relies on one dated, out-of-circuit case: *United States v. Hedaithy*, 392 F.3d 580 (3d Cir. 2004). While *Hedaithy* may initially appear germane as a fraud case involving standardized testing, its holding was extremely fact-specific and inapplicable here. Ultimately, even *Hedaithy* cannot support the position the Government takes.

---

[1] The indictment contains allegations regarding admissions testing only with respect to Defendants William McGlashan, I-Hsin "Joey" Chen, Marci Palatella, and Gregory and Amy Colburn. *See* Fourth Superseding Indictment ("FSI") ¶¶ 97, 107, 135, 138, 182, 191, 210, 216. Because the indictment names all Defendants in Count One, however, this reply motion is joined by all Defendants, including those against whom no testing-related allegations are made. (The indictment's inclusion of numerous, distinct alleged conspiracies in a single count is addressed in Defendants' separate Motion To Dismiss, Or In The Alternative, To Sever, Pursuant To Federal Rules of Criminal Procedure 8, 12(b)(3)(B)(i), (iv), And (v), 12(b)(3)(D), And 14.)

Neither *Hedaithy* nor the Government's cited case law support an expansion of mail and wire fraud beyond traditional property rights.   The other case on which the Government primarily relies, *Pasquantino v. United States*, 544 U.S. 349, 356 (2005), engages in the very analysis propounded by Defendants:   the Court conducts an examination of common law to determine whether an interest was traditionally considered a property right.

The purported property interests that are the object of the wire and mail fraud schemes alleged in the Fourth Superseding Indictment ("FSI") do not qualify as traditional property rights. Recognizing this obstacle, the Government now asserts new potential property theories not previously alleged in the FSI.  Each new theory not only does not qualify as traditional property rights, but each was not alleged in the FSI and therefore cannot be part of this Court's consideration on a motion to dismiss.  Despite the Government's latest protestations, the FSI does not meet the legal standard:   mail and wire fraud is limited in scope to fraudulent schemes whose object is to deprive the victim of something traditionally recognized as property in the common law.

In addition, the FSI fails to properly allege the existence of a fiduciary duty sufficient to support honest services fraud, and the two out-of-circuit cases cited in the Government's opposition are easily distinguishable from the controlling First Circuit law.

As set forth below and in Defendants' opening motion, the Government has failed to allege facts sufficient to support its claims of mail and wire fraud and honest services fraud, and accordingly, Defendants respectfully request that the Court dismiss Count One of the indictment insofar as it alleges a conspiracy to defraud ACT, Inc. and the College Board of money or property and of honest services.

DISCUSSION[2]

**A.     Mail and Wire Fraud Is Limited In Scope To Traditional Property Rights**

In apparent recognition that the alleged scheme in the indictment does not involve "traditional concepts of property," the Government now argues that mail and wire fraud statutes are not limited to the protection of traditional property forms.[3] Dkt. 1170 at 25-27. Well-established precedent from the Supreme Court and other appellate courts (including this circuit) is to the contrary. The Supreme Court has held that the object of an alleged mail or wire fraud must be of a type that has "long been recognized as property." *Carpenter*, 484 U.S. at 26. Therefore, property theories that "stray from traditional concepts of property" have been struck down. *See Cleveland*, 531 U.S. at 24 ("We resist the Government's reading of § 1341 as well because it invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress."); *see also United States v. Berroa*, 856 F.3d 141, 149 (1st Cir. 2017) (citing *Cleveland*'s rejection of a theory that "stray[ed] from traditional concepts of property"); *United States v. Ochs*, 842 F.2d 515, 525-27 (1st Cir. 1988) (dismissing a mail and wire fraud action in part due to court's finding that a "secret profits" theory of property was too "expansive" and "abstract."). The Supreme Court's approach to interpreting property is unsurprising in light of its long-held "general presumption that a statutory term has its common-law meaning." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 402 (2003). *See also Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) ("[I]f a word is obviously transplanted

---

[2] Movants respectfully request that the Court incorporate herein the legal responses set forth in Defendants' Reply on the Motion to Dismiss Count One Insofar As It Alleges Conspiracy to Defraud Universities of Property. For the reasons presented in that motion and this instant motion, Counts Four through Ten should also be dismissed. *See* Dkts. 993; 1023; 1026; 1043.

[3] Indeed, the Government's half-hearted statement that "*it is not clear* that the property alleged in the Indictment" is not a traditional property right is telling. Dkt. 1170 at 27, fn 12 (emphasis added).

from another legal source, whether the common law or other legislation, it brings the old soil with it."). The Supreme Court has also instructed that it is "especially appropriate" in the context of mail and wire fraud to resolve the term property in "favor of lenity" when faced with ambiguity. *Cleveland*, 531 U.S. at 25.

The Government tries to fashion an argument against this line of precedent by citing a Supreme Court case that in fact engages in the very analysis propounded by Defendants. In *Pasquantino*, the Supreme Court states that property is to be used "as that term ordinarily is employed" and then undertakes an analysis of common law sources. *Pasquantino*, 544 U.S. at 356. The Court engaged in an analysis of common law to "confirm" that the right in question "has long been thought to be a species of property." *Id.* The Government also references First Circuit cases, but closer analysis finds that they also reinforce Defendants' argument. In *Ochs*, the First Circuit engaged in an analysis of *Carpenter* and the scope of property interests, and in doing so set forth its belief that the government's "secret profits" theory of property is "an expansive view of property protected by the mail fraud statute [that] is irreconcilable with the basic holding of *McNally*." *Ochs*, 842 F.2d at 525.[4] Thus, this Court should apply the long line of Supreme Court precedent and require a traditionally-recognized property right to support mail and wire fraud.

---

[4] The other two First Circuit cases cited do not engage in an analysis of the term property; rather, they merely note in passing that the mail and wire fraud statutes protect a "wide variety" of property interests. *See United States v. Dray*, 901 F.2d 1132, 1142 (1st Cir. 1990); *United States v. Rosen*, 130 F.3d 5, 9 (1st Cir. 1997). This is not inconsistent with Supreme Court precedent. Mail and wire fraud applies to a "wide variety" of traditional property interests that have been recognized as such at common law.

**B.     The Fourth Superseding Indictment Does Not Allege Facts Showing Any Traditional Property Interest To Be The Object Of The Scheme**

The Government next engages in a series of mental gymnastics to posit a cognizable property interest as an object of the alleged testing scheme.  But the Government's newfound property theories of "goodwill" and "proper procedures" are not relevant.  Dkt. 1170 at 38.  As an initial matter, this Court can only look to the property interests actually pled in the indictment.  *United States v. Rachal*, 222 F. Supp. 3d 113, 114 (D. Mass. 2016) (Gorton, J.) (motion to dismiss is "properly directed only to the question of the validity of the indictment on its face.").  With regard to the alleged testing scheme, the FSI pleads only the following:  "The ACT and SAT tests, and the scores students earn on those tests, are the intellectual and physical property of ACT, Inc. and the College Board, respectively."  FSI ¶ 54.  The counts in the indictment plead an even more limited recitation of property as the alleged objects of the charged fraud:  "to wit, ACT, SAT and other standardized tests and test scores."  FSI ¶¶ 370a. and b.; 376.[5]  This is in sharp contrast to the challenged superseding indictments examined in *Hedaithy* which added a list of property interests to a defective original indictment after a federal court found that "the integrity of the testing process" was not a property interest covered by the mail fraud statute.  *Hedaithy*, 392 F.3d at 584.[6]

Thus, even assuming that *Hedaithy* should hold any sway over this Court, which

---

[5] As described in Defendants' opening motion, the FSI does not adequately plead that standardized tests are the object of the alleged scheme.  Dkt. 1022 at 10-12.

[6] As discussed in *Hedaithy*, the district court in *United States v. Alkaabi*, dismissed the indictment which alleged only "integrity of the testing process" as a property interest.  223 F. Supp. 2d 583, 591 (D.N.J. 2002).  Of direct relevance to the instant dispute, the *Alkaabi* court refused to consider many of the property theories posed by the government—including the ones the court ultimately upheld in *Hedaithy*—because they had not been alleged in the indictment.  *Id.* at 588-89.  "Government cannot usurp the role of the grand jury by advancing new, unalleged theories of property in its briefs in an effort to save the Indictments."  *Id.*

Defendants contest for reasons describe below, the Third Circuit's decision in *Hedaithy* was highly reliant on the specific allegations in the superseding indictments—allegations which are not pled in the FSI.  Further, the specific property interests alleged in *Hedaithy* were supported by a particular fact pattern alleged in the indictments that are not present here.  The *Hedaithy* defendants (1) hired imposters that fraudulently executed confidentiality agreements (thereby gaining fraudulent access to the copyrighted exam and questions); and (2) "doctored" the resulting physical score reports to insert defendants' photograph in place of the imposter's (thereby doctoring trademarked and copyrighted material).  *Id.* at 584, 595.  In sharp contrast, the Government does not allege that Defendants' children fraudulently obtained materials or altered the physical and tangible score reports.[7]  Arguments that the Government has made in briefing cannot stand in for missing allegations in the FSI.

Even aside from these material differences in the examined charging documents, *Hedaithy* is an out-of-circuit case decided prior to *Skilling* and *Kelly* that has not been adopted by any subsequent court in the intervening 16 years.  *Hedaithy* also incorrectly applied one of the core holdings in *Cleveland*:  the right to control, without something more, does not establish a traditional property right.  *See Cleveland*, 531 U.S. at 23 (the "right of control does not create a property interest"); *see also United States v. Walters*, 997 F.2d 1219, 1226 n.3 (7th Cir. 1993) (a university's "right to control" who receives a scholarship is not a property right within the scope of mail and wire fraud).  Nor did *Hedaithy* grapple with the complex law concerning intellectual

---

[7] As described more fully in Defendants' opening motion, the facts in *Hedaithy* are materially different than the facts alleged in the FSI.  *See* Dkt. 1022 at 8-9.  The remaining Defendants in this indictment with testing allegations do not have any allegations of imposters posing as students.  *See* FSI ¶¶ 107, 138, 191, 216.  The Government's reference to its allegations against Sidoo are immaterial.  *See* Dkt. 1170 at 39.  Sidoo has entered a guilty plea and he is not bringing the instant motion.

property rights, such as precedent finding that a copyright, while conferring a limited property interest to its holder, is not "property" for the purposes of the wire fraud statute. *United States v. LaMacchia*, 871 F. Supp. 535, 543 (D. Mass 1994) ("[T]he 'bundle of rights' conferred by copyright is unique and distinguishable from the indisputably broad range of property interests protected by the mail and wire fraud statutes").

The Government's other arguments for why the test scores should be considered sufficient for mail and wire fraud—even if pled into the indictment (which they were not)—also fail the test for traditionally recognized property interests.  For example, the Government argues that test scores must be considered property because of an implication that the scores were created "in accordance with proper procedures."  Dkt. 1170 at 38.  This appears to be an attempt to argue that the reputation of the testing companies constitutes a cognizable property right.  Reputation and goodwill are not traditionally recognized property interests, and therefore cannot support an allegation of mail and wire fraud.  *See United States v. Ferrara*, 701 F. Supp. 39, 43 (E.D.N.Y. 1988) (the "reputation" of a private entity providing testing services is not a traditionally "recognized property interest" for purposes of the fraud statutes).  Other cases have similarly held that reputation, standing alone, is not a traditional property right.  *Roitman v. New York City Transit Auth.*, 704 F. Supp. 346, 348 (E.D.N.Y. 1989) (holding that "humiliation, emotional distress, pain and suffering" and "reputation, good name, honor and integrity" are not property interests under mail and wire fraud statutes); *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 Fed. Appx. 14 (2d Cir.

2006) (finding that reputation is not a sufficient property right for the mail and wire fraud statutes).[8]

The Government also cannot invoke a traditional property right based on the testing services that underly the testing and scoring procedures. As described more fully in Defendants' opening briefs, services are not considered within the scope of property for mail and wire fraud. *See* Dkt. 1041 at 19-22; Dkt. 1022 at 6. The Government's arguments otherwise are unavailing. The *Kelly* Court's passing reference to a potentially cognizable property right in the *cost* and "economic loss" of an employees' time and labor is not to the contrary. *Kelly*, 140 S.Ct. at 1573. Defendants do not dispute that a monetary loss is a cognizable loss under the mail and wire fraud statutes. However, services alone without an accompanying economic loss have not been recognized as a traditional property interest. *See De Lima v. Sessions*, 867 F.3d 260, 266 (1st Cir. 2017) (noting that "the traditional common-law definition of theft was limited to property, and . . . services were not considered property in many common-law jurisdictions"); *United States v. Alsugair*, 256 F. Supp. 2d 306, 314 (D.N.J. 2003) ("Quite simply, there is no authority to support the proposition that services are a traditional property interest.").[9] The Government's attempt to shoehorn services into a property right dishonors the intent of both the Supreme Court, which excluded "honest services" from mail and wire fraud, *see McNally v. United States*, 483

---

[8] The Government also cites to two out-of-circuit cases as support. These cases are inapposite as well, as discussed further in Defendants' Reply on the Motion to Dismiss Count Insofar As It Alleges Conspiracy to Defraud Universities of Property.

[9] The Government disingenuously characterizes these cases as ones that "distinguish[ ] 'property' from 'services' in far different contexts." Dkt. 1170 at 34, fn. 17. While *DeLima* analyzes property for the purposes of common law theft, *Alsugair* determines that "testing services" are not property to a testing company for purposes of mail and wire fraud. *See Alsugair*, 256 F.Supp.2d at 314. Regardless, the Supreme Court's analysis of common law sources to determine traditional property rights for purposes of mail and wire fraud has not been limited to cases within the same context. *See Carpenter*, 484 U.S. at 26 (citing to cases outside of the mail and wire fraud context in finding that confidential business information "has long been recognized as property").

U.S. 350, 360-61 (1987), and Congress, which subsequently created a separate and distinct "honest services" prong of mail and wire fraud.  18 U.S. § 1346.

Finally, the Government conflates the two objects it alleged in the FSI, standardized tests and test scores, to argue that the testing companies have a property right in the "intellectual and physical property" of the standardized tests and, therefore, a property interest in test scores.  *See* Dkt. 1170 at 38.  In doing so, the Government ignores that an individual student's test scores— the actual object of the alleged fraud—is not the same as the testing agency's intellectual property over test questions or physical property of the tests themselves.  And as Defendants articulated in their opening brief, the FSI does not allege a scheme to obtain the standardized tests.  Dkt. 1022 at 10-12.  Thus, the standardized tests and any intellectual property therein were not objects of the alleged fraud and were only "incidental" to the actual object.  A comparison to *Kelly* is applicable here.  While the government may have had a property right in the cost of the employees' time and labor that was used to execute the scheme, that was not the actual object of the scheme and therefore did not create the requisite property interest for mail and wire fraud.  *See Kelly*, 140 S. Ct. at 1574.  Here, even if the Government could allege that the testing companies had a cognizable property right in intellectual and physical property, that was not the object of the alleged scheme.  Defendants had no interest or intent in obtaining the intellectual and physical property of the standardized tests themselves, and any impact on the intellectual and physical property of the standardized tests was solely an "implementation cost[]" of the alleged scheme.  *Id.* at 1574.  *Id.* at 1573 (the "property must play more than some bit part in a scheme: It must be an 'object of the fraud.'").[10]  In this case, the actual object of the alleged fraud—the

---

[10] By the same reasoning, Riddell's possession of the tests to allegedly correct the scores was part of the "implementation" of the scheme, not the object, and therefore any property loss due to

individual test scores—are not a traditionally recognized property right and therefore do not support a mail and wire fraud conviction.

The Government's new theories suffer from this general deficiency.  Even if one could be considered a traditional property right (and none can), none are the actual objects of the charged conspiracy.  The FSI alleges a scheme with an object to obtain a fraudulent score.  The Government has not alleged a scheme to defraud where Defendants sought to obtain the testing companies' intellectual and physical property or procedures.  At most, these theories represent "implementation costs" and "incidental byproducts" of the scheme.  "[A] property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."  *Id.* at 1573.

### C.    The Government Has Not Properly Alleged a Fiduciary Duty Sufficient To Support An Honest Services Violation

Much like the mail and wire fraud statutes, honest services fraud is not intended to criminalize all wrongful conduct.  Instead, honest services fraud is limited to instances involving a breach of a fiduciary duty.  *See United States v. Czubinski*, 106 F.3d 1069, 1077 (1st Cir. 1997).   Here, the Government has not properly alleged that Dvorskiy, who was not an employee of the testing companies and possibly did not even get compensated, owed the requisite fiduciary duty.  Typically, the "existence of a fiduciary relationship" is "beyond dispute."  *Skilling v. United States*, 561 U.S. 358, 408 n.41 (2010).  While some circuits have adopted an expansive definition of fiduciary relationships, the Government has not cited to one First Circuit case that does so.

---

Riddell's alleged conduct is an "incidental byproduct" that cannot support a property fraud conviction.

*Milovanovic* involves public sector honest services fraud—unlike this private sector honest services prosecution—and draws a novel distinction between "formal" fiduciaries, "informal fiduciaries," and "run-of-the-mill commercial relationships" that has never been adopted by the Supreme Court or by the First Circuit.  *United States v. Milovanovi*c, 678 F.3d 713, 722 (9th Cir. 2012), *as amended* (May 22, 2012).  Furthermore, other federal courts have declined to follow *Milovanovic* given its significant deviation from controlling Supreme Court precedent, *United States v. Lusk*, 2015 WL 1808909, at *4 (S.D.W. Va. Apr. 21, 2015), and the Government has not even attempted to square Milovanovic's expansive definition of fiduciaries with several First Circuit decisions declining to recognize such attenuated fiduciary relationships. *See, e.g., FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009) ("[U]nder Massachusetts law, the relationship between a lender [bank] and a borrower [steel fabricating company], without more, does not establish a fiduciary relationship.")

The Government also cites to a Second Circuit case, decided several years before *Skilling*, to support a proposition that the fiduciary duty requirement articulated in *Skilling* can be found in "a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers."  *United States v. Rybicki*, 354 F.3d 124, 141-142 (2d Cir. 2003).  The case is inapposite.  First, it finds a fiduciary duty in a relationship that is beyond dispute: employee and employer.  Second, the *Rybicki* court analogizes self-dealing honest services cases as being "of the same general import as the bribery cases[.]"  *Id.* at 141.  And, the concurring opinion theorizes that in honest services cases "the critical factor is the type of service at issue, not the relationship of the parties."  *Id.* at 155.  This examination of the court's interpretation of honest services cases in the private sector context exposes an analysis that no longer holds true when considered with *Skilling*'s limitation to cases involving bribery or kickback (no self-

dealing) and critically involving a relationship establishing a fiduciary duty.  *See Skilling*, 561 U.S. at 408-409.

An indictment should be dismissed when it does not include essential facts to "adequately apprise the defendants of the charges against them."  *United States v. Murphy*, 762 F.2d 1151, 1154-55 (1st Cir. 1985).  Here, the Government fails to include in the indictment the required "definite written statement of the essential facts constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1).  The Government has not alleged facts that support its bald legal conclusion that Dvorskiy was an agent and owed a fiduciary duty to the testing companies, and legal conclusions must be disregarded in deciding a motion to dismiss an indictment.  *See United States v. Harder*, 168 F. Supp. 3d 732, 737 (E.D. Pa. 2016).  Thus, the honest services allegations insofar as they relate to an alleged testing scheme should be dismissed.

## CONCLUSION

Accordingly, for the reasons stated above and in Defendants' opening motion, the Court is respectfully requested to dismiss Count One's allegations of a conspiracy to defraud ACT, Inc. and the College Board of money or property, and of theft of honest services.

Dated:  May 27, 2020                                      Respectfully submitted,


                                                          */s/ Jack. W. Pirozzolo*
John C. Hueston (*pro hac vice*)                          Jack W. Pirozzolo (BBO # 564879)
jhueston@hueston.com                                      jpirozzolo@sidley.com
Marshall Camp (*pro hac vice*)                            SIDLEY AUSTIN LLP
mcamp@hueston.com                                         60 State Street, 36th Floor
HUESTON HENNIGAN LLP                                      Boston, MA 02109
523 W. 6th Street, Suite 400                              (617) 223-0304
Los Angeles, CA 90014
(213) 788-4340                                            *Attorneys for Defendant*
                                                          *William McGlashan, Jr.*


                                                          */s/ Cory S. Flashner*

- 12 -

Cory S. Flashner (BBO # 629205)
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

*/s/ David E. Meier*
David E. Meier (BBO #341710)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
dmeier@toddweld.com

*/s/ Stephen H. Sutro*
Stephen H. Sutro, Esq.
Duane Morris, LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3008
SHSutro@duanemorris.com

*Counsel for Diane Blake and Todd Blake*

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109

617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*


*/s/ Reuben Camper Cahn*
Reuben Camper Cahn (pro hac vice)
Jennifer L. Keller (pro hac vice)
Chase A. Scolnick (pro hac vice)
KELLER/ANDERLE LLP
18300 Von Karman Avenue
Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsin "Joey" Chen*


*/s/ David S. Schumacher*
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue
Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (pro hac vice)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East
Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

- 14 -

Jordan Kearney (pro hac vice)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street
Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*


*/s/ Michael K. Loucks*
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (pro hac vice)
Allen J. Ruby (pro hac vice)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

*Counsel for Defendant Marci Palatella*


*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (admitted pro hac vice)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards

- 15 -

New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*


/s/ *Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
Miner Orkand Siddall LLP
470 Atlantic Ave
4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*


/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (pro hac vice)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8428
andrew.tomback@whitecase.com

*Counsel for John Wilson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2020, I filed this document through the CM/ECF system and a copy will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo