**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| | ) | |
| **United States of America,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Criminal Action No.** |
| | ) | **19-10080-NMG** |
| **Sidoo et al,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

The government has charged Robert Zangrillo, as well as multiple co-defendants, with conspiring with William "Rick" Singer ("Singer") to obtain the fraudulent admission of his children to elite universities.  Zangrillo has moved to dismiss Counts One and Four of the Indictment and to strike or, in the alternative, sever those counts.  For the following reasons, those motions will be denied.

### I.   Background

### A. Facts

The facts of this case have been extensively recited several times by this Court. See Docket Nos. 1169 and 1334.  Additional facts specific to Defendant Zangrillo have been forth out by Magistrate Judge Kelley in Docket No. 913.  As previously recounted, defendants are charged with conspiring with Singer

-1-

to, _inter alia_, fabricate applications, falsify academic and athletic credentials, cheat on standardized tests, make payments to corrupt exam proctors and bribe university employees and athletic coaches.

Relevant here is the distinct conduct of Defendant Zangrillo.  In addition to engaging in the "side door" scheme, the Fourth Superseding Indictment ("FSI") alleges that Zangrillo agreed with Singer to pay a third party to complete online classes on behalf of his daughter during two separate college application transactions.

The FSI alleges that, in support of his daughter's initial applications to college, Zangrillo conspired with Singer to have a third party complete high school classes on her behalf. Later, in support of her application to transfer to a second college, Zangrillo engaged Singer to have a third-party complete college coursework on her behalf.

The government alleges that Zangrillo understood that (1) the credits earned from those classes would be reflected on his daughter's transcripts; (2) her high-school transcript would be submitted as proof of graduation as a prerequisite for college admission and matriculation and (3) the credits earned would support both college applications.

In March, 2017, Zangrillo's daughter was admitted to Boston University ("BU").  At that time, she was enrolled at an online

high school and needed to complete five classes in order to graduate.  The FSI alleges that Singer's associate, Mikaela Sanford ("Sanford") and another person (Co-Conspirator #1) completed four of those enrolled courses.  In return, the FSI alleges that Zangrillo wired $3,109 to The Key, one of Singer's fraudulent entities.

Later in the summer of 2017, Sanford purportedly attempted to have the online high school send the daughter's transcript to BU.  Sanford was informed that Zangrillo's daughter would have to complete a class called "Fitness Fundamentals" to fulfill the graduation requirements.  Sanford is said to have subsequently completed that course on behalf of the applicant and requested that the high school send the transcript "with proof of graduation" to BU.  The high school then sent the transcript, which included credits from the classes taken by Sanford and Co-Conspirator #1 to BU.  As payment for Fitness Fundamentals, the FSI alleges that Zangrillo wired $2,500 to The Key.  Zangrillo's daughter did not ultimately attend BU but instead apparently enrolled at a community college.

The FSI further alleges that, in 2018, Zangrillo agreed with Singer to pay $250,000, (including a bribe to Donna Heinel) to facilitate his daughter's transfer to the University of Southern California ("USC") as a purported crew recruit.  In support of her application to USC, the government asserts that

Zangrillo directed Sanford to complete online college classes on behalf of his daughter for which he paid over $10,000. Transcripts reflecting credits earned in those classes were sent to USC.

Ultimately, and the government contends unbeknownst to Zangrillo, Heinel did not present his daughter to USC as a potential athlete. The applicant was instead "tagged" as a so-called "VIP" and was eventually admitted to the university.

**B. The Indictment**

Count One of the FSI charges Zangrillo with conspiracy to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349. Count Four charges him with substantive wire fraud and honest services wire fraud, in violation of 18 U.S.C. §§ 1341 and 1346 and 2.

**II.  Legal Standard on a Motion to Dismiss**

The Federal Rules of Criminal Procedure provide that an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). When considering a motion to dismiss in a criminal case, a court accepts the factual allegations in the indictment as true. Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952). Such a motion is properly directed only to the question of the

- 4 -

validity of the indictment on its face and Courts are to be
mindful that

> the question is not whether the government has presented
> enough evidence to support the charge, but solely whether the
> allegations in the indictment are sufficient to apprise the
> defendant of the charged offense.

United States v. Ngige, 780 F.3d 497, 502 (1st Cir.
2015) (citation omitted).  It is typically sufficient that an
indictment articulate the offense in "the words of the statute
itself as long as those words set forth all the elements of the
offense without any uncertainty or ambiguity."  United States v.
Brown, 295 F.3d 152, 154 (1st Cir. 2002)(citation omitted).  An
indictment is ripe for dismissal if the facts demonstrate that,
as a matter of law, the prosecution will not be able to prove
each of the elements of the charged offense. United
States v. Huet, 665 F.3d 588, 596-97 (3d Cir. 2012).

### III. **Motion to Dismiss Counts One and Four**

#### A. Duplicity

Zangrillo first contends that by charging him with (1) wire
fraud and conspiracy to commit wire fraud in connection with the
class-taking scheme and (2) honest services fraud and conspiracy
to commit honest services fraud in connection with the bribery
scheme, Counts One and Four are duplicitous and must be
dismissed.  The government responds that Counts One and Four do
not allege distinct offenses, rather they allege multiple means

of committing a single offense and the indictment is therefore not subject to dismissal.

An indictment may not "join[], in a single count, two or more distinct offenses." United States v. Prieto, 812 F.3d 6, 11 (1st Cir. 2016).  The prohibition on duplicity is meant to guard against two outcomes:

(1)  that a criminal defendant facing such an indictment might not know which charge to prepare to defend against . . . [and]

(2)  that a jury could find a defendant guilty without actually reaching unanimity

Id. (citations omitted).

An indictment is not, however, "duplicitous if it merely describes alternative ways of committing a single offense." 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 143 (5th ed. 2020).  In a single count an indictment may allege two (or more) means of committing a singular offense. See United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999); United States v. Goldberg, 913 F. Supp. 629, 635 (D. Mass. 1996).  Recast, a count in an indictment is defective only if it charges two separate offenses.

This Court has previously held that, on its face, the FSI adequately alleges a single conspiracy, the existence of which is a factual question for the jury.  As this Court discussed elsewhere at some length, a conspiracy may be multifaceted or contain multiple components but may still be properly charged as

- 6 -

a single overarching scheme. See Docket No. 1334 (citing United States v. Holt, 777 F.3d 1234, 1263 (11th Cir. 2015); Prieto 812 F.3d at 11. A related analysis applies to Zangrillo's duplicity claims.

A single count may allege that a defendant committed an offense "by one or more specified means." Fed. R. Crim P. 7(c)(1). The FSI alleges that Zangrillo and the other defendants conspired in one overarching scheme to secure the admission of their children to prestigious colleges and universities through various means including bribery, fraud and, in Zangirllo's case, fraudulent class taking. Fraudulent class taking, along with falsifying academic and athletic credentials, cheating on standardized tests and bribing university employees, is simply one of several means of achieving the goal of the conspiracy, not a distinct offense. Counts One and Four of the FSI are therefore not subject to dismissal on duplicity grounds.

Zangrillo's concern that he could be convicted without a unanimous verdict on either class taking or honest services bribery is unavailing because, contrary to his assertion, fraudulent class taking and bribery are not separate offenses but rather separate means of accomplishing the same end. A jury need only be unanimous that the charged offense was proved, it need not be unanimous with respect to the means. See United States v. LaPlante, 714 F.3d 641, 647 (1st Cir. 2013).

Finally, as the Court previously noted, district courts consistently (and properly) rebuff defendants' efforts to dismiss conspiracy allegations based on claims of duplicity. See, e.g., United States v. Gabriel, 920 F. Supp. 498, 503-04 (S.D.N.Y. 1996).  Zangrillo's motion to dismiss Counts One and Four for duplicity will therefore be denied.

**B. The Class-Taking Scheme**

Zangrillo next contends  that the class cheating scheme cannot constitute wire fraud because (1) a college admissions slot is not a cognizable form of property, (2) cheating in online classes was immaterial and (3) Boston University was not defrauded by the alleged class-taking scheme.

**1. Property**

For reasons previously explained, this Court has determined that so-called "application slots" are property of a university cognizable under the mail and wire fraud statutes.  The reasoning articulated in the context of defendants' prior motions to dismiss applies here.

The FSI charges the defendants with an over-arching conspiracy to have their children fraudulently admitted to elite universities thereby depriving the university of property in the form of admissions slots.  The FSI alleges that Zangrillo engaged in the class-taking scheme, which included the submission of fraudulent transcripts, as one method of

effectuating that fraud.  Consequently, the FSI properly alleges wire fraud.  Finally, the Court notes that, contrary to Zangrillo's contention, hiring a third party to complete coursework is plainly distinguishable, both in degree and kind, from one student copying the work of another or cribbing from Wikipedia.

### 2. Materiality

Zangrillo next maintains that the class-taking scheme was not material to the admissions decisions of either BU or USC and therefore Zangrillo's alleged conduct cannot constitute wire fraud.  In short, he submits that any fraudulent class taking was too remote from the subject admissions decisions for it to be material to the alleged fraud.

In determining materiality, the relevant analysis turns on whether the alleged fraudulent conduct "was capable of influencing a decision, not whether it did, in fact, influence a decision." United States v. DeNunzio, No. CR 14-10284-NMG, 2015 WL 5305226, at *6 (D. Mass. Sept. 9, 2015).  Moreover, in general, materiality is a question for the jury. See id.; United States v. Weed, 873 F.3d 68, 73 (1st Cir. 2017); United States v. Sharp, 749 F.3d 1267, 1280 (10th Cir. 2014).

The FSI alleges that the fraudulent transcripts (generated by the class-taking scheme) were a material part of the over-arching conspiracy whereby Zangrillo and the other defendants

paid others, via Singer, to have their children fraudulently admitted into college. Whether those purported acts were committed before or after Zangrillo's daughter's admission to BU, is irrelevant if, as the FSI alleges, they were in furtherance of the larger admissions scheme.

The FSI charges that the class cheating scheme was material to the decisions of BU and USC. Because, with respect to a motion to dismiss, the Court is to construe the allegations in an indictment as true, analysis of the materiality of the fraudulent transcripts is properly left to the jury. See DeNunzio, 2015 WL 5305226, at *5 (noting that the "ultimate determination of the materiality of [a] defendant['s] purported misrepresentation is for the jury to determine after hearing all of the evidence during trial.")

### 3. Boston University

Finally, Zangrillo maintains that Count Four should be dismissed because his daughter was admitted to BU before the class-taking scheme is alleged to have begun. Zangrillo concludes that BU was not, therefore, defrauded. The government rejoins that BU's offer of admission was contingent on the submission of transcripts demonstrating that Zangrillo's daughter actually graduated from high school. When Zangrillo submitted the fraudulent transcript, the government maintains he

used a wire communication in furtherance of a scheme to defraud
and Count Four properly alleges wire fraud.

The wire fraud statute proscribes electronic use "for the
purpose, or in furtherance, of executing [a] scheme to defraud."
United States v. Hebshie, 549 F.3d 30, 36 (1st Cir. 2008).  As
articulated by the First Circuit, "the in-furtherance
requirement is to be broadly read and applied." Id.  To
constitute wire fraud, a wire sent in furtherance of a
fraudulent scheme need not be central to the scheme, rather it
need only to be connected to the scheme. See United States v.
Pimental, 380 F.3d 575, 587 (1st Cir. 2004).

Relevant here, a wire may be considered to be "in
furtherance" of a scheme to defraud even after a defendant has
achieved the money or property which was the object of the
fraud. See United States v. O'Brien, 994 F. Supp. 2d 167, 180
(D. Mass. 2014).  The determinative question is not the timing
or sequence of events but, "whether the mailing [or wiring] is
part of the execution of the scheme as conceived by the
perpetrator at the time." Schmuck v. United States, 489 U.S.
705, 715 (1989); see also United States v. Lo, 231 F.3d 471, 478
(9th Cir. 2000)(noting that "the issue is not one purely of time
sequence.")

The FSI alleges that Zangrillo paid Singer to have others
take online courses in place of his daughter.  Those courses

- 11 -

appeared on his daughter's transcript which was then submitted by wire to BU.  The FSI alleges that BU's admission of Zangrillo's daughter was predicated on submission of those transcripts as proof of graduation.  The FSI therefore sufficiently alleges that when Zangrillo submitted the transcript in the summer of 2017 he did so as part of the larger fraud and in furtherance of the fraudulent scheme.  That BU had conditionally admitted his daughter prior to transmission of the fraudulent transcript does not subject the indictment to dismissal.

### IV.  <u>Motion to Strike Class-Taking Allegations or, Alternatively, to Sever</u>

Zangrillo next moves to strike the class-taking allegations, or, in the alternative, to sever his trial from those of his co-defendants.

#### A. Motion to Strike

Zangrillo first maintains that, because the class-taking scheme does not constitute wire fraud, references to it in the FSI are prejudicial surplusage and should be struck.  Fed. R. Crim P. 7(d), which allows a court to strike surplusage from an indictment,

> serves to protect the defendant against immaterial or irrelevant allegations in an indictment . . . which may . . . be prejudicial.

<u>United States</u> v. <u>Lewis</u>, 40 F.3d 1325, 1346 (1st Cir. 1994).  A
motion to strike is subject to an exacting standard and should
be granted "only if the allegations are inflammatory,
prejudicial, and irrelevant to the crime charged. . . ." <u>United
States</u> v. <u>Sawyer</u>, 878 F. Supp. 279, 294 (D. Mass. 1995), aff'd,
85 F.3d 713 (1st Cir. 1996)(internal quotation omitted)

    As previously discussed, the FSI alleges that the submission
of fraudulent transcripts (which stemmed from the class-taking
scheme) was one means of effecting the single larger conspiracy
and is properly alleged to constitute wire fraud.  The facts
relevant to the submission of the transcripts, including the
circumstances of the class-taking scheme, are therefore relevant
and not surplusage.

### B. Severance

    Zangrillo next submits that the class-taking scheme is
separate from the bribery scheme and therefore the allegations
of class taking should be severed to avoid undue prejudice.

### 1. Fed. R. Crim. P. 8

    Rule 8 of the Federal Rules of Criminal Procedure governs
joinder of offenses or defendants.  As an initial matter,
Zangrillo and the government disagree about whether subsection
(a) or (b) of that rule should apply in this case.  Rule
8(a) applies to the joinder of multiple alleged offenses by a
singular defendant while Rule 8(b) applies to joinder of two or

- 13 -

more defendants. See United States v. Rivera-Hernandez, No. CR
18-605 (FAB), 2020 WL 858613, at *6 (D.P.R. Feb. 20, 2020).  The
two standards are "nearly the same" and permit joinder (of
offenses or defendants) "when a transactional nexus exists
between the offenses or defendants to be joined." United States
v. Eufrasio, 935 F.2d 553, 570 n.20 (3d Cir. 1991).  The Court
need not determine which subsection controls because applying
either engenders the same result.

Rule 8(a) permits the joinder of two or more criminal
offenses if the offenses:

> are of the same or similar character, or are based on the
> same act or transaction, or are connected with or
> constitute parts of a common scheme or plan.

The rule's "joinder provision is generously construed in favor
of joinder. . . ." United States v. Randazzo, 80 F.3d 623, 627
(1st Cir. 1996).  When determining whether counts are properly
combined for trial, the First Circuit has held that appropriate
factors to consider include (1) whether the charges are brought
under the same statute, (2) whether they involve similar
victims, locations or modes of operation, and (3) the time frame
in which the charged conduct occurred. United States v. DeLeon,
No. CRIM 07-10277-NMG, 2008 WL 4610292, at *2 (D. Mass. Oct. 16,
2008); United States v. Taylor, 54 F.3d 967, 973 (1st Cir.1995).

Under Rule 8(b):

The indictment or information may charge 2 or more
defendants if they are alleged to have participated in the
same act or transaction, or in the same series of acts or
transactions, constituting an offense or offenses. The
defendants may be charged in one or more counts together or
separately. All defendants need not be charged in each
count.

The First Circuit recognizes two requirements for proper

joinder under Rule 8(b): (1) the offenses in question must

constitute a series of acts or transactions and (2) a showing

that joining the defendants is of benefit to the

government. United States v. Barbosa, 666 F.2d 704, 707-08 (1st

Cir. 1981).

For joinder of multiple counts to be suitable, a "rational

basis . . . should be discernible from the face of the

indictment." United States v. Natanel, 938 F.2d 302, 306 (1st

Cir. 1991).  Further, for joinder to be proper it is "settled

that a conspiracy count can forge the needed linkage." Id. at

307.  Although some common activity between defendants is

required, joinder may be apt "even when the objecting defendant

is only connected to one part of [a] scheme." United States v.

Azor, 881 F.3d 1, 11 (1st Cir. 2017).

The charged offenses, including class taking, are

sufficiently related to constitute a "series of transactions."

See United States v. Prange, 922 F. Supp. 2d 127, 129 (D. Mass.

2013).  The scheme involved common participants, entities and

victims.  The submission of fraudulent transcripts was, similar

to the alleged bribery, one means of effecting the single larger conspiracy to commit wire fraud and not a district scheme.   A rational basis for joinder is therefore apparent from the indictment.

In short, the allegations in the FSI all relate to a common scheme and describe a series of acts or transactions by Zangrillo and his co-defendants to have their children fraudulently admitted to colleges and universities.   Joinder is therefore proper under either Fed. R. Crim. P 8(a) or 8(b).

### 2. Severing Class Taking Allegations Pursuant to Rule 14

Zangrillo next asserts that the class taking allegations should be severed because trying those counts alongside the bribery scheme would cause him undue prejudice.

Pursuant to Fed. R. Crim. P. 14 a "trial judge has discretion to order severance of counts. . . to avoid undue prejudice." Randazzo, 80 F.3d at 627.   When assessing a motion to sever, a Court weighs the prejudice resulting from "a single trial of [multiple] counts against the expense and inconvenience of separate trials"  United States v. Hollis, 971 F.2d 1441, 1456 (10th Cir. 1992).   Severance is warranted only if the defendant can demonstrate that he will be subject to "prejudice so pervasive that it would be likely to effect a miscarriage of justice." United States v. DeLeon, 187 F.3d 60, 63 (1st

Cir.1999); see also United States v. Richardson, 515 F.3d 74, 81
(1st Cir. 2008).

As explained by the First Circuit, there are three kinds of
prejudice which may result from trying a defendant on multiple
offenses during the same trial:

> (1) the defendant may become embarrassed or confounded in
> presenting separate defenses; (2) proof that defendant is
> guilty of one offense may be used to convict him of a second
> offense, even though such proof would be inadmissible in a
> separate trial for the second offense; and (3) a defendant may
> wish to testify in his own behalf on one of the offenses but
> not another, forcing him to choose the unwanted alternative of
> testifying as to both or testifying as to neither.

United States v. Scivola, 766 F.2d 37, 41-42 (1st Cir. 1985)
(citations omitted).

Zangrillo maintains that the second form of prejudice would
result in this case.  He claims that evidence regarding alleged
class cheating might be inadmissible (pursuant to Fed. R. Evid.
404(b)) in a separate trial concerning the bribery scheme.  As
the government points out yet again, however, the class-taking
and the bribery are not separate offenses, they are two
components of the same over-arching scheme.

The class-taking scheme and the bribery scheme are not
unrelated.  As the Court has already explained, the FSI properly
alleges that both were a means to a single fraudulent end and
constitute a single conspiracy.  Consequently, Zangrillo's
evidentiary argument is unfounded and he has not demonstrated he

will suffer the severe degree of prejudice that would warrant severance.

### 3. Severing Trial Pursuant to Rule 14

Finally, Zangrillo argues that his trial should be severed from that of his co-defendants because (1) he is the only defendant charged with the class-taking scheme and (2) his daughter was actually admitted to USC as a "VIP" applicant rather than as a would-be athlete.

In considering a motion to sever pursuant to Fed. R. Crim. P. 14 the protocol in the First Circuit is that:

> those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources. . . .

United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2004). In conspiracy cases, the preference for a joint trial is "particularly strong." United States v. DeNunzio, No. CRIM.A. 14-10284, 2015 WL 2226251, at *3 (D. Mass. May 12, 2015); see also United States v. Floyd, 740 F.3d 22, 37 (1st Cir.2014)(noting that "[d]emonstrating unfair prejudice sufficient to require severance of coconspirators' trials is a difficult battle for a defendant to win")(citation and internal quotations omitted).

That Zangrillo's daughter was admitted to USC as a "VIP" does not alter the fact that Zangrillo, like the other co-defendants, is alleged to have conspired with Singer to have his

- 18 -

daughter admitted as an accomplished athlete.  The FSI alleges that Zangrillo participated in the same "side door" fraud conspiracy as the other defendants.  Moreover, the FSI alleges that defendants paid bribes not only to have their children admitted as purported athletes but also to have them admitted "as members of other favored admissions categories."

As the government notes, in a conspiracy,

> virtually all the evidence relating to the other conspirators [is] also directly relevant to, and, therefore, independently admissible in, the prosecution's case against [the defendant moving for severance]

United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995).

Evidence pertinent to the "side door" scheme as a whole, Singer's operation, his associates, USC admissions practices, etc., are all relevant to the charges against Zangrillo and his co-conspirators.

The Court has grouped the defendants for trial based on their conduct to avoid prejudice.  That Zangrillo is the only defendant alleged to have participated in class taking (as part of the larger scheme) will not subject him to undue prejudice.  To the extent that any potential prejudicial spillover could occur, the Court will consider appropriate limiting instructions to the jury.  See United States v. Candelario-Santana, 834 F.3d 8, 24 (1st Cir. 2016) (noting that "a trial court can safeguard a defendant from potentially prejudicial spillover by delivering

- 19 -

jury instructions as to the admissibility of the evidence.");
see also United States v. Babich, No. 16-CR-10343-ADB, 2019 WL
163102, at *3 (D. Mass. Jan. 10, 2019).  Accordingly, the Court
will not sever Zangrillo's trial from the trial of his co-
conspirators.

**ORDER**

The motions of Defendant Zangrillo to Dismiss Counts One
and Four (Docket No. 1043) and to Strike the Class-Taking
Allegations (Docket No. 1045) are **DENIED.**  The alternative
request of defendant Zangrillo to sever his trial is also
**DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 10, 2020