UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY COLBURN et al.,<br><br>Defendants | No. 1:19-CR-10080-NMG |

**ASSENTED-TO MOTION TO
CONTINUE FEBRUARY 2021 TRIAL**

Defendants Gamal Abdelaziz, John Wilson, Homayoun Zadeh, and Robert Zangrillo (the "Moving Defendants") respectfully move to continue the February 22, 2021 trial until mid-September 2021, which will be a firm and final trial date at a time by which all COVID-19 concerns will have subsided. Moving Defendants respectfully submit that if the trial were to be held in mid-September 2021, it will be delayed **just under one year** from its original start date of late September 2020. Given that we are in the middle of a once-in-a-century global pandemic that has claimed over 250,000 American lives, a continuance of one year to which both the Moving Defendants and the government agree is objectively reasonable. The government assents to this motion. If the Court is not inclined to grant a trial date in mid-September 2021, the parties request a trial date in early June 2021.

**I.      Procedural History**

On February 27, 2020, the Court scheduled two jury trials. The first trial was scheduled to begin on Oct 5, 2020 (the "Group 1 Trial") and the second on January 11, 2021 (the "Group 2 Trial"). Dkt. 883. As of the date of this filing, four defendants (the Moving Defendants) remain in the Group 1 Trial.

In light of the ongoing COVID-19 pandemic, the original trial dates have been rescheduled. On July 16, 2020, the government filed an assented-to motion to continue the October 2020 trial to late February 2021. Dkt. 1395. On August 6, 2020, the Court granted that motion, and rescheduled the Group 1 Trial to February 22, 2021. Dkt. 1454. On October 6, 2020, the Group 2 Trial defendants filed an assented-to motion to continue their trial from January to late April 2021. Dkt. 1512. On October 19, 2020, the Court granted that motion, and rescheduled the Group 2 Trial to April 20, 2021. Dkt. 1536. Thus, as of now, the Group 1 Trial is scheduled to begin on February 22, 2021, and the Group 2 Trial is scheduled to begin on April 20, 2021.

## II.   It Is Not Feasible To Adequately Prepare For Trial At This Stage Of The COVID-19 Pandemic

The Group 1 Trial is scheduled to begin in just over three months. If the pretrial deadlines that have been set for the Group 2 Trial are matched in this case, *see* Dkt. 1536, the Group 1 Trial expert disclosures would be due on November 17, reciprocal discovery on November 27, and the government's exhibit list on December 8. Accordingly, defense counsel and the government will need to begin prepping witnesses in the coming weeks. At this time, the in-person prep work that is required to sufficiently prepare for trial cannot be safely done. In addition to witnesses who are almost all out-of-state residents, the physical evidence in this case will largely consist of documents and recordings. In order to adequately prepare witnesses, counsel will need to review these documents and recordings with the witnesses in person. At this time, such meetings are both impracticable and unsafe. As the government explained in its July 16, 2020 motion, the majority of witnesses who will be called during trial reside in California, Texas, and Georgia. *See* Dkt. 1395. Defense counsel expect to call witnesses from Nevada, Texas, and elsewhere. Current travel restrictions will make in-person meetings among

people residing in different states logistically difficult. Massachusetts has implemented a COVID-19 Travel Order providing that "Massachusetts residents are urged to limit any out of State travel only to States designated as COVID-19 lower risk States."[1] Neither California, Texas, nor Georgia (nor any of the states in which Defendants Abdelaziz, Zadeh, or Zangrillo reside) are designated as "lower-risk" states. Thus, anyone entering Massachusetts from these states must quarantine for 14 days from the date of arrival in Massachusetts unless they meet certain criteria.[2]

More importantly, in-person meetings cannot currently be conducted safely. The states in which most witnesses reside have each experienced recent surges in COVID-19 cases. In particular, Los Angeles County, California – where the University of Southern California is located – is currently experiencing a surge in cases.[3] As the number of cases and the positivity rates increase, the risk of meeting in-person also increases. Additionally, in-person meetings would require cross-country air travel. The CDC has advised that being "on crowded flights . . . sitting within 6 feet of others, sometimes for hours, may increase your risk of getting COVID-19."[4] But even in-person meetings consisting only of Massachusetts residents would currently pose an increased risk. Massachusetts – where the majority of defense counsel reside and where the trial will be conducted – is currently experiencing a significant increase in cases.[5]

---

[1] *See* COVID-19 Travel Order, MASS.GOV, https://www.mass.gov/info-details/covid-19-travel-order.

[2] *Id.*

[3] *See* Fears of Coronavirus 'Second Wave' Rise as LA County Case Numbers Continue Surge, NBC Los Angeles, Nov. 8, 2020, https://www.nbclosangeles.com/news/coronavirus/fears-of-coronavirus-second-wave-rise-as-la-county-case-numbers-continue-surge/2456802/.

[4] Travel during the COVID-19 Pandemic, CDC, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html.

[5] *See* Gov. Baker confirms MA is currently experiencing second surge of COVID-19, WWLP, Nov. 10, 2020, https://www.wwlp.com/news/state-politics/gov-baker-confirms-ma-is-currently-experiencing-second-surge-of-covid-19/.

All of the risks associated with in-person meetings are especially concerning for those witnesses and attorneys who are more susceptible to complications associated with COVID-19. According to the CDC, older adults are at an increased risk for severe illness. In fact, 8 out of 10 COVID-19 deaths in the U.S. have been among adults aged 65 years or older.[6] The CDC has also provided a list of common underlying conditions which may place individuals at an increased risk for severe illness from COVID-19, including but not limited to the following: heart conditions, obesity, pregnancy, asthma, hypertension, and diabetes.[7] Many witnesses and attorneys involved in this case fall within one or more of the categories placing them at an increased risk of experiencing severe complications from COVID-19.[8]

These same challenges and risks apply to the defendants in this case. Defendants have a constitutional right to participate in the preparation of their defense. *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) ("[T]he Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice,'" meaning that a defendant has the "right to be represented by a qualified attorney whom she chooses and can afford" (quoting *Powell v. Alabama*, 297 U.S. 45, 53 (1932)); *Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007) (a defendant "has a 'fundamental constitutional' right to testify in his own defense, and … the right must be 'unfettered'" (quoting *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), and *Harris v. New York*, 401 U.S. 222, 230 (1971))); *see also, e.g.*, *United States v. Rankin*, 779 F.2d 956, 961 (3d Cir. 1986) (reversing the defendant's conviction and granting a new trial because the defendant was

---

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

[8] If the Court requests further detail about individual medical circumstances affecting counsel and their families, the Moving Defendants will seek leave to file affidavits in support of this motion under seal due to the sensitive nature of these health concerns.

deprived of the ability to be represented by counsel of choice by court's failure to grant continuance of trial date). Under the current conditions, Moving Defendants cannot feasibly exercise their constitutional right to participate in their defense.

The Moving Defendants reside in California, Nevada, Florida, and Massachusetts. As explained above, these states are experiencing increases in COVID-19 cases, making it unsafe to conduct in-person meetings. Since October 19, 2020 – the date the Court granted the motion to continue the Group 2 Trial from January to April 2021 – cases have skyrocketed. On October 19, 2020, the 7-day average positivity rate in Massachusetts was 1.4%.[9] As of November 19, 2020, the positivity rate has grown to 3.17%.[10] Recognizing this "steep increase in cases during the month of October," on November 2, 2020, the Commonwealth imposed new restrictions reducing the size limit for gatherings at private residences.[11]

In California, the positivity rate was 2.6% on October 19, 2020.[12] Now, the rate has increased to 5.2%.[13] As of November 19, Los Angeles County has a 5.3% positivity rate, and San Bernardino County has a 10.5% positivity rate.[14] According to California's Blueprint for a Safer Economy in California – which designates each county in the state as having a Minimal, Moderate, Substantial, or Widespread COVID-19 transmission risk – both Los Angeles and San Bernardino counties are currently categorized as "widespread."[15] California residents "are

---

[9] *See* https://www.mass.gov/doc/covid-19-dashboard-november-19-2020/download.

[10] *Id.*

[11] *See* COVID-19 Order No. 54, https://www.mass.gov/doc/covid-19-order-54/download.

[12] *See* https://covid19.ca.gov/state-dashboard/.

[13] *Id.*

[14] See Blueprint for a Safer Economy, COVID19.CA.GOV, https://covid19.ca.gov/safer-economy/.

[15] *Id.*

currently ordered to stay home or at their place of residence, except for permitted work, local shopping or other permitted errands, or as otherwise authorized."[16]

Nevada is also experiencing a surge in cases. On October 19, 2020, the statewide positivity rate in Nevada was 8.9%.[17] As of November 19, 2020, the average positivity rate has grown to 15.8%.[18] The state has issued guidance providing that "all Nevadans are strongly encouraged to stay in their residences to the greatest extent possible," and "are urged to avoid travel to the greatest extent practicable."[19] Finally, in Florida, the positivity rate has increased from 6.19% on October 19, 2020 to 7.64% as of November 19, 2020.[20]

The increased positivity rates in those states where witnesses, defendants, and attorneys reside make the prospect of in-person meetings particularly risky.[21] Because COVID-19 is spread primarily through respiratory droplets,[22] "the more people you interact with, the more closely you interact with them, and the longer that interaction, the higher your risk of getting and

---

[16] *See* Stay Home Q&A, COVID19.CA.GOV, https://covid19.ca.gov/stay-home-except-for-essential-needs/ (last updated October 29, 2020).

[17] *See* https://nvhealthresponse.nv.gov/.

[18] *Id.*

[19] *See* Declaration of Emergency Directive 021, Phase Two Reopening Plan, at § 8, STATE OF NEVADA (May 28, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/05/Directive-021-Phase-Two-Reopening-Plan.pdf; see also Declaration of Emergency Directive 33, at § 1, STATE OF NEVADA (Sept. 30, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/10/Declaration-of-Emergency-Directive-033.pdf  (providing that any provisions not addressed by the latest Directive "shall remain in force as provided by previous Directives," and declining to terminate Section 8 of Directive 021); Declaration of Emergency Directive 034, at § 1, STATE OF NEVADA (Oct. 2, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/10/Declaration-of-Emergency-Directive-034.pdf (same).

[20] https://floridahealthcovid19.gov/.

[21] "A high percent positivity means there is a high rate of SARS-CoV-2 infections due to extensive transmission of the virus in the geographic area." https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/calculating-percent-positivity-faq.html.

[22] *See* Frequently Asked Questions About COVID-19, "How Does COVID19 Spread?", MASS.GOV, https://www.mass.gov/info-details/frequently-asked-questions-about-covid-19#how-does-covid19-spread?.

spreading COVID-19."[23]  The types of gatherings necessary for trial preparation are exactly those types that the CDC classifies as "higher risk" and "highest risk": medium-sized in-person gatherings that include attendees who have traveled from outside of the local area.[24]

### III. It Will Be Nearly Impossible To Conduct A Multi-Defendant Trial In February 2021

In addition to the issues described above, a multi-defendant trial creates unique logistical challenges that may be impossible to meet in the near future.  According to current guidance, in order to ensure proper social distancing, a maximum of 24 people can safely be in the largest courtrooms available in the Moakley Courthouse.[25]  The Group 1 Trial would, at a minimum, require 36 people in a single courtroom: the judge, the courtroom deputy clerk, the stenographer, 2 prosecutors, the 4 defendants, 8 defense attorneys,[26] 2 paralegals (one defense/one government), 2 court security officers, 12 jurors and 2 alternates, and 1 witness.  Thus, it would be impossible to accommodate this multi-defendant trial in a traditional courtroom.[27]  During a report to the bar on October 29, 2020, Chief Judge Saylor explained that the Court has made efforts to identify an alternative venue with proper security that is large enough to accommodate multi-defendant trials. To date, no such venue is available.

---

[23] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

[24] *Id.*

[25] See COVID-19: Resuming Jury Trials In Massachusetts, LEXOLOGY (Sept. 24, 2020), https://www.lexology.com/library/detail.aspx?g=39bb4016-f5f4-4b28-ad83-801c95073100#:~:text=On%20September%2016%2C%202020%2C%20Chief,during%20the%20COVID%2D19%20pandemic.

[26] Limiting the number of attorneys available to each defendant in the courtroom also raises constitutional concerns with respect to defendants' right to counsel of their choice.

[27] Moreover, limiting public access during the trial or jury selection process would raise constitutional issues regarding Defendants' right to a public trial.  *See United States v. Negron-Sostre*, 790 F.3d 295, 301 (1st Cir. 2015).

Additionally, it will be extremely difficult if not impossible to safely accommodate the large jury venire that will be needed given the high-profile nature of this trial. It is almost certain that the voir dire process would need to be conducted over several days in order to break up potential jurors into smaller groups. This would greatly extend the total length of the already weeks-long trial. Further, in his report to the bar on September 16, 2020, Chief Judge Saylor explained that potential jurors may be excused if they have underlying health conditions, household members with health conditions, a lack of childcare, or face economic hardship. Not only will this make the jury selection process more difficult, but will make it highly likely that certain demographics will be excluded from the jury pool—for example, women who serve as caretakers for children while schools are closed, minority populations who are disproportionately affected by comorbidities, or elderly jurors who have a justifiably greater fear of COVID-19. Thus, constitutional concerns may arise regarding whether the jurors will represent a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) ("[T]he Court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.").

Finally, present circumstances will make it exceedingly difficult for witnesses, as they will be required to quarantine for 14 days after they arrive in Massachusetts. The costs and logistical issues associated with housing witnesses for weeks in advance of trial and conducting in-person meetings to prepare them for examination should be avoided if possible.

IV.   **Continuing The Trial Will Enable Defense Counsel And The Government To Adequately Prepare, Conserve Resources, And Make It More Likely That The Trial Will Proceed As Scheduled**

It is impossible to know exactly what the state of the COVID-19 pandemic will look like in the months to come. However, as explained in the Group 2 Trial defendants' motion to

continue, experts believe that the COVID-19 infection rate will worsen during the 2020-2021 winter.[28]  See Dkt. 1512 at 7.  Based on the increases seen over the past month, it appears that this prediction will hold true.  For the past week, the United States has continuously seen an increase in the number of new cases reported each day.  On November 19, 2020, the United States reported an "all-time high" of 185,424 new cases .[29]  The CDC's data tracker shows that we are currently experiencing an upward trend, as illustrated in the chart below:[30]



Based on these trends, if the trial is not continued now, it is increasingly possible that new government restrictions will force the Group 1 Trial to be delayed at the last minute.  In the

---

[28] See, e.g., Megan Scudellari, How the pandemic might play out in 2021 and beyond, NATURE (Aug. 5, 2020), https://www.nature.com/articles/d41586-020-02278-5 (quoting Akiko Iwasaki, an immunobiologist at the Yale School of Medicine, and Richard Neher, a computational biologist at the University of Basel in Switzerland); Amir Vera, Jay Croft, and Christina Maxouris, US could see a 'very deadly December' with tens of thousands of coronavirus death to come, computer model predicts, CNN (Sept. 11, 2020, updated at 9:20pm ET), https://www.cnn.com/2020/09/11/health/us-coronavirus-friday/index.html (describing "an influential model" prepared by the Institute for Health Metrics and Evaluation (IHME) at the University of Washington predicting "a catastrophic winter with a significant rise in coronavirus deaths").

[29] See Darren Sands, U.S. reports record with nearly 200,000 new cases, daily death toll not seen since May, The Washington Post (Nov. 19, 2020), https://www.washingtonpost.com/nation/2020/11/19/coronavirus-covid-live-updates-us/.

[30] Available at https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases.

interim, defendants and the government continue to expend substantial resources preparing, and re-preparing, for an event that may not happen as planned. While no date can be absolutely certain, a more-certain timeline would provide all parties with the ability to plan, and to avoid the expensive inefficiencies associated with repeatedly preparing for the same event. These costs are heightened during the last 75 days before a trial's scheduled start date. Thus, the interests of justice will not be served by continuing to plan for a February trial that simply cannot take place.

For these reasons, the Moving Defendants and the government seek a mid-September 2021 trial date. By September 2021, it is almost certain that all COVID-19 concerns will have abated. A firm trial date for mid-September 2021 will permit both the Moving Defendants and the government to set a final trial date once and for all. This will avoid the significant and unnecessary expense to both the Moving Defendants and the government (i.e., the taxpayer) of intense preparation for a major case that ends up being continued (which has already occurred once and, if this motion is granted, will have occurred twice). Moreover, the Moving Defendants and the government have cleared their calendars for a mid-September trial and are fully prepared to try this case in mid-September. A mid-September date will also permit attorneys who are at high risk for COVID-19 to fully participate in the preparation of their clients' case, which is difficult under current circumstances.

Moving Defendants respectfully note that if the trial were to be held in mid-September 2021, it will have been delayed **just under one year** from its original start date of late September 2020. Given that we are in the middle of a once-in-a-century global pandemic that has claimed nearly 250,000 American lives, a continuance of one year from the original trial date to which both the Moving Defendants and the government agree is objectively reasonable. There is no

need to put a large number of people at risk when both the Moving Defendants and the government agree to a continuance, and the Defendants are not in custody.

Although both Moving Defendants and the government prefer a mid-September 2021 trial, if the Court is not inclined to grant a continuance until mid-September 2021, Moving Defendants (with the government's assent) request that the Court continue this trial until early June 2021.

WHEREFORE, the Moving Defendants, with the assent of the government, respectfully request that this Court continue the Group 1 Trial to mid-September 2021, and revise the corresponding pretrial order deadlines to comport with the new trial date.

Dated: November 20, 2020

Respectfully submitted,

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

/s/ Martin G. Weinberg
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700

owlmgw@att.net

Matthew L. Schwartz (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

/s/ Michael Kendall
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (*pro hac vice*)
McLAUGHLIN & STERN LLP
260 Madison Ave.
New York, NY 10016
Telephone: (212) 455-0438
atomback@mcloughlinstern.com

*Counsel for John Wilson*

/s/ Tracy A. Miner
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
MINER ORKAND SIDDALL LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing was filed electronically on November 20, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ *Joshua C. Sharp*
Joshua C. Sharp